

**DLA Piper LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
www.dlapiper.com

Jonathan Siegfried
jonathan.siegfried@dlapiper.com
T  212.335.4925
F  212.884.8477

May 2, 2018

*VIA ECF*

Hon. Brian M. Cogan
United States District Court Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *Miller, et al. v. Arab Bank, PLC*, No. 1:18-CV-02192 (BMC) (PK) (E.D.N.Y.)

Dear Judge Cogan:

      We represent Defendant Arab Bank plc ("Arab Bank" or "the Bank"). Pursuant to the Court's order dated April 19, 2018 (the "Order"), the Bank submits this letter motion requesting that the above-referenced action be randomly reassigned.[1]

      Under the Local Rules, the *Miller* action is presumptively *not* related to *Coulter et al. v. Arab Bank, plc*, 05-cv-365 (BMC) (PK). Subsection (c) of the Local Rule 50.3.1 states that "presumptively, … civil cases shall not be deemed 'related' *unless both cases are still pending before the court*" when related case treatment is sought.[2] (Emphasis added). As this Court previously recognized, the Rule 41(a) stipulation of dismissal signed by all parties in *Coulter* and filed with the Court on March 23 was self-effectuating. Minute Order (*Coulter,* Apr. 19, 2018). Thus, *Coulter* was "dismissed the day that the stipulation was filed." *Id*. Indeed, the Second Circuit's decision and mandate in *Linde* allows no other result, as the Second Circuit declined to address, *inter alia*, "the imposition of discovery sanctions" only because the "settlement agreement specifies that there will be no retrial in any event." *Linde v. Arab Bank, plc*, 882 F.3d 314, 332 (2d Cir. 2018). As such, *Miller* was filed more than three (3) weeks after *Coulter* was no longer pending, and thus at the time related-case treatment was sought, *Miller* was presumptively *un*related to *Coulter.*[3]

---

[1] Given the unique posture in which this motion arises—in response to a court order under Subsection (f) of Local Rule 50.3.1 rather than to an application under Subsection (d)—and in the absence of any further direction from the Court, we limit the Bank's response to the form and page limits set forth in the Local Rule.

[2] Although Subsection (c) states that this presumption is "subject to the power of a judge to determine otherwise pursuant to paragraph (d)," as this Court's April 19 Order makes clear, it is our understanding that the determination to transfer *Miller* as a related case was not made pursuant to subparagraph (d).

[3] Contrary to the Court's belief at the time it entered its April 19 Order, the stipulation of dismissal filed in *Coulter* on March 23 was also filed the same day in all of the other actions against the Bank. *See Linde, et al. v. Arab Bank,*



Hon. Brian M .Cogan
May 2, 2018
Page Two

      That presumption makes good sense, as the touchstone for determining that a newly filed case is related to another is whether "a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Local Rule 50.3.1(a), (c). The rule make explicit that it is not enough that the new case "(A) involves identical legal issues, or (B) involves the same parties." Local Rule 50.3.1(b). Instead, the efficiencies must come from the manner in which the parallel litigation will be conducted—i.e., from conserving scarce judicial resources and avoiding duplication of effort and conflicting proceedings. As the Southern District explained in interpreting its analogous rule in *Irish Lesbian and Gay Organization v. Giuliani,* 918 F. Supp. 728 (S.D.N.Y. 1996), those kinds of efficiencies can rarely be gained from relating a new case to a case that has already been closed. In that case, plaintiffs sought to challenge the denial of their application for a parade permit. A year before, Judge Keenan had ruled for defendants in a similar suit, and defendants sought to transfer the new action to Judge Keenan as a related matter. Judge Koetl denied the application, holding that because "[t]he case before Judge Keenan is closed," the new "case presents none of the concerns for duplicative discovery, overlapping briefing schedules, conflicting pretrial proceedings, or other sources of potential inefficiency that are envisioned by Rule 15(a). Nor would reassignment accomplish any substantial savings of judicial resources." *Id.* at 729. Indeed, the only even arguable "efficiency" would result from the court pre-judging the issues in the first proceeding, which is decidedly not an efficiency that counts, but rather what the random assignment rule protects against. As the court thus concluded, "[f]ollowing the terms of the Rule promotes the evenhanded assignment of cases and the equitable distribution of judicial workload." *Id.*

      The same is true here: Because the *Coulter* case is closed, there are no efficiencies to be gained from treating *Miller* as a related case. Indeed, even if *Coulter* was not technically closed when the *Miller* complaint was filed, there was nothing left to do in *Coulter* but memorialize its dismissal, so there were no "concerns of duplicative discovery, overlapping briefing schedules, or conflicting proceedings" that could give rise to any conceivable judicial efficiencies. Instead, the only "efficiencies" that could arise from treating *Miller* as a related case are those that could arise *any* time a new case involves issues that one judge has already confronted and resolved in another case. But that is precisely what Local Rule 50.3.1(c) guards against by providing that "[a] civil case shall not be deemed 'related' to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." And with good reason, as one of the principal objectives of the wheel and random assignment is to avoid the appearance of partiality that may arise if cases could be directed to particular judges based on their prior rulings rather than based on the efficiencies of aligning proceedings before a single judge.

---

*plc*, No. 04-cv-2799, Dkt. No. 1548 (Mar. 23, 2018); *Almog, et al. v. Arab Bank, plc*, No. 04-cv-5564, Dkt. No. 1424 (Mar. 23, 2018); *Litle, et al. v. Arab Bank, plc*, No. 04-cv-5449, Dkt. No. 1375 (Mar. 23, 2018).



Hon. Brian M .Cogan
May 2, 2018
Page Three

       In all events, even if *Coulter* were still pending, the allegations in the *Miller* complaint confirm that the two cases are not actually related in the relevant sense. Although there may be some similarity between the claims in *Miller* and *Coulter*, the cases do not involve the same "facts or legal issues" or "arise from the same transactions or events." Local Rule 50.3.1(a). On the facts, the *Miller* plaintiffs will have to prove up allegations that were never at issue in the trial conducted by this Court in *Coulter*. The trial in 2014 involved claims by plaintiffs suing for injuries they suffered as a result of 24 terrorist attacks conducted by Hamas. The *Coulter* plaintiffs had to prove that the Bank provided material support to Hamas, that the Bank knew or should have known that its customers were Hamas operatives or fronts, that the financial transactions engaged in by the Bank were for the benefit of Hamas, that the attacks in which plaintiffs were injured were conducted by Hamas, and that their injuries were a direct result of the Bank's material support to Hamas. In sharp contrast, while one of the *Miller* plaintiffs alleges injury from a Hamas attack, none of the other *Miller* plaintiffs alleges a Hamas-related injury; indeed, none of their allegations have anything to do with Hamas. *Miller* thus will involve numerous factual issues and transactions and occurences that this Court never considered in the *Coulter* trial.[4] *Miller* also involves different law. While one of the claims in *Miller* – for primary liability under 28 U.S.C § 2333(a) – was tried in *Coulter*, the first claim alleged in *Miller* is for civil liability under § 2333(d), a provision that Congress did not enact until *after* the conclusion of the *Coulter* trial. This newly created claim requires substantially different proof from any claim considered in *Coulter*. The most that could be said, then, is that the two cases involve the same defendant and may involve *some* of the same legal issues. But given the express caveat that Local Rule 50.3.1(b) provides, that is manifestly not enough to satisfy Local Rule 50.3.1(a)—let alone to overcome the presumption that Local Rule 50.3.1(c) creates.

       To the contrary, treating *Miller* as related to *Coulter* is a clear abuse of discretion given that there are several *pending* cases in this district that have as much (or more) in common with *Miller* as the closed *Coulter* matter. In fact, there are numerous judges in this district who currently have active ATA cases pending before them, where the issues are similar to those in *Miller* and the victims of alleged terrorist attacks seek to hold banks, including Arab Bank, liable

---

[4] Although there were claims in the *Coulter* complaint by plaintiffs who alleged injury as a result of terrorist attacks by the PLO and Fatah/AAMB, those claims were not tried by this Court. Rather, almost eight (8) years ago, Judge Gershon ordered that those claims be separated for trial from the claims of plaintiffs alleging injury from attacks perpetrated by Hamas, and that the Hamas-based claims be tried first. Minute Order (Coulter, July 10, 2010). As a result, when *Coulter* was assigned to this Court three (3) years later, this Court's rulings focused on the facts and evidence relating to the prosecution and defense of the Hamas-based claims. Order Reassigning Case (Coulter, July 3, 2013). The Court was never asked to rule on, and never ruled on, any issue pertaining to any other ATA claims asserted against the Bank or the evidence necessary to support or defend those claims. And it never will, as those claims were voluntarily dismissed on March 23, 2018, weeks before the *Miller* complaint was filed.



Hon. Brian M .Cogan
May 2, 2018
Page Four

for their alleged material support to the perpetrators of those attacks.  *See, e.g.*, *Weiss et al. v. Nat'l Westminster Bank*, 1:05-cv-04622 (E.D.N.Y.); *Strauss, et al. v. Credit Lyonnais, S.A.,* 1:06-cv-00702 (E.D.N.Y.); *Goldstein, et al. v. Arab Bank, plc.*, 1.16-cv-01681 (E.D.N.Y.).[5]  And if *Miller* were to be related to a *closed* case, it could just as easily be related to *Gill v. Arab Bank, plc.*, 893 F. Supp. 2d 542 (E.D.N.Y. 2012), in which Judge Weinstein considered many of the same facts and legal issues presented in *Coulter*, but reached different conclusions.

      The point is not that *Miller* should be deemed related to one of those cases instead of to *Coulter* (though if *Miller* is going to be deemed related to any case, it should at least be a *pending* case).  The salient point is that, while related case designations can create efficiencies, they can also raise "concerns about judge-shopping, and risk undermining public confidence in the judicial system." *Rite-Aid Corp. v. Am. Exp. Travel Related Servs. Co.*, No. CV 08-2315 (JG)(JO), 2008 WL 3155063, at *3 (E.D.N.Y. Aug. 4, 2008).  Particularly given that different judges in this district have reached different conclusions about the legal issues that *Miller* may present, and that the Second Circuit declined to provide more definitive guidance based on express assurances that there would be no further proceedings in the now-closed *Coulter* case, abiding by the random assignment rule is the surest way to avoid any appearance of bias (or manipulation of the Second Circuit's jurisdiction).  *See Ligon v. City of New York*, 736 F.3d 118, 123-24 (2d Cir. 2013), *vacated in part*, 743 F.3d 362 (2d Cir. 2014) (noting "circumstances where both for the judge's sake and the appearance of justice, an assignment to a different judge is salutary and in the public interest, especially as it minimizes even a suspicion of partiality"). Accordingly, the Bank respectfully requests that the *Miller* case be randomly reassigned.

      Respectfully submitted,

      **DLA Piper LLP (US)**
      /s/ *Jonathan Siegfried*
      Jonathan Siegfried
      Partner

---

[5] In fact, the lone Hamas-incident referenced in *Miller* is currently before the court in *Weiss* and *Strauss*.  Also, as noted *supra*, since this Court has never been asked to, and has never issued, any rulings with respect to any PLO or Fatah/AAMB incidents, it has no greater or lesser familiarity with the facts and evidence relating to these incidents and/or the Bank's liability for them than any other judge randomly assigned to *Miller*.