UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

AHARON MILLER, *et al.*,

        Plaintiff,

  - v -

ARAB BANK, PLC,

        Defendant.

1:18-CV-02192 (BMC)(PK)

---

NATHAN PAM, *et al.*,

        Plaintiff,

  - v -

ARAB BANK, PLC,

        Defendant.

1:18-CV-04679 (BMC)(PK)

---

**DEFENDANT ARAB BANK'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE *PAM* COMPLAINT AND *MILLER* FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(2) AND FED. R. CIV. P. 12(B)(6)**

DLA P<small>IPER</small> LLP (US)
1251 Avenue of the Americas
New York, NY 10020-1104
Phone: (212) 335-4500
Fax: (212) 335-4501

*Attorneys for Defendant Arab Bank plc*

# TABLE OF CONTENTS

Page

ARGUMENT ................................................................................................................... 1

I. THE COMPLAINTS MUST BE DISMISSED FOR FAILURE TO STATE A
   CLAIM UPON WHICH RELIEF CAN BE GRANTED. ................................................ 2

   A. Seventy-Two Plaintiffs Fail Plausibly To Allege Standing. ................................. 2

      1. Alien Plaintiffs Do Not Have Standing To Bring ATA Claims On
         The Facts Of This Case. ............................................................................ 2

      2. Seventy-Two Plaintiffs Fail To Assert Sufficient Factual Matter To
         Support Their Standing To Bring Claims For Emotional Distress. ........... 4

   B. Plaintiffs Fail To State A Claim For Primary Liability Under § 2333(a). ............ 5

      1. Plaintiffs Fail Plausibly To Allege That The Bank Committed An
         Act Of "International Terrorism." .............................................................. 5

      2. Plaintiffs Fail Plausibly To Allege That The Bank Was A Factual
         Or Proximate Cause Of Their Injuries. ...................................................... 7

   C. Plaintiffs Fail Adequately To Allege The Elements Of Their Aiding And
      Abetting Claims. .................................................................................................... 9

II. THE COMPLAINTS FAIL TO PROVIDE A SUFFICIENT BASIS FOR
    EXERCISING SPECIFIC JURISDICTION. .................................................................. 10

CONCLUSION ............................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bank of America Corp. v. City of Miami*,
 137 S. Ct. 1296 (2017)...................................................................................................7

*Beer v. Islamic Rep. of Iran*,
 574 F. Supp. 2d 1 (D.D.C. 2008) ....................................................................................4

*Boim v. Holy Land Found. for Relief and Dev.*,
 549 F.3d 685 (7th Cir. 2008) .......................................................................................2, 6

*Brill v. Chevron Corp.*,
 No. 15-CV-04916, 2018 WL 3861659 (N.D. Cal. Aug. 14, 2018) ..............................9

*Burrage v. United States*,
 134 S. Ct. 881 (2014).......................................................................................................3

*Charles Schwab Corp. v. Bank of Am. Corp.*,
 883 F.3d 68 (2d Cir. 2018)............................................................................................10

*Corley v. United States*,
 556 U.S. 303 (2009).........................................................................................................5

*Doe v. City of New York*,
 No. 18-CV-670, 2018 WL 3824133 (E.D.N.Y. Aug. 9, 2018)....................................4

*Fields v. Twitter, Inc.*,
 881 F.3d 739 (9th Cir. 2018) .......................................................................................1, 7

*Freeman v. HSBC Holdings PLC*,
 No. 14-CV-6601, 2018 WL 3616845 (E.D.N.Y. July 27, 2018)...............................10

*Gonzalez v. Google, Inc.*,
 No. 16-CV-03282, 2018 WL 3872781 (N.D. Cal. Aug. 15, 2018) .............................1

*Estate of Heiser v. Islamic Rep. of Iran*,
 466 F. Supp. 2d 229 (D.D.C. 2006) ................................................................................4

*Jesner v. Arab Bank, PLC*,
 138 S. Ct. 1386 (2018)................................................................................................ 2-3

*Knox v. Palestinian Liberation Org.*,
 442 F. Supp. 2d 62 (S.D.N.Y. 2006)..............................................................................4

*Licci v. Lebanese Canadian Bank, SAL*,
 20 N.Y.3d 327 (2012) ...............................................................................................2, 10

# TABLE OF AUTHORITIES

Page(s)

*Linde v. Arab Bank, PLC*,
   384 F. Supp. 2d 571 (E.D.N.Y. 2005) ...................................................................................3

*Linde v. Arab Bank, PLC*,
   882 F.3d 314 (2d Cir. 2018)................................................................................... *passim*

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)................................................................................................................4

*Morris v. Khadr*,
   415 F. Supp. 2d 1323 (D. Utah 2006)......................................................................................3

*Owens v. BNP Paribas, S.A.*,
   897 F.3d 266 (D.C. Cir. 2018) ................................................................................................1

*Paroline v. United States*,
   134 S. Ct. 1710 (2014) ........................................................................................................ 8-9

*Pennie v. Twitter, Inc.*,
   281 F. Supp. 3d 874 (N.D. Cal. 2017) ....................................................................................1

*Rothstein v. UBS, AG*,
   708 F.3d 82 (2d Cir. 2013).................................................................................................4, 7

*Saperstein v. Palestinian Auth.*,
   No. 1:04-CV-20225, 2006 WL 3804718 (S.D. Fl. Dec. 22, 2006)..........................................3

*Siegel v. HSBC Bank USA, N.A.*,
   No. 17-CV-6593, 2018 WL 3611967 (S.D.N.Y. July 27, 2018) ......................................... 2-3

*Estates of Ungar ex rel. Strachman v. Palestinian Auth.*,
   304 F. Supp. 2d 232 (D.R.I. 2004)..........................................................................................3

*Strauss v. Credit Lyonnais, S.A.*,
   175 F. Supp. 3d 3 (E.D.N.Y. 2016) ......................................................................................10

*Stutts v. DeDietrich Grp.*,
   No. 03-CV-4058, 2006 WL 1867060 (E.D.N.Y. June 30, 2006) ............................................6

*In re Terrorist Attacks on Sept. 11, 2001*,
   714 F.3d 118 (2d Cir. 2013)....................................................................................................1

*In re Terrorist Attacks on Sept. 11, 2001*,
   295 F. Supp. 3d 416 (S.D.N.Y. 2018)................................................................................8, 10

*United States v. Dauray*,
   215 F.3d 257 (2d Cir. 2000)....................................................................................................6

# TABLE OF AUTHORITIES

Page(s)

*Weiss v. Nat'l Westminster Bank, PLC*,
   453 F. Supp. 2d 609 (E.D.N.Y. 2006) ................................................................................3

*Wultz v. Islamic Republic of Iran*,
   755 F. Supp. 2d 1 (D.D.C. 2010) .....................................................................................10

**Statutes**

18 U.S.C. §1961 ..............................................................................................................................8

18 U.S.C. § 1964 .............................................................................................................................8

18 U.S.C. § 2332b ...........................................................................................................................8

18 U.S.C. § 2333 ..................................................................................................................... *passim*

18 U.S.C. § 2331 ......................................................................................................................... 6-7

18 U.S.C. § 2339A ..........................................................................................................................8

18 U.S.C. § 2339B ..........................................................................................................................8

**Other Authorities**

Black's Law Dictionary (10th ed. 2014) .........................................................................................6

Fed. R. Civ. P. 12(b)(2) .................................................................................................................10

Fed. R. Civ. P. 12(b)(6) .................................................................................................................10

RESTATEMENT (SECOND) OF TORTS § 46 (1965) ...........................................................................4

# ARGUMENT

In their opposition, Plaintiffs point to inapposite authority and rely on conclusory allegations to oppose the Bank's motion. The deficiencies in Plaintiffs' arguments underscore why the Complaints must be dismissed.

Following the enactment of JASTA, the Second Circuit and other courts have provided clear guidance on what a plaintiff must plead (and prove) in order to state a claim for primary liability (under § 2333(a)) and secondary liability (under § 2333(d)(2)). Applying these guidelines, the Complaints fail for <u>at least</u> three reasons:

1. allegations that the Bank provided financial services to terrorists (or to their relatives), even if done knowingly, are not sufficient to satisfy the "international terrorism" element of a primary liability claim;[1]

2. the Complaints fail plausibly to allege that the Bank's financial services were a direct cause of the 14 Attacks, as required (at a minimum) to plead the causation element of a primary liability claim;[2] and

3. none of the Bank's alleged financial services, including its processing of funds transfers initiated by the Saudi Committee, support a reasonable inference that the Bank was generally aware that it was "playing a role" in an FTO's commission of acts of international terrorism, and "knowingly and substantially" assisted an FTO in committing such acts, as required to plead a secondary liability claim.[3]

---

[1] *See Linde v. Arab Bank, PLC*, 882 F.3d 314, 326 (2d Cir. 2018) ("*Linde III*") ("[P]roviding financial services to a known terrorist organization may afford material support to the organization even if the services do not involve violence or endanger life and do not manifest the apparent intent [to intimidate or coerce civilians or governments].").

[2] *Linde III*, 882 F.3d at 327 ("[T]he mere provision of 'routine banking services to organizations and individuals said to be affiliated with' terrorists does not necessarily establish causation." (citing *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 124 (2d Cir. 2013)); *Fields v. Twitter, Inc.*, 881 F.3d 739, 750 (9th Cir. 2018) (affirming dismissal of § 2333(a) claims against social media provider absent plausible allegations that defendant's account services were a direct cause of ISIS attack at issue); *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 276-77 (D.C. Cir. 2018) (dismissing § 2333(a) claims against bank for failure to allege that financial services at issue were used in attacks that caused plaintiffs' injuries); *Gonzalez v. Google, Inc.*, No. 16-CV-03282, 2018 WL 3872781, at *13-16 (N.D. Cal. Aug. 15, 2018) (dismissing claims against social media companies that provided accounts and advertising revenue to ISIS absent plausible allegations that those services and revenue were direct cause of ISIS attack at issue); *Pennie v. Twitter, Inc.*, 281 F. Supp. 3d 874, 886-888 (N.D. Cal. 2017) (dismissing § 2333(a) claims absent plausible allegations that defendant's social media accounts and messaging services led directly to murders at issue).

[3] *Linde III*, 882 F.3d at 329-31 (To state a § 2333(d)(2) claim, Plaintiffs must plausibly allege that, in providing financial services, the Bank was generally aware it was "playing a 'role' in [an FTO's] violent or life-endangering activities" and "knowingly and substantially assisted" an FTO in its "murderous activities."); *Siegel v. HSBC Bank USA, N.A.*, No. 17-CV-6593, 2018 WL 3611967, at *5 (S.D.N.Y. July 27, 2018) (dismissing § 2333(d)(2) claims

Unable to square the Complaints with the demands of this recent body of ATA case law, Plaintiffs seek shelter under an expansive reading of *Boim v. Holy Land Found. for Relief and Dev.*, 549 F.3d 685 (7th Cir. 2008) ("*Boim III*")—a case decided years prior to JASTA. But the Second Circuit has <u>expressly declined</u> to adopt *Boim III*, and has otherwise distinguished that decision on its facts from cases, like these, involving financial services. *Linde III*, 882 F.3d at 327.

The Complaints must also be dismissed for failure to establish personal jurisdiction. The mechanical processing of electronic funds transfers through ABNY is not plausibly alleged to have "caused, enabled and facilitated [the 14 Attacks]," as required to bring this case within the jurisdictional ambit of *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 332 (2012).

## I. THE COMPLAINTS MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### A. Seventy-Two Plaintiffs Fail Plausibly To Allege Standing.

Nowhere is § 2333 more clear than in defining who may sue: (1) "[a]ny national of the United States injured … by reason of an act of international terrorism," (2) "<u>or</u> his or her estate, survivors, or heirs[.]" 18 U.S.C. § 2333(a) (emphasis supplied).

#### 1. Alien Plaintiffs Do Not Have Standing To Bring ATA Claims On The Facts Of This Case.

The Bank argues (at Br. 9-10) that six alien Plaintiffs ("the Brauns") lack standing to sue under § 2333. In response, Plaintiffs (at Opp'n 19-20) cite inapposite authority and posit that legislative history compels this Court to grant standing to the Brauns and untold numbers of similarly-situated aliens.[4] This request to "bypass Congress' express limitations on liability under

---

against bank that knowingly provided financial services to state sponsor of terrorism for failure plausibly to plead that bank "w[as] generally aware that [it was] playing a role" in terrorist attacks that caused plaintiffs' injuries).

[4]  The Brauns are relatives of Steven Braun, a U.S. national who sustained shrapnel injuries as a result of a terrorist attack in the West Bank. Br. 9. Steven Braun is not a party to this action; he sued the Bank <u>13 years ago</u> in *Coulter v. Arab Bank, PLC*, No. 1:05-CV-00365 (E.D.N.Y. filed Jan. 21, 2005), and subsequently settled.

the [ATA]" must be rejected. *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1405 (2018).

As the Bank demonstrated (at Br. 9-10), the Brauns do not have standing under the plain language of § 2333(a): they are aliens (not U.S. nationals) and Steven Braun has no "estate, survivors, or heirs" because he is alive. *Saperstein v. Palestinian Auth.*, No. 1:04-CV-20225, 2006 WL 3804718, at *3 n.3 (S.D. Fl. Dec. 22, 2006) (concluding that § 2333(a)'s disjunctive phrasing, providing standing to "either [a national of the United States]" or "his estate, survivors, or heirs," required dismissal of claims brought by alien-relatives of a U.S. national injured (but not killed) in a terrorist attack (citing *Morris v. Khadr*, 415 F. Supp. 2d 1323, 1337 (D. Utah 2006)).[5]

Plaintiffs reliance (at Opp'n 19) on *Linde v. Arab Bank, PLC,* 384 F. Supp. 2d 571, 589 (E.D.N.Y. 2005) ("*Linde I*") is misplaced. *Linde I* addressed whether <u>U.S. nationals</u> have standing to bring claims under § 2333(a) for their "nonphysical injuries." 384 F. Supp. 2d at 589. That issue is not in dispute; while "national[s] of the United States" doubtless have an express right of action under the plain language of § 2333(a), <u>aliens</u>, like the Brauns, do not.[6]

Plaintiffs also argue (at Opp'n 20) that permitting the Brauns to sue under § 2333(a) vindicates Congressional intent and furthers public policy goals. But as the Bank noted (at Br. 7-8), "legislative history cannot alter [§ 2333(a)'s] plain text," *Linde III*, 97 F. Supp. 3d at 326, and it is the role of the courts "to apply the statute as it is written—even if … some other approach might 'accord with good policy.'" *Burrage v. United States*, 134 S. Ct. 881, 889 (2014) (citation omitted); *see also Linde III,* 882 F.3d at 326 (citing *Connecticut Nat'l Bank v. Germain*, 503 U.S.

---

[5] The living do not have "heirs" or "survivors." *Morris*, 415 F. Supp. 2d at 1337 (noting that "[a]n 'heir' is a 'person who, under the laws of intestacy, is entitled to receive an intestate decedent's property," while "[a] 'survivor' is '[o]ne who outlives another.'" (citations omitted)).

[6] Plaintiffs' other citations (at Opp'n 20) are equally unavailing. In *Weiss v. Nat'l Westminster Bank, PLC*, 453 F. Supp. 2d 609, 620 (E.D.N.Y. 2006), the court acknowledged that "U.S. nationals or the heirs or survivors of U.S. nationals" have standing to sue under § 2333(a), and relied on *Estates of Ungar ex rel. Strachman v. Palestinian Auth.*, 304 F. Supp. 2d 232, 264 (D.R.I. 2004), which held that "the term 'survivors' as used in § 2333(a) includes the parents and siblings of a U.S. national <u>killed</u> by an act of international terrorism." (Emphasis supplied).

249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.")).

**2. Seventy-Two Plaintiffs Fail To Assert Sufficient Factual Matter To Support Their Standing To Bring Claims For Emotional Distress.**

The Bank argues (at Br. 10-11) that 72 Plaintiffs fail plausibly to plead an "injury in fact" that is "concrete and particularized" and fairly traceable to the Bank's conduct. In response, Plaintiffs (at Opp'n 18-19) cite inapposite authority, argue that RESTATEMENT (SECOND) OF TORTS § 46 (1965) ("RESTATEMENT § 46") is irrelevant, and claim their burden is to "allege very little."[7]

Plaintiffs' argument (at Opp'n 18-19) rests on the flawed assumption that an absence of a requirement to allege their presence at one of the 14 Attacks equates with an absence of an obligation to assert <u>any</u> factual matter to support their claims of emotional distress. RESTATEMENT § 46, cmts. j-l (absent presence, plaintiff claiming emotional distress based on injury to another must plead, *inter alia*, contemporaneous knowledge, and some information about the duration, intensity, and/or physical manifestations of their injury). None of Plaintiffs' authorities (at Opp'n 18-19) help their case: (1) *Estate of Heiser v. Islamic Rep. of Iran*, 466 F. Supp. 2d 229, 326 (D.D.C. 2006) and *Beer v. Islamic Rep. of Iran*, 574 F. Supp. 2d 1, 12 (D.D.C. 2008) simply held that presence is not required (an issue not disputed here); (2) *Knox v. Palestinian Liberation Org.*, 442 F. Supp. 2d 62, 78 (S.D.N.Y. 2006) involved claims of survivors and heirs, and even there the court considered "the duration of the claimant's mental anguish in excess of that which would have been experienced following the decedent's natural death"; and (3) *Doe v. City of New York*, No. 18-CV-670, 2018 WL 3824133, at *13 (E.D.N.Y. Aug. 9, 2018) involved claims of a plaintiff who suffered a direct injury that allegedly caused "fright, anguish, shock, nervousness, and anxiety."

---

[7] Plaintiffs argue (at Opp'n 18-19) that *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) is inapplicable here. They are wrong. *Lujan* "<u>established the irreducible constitutional minimum of standing</u>," 504 U.S. at 560, and it applies with equal force to ATA claims. *See Rothstein v. UBS, AG*, 708 F.3d 82, 91-92 (2d Cir. 2013).

Plaintiffs waited between 14 and 17 years after the 14 Attacks to sue; as the Bank demonstrated (at Br. 6-7, 10-12 (citing, *inter alia*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), Plaintiffs must support their claims with more than a mere "label" of "severe mental anguish and extreme emotional pain and suffering." They are required to plead facts, not mere conclusions.[8]

### B. Plaintiffs Fail To State A Claim For Primary Liability Under § 2333(a).

Section 2333(a) "afford[s] civil relief only against the principals perpetrating acts of international terrorism. It provide[s] no civil action against secondary actors who, while not committing international terrorist acts themselves, facilitated such acts by others." *Linde III*, 882 F.3d 314, 319-20 (2d Cir. 2018) (emphasis supplied). But Plaintiffs have not sued the "principals" responsible for committing the 14 Attacks. They have sued the Bank under § 2333(a) for allegedly facilitating the 14 Attacks through its provision of financial services—a theory directly at odds with the Second Circuit's reading of § 2333(a), *Linde III*, 882 F.3d at 319-20, and one that, if accepted, would render § 2333(d)(2) superfluous.[9]

#### 1. Plaintiffs Fail Plausibly To Allege That The Bank Committed An Act Of "International Terrorism."

The Bank argues (at Br. 13-15) that Plaintiffs failed plausibly to allege that it committed "international terrorism." In response, Plaintiffs contend (at Opp'n 9-11) that this question must be decided by a factfinder and, even if that were not the case, that their pleading is adequate under the reasoning of *Boim III*. Plaintiffs are wrong on both counts.

---

[8] Plaintiffs' suggestion (at Opp'n 2 n.3) that their delay is somehow attributable to the 2014 settlement of the *Linde* ATA Actions is facially absurd; the *Linde* ATA Actions were initiated in 2004, and at no time between 2004 and 2014 did these Plaintiffs join their relatives in those suits.

[9] *Corley v. United States*, 556 U.S. 303, 314 (2009) (a "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous").

Plaintiffs fail to rebut the Bank's argument (at Br. 7-8, 13-14) that financial services are not "violent acts or acts dangerous to human life," as those terms are ordinarily understood.[10] *United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000) (when engaged in interpreting a statute, courts "consider the ordinary, common-sense meaning of the words"); *see also* Black's Law Dictionary at 447, 1802 (10th ed. 2014) (defining "violent" as "of, relating to, or characterized by strong physical force; resulting from extreme or intense force; [or] vehemently or passionately threatening," and "dangerous" as "likely to cause serious bodily harm"). Thus, while ideologically motivated assassinations, kidnappings, and acts of mass destruction—activities listed in, *inter alia*, § 2331(1)(B)(iii) and routinely understood to be terrorism—are "violent acts or acts dangerous to human life," banking services, even in violation of sanctions regimes, clearly are not.[11]

Plaintiffs' reliance (at Opp'n 9-10) on *Boim III* is misplaced. *Boim III* never addressed the plain meaning of the statutory phrase "violent acts or acts dangerous to human life," and its notorious "loaded gun" analogy is inapt, since guns (unlike financial services) are inherently dangerous. Plaintiffs also ignore the fact that the Second Circuit <u>expressly declined</u> to adopt *Boim III* (including its holding that <u>funding</u> an FTO is itself "international terrorism"), and otherwise distinguished it on its facts from cases involving <u>financial services</u>. *Linde III*, 882 F.3d at 327.[12]

---

[10] Plaintiffs claim (at Opp'n 9-10) that the Bank "engaged in extensive electronic funds transfers," "[o]pen[ed] … accounts," "obtain[ed] signature cards and identifications," and provided "personalized account transactions."

[11] Plaintiffs (at Opp'n 11 n.10) attempt to distinguish *Stutts v. DeDietrich Grp.*, No. 03-CV-4058, 2006 WL 1867060 (E.D.N.Y. June 30, 2006), on the grounds that it "did not even involve a terrorist attack." To the contrary, the *Stutts*' plaintiffs alleged that bank defendants committed international terrorism by providing financial services that facilitated chemical attacks against civilians; and, even if that were not the case, a changed fact pattern would not disturb *Stutts*' conclusion that <u>banking services are not "violent acts or acts dangerous to human life" as those terms are ordinarily understood</u>. 2006 WL 1867060, at *2-4.

[12] Plaintiffs erroneously suggest (at Opp'n 10-11) that *Linde III* precludes this Court from finding that the Complaints fail plausibly to allege that the Bank acted with an apparent intent to "intimidate or coerce civilians." In fact, *Linde III* held that satisfaction of each element of § 2331(1)(A)-(C)'s four-part part definition of "international terrorism" must be pled and proven under § 2333(a). *Linde III*, 882 F.3d at 326.

### 2. Plaintiffs Fail Plausibly To Allege That The Bank Was A Factual Or Proximate Cause Of Their Injuries.

The Bank argues (at Br. 15-18) that Plaintiffs' § 2333(a) claims must be dismissed for failure plausibly to plead that the banking services at issue were the but-for and direct cause of the 14 Attacks. In response, Plaintiffs contend (at Opp'n 12-18) that: (1) the Bank's reliance on *Fields v. Twitter*, 881 F.3d 739 (9th Cir. 2018) is misplaced because that case was "wrongly decided" and conflicts with *Rothstein*; (2) the "well understood meaning" of the statutory phrase "by reason of" does not apply to § 2333(a) claims because of the "nature of the ATA cause of action;" and (3) imposing relaxed causation standards accords with Congressional intent.

First, *Fields* is consistent with this Circuit's holding in *Rothstein*, not in conflict with it. As the Bank explained (at Br. 15-17), both courts interpreted § 2333(a)'s "by reason of" language consistent with its "well understood meaning" across multiple statutes to require a showing of but-for and direct causation, and both courts relied on the same line of Supreme Court authority in reaching that conclusion. *Fields*, 881 F.3d at 744 (citing, *inter alia*, *Holmes v. Sec. Inv'r Prot. Corp.*, 503, U.S. 258, 268 (1992)); *Rothstein*, 708 F.3d at 95 (same). Plaintiffs' further claim that *Rothstein* departed from the causation standards imposed by *Holmes* and its progeny merely repeats the error made by the plaintiffs in *Fields*—conflating *Rothstein*'s discussion of "the traceability requirement of Article III standing," with the more demanding causation standards mandated by § 2333(a)'s "by reason of" statutory language. *Fields*, 881 F.3d at 746-47 (citing *Rothstein*, 708 F.3d at 91). At a minimum, these cases require Plaintiffs plausibly to allege that the Bank's financial services were a direct cause of the 14 Attacks—a showing that they have not made. *See* Br. 15-17 & Appendices B-D; *supra* n.2; *Bank of America Corp. v. City of Miami*, 137 S. Ct. 1296, 1306 (2017) (federal tort statutes "require" "'some direct relation between the injury asserted and the injurious conduct alleged'" (citation omitted)).

Second, Plaintiffs argue (at Opp'n 17) that the civil remedies in the RICO Act and the ATA address different injuries, such that interpreting them consistently to require but-for and direct causation is contrary to Congressional intent and the "nature of the ATA cause of action." This argument not only violates the rules of statutory interpretation discussed above, it ignores reality: <u>violations of the ATA's material support provisions (§§ 2339A-B)—the same allegations at issue here—are predicate offenses under RICO, for which civil RICO claims may also be brought, and the same well-established but-for and direct causation requirements would doubtless apply</u>.[13]

Third, Plaintiffs (at Opp'n 12-13) argue that a departure from the requirements of but-for and direct causation is warranted because of the "multi-cause exception set forth in *Paroline v. United States*," 134 S. Ct. 1710 (2014).[14] *Paroline* stands alone among the Supreme Court's cases and allows an unusual causation theory for an unusual set of facts.[15] Whatever the merit of *Paroline*'s causal theory within the "context of criminal restitution," *Paroline* unequivocally rejects the remedy Plaintiffs seek here: <u>100% recovery (trebled) from the Bank</u>. Even in *Paroline*, the Court limited the defendant's liability to his apportioned share of the injury and refused to impose joint and several liability because the defendant had "no legal or practical venue for seeking contribution." 572 U.S. at 1725-26. Such an approach, the Court warned "is so severe it might

---

[13] *See* 18 U.S.C. §§ 1964(c), 1961(1) ("racketeering activity" includes "any act that is indictable under any provision listed in section 2332b(g)(5)(B)"); 18 U.S.C. § 2332b(g)(5)(B) (a "federal crime of terrorism" includes violations of, *inter alia*, 18 U.S.C. §§ 2339A-B). With regard to Plaintiffs' other claims, as repeatedly noted (*e.g.*, Br. 7-8), Congressional "intent" is not relevant to interpreting unambiguous statutes, nor do Congressional findings "have any binding legal effect." *In re Terrorist Attacks on Sept. 11, 2001*, 295 F. Supp. 3d 416, 428 (S.D.N.Y. 2018).

[14] Plaintiffs' assertion (at Opp'n 12-13) that this case involves a "multi-causal tort" is wrong. If Hamas, AAMB, and the PLO simultaneously bomb the same building, perhaps the victim can sue all three, because, as in the classic hypothetical in which multiple arsonists' fires combine to destroy a plaintiff's house, each is an independently sufficient cause of the plaintiff's injuries. But nothing in the arson hypothetical allows the victim to sue every gas station where the arsonists purchased the gasoline they used to ignite the fire.

[15] There, the Supreme Court held that users of child pornography were required to pay restitution to those portrayed in the pornography for the users' apportioned share of the harm, notwithstanding the "<u>atypical</u>" causal process by which the ongoing distribution of the pornography harms the victims. *Paroline*, 572 U.S. at 1722.

raise questions under the Excessive Fines Clause[.]" *Id.* But that would be precisely the situation here if the Court applied the causal theory of *Paroline* absent the Bank's right to seek contribution.

## C. Plaintiffs Fail Adequately To Allege The Elements Of Their Aiding And Abetting Claims.

The parties dispute whether Plaintiffs plausibly allege several elements of their § 2333(d)(2) claims, including: (1) whether, "in providing [financial] services, the [B]ank was 'generally aware' that it was thereby playing a 'role' in [an FTO's] violent or life endangering activities;" and (2) whether, in providing financial services, the Bank "knowingly and substantially assist[ed]" the "murderous activities" of an FTO. *Linde III*, 882 F.3d at 329-30.

Plaintiffs allege that the Bank provided financial services to numerous "front" charities and to the Saudi Committee, a charitable arm of the Kingdom of Saudi Arabia. They further assert that these organizations—including Hamas itself (*see, e.g., Miller* FAC ¶ 325)—were engaged in humanitarian activities, in addition to allegedly facilitating terrorist attacks. But allegations of the provision of financial services to parties also engaged in humanitarian activities is insufficient to meet Plaintiffs' burden of proving that the Bank was "generally aware" that it was "playing a role" in committing FTO terrorism. *Supra* n.3. When read most favorably to Plaintiffs, at most these allegations suggest that "[the Bank] should have known that it was contributing to terrorism and chose to ignore the possible consequences."[16] And that is not enough. *Id.*; *supra* n.3.

Plaintiffs (at Opp'n 7-8) attempt to equate the conduct at issue here to that which compelled the *Halberstam* court to take the extraordinary step of imposing secondary liability on the facts of that case (involving a <u>clandestine, years-long, armed robbery, gold and precious metals smelting, tax evading, and money laundering criminal partnership run out of a shared home that had nothing</u>

---

[16] *Brill v. Chevron Corp.*, No. 15-CV-04916, 2018 WL 3861659, at *3 (N.D. Cal. Aug. 14, 2018) (dismissing § 2333(d)(2) claims brought by Israeli terror victims against Chevron for making payments to Saddam Hussein's Iraqi regime in violation of sanctions, and when that regime was known to be supporting terrorist attacks against Israel).

other than a criminal purpose). This analogy strains credulity. As the Bank has detailed (at Br. 20-21 & Appendices B-D), a fair reading of *Halberstam* compels the conclusion that Plaintiffs fail plausibly to allege that the Bank "knowingly and substantially" assisted FTO terrorism.

## II. THE COMPLAINTS FAIL TO PROVIDE A SUFFICIENT BASIS FOR EXERCISING SPECIFIC JURISDICTION.

The Bank has demonstrated (at Br. 21-25) that the Complaints should be dismissed for lack of personal jurisdiction, and Plaintiffs fail (at Opp'n 21-25) to meaningfully rebut that argument for at least three reasons: (1) they have failed to point to any plausible allegation that the funds mechanically processed through ABNY "caused, enabled and facilitated" the 14 Attacks and were processed with the "shared goals" of the terrorists who committed those attacks (*see* Br. 22-25; *Licci*, 20 N.Y.3d at 331-41); (2) the congressional findings they cite "do not have any binding legal effect" and are not relevant here (*In re Terrorist Attacks on Sept. 11, 2001*, 295 F. Supp. 3d at 428); and (3) their argument in support of pendent jurisdiction over AAMB-related claims is fatally flawed because this Circuit only permits such jurisdiction to be exercised over state claims (*see, e.g., Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 88 (2d Cir. 2018); *Strauss v. Credit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 32 (E.D.N.Y. 2016)).[17]

### CONCLUSION

For the reasons set forth herein and in the Bank's moving papers, the Complaints should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6).

Dated: November 19, 2018                           Respectfully submitted,

                                                                        **DLA Piper LLP (US)**

                                                                  By:    /s/ *Jonathan D. Siegfried*

---

[17] Plaintiffs cite *Freeman v. HSBC Holdings PLC*, No. 14-CV-6601, 2018 WL 3616845 (E.D.N.Y. July 27, 2018)—an outlier Report & Recommendation (not yet adopted) that has no precedential value and that misapplies pendent jurisdiction in reliance on *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1 (D.D.C. 2010), which exercised such jurisdiction over Israeli law claims.

|   |   |
|---|---|
|   | Jonathan D. Siegfried<br>Douglas W. Mateyaschuk II<br>1251 Avenue of the Americas<br>jonathan.siegfried@dlapiper.com<br>douglas.mateyaschuk@dlapiper.com<br>New York, NY 10020-1104<br>(212) 335-4500<br><br>*Counsel for Arab Bank plc* |
| Of Counsel:<br>Rana Bahri |   |