

DLA Piper LLP (US)
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
www.dlapiper.com

Jonathan Siegfried
jonathan.siegfried@dlapiper.com
T   212.335.4925
F   212.884.8477

September 13, 2019

**BY ECF**

The Honorable Peggy Kuo
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   Re: *Miller, et al. v. Arab Bank, PLC,* No. 18-cv-2192 (BMC) (PK)
      *Pam, et al. v. Arab Bank, PLC*, No. 18-cv-4679 (BMC) (PK)

Dear Magistrate Judge Kuo:

  We represent Arab Bank, plc (the "Bank") in the above-referenced actions. We write to request the assistance of the Court so that the Bank can move forward, without delay or unnecessary motion practice, to obtain the requisite foreign approvals for the production of documents requested by Plaintiffs.

  On July 22, 2019, the parties served their respective discovery requests. On August 23, 2019, the Bank served its Responses and Objections ("Responses") to Plaintiffs' First and Second Requests for Documents (the "Requests"). As we represented to the Court at the June 18, 2019 conference, in its Responses the Bank identified by Bates numbers those documents responsive to Plaintiffs' Requests that had already been produced in *Linde v. Arab Bank, PLC*, No. 04-cv-02799 (E.D.N.Y.) and stated that it would continue to search for, and produce on a rolling basis, non-privileged documents responsive to those Requests. With respect to Requests subject to the bank secrecy laws of foreign jurisdictions, the Bank requested that "Plaintiffs make a good faith effort to narrow these Requests to be proportional to the allegations in these cases," so that the Bank could promptly seek customer consents and/or the approval of foreign courts and regulators for their production. Notwithstanding a meet and confer on September 10, 2019 and subsequent conversations, Plaintiffs are unwilling to narrow their Requests, which currently seek bank records and all transactions over a 6-year period for 677 individuals and entities, regardless of whether they are referred to in the Complaints or alleged to be involved in any way in the specific attacks at issue here or terrorism generally.[1]

---

[1] While the Bank acknowledges that discovery need not be limited to individuals or entities identified in the Complaints, it is entitled to understand—as would any foreign regulator being asked to waive bank secrecy—how or why private banking information relating to such individuals or entities is relevant to the claims at issue here. To date, Plaintiffs have offered only a generic explanation that they allege that the person or entity is somehow affiliated with HAMAS or some other foreign terrorist organization, which, even if true, would not support a claim for civil liability



The Honorable Peggy Kuo
9-13-2019
Page Two

      In order to move forward without unnecessary delay or motion practice, the Bank respectfully requests that the Court order a discovery conference at its earliest convenience to resolve the parties' disputes as to scope so that the Court can issue a production order identifying the documents for production. The Bank can then seek to obtain the appropriate customer consents or waivers from foreign authorities based upon that production order. This accords with the process implemented in *Linde* by Magistrate Judge Pohorelsky, who deferred ruling on the bank secrecy objections pending the effort of the Bank to obtain customer consents and the rulings of the foreign regulators. *See, e.g.*, July 27, 2005 Order at 3, Dkt. No. 81 ("The scope of information and materials identified in requests 2 through 10 . . . is appropriate for discovery and is to be produced. . . . The parties shall commence steps immediately to obtain the necessary permission from foreign regulatory authorities for the production of that information. . . ."); March 3, 2006 Order at 6, Dkt. No. 160 ("Nothing in this Order constitutes a ruling concerning the laws, rules and regulations applicable in other countries that limit the disclosure of documents . . . or the appropriate remedies, if any, for the failure or refusal by the defendant to produce documents because of bank secrecy laws.")

      Judge Pohorelsky's approach made good common sense. Given the Bank's stated willingness to seek foreign approvals and consents, the Court saw no need for a motion to compel the Bank to do what it already committed itself to do, or to address bank secrecy and potentially overrule a foreign country's bank secrecy laws (given the issue of comity) without first giving the foreign regulators the opportunity to address the issue. In fact, at the Bank's request, the Government of Lebanon agreed to waive its bank secrecy law with respect to the account requested by the *Linde* Plaintiffs, and the Bank obtained the voluntary consent of the Saudi Committee to the production of documents relating to its transactions, thereby obviating the need for a motion to compel with respect to those documents or to rule on the bank secrecy laws of Lebanon.

      So too here, the Bank is committed to seeking the necessary foreign approvals and consents. In fact, the Bank is confident that the production of the documents requested by Plaintiffs would be to its benefit, undermining Plaintiffs' allegations that the Bank itself engaged in an act of terrorism or engaged in financial transactions with any of its customers that aided and abetted the perpetrators of the terror attacks that resulted in their injuries. Its concern is that the Requests as drafted are disproportionate to the claims of the cases, sweeping in the personal bank records of thousands (if one includes beneficiaries of Saudi Committee payments) of individuals and entities with no clear discernable relevance to the cases or terrorism, making it less likely that foreign regulators would waive bank secrecy or that the Bank could physically obtain that number of consents. That is why it is essential that the Court first address the scope of Plaintiffs' Requests so that they are proportionate to these cases and thus more likely to secure the requisite foreign approvals and consents. The Bank's success in obtaining foreign regulatory waivers and customer

---

under the Antiterrorism Act of 1990, 18 U.S.C. § 2333, or justify what would otherwise fit the classic definition of a fishing expedition. *See Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 222–26 (2d Cir. 2019).



The Honorable Peggy Kuo
9-13-2019
Page Three

consents will necessarily affect both the subsequent need and scope of any motion to compel, as well as the Court's need, if any, to address bank secrecy laws and for which countries.

At the conference, the Bank would also ask the Court to address issues of process. Although Judge Pohorelsky's July 27, 2005 order in *Linde* directed "the parties," not just the Bank, to obtain the necessary approvals, Plaintiffs rejected the Bank's requests that they become involved and then subsequently criticized the Bank's efforts, accusing it of acting in bad faith. In order to avoid recurrence of that scenario, the Bank would like to discuss a cooperative process with the Court so that at least the Court, if not Plaintiffs, will have no reason to question that the actions taken by the Bank to secure the approvals and consents were undertaken in the utmost good faith.

Accordingly, the Bank respectfully requests that the Court modify its July 8, 2019 scheduling orders so that, in lieu of filing motions to compel or for a protective order related to bank secrecy on September 25, 2019, the parties be directed to appear for a conference on that date (or as soon as convenient for the Court). The purpose of that conference would be to address the scope of Plaintiffs' Requests so that the Court may issue a production order to be submitted to foreign courts and regulators authorizing the Bank to produce the documents identified by the Court which are located in their jurisdictions.

We thank the Court for its consideration of this request. Consistent with the scheduling orders, the Bank is not at this time requesting the Court to address Plaintiffs' Responses to the Bank's discovery requests, which the Bank deems deficient, including their objections to producing the medical records and documents in support of their damage claims called for in the Bank's requests. Plaintiffs have requested, the Bank has agreed, and the Court has consented, to give Plaintiffs additional time to respond to the Bank's requests notwithstanding their current objections.

Respectfully submitted,

**DLA Piper LLP (US)**

*/s/ Jonathan D. Siegfried*

Jonathan D. Siegfried

cc:     All Counsel of Record (via ECF)