1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2

3    ------------------------------------X
                                        :
4    AHARON MILLER, *et al.,*           :
                                        :  18-CV-02192 (PK)
5                      Plaintiffs,      :
                                        :
6              v.                       :  225 Cadman Plaza East
                                        :  Brooklyn, New York
7    ARAB BANK, PLC,                    :
                                        :  September 24, 2019
8                      Defendant.       :
     ------------------------------------X
9    PAM, *et al.,*                     :
                                        :
10                     Plaintiffs,      :
                                        :
11             v.                       :  18-CV-04670 (PK)
                                        :
12   ARAB BANK, PLC,                    :
                                        :
13                     Defendants.      :
     ------------------------------------X
14

15        TRANSCRIPT OF CIVIL CAUSE FOR PRE-MOTION CONFERENCE
                  BEFORE THE HONORABLE PEGGY KUO
16                UNITED STATES MAGISTRATE JUDGE

17
     APPEARANCES:
18
     For the Plaintiffs:        GARY OSEN, ESQ.
19                              AARON SCHLANGER, ESQ.
                                ARI UNGAR, ESQ.
20                              Osen, LLC
                                2 University Plaza
21                              Suite #201
                                Hackensack, New Jersey 07601
22
                                PATRICK L. ROCCO, ESQ.
23                              Fleischman Bonner & Rocco, LLP
                                565 Fifth Avenue, Seventh Floor
24                              New York, New York 10017

25


     Proceedings recorded by electronic sound recording, transcript
     produced by transcription service.

```
 1                                                                      2

 2

 3
        APPEARANCES (Continued):
 4
        For the Defendant:          JONATHAN D. SIEGFRIED, ESQ.
 5                                   ANDREW JAY PECK, ESQ.
                                     JESSICA A. MASELLA, ESQ.
 6                                   LANE MCKEE, ESQ.
                                     DLA Piper, LLP
 7                                   1251 Avenue of the Americas
                                     New York, New York 10020
 8
                                     BRETT INGERMAN, ESQ.
 9                                   DLA Piper US, LLP
                                     6225 Smith Avenue
10                                   Baltimore, Maryland 21209

11      Court Transcriber:          RUTH ANN HAGER, C.E.T.**D-641
                                     TypeWrite Word Processing Service
12                                   211 N. Milton Road
                                     Saratoga Springs, New York 12866
13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1    (Proceedings began at 11:38 a.m.)

2              THE CLERK:  The Honorable Magistrate Judge Peggy Kuo

3    presiding.  Civil cause for pre-motion conference, docket

4    number 18-CV-2192, Miller, et al. v. Arab Bank, PLC, and civil

5    cause for pre-motion conference on docket number 18-CV-4670,

6    Pam, et al., v. Arab Bank, PLC.

7              Counsel, please state your name for the record

8    starting with the plaintiffs.

9              MR. OSEN:  Good morning, Your Honor.  Gary Osen,

10   Osen, LLC, for the plaintiffs.

11             MR. UNGAR:  Good morning, Your Honor.  Ari Ungar for

12   the main -- Miller plaintiffs.

13             MR. SCHLANGER:  Good morning.  Aaron Schlanger for

14   the Miller plaintiffs.

15             MR. ROCCO:  Good morning, Your Honor.  Pat Rocco,

16   Fleischman Bonner Rocco, for the plaintiffs as well.

17             THE COURT:  I just want to be sure.  Some of you

18   have said you're only representing the Miller plaintiffs and

19   some of the Pam plaintiffs.  I just want to be sure I know

20   who's representing whom or is it all joint?

21             MR. ROCCO:  Pam plaintiffs would be me, Your Honor.

22             THE COURT:  Okay.

23             MR. OSEN:  And the remaining counsel for Miller

24   plaintiffs.

25             THE COURT:  Okay.  Got it.  All right.

4

1          And the defendants?

2          MR. SIEGFRIED:  Good morning, Your Honor.  Jonathan

3  Siegfried for the defendant Arab Bank.

4          MR. PECK:  Andrew Peck, DLA Piper, for Arab Bank.

5          MR. INGERMAN:  Good morning, Your Honor.  Brett

6  Ingerman for Arab Bank.

7          THE COURT:  And I had a couple of other names,

8  Jessica Masella and Lane McKee.

9          MS. MASELLA:  Good morning, Your Honor.  Jessica

10 Masella for Arab Bank.

11         THE COURT:  Why are you not at counsel table?

12         MR. MCKEE:  Good morning, Your Honor.  Lane McKee

13 for Arab Bank.

14         THE COURT:  Okay.  Are you representing the

15 defendants?  There is no reason for counsel not to be at

16 counsel table, right?  What's the reason for that?  Come join

17 the table.

18         All right.  So I have scheduled this at the request

19 of the parties.  There was a document filed by the defendants

20 at document 53 with a response at 54.  I'll just note at the

21 outset that there's some issue here as to whether there was

22 sufficient consultation between the parties before filing

23 this.  I don't want to get into that, but I do want to remind

24 the parties that you should confer and be clear what you're

25 planning to request of the court before you file the papers.

1    If you're having trouble reaching each other, you should keep

2    trying until you do because it helps me if I know that the

3    parties have already ironed out their differences before they

4    come to me for any remaining differences.

5         All right.  So is it -- Mr. Siegfried, I guess since

6    it's your motion, tell me what's going on here.  I -- it's not

7    entirely clear to me, so you're going to have to explain what

8    exactly you're seeking.

9         MR. SIEGFRIED:  So, Your Honor, the -- as we

10   explained in our letter, the document requests were served on

11   the defendant bank.  The bank within the time frame of those

12   called for in the request did two things.  It reduced all of

13   the documents that it had in its possession, most of which

14   were introduced in <u>Linde</u>.  Certainly all of those relating to

15   the bank secrecy issue.  And we produced those responsibly by

16   category and by actually the Bates numbers so there was no

17   confusion as to which documents responded to which requests.

18        We noted in our response that because of bank

19   secrecy issues and because this is not something that we get

20   to waive, obviously we need either consents of customers or we

21   need consents of foreign authorities that there were a number

22   of requests to seem to us to be both over broad and also not

23   descriptive enough to allow us to intelligently go and seek

24   these consents.  We had a meet-and-confer with the plaintiffs

25   and asked them if they could either narrow their requests or

6

1  explain to us the basis of certain other requests so that we

2  could intelligently proceed and we were referred to the

3  responses -- the written response that all of the names that

4  were identified in the document request were Hamas leaders,

5  operatives or institutions.

6  Let me make clear that if we did not have to seek

7  foreign waivers or, in fact, seeking them, as far as the bank

8  is concerned, we would be happy to pursue literally

9  everything.  We don't think those bank records are going to

10  show or advance their case at all, so this is -- we're

11  actually on the same side of the table in respect of wanting

12  to produce whatever it is that we can produce.  But that's not

13  within our purview, so we need to be able to explain to a

14  foreign court, for example, why is it that we need something.

15  And it -- we were unable to move forward with the

16  plaintiffs on that front and we thought about this because

17  we're also very mindful not only of what happened to the bank

18  in the <u>Linde</u> case, but we're very mindful of the conversation

19  that we had with Your Honor the last time we were here.  We

20  have no desire either to go through unnecessary motion

21  practice, delay anything for even a minute or frankly to be

22  sanctioned or to be accused of dilatory tactics.

23  So we actually went back into the record to take a

24  deeper -- dive back into the history of 2005 and '06.  And one

25  of the things that we saw was that Magistrate Pohorelsky had

1   actually taken what appeared to us to be a very common sense

2   approach, which is to say, look, I don't have to rule right

3   away on whether things are overly broad or get into all of the

4   bank secrecy issues and get into restatement factors.  Let me

5   see whether we can't narrow the request somewhat without

6   necessarily ruling that he's denying other requests as overly

7   broad, but let's see what it is that you need to go out to the

8   foreign regulators with.  And in addition, the other court of

9   what he did has said not -- I'm not ruling on bank secrecy

10   because one of those key factors, as you know, is the weighing

11   of the respective interests.

12         And so particularly when we are talking about the

13   interests of allies of the U.S., such as Jordan and the Middle

14   East, the idea of using some restraint and letting the foreign

15   court or regulators have a first crack at looking at the

16   requests and deciding whether they'll waive really what we

17   think is a very intelligent approach to trying to do that

18   balance.  And in fact, to some extent that worked.  Lebanon

19   waived.  The Saudi Committee as a customer waived.  There were

20   some court decisions that went our way that were reversed on

21   appeal, so it's not a meaningless process and we thought,

22   okay, we don't need to be compelled to do what we are utterly

23   and ready to do, which is go out and get these documents.

24         And when I say we don't need to be compelled, Your

25   Honor, what I mean is, for example, there are a number of

1   entities, so called Hamas leaders, operatives, et cetera, who

2   are identified in the allegations of the complaint.  We don't

3   necessarily agree that they are Hamas leaders and operatives,

4   but we don't -- we don't need at this point to pick that fight

5   or ask the Court to resolve that issue.  What we know is that

6   at least if we go to a foreign authority we can say, look,

7   here, paragraph 322, so and so, paragraph 344.  These are

8   people that they have identified in the complaint.  There is a

9   dis -- and it's not just saying Mr. So and So.  It says Mr. So

10  and So who upon information and belief X, Y and Z.  It gives a

11  foreign court or regulator some context and understanding as

12  to why particularly if the Court were to sign letters rogatory

13  why the Court signed the letters rogatory.  Okay.  Don't have

14  to decide the ultimate issue but just context for the foreign

15  regulate [ph.].

16          But then we came upon requests where, as I said,

17  there was no reference to the individuals in the complaint.

18  Now, that in and of itself needn't be the end of the

19  discussion.  Nobody is suggesting and we have not suggested to

20  plaintiffs that they are simply limited to asking for records

21  of people identified in the complaint, but we said in the

22  meet-and-confer, okay, tell us who these people are.  We have

23  got to explain context.  And the answer was, "Look at our

24  document request.  We say they were operatives and leaders."

25  And in the letter that Mr. Osen wrote to you in his very first

1    footnote, that's what he says.  He says, "We have these 855

2    names.  It's not our fault that the number is that large.

3    They're all Hamas operatives and leaders."

4              So we wrote you, and I apologize, there clearly was

5    some confusion between Mr. Osen and myself because we did have

6    a discussion on the Friday and I thought he had said that he

7    had no objection to our writing, but I think that's a good-

8    faith misunderstanding between the two of us because we did

9    not want to be writing a letter later on in the week closer to

10   deadlines that Your Honor had already sought and then looked

11   like, oh, we're waiting to the last minute to raise an issue.

12   So we wanted to get that issue in front of you.

13             So we were -- the bottom line was we were unable to

14   get an explanation that we thought, unlike the allegations in

15   the complaint, that we could ease -- or more easily take or

16   explain abroad.  And that's what we wanted to try to do

17   without the motion practice.  And --

18             THE COURT:  Well, what is -- what are you looking

19   for?

20             MR. SIEGFRIED:  Okay.

21             THE COURT:  I mean, I -- it's not -- I appreciate

22   that you need information to give to the foreign governments.

23             MR. SIEGFRIED:  Right.

24             THE COURT:  But it's still not clear to me what

25   exactly you're seeking that you're not getting.

10

1           MR. SIEGFRIED:  Okay.

2           THE COURT:  So let's focus on that so that I --

3           MR. SIEGFRIED:  Okay.  That's fine.

4           THE COURT:  -- can move forward.

5           MR. SIEGFRIED:  So if we took -- let me -- let me do

6   it this way.  If we take -- and I thought it might be helpful

7   to try to be a bit more concrete as well.  So in Mr. Osen's

8   letter he talks about the fact that there are 229 of these

9   names for which there are Arab Bank Bates numbers attached to

10  the documents.  So we looked quite specifically at that and

11  here's what we found.

12          Twenty-five of those names are referenced in the

13  complaint.  Again, we're not going to dispute anything about

14  those.  We're going to go and request those.  That's fine.

15  Nineteen do not appear at all in the complaint and again, no

16  explanation as to who they are or why they're there other than

17  their name appears on a bank transfer.  That doesn't -- bank

18  transfer, of course, doesn't mean they have an account at the

19  bank.  It just means there was a transfer that went through

20  the bank and so we did a little Google search, right, on some

21  of them.  One of them is a TV sportscaster for I guess what

22  the plaintiffs believe is a Hamas-controlled television

23  station.  So I guess under that definition he's a Hamas

24  operative.  Another is the head of a tennis association.

25          I think it's going to be a bit difficult for us to

11

1   go to a foreign regulator and say that sportscaster, you have

2   to order the production of his personal bank information.

3          THE COURT:  Well, I don't think we should be doing

4   Google searches when there is a specific reason that

5   plaintiffs are seeking the names.  And so I think going back

6   and just asking them a better course because when you do a

7   Google search it may not be that person, right?

8          MR. SIEGFRIED:  We -- that is what we thought were

9   going --

10         THE COURT:  Okay.  So -- so --

11         MR. SIEGFRIED:  -- to do at the meet-and-confer.

12         THE COURT:  Okay.  So let -- let's keep going.  You

13  have said 25 are in the complaint; 19 are not in the

14  complaint.

15         MR. SIEGFRIED:  Right.

16         THE COURT:  There is no explanation.  What about the

17  other?

18         MR. SIEGFRIED:  And then in that example of those

19  229, we have 177 who are -- were recipients of assistance

20  through the Saudi committee.  And the problem there, Your

21  Honor, is that I -- to say that the recipients of the Saudi

22  Committee payments are -- even the plaintiff's own expert in

23  Linde agreed that the Saudi Committee was involved in

24  humanitarian assistance.  I understand they have an argument

25  about suicide bombers and incentivizing suicide bombers and,

12

1  of course, they have all of the Saudi Committee documents

2  which identify recipients, the amounts of the payment, et

3  cetera.  But now we're talking about the accounts of those

4  recipients.

5          And the -- to take 177 names of people who received

6  money for food baskets or orphan projects or they use the term

7  "martyr," that will be an example.  So you use the term

8  "martyr" and I apologize, Your Honor, if I'm saying something

9  you already know from this case.  But a martyr within the

10 lexicon of the Middle East isn't necessarily what we might

11 immediately think of as somebody who goes and flies planes

12 into buildings or does suicide.  A martyr in the Middle East

13 and in Palestinian society is anybody who was injured or

14 killed in the context of the conflict of the Middle East.

15         So a bystander who is caught in a demonstration and

16 injured or killed is a martyr.  We all read last -- I guess

17 last year about incidents, some really tragic incidents about

18 young children who were killed in some of the demonstrations.

19 They are a martyr.  So calling somebody a martyr and just

20 simply because it's a "martyr payment" doesn't say anything.

21         So what we're trying -- so if you go to a

22 Palestinian agency, a banking authority, or you go to a court

23 again in Jordan or the territories and you say, well, they're

24 here because they're listed as martyr payments, this is not

25 going to go anywhere with the court, if they believe -- and

13

1  that's what Mr. Osen says in his footnote, that the -- these

2  177 recipients are, in fact, Hamas operatives, then fine.

3  Tell us something that would describe to a court what is it

4  that makes you think that this person is a Hamas operative

5  because the court is not going to look at this and say, oh,

6  they're a martyr, they must be an operative.  This is, you

7  know -- pardon the example, but this is really, you know, all

8  Palestinians are Hamas operatives.  It's like --

9         THE COURT:  Well, I don't think that's what's being

10  said here, so what about the other eight people?

11         MR. SIEGFRIED:  So the -- so what I'm --

12         THE COURT:  There are 229 and you've listed 221.

13         MR. SIEGFRIED:  I think 25 and 19 and 177, if I'm

14  right, adds up to the 221.  That's what -- that's the

15  analysis --

16         THE COURT:  That's 220 -- so it's 221.  I wrote 229.

17  It's 221.

18         MR. SIEGFRIED:  They said 229 in their letter, but

19  actually if you do the addition it's 221.  Sorry.

20         THE COURT:  Okay.

21         MR. SIEGFRIED:  So that is --

22         THE COURT:  So you need more information than what's

23  been given you so far.  So the 25 you're saying, fine, they're

24  in the complaint.  Nineteen, they're not in the complaint and

25  there's no explanation other than that there was a bank

1  transfer.  And then 177 the only explanation is that they were

2  recipients of assistance through the Saudi Committee.

3           MR. SIEGFRIED:  That's right.  And --

4           THE COURT:  Okay.  So you need more than that is --

5  that's what you're saying.

6           MR. SIEGFRIED:  We do.

7           THE COURT:  Okay.

8           MR. SIEGFRIED:  And this would follow through the

9  rest of the way.  Again, it's not that we're going to

10 necessarily --

11          THE COURT:  Well, but here's the thing, right?  I

12 mean, there are things that you think are necessary and then

13 the -- if -- and I'll hear from the plaintiffs as to what they

14 think is necessary.  And then really none of us is making that

15 decision.  It's really the foreign governments that will weigh

16 in.  And if it turns out that they don't have enough, they'll

17 either deny it, in which case plaintiffs will have a harder

18 battle to fight or they'll grant it, in which case it

19 wasn't -- it's good enough.  Right?

20          And so it seems to me we need to just do the best we

21 can here at this point and then let the -- let the process go

22 forward and then let the foreign governments come back and

23 either if you're right they'll say, we need more, and then

24 we'll do another process or they'll say, fine.  And maybe what

25 you're saying is that additional process is really burdensome,

15

1  so let's get it as good as possible now.  But I'll hear from

2  the plaintiffs, but I just want to be clear that that's your

3  position.  You just need more than these things that you've

4  gotten so far.

5          MR. SIEGFRIED:  Yes.  I just want to be also clear

6  about something.  You know, here we actually do have a very

7  good process in the States.  We can write you, we can ask, can

8  we have a conference, can we talk about this, can we go

9  through exactly the dialogue that you and I are having right

10  now.  When you have the letters rogatory you have --

11          THE COURT:  It's less interactive.

12          MR. SIEGFRIED:  They go --

13          THE COURT:  Yeah.  Okay.  That's --

14          MR. SIEGFRIED:  They go into the thing and then they

15  come back and then we have ultimately also something down the

16  road as well as the proportionality if we're talking about --

17  I mean, realistically going and saying for -- for example, 177

18  Saudi Committee recipients, the bank isn't going to be able to

19  go run around and get all those consents.  And if you go in

20  with a blanket number like that and the higher the number you

21  go, the more, of course, a foreign authority is going to say,

22  wait a second, these people aren't parties to your --

23          THE COURT:  But --

24          MR. SIEGFRIED:  It's a problem.

25          THE COURT:  But that's what -- I just want to

16

1  understand what exactly you're looking for.

2          MR. SIEGFRIED:  Certainly --

3          THE COURT:  I hear your position.  Are there --

4  the -- it's just about these 221 people, right, these requests

5  or is there more?

6          MR. SIEGFRIED:  No, no, no.

7          THE COURT:  Okay.  So tell me --

8          MR. SIEGFRIED:  No, we need -- try --

9          THE COURT:  Tell me the rest.

10          MR. SIEGFRIED:  Well, no.  That -- what I've said

11  about those 220 people is -- is -- was simply to try to take

12  what he did -- what he did in his letter.  We have -- but the

13  principle of saying with respect to the people who you were

14  requesting information --

15          THE COURT:  Right.  So there --

16          MR. SIEGFRIED:  -- with respect to --

17          THE COURT:  Okay.

18          MR. SIEGFRIED:  We would like the information so

19  that we can make the best argument or get the most information

20  possible to the foreign --

21          THE COURT:  There --

22          MR. SIEGFRIED:  -- authorities --

23          THE COURT:  There are 677 people.

24          MR. SIEGFRIED:  Right.

25          THE COURT:  Okay.  So of the remaining 400 or so

17

1    people, what is the problem that you're having with them?

2            MR. SIEGFRIED:  Your Honor, I can give you -- we

3    have to do a little math to give you the total.

4            THE COURT:  Well, I'm doing the math now, right, so

5    you gave me 221 and in your papers you said that there -- the

6    request certainly seeks bank records and transactions for 677

7    individuals and entities.  So roughly, we're talking about a

8    difference of 456 people or entities.  So you don't have to go

9    through them one by one, but I just want to understand since

10   it's --

11           MR. SIEGFRIED:  I think there are probably several

12   hundred more --

13           THE COURT:  -- a large number.  It's --

14           MR. SIEGFRIED:  -- is what we --

15           THE COURT:  No, but I know the number based on what

16   you've given me.  It's 456, right?

17           MR. SIEGFRIED:  Yeah.

18           THE COURT:  So of those individuals and entities,

19   what is the problem with the information that you've gotten

20   there?  What are you lacking there?

21           MR. SIEGFRIED:  The sole description is they are

22   Hamas operatives and leaders.

23           THE COURT:  Okay.  All right.  So literally that's

24   all you have that --

25           MR. SIEGFRIED:  That is it.

18

1          THE COURT:  And they're not referenced anywhere and

2    you don't know if they got money or they're recipients of bank

3    transfers or anything like that.  You have no information.  Is

4    that --

5          MR. SIEGFRIED:  We have no information.  We have

6    only the allegations in the complaint.

7          THE COURT:  Okay.  But -- so are they referenced in

8    the complain?

9          MR. SIEGFRIED:  No.

10          THE COURT:  They're not.  Okay.  So that's what I

11    wanted.  So no information as to how these 456 additional

12    individuals or entities, what role they played, how they're

13    connected, nothing.

14          MR. SIEGFRIED:  There is some portion of that to be

15    more accurate, some portion of that 400 are also referenced in

16    the complaint.  We are saying, we -- I --

17          THE COURT:  Okay.  So --

18          MR. SIEGFRIED:  I think that's why I need to do the

19    math.

20          THE COURT:  -- because you told me that there were

21    25 that were named in the complaint.

22          MR. SIEGFRIED:  I have 25 of the 221 but if -- well,

23    I'm happy to get you that number.  We just need to do the

24    calculation of the total --

25          THE COURT:  The numbers aren't that high, so I mean,

19

1   I don't know why I -- you know, I did the math right here.

2   So -- okay, so I think I understand generally what you're

3   saying.  Let me give plaintiffs an opportunity to weigh in and

4   I'll come back to you if I need to.

5        So who wants to take it from the defendants -- or

6   from the plaintiffs' side?

7        MR. OSEN:  Thank you, Your Honor.

8        THE COURT:  Mr. Osen.

9        MR. OSEN:  Gary Osen again.  I don't believe Your

10  Honor has copies of the requests or the responses, is that

11  correct?

12       THE COURT:  I do not.

13       MR. OSEN:  So I think if Your Honor would permit I'd

14  like to hand up copies of the request and responses.

15       THE COURT:  Does the defendant have those?

16       MR. OSEN:  They certainly filed responses in the

17  case and so --

18       THE COURT:  Okay.  I just want them to know what

19  you're getting.

20       MR. OSEN:  Yes, it's defendant Arab Bank's responses

21  and objections to plaintiff's first request for production of

22  documents and then the second request, so it includes both

23  their responses and the original request.

24       THE COURT:  The original plaintiffs' requests?

25       MR. OSEN:  Correct.

20

1    THE COURT:  Okay.  Well, so what I'm looking at

2  are -- just so the record is clear, two multi-page documents.

3  The first is defendant Arab Bank's responses and objections to

4  plaintiffs' first request for production of documents and then

5  defendant Arab Bank's responses and objections to plaintiff's

6  second request.  So there's a first and a second.  What do you

7  want to say about them, Mr. Osen?

8    MR. OSEN:  Right.  So the first request, Your Honor,

9  deals with the request targeted to Hamas and Hamas-related

10  attacks and the second is for all the other terrorist groups,

11  and that's sort of the first dividing line.

12    THE COURT:  All right.

13    MR. OSEN:  So if we begin with the first request,

14  that's referencing the account in Beirut of Osama Hamdan.

15  That's on page 4.  And for that, other than the bank secrecy

16  and general objection, the defendant says they'll produce, at

17  least non-privileged documents.

18    Request number 2, Your Honor, on page 5 is a request

19  for accounts maintained at Arab Bank by the following Hamas

20  leaders, agents -- operatives and agents.  And I think it's

21  worth noting at the beginning, Your Honor, that none of these

22  names are foreign to the defendant or their counsel because

23  these requests were largely lifted from the trial record in

24  Linde, and if we had the monitors we could actually show the

25  presentation that was presented at trial.  We could certainly

21

1  provide copies of the PowerPoint slides.  But these were all

2  itemized and detailed during the course of the trial, so

3  they're not mysterious individuals.

4        In fact, for the individuals who are listed on page

5  5 and request to, I believe all of them were recipients of

6  payments that went through New York and were a central focus

7  of the trial.  And here, again, the defendants' response is

8  that not every single name was listed in the complaint, but we

9  don't think that's a reasonable limiting factor.

10       THE COURT:  Okay.  So let me just stop you there.

11 So you're saying of those 29 names are all of them names that

12 were mentioned as part of the <u>Linde</u> trial record?

13       MR. OSEN:  I believe I can say that for all but the

14 last one that I don't recognize offhand, but I can confirm

15 that.

16       THE COURT:  Okay.  All right.  So then what about

17 request three?

18       MR. OSEN:  So number three, again, is referring to

19 Hamas leaders and operatives.  And here we have yet again

20 additional individuals, many of them identified by virtue of

21 the Bates numbers, meaning they're demonstrated transactions

22 for these individuals.  I can give you a sampling of the other

23 names that are listed here because they include, if you look,

24 on page 7, letter O, for example, Jamal Al-Tawil was the Hamas

25 mayor of Ramallah al-Bireh.  He was a prominent focus of the

22

1  trial because he was also the chairman of one of the Hamas

2  charitable committees --

3          THE COURT:  Okay.

4          MR. OSEN:  -- al-Islah.

5          THE COURT:  Let me just back up.  Of request number

6  three there seem to be five that have Bates numbers.

7          MR. OSEN:  Right.

8          THE COURT:  And then the remaining 23 you're

9  pointing out a couple of people that you say were referenced

10 in the Linde trial.  Again, are there any people who were not

11 referenced in the Linde trial?

12         MR. OSEN:  I can't say definitively except to note

13 that most of these individuals from number F -- am I getting

14 the right one?  I want to make sure I have the right one.  I'm

15 sorry.  We're on request number two or number --

16         THE COURT:  Request number three.

17         MR. OSEN:  Three.  So there --

18         THE COURT:  There are only Bates numbers for the

19 first five.

20         MR. OSEN:  Right.  So, for example, Mister -- F,

21 Omar Saleh Muhammad Faiq Sharif, he was identified in the

22 Linde trial because he was an accomplice to the bus bombing.

23         THE COURT:  Right.  So my question is, instead of

24 you telling me now, is it clear to you that the remaining

25 people who -- for whom there are no Bates numbers attached, so

23

1  that would be the remaining 25 people, it seems to me, are

2  they all referenced in the Linde trial record?

3          MR. OSEN:  I believe they are, but I can certainly

4  represent that they were all identified as being related to

5  the attacks in the Linde trial.  So --

6          THE COURT:  Identified in what -- I'm trying to

7  provide someplace for defendant to look --

8          MR. OSEN:  Sure.

9          THE COURT:  -- so that they can get the information

10 as to who these people are.

11         MR. OSEN:  I was going to come to that in a moment,

12 Your Honor.  To be clear, again, because none of this takes

13 place in a vacuum, in preparation for the Linde trial there

14 was the submission of an expert report and ultimately trial

15 testimony by Arieh, A-R-I-E-H, Spitzen, S-P-I-T-Z-E-N.  And,

16 Your Honor, if I may, because it will also I think assist

17 here, I'd like to just present a copy of the expert report and

18 I'll give a copy --

19         THE COURT:  Again, I don't need to see it.  I just

20 need to make sure the defendants know where to look.

21         MR. OSEN:  I understand, Your Honor, but it would

22 actually be helpful without going through them line by line

23 just to demonstrate what are talking about because

24 Mr. Siegfried referred to the need to Google individuals.  And

25 I think the context here is important.  There is nothing here

24

1  that is a surprise or --

2  THE COURT:  All right.  And that's why I'm trying to

3  go through the 677 names.  I don't need to go through them

4  individually.  I just need for you to identify where the

5  defense team can look to get the answers that they're seeking.

6  MR. OSEN:  Certainly, Your Honor.  Amongst the

7  sources, although there are literally hundreds of them from

8  the trial record --

9  THE COURT:  And that's part of the challenge is that

10 if you can be specific as to where to look, then defendant can

11 look and then we don't need to have this discussion on the

12 record.

13 MR. OSEN:  Understood, Your Honor.  There are a

14 number of appendices to the Spitzen report.  They start with

15 Appendix 4 and they itemize contrary to Mr. Siegfried's

16 statement.  You'll see that in requests going forward they're

17 not identified simply as martyrs or simply identified as Saudi

18 Committee beneficiaries.  They've been specifically identified

19 because they were, for example, in request number 6, Hamas

20 suicide bombers.

21 THE COURT:  So you're now looking at request number

22 6 in your first document demand?

23 MR. OSEN:  Correct.

24 THE COURT:  Okay.  And actually, for request number

25 6 it looks like you have Bates numbers for all of those

25

1   people.

2               MR. OSEN:  Correct.

3               THE COURT:  All right.

4               MR. OSEN:  And again, we're not picking names out of

5   a hat or listing the Palestinian phone book.  This is a very

6   detailed and identified subsection.  In fact, the irony of

7   this entire discussion is that we drastically narrowed the

8   production order that was approved in the <u>Linde</u> case in order

9   to make more specific and narrower than the requests that were

10  ultimately the subject of the production order there.

11              So we're, in effect, being penalized for being far

12  more granular and specific.

13              THE COURT:  You're not being penalized.  Nobody has

14  told you to do anything yet.

15              MR. OSEN:  Not by the Court, Your Honor.  Just by

16  counsel in their responses.

17              THE COURT:  All right.  So I'm just looking now

18  through all your requests and I see that there are Bates

19  numbers for a very large number of the requested -- the

20  individuals identified other than in request number 3 for

21  which there are -- it looks like 23 people who don't have

22  Bates number and you're saying that those people were

23  referenced in the expert report, Appendix 4, is that right?

24              MR. OSEN:  And all of the appendices --

25              THE COURT:  And the other, yes.

26

1            MR. OSEN:  -- depending on which category they're

2    in.

3            THE COURT:  And then request number 10 starting on

4    page 18 it looks like there are 27 people there and those

5    people don't have Bates numbers attached.  So where can the

6    defendant get information as to the individuals identified in

7    request number 10?

8            MR. OSEN:  I'm sorry.  Which request, Your Honor?

9            THE COURT:  Request number 10, page 18, of your

10   first --

11           MR. OSEN:  Yes.

12           THE COURT:  The first document you gave me.

13           MR. OSEN:  Right.  So, Your Honor, with respect to

14   this category the defendant never produced the records for the

15   Al-Ansar Society.  It's -- the society itself is mentioned in

16   the complaint.  It was also in the subject of the -- of the

17   Linde trial.  Here the complaint alleges that Hezbollah

18   provided the Al-Ansar Society with funds to pay the families

19   of martyrs and the list here identifies so-called martyrs that

20   appear on the website of Al-Ansar as recipients.  So that's

21   the basis there.  There's no Bates numbers for them.

22           THE COURT:  Okay.  But it -- but they're narrowed --

23   they're limited to the Al-Ansar Society?

24           MR. OSEN:  Correct.

25           THE COURT:  Okay.  All right.  So then I haven't

27

1  been adding up the people.  Are we at 677 yet?  I don't think

2  so.  Shall we look at your request number 2?  So there are in

3  your request for production of documents -- your second

4  request for production of documents, I'm now flipping through

5  it if you have references for those names.  And these names

6  again some have Bates numbers attached and some do not.  So

7  let me just pause there.

8          Mr. Siegfried, to the extent that there are Bates

9  numbers attached to the names are those -- do those enable you

10 to get the information that you need?

11         MR. SIEGFRIED:  No.

12         THE COURT:  No?  Why not?

13         MR. SIEGFRIED:  No, Your Honor, because what they --

14 what the -- what the Bates numbers are referring to,

15 particularly in these Saudi Committee payments are something

16 that nobody has disputed, which is -- because they got this

17 from the bank when it got the waiver from the Saudi Committee,

18 which was to produce all of the documents that the Saudi

19 Committee could agree to waive, which are the transfers.  The

20 issue --

21         THE COURT:  All right.  So you're saying that just

22 because --

23         MR. SIEGFRIED:  The issue for the Court --

24         THE COURT:  -- they got money doesn't make them --

25         MR. SIEGFRIED:  That's -- that was my point about

28

1  martyrs.

2          THE COURT:  Okay.  That's fine.  So let me find out

3  from the plaintiffs.  The defendant is complaining that that's

4  sufficient information for that.

5          MR. OSEN:  So, Your Honor, the same -- although the

6  trial focused on Hamas, Appendices 4 through 7 cover not only

7  Hamas, but Islamic Jihad, al-Aqsa Martyrs' Brigade and the

8  Popular Front for the Liberation -- oh, I'm sorry, Your Honor.

9  My colleagues has corrected me; 4 through 7 is just Hamas-

10 related.  The subsequent appendices cover the additional

11 terrorist organizations.

12         THE COURT:  Okay.

13         MR. OSEN:  And again, Your Honor, it's not simply

14 that they list out the individuals.  They provide narratives

15 in terms of source material, what terrorist attacks they were

16 involved in, et cetera, so it's quite detailed.

17         THE COURT:  So the -- what I heard from

18 Mr. Siegfried is that he's concerned that if these requests

19 were sent to the foreign governments, the foreign governments

20 might say we're not inclined to waive the bank secrecy as to

21 people who are just getting humanitarian aid because their

22 baby died in a bomb attack.  So what can you say to that?

23         MR. OSEN:  Yes.  There are no individuals on any of

24 these requests who fall into anything remotely like this

25 category.  We are talking about senior leaders and operatives

29

1   of the terrorist organizations.

2           THE COURT:  How do you know that?  Maybe that's the

3   basis.

4           MR. OSEN:  Your Honor, again if I may ask if I can

5   show you the appendix we have a copy for counsel.

6           THE COURT:  All right.  So I'm looking at a document

7   that is just identified by a title that says Appendix 4 and

8   then it's several pages long and it ends at Appendix 24.  And

9   it looks like it's, as you mentioned before, expert report of

10  an expert Spitzen in <u>Linde</u>.

11          So are these the names -- when you have name of

12  operatives are these the names of the individuals that you're

13  seeking records for?

14          MR. OSEN:  Yes.  For the most part where we can

15  identify the operative we do so.  Obviously because in the

16  case of deceased terrorists who received payments, martyr

17  payments or otherwise, the payments themselves are sometimes

18  to the family member.  So I won't say it's universally true.

19  So, for example, in request number 4 for Islamic Jihad,

20  suicide bombers number 2, the name of family of Mustafa Faysal

21  Mustafa Abu Sariya, is there instead of the actual

22  perpetrator.  And I can spell that for the Court if that's --

23          THE COURT:  That's fine.  You're making reference to

24  the second request.

25          MR. OSEN:  Correct.  It's the -- sorry.  It's the

30

1   fourth request but the number 2 under 4 as in --

2           THE COURT:  I'm sorry.  You gave me two documents.

3           MR. OSEN:  Oh, yes.

4           THE COURT:  One references plaintiff's first

5   request.

6           MR. OSEN:  Yes.  This is the plaintiff's second

7   request.

8           THE COURT:  Okay.

9           MR. OSEN:  Which is dealing with the non-Hamas --

10          THE COURT:  Yes.  And then it says request number 4

11  under that.

12          MR. OSEN:  Right.  And under number 4 if you get to

13  the second name and the fourth name, the refer to --

14          THE COURT:  Family of.

15          MR. OSEN:  -- family of --

16          THE COURT:  Yeah.

17          MR. OSEN:  -- because it's not the actual

18  perpetrator identified.

19          THE COURT:  Right.  But if -- it's family of and

20  then the name that is -- that follows that --

21          MR. OSEN:  Is the perpetrator.

22          THE COURT:  -- is the person who would then be

23  identified on these appendices under a column that says "Name

24  of Operatives."

25          MR. OSEN:  Correct.  And if you go a few columns

1   over in the appendix you'll see name of recipient is often

2   listed -- was almost always listed and that gives the familial

3   connection as well.

4           THE COURT:  Got it.  All right.  So Mr. Siegfried,

5   have your folks gone through this list to see if you can

6   identify it?  This seems a little bit better than Google in

7   terms of answering your questions.

8           MR. PECK:  Your Honor, the -- let me answer this by

9   also giving you some numbers that I think you asked for

10  before.  There are -- of their list, 100 of that 677, 122 are

11  not referenced anywhere in the complaint.  And there are

12  another 120 people who are not referenced at all in this

13  expert report that they are referring to, Mr. Spitzen.  And

14  you know, when you look at -- again, some of the Spitzen

15  people are referenced in the complaint that we already said

16  we're going to produce those.  There are references made as

17  you read deeper into this.  Some leap out, "suicide bomber."

18  Okay.

19          Others are maybe a son of or simply arrested by

20  Israeli forces.  If arrested by Israeli forces is the *sine qua*

21  *non* for operative or terrorist, we're not going to get very

22  far because somebody who is arrested -- there were, Your

23  Honor, I think the numbers that I last saw were in -- it

24  referred to -- there was something like 600,000 people over a

25  four or five-year period --

32

1          THE COURT:  But they're --

2          MR. SIEGFRIED:  -- who were arrested.

3          THE COURT:  But they're -- records aren't being

4   asked for those people.  So we're just focusing on the ones

5   here.  Give me an example of a description that you think is

6   going to be inadequate for the bank secrecy request.

7                    [Pause in the proceedings.]

8          MR. SIEGFRIED:  Give me a moment, Your Honor, while

9   I go through some of these.

10         MR. OSEN:  Your Honor, while Mr. Siegfried is

11  looking at this, can I just note one additional point from a

12  practical procedural standpoint --

13         MR. SIEGFRIED:  I can --

14         MR. OSEN:  Oh, if you're ready, I'll stop.  We

15  informed Mr. Siegfried and his colleagues that we did consider

16  the question of what the scope of the production order is to

17  be different from what you might term prior -- prioritization

18  of letters of requests or letters of rogatory.

19         In other words, assuming the Court were to issue a

20  production order for every name we requested, we wouldn't

21  expect them and we would work with them to prioritize, let's

22  say, a top ten or a top five or a top twenty list of names

23  that are most important to us in each grouping so that they

24  would not have to prepare 600 requests off the bat.  I'll stop

25  there.  Mr. Siegfried wants to --

1          MR. PECK:  If I can respond to that, Your Honor,

2    that's the first we're hearing some limitation.  Obviously

3    there are sort of two aspects of this.  I'm just an old Civil

4    Procedures guy and proportionality is certainly part of the

5    December 2015 rules amendment; 677, regardless of whether we

6    know who they are or not, and we don't, is disproportionate to

7    their needs.  If they are willing, as I think I just heard Mr.

8    Osen say, to cut that back in terms of the letters of request

9    we'd be happy to work with him on that.

10          The other factor that goes into that is -- you know,

11   in -- under Judge Pohorelsky's order we went to Lebanon.  I

12   believe it was for one account and we got it.  When you start

13   going for 677 accounts or whatever the lesser number is, it is

14   much harder politically for the bank regulators and the

15   foreign courts to approve that.  So all we're trying to do is

16   cut the requests down.  We're not saying, you know, never ever

17   again.  If there's some particular reason, this is the first I

18   heard from Mr. Osen that they would be willing to cut that

19   down.

20          But, I mean, our approach to this is we are willing

21   as soon as the scope is determined, either by party agreement

22   or Your Honor, hopefully not 677.  Whether it's the 122

23   mentioned in the complaint or however it's sliced and diced,

24   we are willing at this point without requiring Your Honor to

25   rule on bank secrecy to go and try to get this information and

1  do it faster than if there were the extensive motion practice

2  that might have originally been anticipated.  You know, we're

3  not asking to be ordered.  You know, we may need the order

4  because of the letters rogatory, but we're willing to start

5  right away in dealing with that.  And that's our theme, so to

6  speak, for today.

7          THE COURT:  Okay.  So my thing is that the parties

8  should be talking to each other a little bit better because

9  had the defendants offered, hey, 677 is an awful lot, can we

10  cut it down, maybe the plaintiffs would have said, "Sure,

11  let's try to work on that."  In fact, I heard even better from

12  Mr. Osen a moment ago, which is a top ten.  Right.  And I'm

13  not saying that you're committed to ten, but by cutting it

14  down quite drastically --

15          MR. OSEN:  Well, Your Honor, I think we're

16  conflating two separate issues.

17          THE COURT:  Okay.

18          MR. OSEN:  One is the proper scope of discovery

19  under Rule 26 and the other is how the defendant deals with

20  foreign bank secrecy objections under restatement 442 and Rule

21  37 if it comes to that.  They're two separate things.

22          So one is a question of what you present to a

23  foreign regulator and the other is what's the proper scope of

24  discovery under Rule 26 in this case.  We would submit, Your

25  Honor, that every single request is completely and entirely

35

1    appropriate as in the appropriate scope under Rule 26 and

2    should be so ordered.  Once that is done, the question of

3    whether or what the prioritization of requests is, is

4    something that we said in our meet-and-confer explicitly.  We

5    would be prepared to work with them on to prioritize so that,

6    for example --

7            THE COURT:  So just it's a timing prioritization?

8            MR. OSEN:  Yes, because if, for example, they do

9    five or ten and they are futile, then there's no point then in

10   doing the other 640 or whatever it might be.  There's a

11   threshold question.

12           What they're trying to do, as I see it, is to

13   conflate something, which is not a Rule 26 issue, but to

14   basically put the burden on us for the fact that they'll be

15   non-compliant with the production order.  And therefore, the

16   production order should be narrower because they plan to be

17   non-compliant.

18           And so following again there are many things I could

19   say about the past record.  Your Honor, for example, they cite

20   to Lebanon as a sample of success.  That was actually part of

21   the basis for the sanction in that case because the records

22   that they sought to produce through the letter of request had

23   already been produced without informing the court to the U.S.

24   regulators.

25           So I don't want to go and rehash everything that has

36

1   occurred in this prior case to date.  But suffice to say,

2   when, for example, Judge Pohorelsky issued his production

3   order it was not curbed by virtue of making it easier to file

4   letters of request.  That's a separate question as to how to

5   do that in a more orderly fashion, whether it should be

6   staged, whether you need to do them all at one time to

7   demonstrate a good-faith effort or can do a few of them and

8   test the waters.

9          They can come back on the remedy phase if they are

10  unsuccessful in producing and say, well, we tried ten or we

11  tried twenty and it wasn't reasonable to make us do 600 and I

12  think they'd have a good argument there.  But that's not the

13  question of what should be in the production order, what's

14  appropriate in the scope of production.  Every request here is

15  narrowly tailored.

16         And if I may, just one other point because it goes

17  to the central problem of this kind of litigation, one of the

18  things we have to prove is that the defendant was generally

19  aware of its role in facilitating substantial assistance to

20  Hamas or other terrorist groups.  And part of that -- and

21  important, maybe the most critical part of that is volume.

22  You know, once is an accident; twice is an oversight.  Five

23  hundred times is intent.

24         And so the idea that three Hamas leaders or two or

25  five suicide bombers, not ten is immaterial it's critical to

37

1   our case because the more they did it for the more operative,

2   the more suicide bombers, the more leaders, the easier it will

3   be for us to prove to a jury satisfaction that they knowingly

4   engaged in this conduct systematically.

5           THE COURT:  Okay.  So thank you for that

6   clarification.  So I take the point that we're -- the

7   complaint here has been about bank secrecy and the issue is

8   really -- I don't think there's a request at the moment to

9   narrow the production because what I've heard you said

10  earlier -- say earlier, Mr. Siegfried, is if it was up to the

11  bank you'd be fine producing it.  Okay.  So it's not about

12  curbing or curtailing the scope of the production.  It's just

13  that the bank has a limitation because of bank secrecy.  And

14  so we're trying to figure out the best way to actually figure

15  out if the individual company -- individual countries are

16  going to be compliant or whether they're going to assert bank

17  secrecy.

18          So for that exercise it might make sense to send out

19  a few requests and see what the bank -- what the governments

20  say and if the governments say, great, okay, no problem, then

21  you might be in a better position to send out more requests to

22  those governments.

23          If the governments come back immediately and say no,

24  then maybe it's not worth trying.  If the governments come

25  back and say -- and I don't know if they do; maybe they just

38

1  say no -- if they say, we don't have enough then we'll know

2  what to send forward.

3          So for that exercise it might make sense for the

4  parties to sit down and figure out the top ten or however many

5  you need to get answers to how the government put the -- will

6  react to the requests.

7          Does that make sense, Mr. Osen?  Is that what you're

8  proposing?

9          MR. OSEN:  We have no objection to that, Your Honor.

10          THE COURT:  All right.  So why don't you do that

11  because then we'll have a better idea as to what the

12  governments need so that the parties can exchange information

13  to clarify that.  So number one, please do that.

14          Number two, as to the requests, Mr. Siegfried, that

15  you've been -- that you brought up at the beginning, which is,

16  to paraphrase, we have no idea what you're talking about, it

17  seems that there is information, and it may not be perfect

18  information, but if you put together the combination of the

19  expert report appendices, the complaint which you've already

20  referenced, the Bates numbers that have been referenced that

21  you would get a pretty good picture of what you need.  And to

22  the extent that there are things where you have no information

23  or you need more information then for that limit set of

24  circumstances you can go back to the plaintiff and say, hey,

25  can you give us more information on that; or if you've looked

39

1  at the Bates pages that have been referenced and say that

2  really doesn't give us enough, do you have more, then that

3  would be a good limited conversation that you can have.  And I

4  think it's in plaintiffs' best interests to give us as much

5  information as you have and if you don't have it, then that's

6  all you got, right.  So then if you're going to use that

7  information to go to the governments for bank secrecy purposes

8  then you're taking your chances as far as whether that

9  government is going to say not enough, too bad, or fine.

10  Right?

11        So I just think you need to talk more about what

12  you've got and what you're missing but certainly have all this

13  information is a pretty good start and there's no need to to

14  go Google.  I mean, right?  I mean, I know that you've used

15  that as an example, but it seem that documents that have

16  already been produced, as well as a conversation with

17  plaintiff's counsel will get you much farther.

18        MR. SIEGFRIED:  Yeah, Your Honor, just to be clear,

19  again, we did because that's one of the reasons I was able to

20  tell you how many of those names were in the Spitzen report

21  that that is the dia -- I'm very happy with this process.

22  This is the dialogue that we're going to have in our meet-and-

23  confer.  I'm not going to go back over that history, but we

24  know that there were 120 names from Spitzen.  Many of them

25  match up with the allegations of the complaint.

40

1           But the process to us that you just suggested I

2   think makes a great deal of sense because what we want to do,

3   as I said from the start, is we do want to go out there.  We

4   do want to go out there with hopefully requests that will be

5   successful or reasonable and just won't be simply brushed off

6   by authorities.  And I think in that regard we would certainly

7   welcome the opportunity to sit with plaintiffs and identify

8   those.

9           We would welcome the opportunity as well perhaps

10  at -- I'm saying this off the top of my head, so please

11  understand that -- I think we'd welcome probably the

12  opportunity to perhaps even phrase the letters rogatory a bit

13  more creatively than you normally do so that -- so that a

14  foreign authority when they get the document particularly in

15  that region understands what it's dealing with because I --

16          THE COURT:  Well, and I --

17          MR. SIEGFRIED:  -- don't think we necessarily get

18  the chance to stand up in a courtroom and --

19          THE COURT:  Yes, but --

20          MR. SIEGFRIED:  -- have that dialogue.

21          THE COURT:  So I'm going to assume that you have

22  resources that will give you some information as to what is

23  likely to be a successful letter rogatory and you can ask

24  those people who have done this before what should go into it

25  and what is likely to make it successful.

41

1        They and therefore you will know more than me, so I

2   think that you should engage in that process and go ahead and

3   do that and have a discussion.  I'm always a little bit

4   puzzled as to why people can't work these things out

5   themselves and you need the person who knows the list in the

6   room to sit here and talk to you but if --

7        MR. SIEGFRIED:  That --

8        THE COURT:  -- that's what you need, that's what I'm

9   getting paid for.  So I'm happy to do it, but it just seems

10  like you should -- you should talk to each other and these

11  things could probably be worked out without me getting

12  involved.  But be it as it may, please do go forward.  Figure

13  out -- I think everybody wants to have the most successful

14  letter -- letter rogatory as possible because everybody wants

15  to get the information.  And if there's a problem because it's

16  not enough for the foreign government, then we can come back.

17  You can figure out first what you think can be done.  And if

18  the Court needs to get involved, then I'll get involved.  And

19  if there's -- if that's the end of it, then I think people

20  need to figure out what the next step is.  But getting to and

21  then past the foreign governments is the first step and so

22  just do the best you can.

23       MR. SIEGFRIED:  Your Honor, just so you know, we

24  have begun that process.

25       THE COURT:  Okay.

42

1          MR. SIEGFRIED:  I was simply trying to -- since

2     there are some judges who say, what are these, I haven't seen

3     anything that looked like these before, and that's all that I

4     was trying to say, that they may not be just the traditional,

5     we need these documents, here's the attachment.  That's all I

6     was trying to --

7          THE COURT:  I've never seen --

8          MR. SIEGFRIED:  -- say.

9          THE COURT:  -- one. It's all going to be new to me.

10     All right.  So be as creative as necessary.  But it's not

11     about creativity; it's effectiveness.  So just be as effective

12     as you can with the best knowledge that you can and if you

13     don't know talk -- if you've never done it before, talk to

14     somebody who's done it.  It seems very basic.  So just do

15     that.

16          Yes, Mr. Osen.

17          MR. OSEN:  Yes, Your Honor.  At least in the four or

18     five instances where I've been involved in bank secrecy-

19     related activities of this kind, they are -- the letters

20     rogatory have been preceded by a production order by the Court

21     because that's the predicate.  Otherwise, we just go back to

22     fighting over which of our requests were appropriate for the

23     letter.

24          THE COURT:  Okay.  So is there -- so -- and that is

25     not in -- that has not happened and is there an objection to

43

1  that?

2       MR. SIEGFRIED:  Your Honor, consistent with exactly

3  what you've just said, I might suggest that the plaintiffs and

4  the bank sit down.  We come up with this particular list.  We

5  will make our --

6       THE COURT:  Well, but there's a first part of it

7  which is -- okay, I think I understand what you're saying,

8  that you want to have a production order for the limit it said

9  of the things that you're going to be asking the foreign

10 governments to give you, but with the understanding that it's

11 not going to be the full production --

12      MR. SIEGFRIED:  Absolutely correct.

13      THE COURT:  -- set.  That if there's going to be

14 another round then there would another.  Why do we need to do

15 it in this staged way?  Why -- if -- if you have an objection

16 to the 677 now does it make sense to tell me and if you don't

17 have an objection, let's just put that in place so that you

18 can move forward with some leeway in case things change and

19 the scope of their letters interrog -- in -- letters rogatory

20 change.

21      MR. OSEN:  With respect to the 877 --

22      THE COURT:  The 677.

23      MR. OSEN:  We do object to the 677.  That's what

24 we've been talking about.

25      THE COURT:  But the proportionality argument has

44

1   been about the bank secrecy.

2          MR. OSEN:  Well, if it were easy to just push a

3   button, you know, if this was Citibank today or something but

4   these were basically paper records but we can't even get to

5   that.  But what I think my colleagues across the aisle are

6   trying to do is get you to bless their requests in the

7   entirety.  And even though -- and what I heard you say is, you

8   know, come up with the best examples of what you need the

9   plaintiffs and let's do the letters of request for that,

10  frankly I don't know that we need procedurally a production

11  order at all.  We are willing to submit letters of requests to

12  you working with Mr. Osen and his colleagues.

13          THE COURT:  But what are you going to tell the --

14  don't you need that for the letters rogatory to say, there's a

15  court order and that's why we're coming to you -- a court

16  order for the production of documents and, therefore, that's

17  why we're coming to you?

18          MR. OSEN:  I think the letters of request, the

19  letters rogatory are that order because you have to sign

20  off --

21          THE COURT:  Okay.

22          MR. OSEN: -- on them.  But, you know, if for a

23  technical reason we need to order, I think the order should be

24  co-terminus with this first round of letters rogatory for now.

25  And if they want to further order down the road for sanction

45

1  purposes or whatever else, let's worry about that and not

2  create work for you now that may never come to pass.

3          THE COURT:  It may be more work to narrower it than

4  to bless the whole thing, but let me find out from Mr. Osen.

5  Why would you -- why should the Court bless the whole 677 when

6  the letters going out now are going to be limited and there

7  may be some objections to the 677?

8          MR. OSEN:  Right.  Well, amongst other things, Your

9  Honor, let's take an example where the defendant has said they

10 won't produce, not they won't produce outside of the complaint

11 or whatever, but where there's a refusal to produce.  That

12 might very well be one of the requests that is most important

13 to us.

14         THE COURT:  Well, but nobody has really briefed that

15 issue from the specific points.

16         MR. OSEN:  Correct.  And, Your Honor, we were

17 originally scheduled to do that tomorrow.

18         THE COURT:  Okay.

19         MR. OSEN:  So from our standpoint we'd rather know

20 what the universe -- what our menu of choices are before we

21 prioritize.

22         THE COURT:  Right.  Except I suspect that it's going

23 to be a large number of objections and so it might -- and some

24 of those may not touch on the ones that are in the -- I'll

25 just call it the top ten list.  I'm not saying you're limited

46

1    to ten, but the list of --

2              MR. OSEN:  I understand.

3              THE COURT:  The requests that are going out.  So why

4    don't you do it that way first?  Okay.  And also you might be

5    able to sidestep the ones that are problematic to just say --

6    I mean, if it's really important to you, of course you should

7    make the request to the court to have that compelled, but if

8    it's like, you know, all right, fine, we'll use a different

9    person that isn't going to be problematic then maybe that's a

10   more practical way to move forward.

11             I'm just saying that given that we're -- we've got

12   the 677 and you may have a list that's significantly smaller,

13   why don't you identify those people first and if on that list

14   of your important people there are going to be disputes as to

15   whether the production is appropriate, then bring those to my

16   attention.  I'm not saying that you can't then ask for more

17   later.

18             MR. OSEN:  Sure.

19             THE COURT:  But for purposes of this exercise, why

20   don't you pick the -- your top ten list first and if there's

21   going to be a dispute as to the production, let me know about

22   those few so that I can deal with just a few and focus on

23   those.  And once that's resolved, then we can send the request

24   out, see what comes back and then we'll revisit the issue

25   based on what comes back and then you can always come back and

47

1  say, all right, now let's go back to the remaining 650 and

2  argue about that.

3          MR. OSEN:  We certainly can, Your Honor.  I can tell

4  you off the top of my head that there are two fairly

5  significant ones that fall into that category.

6          THE COURT:  All right.  So then brief those quickly.

7          MR. OSEN:  Okay.

8          THE COURT:  All right.  Because I'd rather deal with

9  two than two hundred in the first instance, okay?

10          MR. OSEN:  Well, they're by cat -- in fairness,

11  they're by category, but we take your point.

12          THE COURT:  Yes.  Yeah, but because I -- it's just

13  a -- I want to be efficient because then it will take more

14  time for me to consider all the information and arguments and

15  I want you to be moving forward as quickly as possible.  All

16  right.

17          So number one, meet-and-confer.  Identify the

18  entities or individuals that you're going to send the letters

19  rogatory out on in the first round.  All right.  If on that

20  list there are people -- individuals or entities that there's

21  a dispute about whether they're part -- they should be part of

22  the discovery requests, brief that quickly for me.  Would it

23  be useful for you to give me deadlines?

24          MR. OSEN:  I think we would propose a schedule that

25  might be easier for us.  But I con -- for example, Your Honor,

48

1  I think we can provide our top ten or eight or twelve list to

2  the defendant by the close of business on Friday.

3          THE COURT:  All right.

4          MR. OSEN:  And then we can meet and confer next week

5  on it and then decide if there's motion practice that needs to

6  be done and propose a schedule for it.

7          THE COURT:  Okay.  So the list by Friday, meet-and-

8  confer next week and then the following week you should let me

9  know what your schedule will be which is then the week of

10 October 7.  So I'll just say randomly October 9.  You should

11 give me a proposed list -- schedule for briefing any disputes.

12 If there are no disputes, then just go forward, but if there

13 are, then schedule a briefing on what the dispute of the scope

14 is.  And then if I think it would be useful to schedule a

15 conference, I'll do that.  If not, just move forward.  All

16 right.

17          And then, of course, the people and the entities who

18 are not on that list you're serving the right to still ask for

19 their production at a later point.

20          MR. OSEN:  The only other thing I would say, Your

21 Honor, is I'd like to take the opportunity to just check

22 procedurally.  As I said, previously we've never had a letters

23 rogatory in this context without a production order.  It might

24 in this case be only for the eight or ten entities or

25 whatever, but I want to dot my I's and cross my T's on that

49

1   issue.

2           THE COURT:  I don't know if it's necessary.

3           MR. OSEN:  I don't -- I only know experience.

4           THE COURT:  So --

5           MR. OSEN:  I don't know whether that was just --

6           THE COURT:  If it's necessary I want to make the

7   process move forward smoothly as well.  So if it's necessary

8   I'll enter it.  If it's not necessary, then I won't enter it.

9   If you think it needs to be broader than the ten, then tell me

10  why.  And if it's -- if it will work with just the ten, let's

11  just move forward with the ten and argue about the remaining

12  667 later, okay?

13          MR. OSEN:  Fine, thank you.

14          THE COURT:  So I just wanted to make clear on the

15  record that you're not waiving your right to argue those

16  things so that you can move forward on just the few that we're

17  going to move forward on now.  Okay.  Does that make sense,

18  Mr. Siegfried?

19          MR. OSEN:  Absolutely, Your Honor.

20          THE COURT:  All right.  So I think that's a good

21  schedule.  I will hear from you by October 9th what your plan

22  is.

23          MR. OSEN:  If Your Honor -- if we may just move it

24  to the 10th.

25          THE COURT:  All right.  That's fine.  All right.  So

50

1   10/10.

2           Do you want the documents back or do you want me to

3   keep them in a file somewhere?

4           MR. OSEN:  That's entirely up to you, Your Honor.

5           THE COURT:  If you -- you think you're going to

6   reference them later, I'll just hold onto them.

7           MR. OSEN:  There's at least a significance chance

8   we'll revisit this issue.

9           THE COURT:  Okay.  All right.  So I'll keep those.

10  Anything else?

11          MR. PECK:  I guess just to alert you, Your Honor, we

12  are still meeting and conferring with plaintiff's counsel on

13  their responses to our discovery requests, but there are no

14  issues ripe for the Court at this time.  We're still working

15  on it.

16          THE COURT:  Okay.  So please review them.  Speak to

17  each other about any deficiencies.  Work them out and if you

18  can't, then let's do the same process where you just write a

19  letter telling me what the problem is.  If I think you can --

20  that I need more information, I'll ask you to give it to me.

21  Otherwise, we'll just meet again.  I think talking through

22  things is --

23          MR. OSEN:  Thank you, Your Honor.

24          THE COURT:  -- very helpful.  All right.  Good.

25  Thank you everyone.

51

1          MR. SIEGFRIED:   Thank you.

2    (Proceedings concluded at 12:49 p.m.)

3                      *  *  *  *  *

52

1          I certify that the foregoing is a court transcript

2     from an electronic sound recording of the proceedings in the

3     above-entitled matter.

4

5

6     _____

7          Ruth Ann Hager, C.E.T.**D-641

8     Dated:   September 27, 2019

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25