**FLEISCHMAN BONNER & ROCCO LLP**
ATTORNEYS AT LAW

81 Main Street • Suite 515 • White Plains • New York • 10601
Tel: 914.278.5100 • Fax: 917.591.5245 • Web: WWW.FBRLLP.COM

Email: jbonner@fbrllp.com

December 27, 2021

**VIA ECF**

Hon. Peggy Kuo
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Miller, et al. v. Arab Bank, PLC*, No. 18-cv-2192 (RPK) (PK)
      *Pam, et al. v. Arab Bank, PLC*, No. 18-cv-4670 (RPK) (PK)

Dear Judge Kuo:

We write pursuant to Section VI.A. of the Court's Individual Practice Rules regarding the parties' dispute concerning the production of documents that defendant Arab Bank, plc contends it may withhold from discovery based upon certain foreign bank secrecy statutes. The parties have met and conferred by telephone and in writing but have reached an impasse.

**Plaintiffs' Position**

Plaintiffs assert claims under 18 U.S.C. § 2333(a) and (d) of the Anti-Terrorism Act ("ATA") for injuries they suffered as a result of the substantial assistance that Arab Bank knowingly provided to multiple designated Foreign Terrorist Organizations ("FTOs") during the Second Intifada, a period of extreme violence perpetrated by those FTOs between 2000 and 2004. This case involves several of the same terrorist attacks as *Linde v. Arab Bank, plc*, which produced a 2014 liability verdict against Arab Bank, a confidential settlement, and a subsequent Second Circuit decision vacating the liability judgment based upon an erroneous instruction unrelated to the jury finding that Arab Bank knowingly provided material support to Hamas.

As in *Linde,* Arab Bank claims that the bank secrecy statutes of three jurisdictions—the Palestinian Territories, Lebanon, and Jordan (the "Blocking Jurisdictions")—compel it to withhold nearly all bank records related to transactions involving a Who's Who of Palestinian terrorism.

Pursuant to the Court's July 8, 2019, Minute Order, Plaintiffs served their First and Second Requests for the Production of Documents ("RFPs") on July 22, 2019. Your Honor directed Plaintiffs to "provide to Defendant by September 27, 2019 a short list of individuals and entities for whom Letters Rogatory should first be submitted." Arab Bank then enlisted the Court's help in issuing letters rogatory to the Blocking Jurisdictions requesting permission to produce records for that agreed upon "short list" of customers. Between September 24, 2019, and January 29, 2020, the parties exchanged correspondence and met and conferred regarding the relevance of bank records concerning the 677 persons and entities the RFPs identified (the "Discovery Targets").[1] Arab Bank then confirmed that it would, on a non-waiver basis, produce responsive records located in the U.S. "for all persons and entities listed in plaintiffs' RFPs…."

---

[1] Plaintiffs' communications included a comprehensive chart identifying the relevance of Arab Bank records concerning the Discovery Targets, including specific references to how Plaintiffs' experts in *Linde* cited evidence related to those individuals and entities in discussing the bases of Plaintiffs' claims.

The Blocking Jurisdictions refused to authorize disclosure regarding even the "short list" of Arab Bank customers. Arab Bank has since advised Plaintiffs that it will not produce records responsive to the RFPs from any Blocking Jurisdiction. Arab Bank had adopted that position even though the RFPs undeniably seek critical evidence. For example, despite Arab Bank's defiance of the Court's discovery orders in *Linde*, the trial evidence showed that the Discovery Targets include scores of terrorists that maintained accounts at, or conducted transactions through, Arab Bank. Moreover, the very limited disclosure Arab Bank made in *Linde* compels the inference that the withheld documents will bolster Plaintiffs' claims. Among other damning facts, that evidence showed that Arab Bank: maintained an account for a Specially Designated Global Terrorist ("SDGT") who received transfers explicitly made to "Hamas"; and facilitated numerous "martyr payments" from a purported charity to suicide bombers' family members.

Substantial precedent—including multiple *Linde* rulings—establishes that the Court should again order Arab Bank to produce the requested records. In particular, the balancing test that the Supreme Court and the *Restatement (4th) of Foreign Relations Law* ("Restatement") outline for assessing objections based upon blocking statutes heavily favors compelling production. *See, e.g., Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court. for S. Dist.*, 482 U.S. 522, 543-44, 544 n.28 (1987); Restatement § 426 cmt. a. In *Linde*, the Court reached precisely that conclusion based upon the same considerations presented here. *See Linde v. Arab Bank, PLC*, 463 F. Supp. 2d 310, 314-17 (E.D.N.Y. 2006), *aff'd,* No. 04-cv-2799 (E.D.N.Y. Mar. 14, 2007).

Arab Bank previously suggested that Plaintiffs delay this motion until the bank seeks consents to production from certain customers regarding a restricted scope of documents. But there is nothing to gain by delaying this case further to await selective waivers from, among others, U.S.-government-designated SDGTs and the families of suicide bombers and deceased terrorist leaders. Those waivers will not be forthcoming, and the limited disclosure the bank envisions will not satisfy its discovery obligations. Of course, nothing has prevented (or will prevent) Arab Bank from seeking customer consents to production, even though the bank apparently failed to initiate that solicitation process until 28 months after Plaintiffs served the RFPs.

**The Bank's Position**

Plaintiffs' position (i) rests on a flawed legal premise, (ii) misstates Arab Bank's position with respect to discovery of documents located abroad subject to foreign bank secrecy laws, and (iii) ignores the process previously outlined by Your Honor for obtaining those documents.

Plaintiffs begin with an incorrect legal premise that a jury verdict vacated by the Second Circuit based on a fatally flawed instruction allows *these* Plaintiffs to argue in *this* action facts and legal conclusions that were allegedly established in *Linde.* It does not. As the Court held, because the jury was incorrectly instructed on the law, its finding of liability could not stand. *Linde v. Arab Bank, PLC*, 882 F.3d 314, 331 (2d Cir. 2018). Nor is there merit to Plaintiffs' argument that "substantial precedent" supports their request that the Court disregard the bank secrecy laws of Jordan, Lebanon and the Palestinian Territories, especially where, as here, the discovery requests


**FLEISCHMAN BONNER & ROCCO LLP**
ATTORNEYS AT LAW

Hon. Peggy Kuo
December 27, 2021
Page 3

are overly broad and lack proportionality.[2] As the Supreme Court held in *Aérospatiale*, "American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position. When it is necessary to seek evidence abroad, the district court must supervise pretrial proceedings ***particularly closely*** to prevent discovery abuses." 482 U.S. at 546 (emphasis added) (ellipses omitted). Plaintiffs' invitation that this Court simply follow the bank secrecy rulings in *Linde* ignores that the United States Government sharply criticized those rulings as erroneous in a brief to the Supreme Court for failing to properly follow the principles outlined in the Restatement (Third) of Foreign Relations Law § 442(1)(c).[3] It also ignores the Bank's challenge to those rulings on appeal following the *Linde* trial, which the Circuit reasoned it need not reach given its decision to vacate on other grounds.

That said, we turn to Plaintiffs' mischaracterization of the Bank's position regarding motion practice related to production of documents located abroad and their unfounded speculation that waivers by customers, properly limited consistent with principles of relevancy and proportionality, will not be granted.[4] After being informed of the decisions of all the foreign authorities, the Bank followed the process outlined by your Honor at the September 24, 2019 conference.[5] The Bank promptly contacted Plaintiffs and asked that the document requests be narrowed consistent with principles of relevance and proportionality in order to immediately seek waivers and consents from customers. The Bank made proposals in this regard in order to expedite the process. However, Plaintiffs refused the Bank's proposals for limiting the requests or to make any counterproposal.

Given Plaintiffs' position and the absence of any agreement regarding scope, the Bank is not requesting that motion practice regarding Plaintiffs' requests be deferred. The Bank cannot seek customer waivers based upon the requests as drafted. They are overly broad and disproportionate to the needs of the case. It is unrealistic to believe that any customer will agree to have all of the transactions in their accounts over a multi-year period, no matter how unrelated to the claims at issue, produced to Plaintiffs. Nor should they. By way of example, Plaintiffs concede that the charities from whom they seek discovery are, in fact, engaged in charitable activities. The Second Circuit in *Honickman v. Blom Bank* recently rejected Plaintiffs' argument that a bank can be held liable for providing financial services to charities based on their theory that money is fungible. 6

---

[2] Plaintiffs misleadingly refer to the foreign jurisdictions as "Blocking Jurisdictions," although knowing full well that their bank secrecy statutes are laws of general application, not blocking statutes, and are typical of banking secrecy laws throughout the world, including most EU jurisdictions.

[3] *See* Br. for the U.S. as Amicus Curiae 12-17, *Arab Bank, PLC v. Courtney Linde, et al.*, 573 U.S. 954 (No. 12-1485).

[4] For example, in *Linde* the Bank successfully obtained a waiver from the Saudi Committee and was able to produce to Plaintiffs approximately 180,000 documents.

[5] On September 13, 2019, we had written to the Court regarding Plaintiffs' refusal to narrow their requests for records related to bank accounts, if any, for 677 individuals and entities prior to seeking any foreign waivers. Given their overbreadth and lack of proportionality, we believed that seeking waivers based on the requests as drafted were "doomed to failure." After hearing argument, the Court ordered a compromise, deferring the issue of the Bank's objections to proportionality and relevance and directing the parties in the first instance to proceed by way of letters rogatory to the foreign governments with Plaintiffs identifying their top ten list of names with the scope of the requests as drafted by Plaintiffs. ECF Tr. 46.20-47.3 ("[W]e can send the request out, see what comes back and then you can always argue about the remaining 650.") (ellipses omitted).

FLEISCHMAN BONNER & ROCCO LLP
ATTORNEYS AT LAW

Hon. Peggy Kuo
December 27, 2021
Page 4

F.4th 487, 498-99 (2d Cir. 2021).  Rather, Plaintiffs must establish that the alleged customers were "closely intertwined with [the FTO's] violent and terrorist activities." *Id.* at 501.  Accordingly, requests which seek production of all transactions involving customers' daily operations over a period of many years, including, for instance, those related to humanitarian aid such as the operations of orphanages, or purchase and distribution of food baskets, medical services and the like, are clearly over broad.

Since Plaintiffs will not engage in any discussion regarding the relevancy and proportionality of their requests, the Bank intends, with the Court's permission, to seek a protective order based on relevancy, proportionality and bank secrecy. It also remains prepared to seek waivers from customers once the objections as to scope and proportionality are decided and would expect to complete that process within 60 to 90 days.

Respectfully submitted,

James P. Bonner

cc: All Counsel (Via ECF)