

DLA Piper LLP (US)
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland 21209-3600
www.dlapiper.com

Brett Ingerman
brett.ingerman@dlapiper.com
T  410.580.4177
F  410.580.3177

December 27, 2021

*BY ECF*

Hon. Peggy Kuo
United States Magistrate Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re:**   *Miller, et al. v Arab Bank, PLC 1:18-CV-02192 (RPK)(PK)*
           *Pam, et al. v. Arab Bank PLC 1:18-CV-04670 (RPK)(PK)*

Dear Magistrate Judge Kuo:

      We write pursuant to Section VI.A of the Court's Individual Practices regarding the parties' dispute concerning the Plaintiffs' document productions in response to Arab Bank's document requests. The parties have met and conferred by telephone and in writing but have reached an impasse. Defendant requests a pre-hearing conference with the Court to address the issues set forth below and to compel Plaintiffs to complete their responses to the Bank's discovery requests within 60 days of this Court's order that they do.[1]

### **Defendant's Position**

      Plaintiffs are 68 individuals asserting claims under the Anti-Terrorism Act ("ATA") for emotional distress as a result of terrorist attacks in Israel between 2000 and 2004. Arab Bank served its discovery requests on July 22, 2019 (the "Requests"). Twenty-eight months later, Plaintiffs have still not completed their responses to the Requests.

            Proof of Standing (Request Nos. 1, 2 & 3)

      Each Plaintiff must prove that he or she was a national of the United States **at the time of the attack giving rise to their alleged injury** in order to bring a claim under the ATA. 18 U.S.C. § 2333(a). To date, 14 Plaintiffs have failed to produce requested documents demonstrating that they have standing to do so. These Plaintiffs have either produced no documents at all or documents insufficient to show that they were U.S. nationals at the time of the attack; instead, they produced documents such as a driver's license (which does not demonstrate nationality) or a U.S. passport that *post dates* the attack, identifies Plaintiff as foreign born, and does not indicate the date that the Plaintiff became a U.S. national. Presumably Plaintiffs' counsel confirmed that each of the Plaintiff was a U.S. national before filing this lawsuit. In any event, documents such as birth certificates and U.S. passports could easily have been obtained in the eight months prior to the pandemic or ordered online and delivered within weeks at any time in the last 28 months. There

---

[1] The positions of the parties set forth herein have been drafted by their respective counsel.



December 27, 2021
Page Two

is no excuse for the failure to do so.[2] Accordingly, they should be ordered to complete production of documents responsive to these Requests within the next 60 days.

Proof of Damages (Request Nos. 12 & 13)

Plaintiffs claim damages for "severe mental anguish and extreme emotional pain and suffering," as a result of terrorist attacks causing physical injury to relatives. In response to Arab Bank's Requests for medical records to support their claims for emotional distress, the *Pam* and *Miller* Plaintiffs have taken different legal positions. The *Pam* Plaintiffs seek to limit which Plaintiffs will produce medical records and, as to those Plaintiffs, from which providers and for what time period. That is not the law. Where plaintiffs seek damages for something more than "garden variety" emotional distress, they necessarily put their medical history at issue. *See Babbitt v. Koeppel Nissan, Inc.*, No. 18CV5242NGGCLP, 2019 WL 3296984, at *10-11 (E.D.N.Y. July 23, 2019). *See also Francis v. Ideal Masonry, Inc.*, 2018 WL 4292171, at *10 (E.D.N.Y Aug. 3, 2018) (Magistrate Judge Kuo), *affirmed*, *Francis v. Ideal Masonry, Inc.*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018) (explaining the different levels of proof required for emotional distress damages). Although the *Miller* Plaintiffs, by contrast, have agreed to produce their complete medical records, their "rolling" production, 28 months in, remains incomplete.

Plaintiffs in both actions have also failed, to date, to produce any of their electronic data, including emails and social media. No vendor was retained by Plaintiffs in the eight months prior to the pandemic to collect electronic data. As of late February 2021, Plaintiffs had still not retained vendors and proposed search terms were only first sent to Arab Bank just days before Thanksgiving. Agreement as to search terms and production of these documents should not be permitted to drag on like the medical records. Plaintiffs should be compelled to produce these documents within the next 60 days.

Individual Responses to the Requests (Requests, Instruction No. 9)

Plaintiffs have only just begun after 28 months to produce individual responses to Arab Bank's Requests "on a rolling basis." As of December 3, 2021, only six Plaintiffs had provided individual responses for the Bank to review, and as of December 8, Plaintiffs could only represent that they expected to substantially complete the production of these documents over the next 60 days. Absent responses from all Plaintiffs, the Bank is unable to determine which, if any, Plaintiffs have completed their production or are still withholding documents based on objections, what those objections may be, what documents are being withheld, or whether further motion practice to compel discovery is required. Plaintiffs should be compelled to complete production of their individual responses within the next 60 days.

**Plaintiffs' Position**

The parties have reached an impasse with respect to just two issues: (1) whether Plaintiffs should be required to produce within the next 60 days documents not currently in their possession; and (2) whether Plaintiffs must provide all responsive ESI in that time frame. Defendant misstates Plaintiffs' position with

---

[2] Plaintiffs' responses to these Requests have already caused Plaintiffs to admit that at least two Plaintiffs are not U.S. nationals. Accordingly, they do not have standing to assert claims under the ATA.



December 27, 2021
Page Three

respect to service of their individual written responses to Defendant's document requests. Plaintiffs have notified Defendant that they will serve all of their written responses within 60 days (*i.e*., by March 8, 2022).

<u>Proof of Standing</u>. While several Plaintiffs (unsurprisingly) do not possess their birth certificates, those Plaintiffs can prove their citizenship through testimony. The Plaintiffs who possess proof of their U.S. citizenship at the time of the relevant attacks have already produced or will shortly provide (in four cases) those documents. The four *Miller* and four *Pam* Plaintiffs who have not thus far been able to locate such documents agree to seek them from government authorities (although they have no obligation to do so) and produce them. Because Plaintiffs cannot control when the government will respond to such requests, Defendant's request that this Court order production of these documents within the next 60 days is unreasonable.

<u>Proof of Damages</u>. *Pam Plaintiffs' Position*. The Bank inaccurately describes the *Pam* Plaintiffs' position regarding their medical histories and improperly seeks to broaden its requests by means of its proposed motion. No *Pam* Plaintiff alleges any physical injury. Thus, after negotiation with Defendant, the *Pam* Plaintiffs will produce the obtainable records related to the entire *25-year* time period that reflect any counseling or medical, psychiatric or psychological treatment the *Pam* Plaintiffs obtained for their alleged injuries. For the same expansive period, the *Pam* Plaintiffs will produce all obtainable records concerning *any* psychiatric or psychological treatment or counseling they received or *any* discussions with medical providers with whom they recall addressing mental health issues.

That production significantly exceeds what the Federal Rules require in these circumstances. As the Bank's document requests acknowledge by seeking only Medical Records "pertaining to any Injury" for which Plaintiffs allege Arab Bank should be held liable (*see* Definitions 6, 10, 12, 13), courts consistently hold that an "emotional distress claim does not … give Defendants an unfettered right to pursue discovery into [plaintiffs'] entire medical history." *Manessis v. N.Y.C. DOT*, 2002 U.S. Dist. LEXIS 17884, at *5 (S.D.N.Y. Sep. 23, 2002) (citing multiple authorities). By now insisting upon the production of all medical records for a time period of up to 25 years regarding any treatment received for any purpose or condition, Defendant improperly seeks to burden the *Pam* Plaintiffs with harassing and time-consuming discovery that bears no relation to the injuries Plaintiffs allege. The inapposite decisions Defendant cites provide no support for its proposed fishing expedition. *See, e.g., Francis,* 2018 U.S. Dist. LEXIS at *28, 32 (merely noting that proof of significant emotional distress "is often corroborated by witnesses **or** evidenced by medical documents") (emphasis added).

*Miller Plaintiffs' Position.* The *Miller* Plaintiffs have produced medical records for the providers that Plaintiffs could recall (*i.e.,* those identified in their responses to the Defendant's interrogatories), with the exception of doctors that could not be located or doctors that stated they had no medical records for the patient or that the records had been destroyed. Medical records that could be obtained have been produced for 19 *Miller* Plaintiffs, and efforts are ongoing to obtain medical records for 12 *Miller* Plaintiffs, four of whom have had already produced some medical records.

<u>ESI</u>. Plaintiffs have undertaken to substantially complete production of their ESI within 90 days after the parties complete their ongoing negotiations concerning ESI search terms. The reason for this time frame, as Plaintiffs' counsel have explained to Defendant's attorneys, is that the "generic" search terms that the parties are currently discussing will need to be customized for each Plaintiff. For example, the



December 27, 2021
Page Four

customized search terms will capture Plaintiff-specific references to the specific relevant attack, including the family members killed and injured at the scene, and the particular Plaintiff's injuries. For many Plaintiffs, the search terms will need to be translated into Hebrew. Plaintiffs have acceded to Defendant's request to review and comment on the Hebrew translation of the "generic" and individualized search terms that will be applied to each Hebrew-speaking Plaintiff's ESI. Additionally, Plaintiffs' counsel will need time to review the search results for responsiveness and privilege.

The process of gathering Plaintiffs' ESI has been complicated by the pandemic, particularly because many Plaintiffs reside in Israel and elsewhere abroad. Government shutdowns, the inability to travel, and other related difficulties have significantly complicated the collection of the Plaintiffs' data. By comparison, it took Defendant 18 months to secure the advice of its regulators abroad that they would adhere to their previously announced refusal to authorize the production of account records related to Defendant's U.S. government-designated terrorist customers. Moreover, in the *Linde* action, the Bank regularly deposed as many as eight plaintiffs per day. Thus, Plaintiffs' productions will not delay the trial in this action, which must await the resolution of issues related to Defendant's longstanding refusal to produce documents related to, among other matters, its many terrorist customers and its transfers to individuals based upon their roles in "martyrdom operations."

Respectfully submitted,

Brett Ingerman

Attachment: Defendant's First Set of Requests for Production to Be Answered By Each Plaintiff Individually, Request Nos. 1, 2, 3, 12 & 13; Definitions 6, 7, 8, 10, 12, 13