# Exhibit 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

| | | |
|---|---|---|
| AHARON MILLER, ET AL., | | |
| | PLAINTIFFS, | Case No. 1:18-cv-02192-BMC-PK |
| - V - | | |
| ARAB BANK, PLC, | | |
| | Defendant. | |

-----------------------------------------------------------------


| | | |
|---|---|---|
| NATHAN PAM, ET AL., | | |
| | PLAINTIFFS, | Case No. 1:18-cv-04670-BMC-PK |
| - V - | | |
| ARAB BANK, PLC, | | |
| | Defendant. | |

-----------------------------------------------------------------

1

# DECLARATION OF AIMAN Y. ODEH

Pursuant to 28 U.S. Code § 1746, I hereby declare as follows:

# INTRODUCTION

1. I have been engaged by counsel for Arab Bank plc ("Arab Bank" or the "Bank"), as an expert on the banking laws and practices of the Hashemite Kingdom of Jordan ("Jordan"), as well as the Jordanian legal system generally.

2. I am an attorney in Jordan since late 1985, and the senior partner in the law offices of Bakr & Odeh with an office in Amman, Jordan.

3. I have a Bachelor of Law Degree from the University of Jordan, Amman, Jordan, and a Masters of Comparative Law Degree from the University of Miami, Miami, Florida.

4. I have been a member of the Jordanian Bar Association since 1985. Since that time, and with exception of the years 1988 - 1990 (during which I was working as legal counsel in Kuwait), 2008 - mid 2010 (during which I was the Minister of Justice) and late 2011 – mid 2012 (during which I was the Minister for Cabinet Affairs and Legislation), I have regularly appeared before the courts of Jordan and arbitral tribunals within and outside Jordan. I have represented the Central Bank of Jordan in various legal matters. I am currently a board member of the Central Bank of Jordan. Additionally, I provide legal services for various Jordanian and non- Jordanian banks operating in Jordan.

5. I am very knowledgeable regarding the laws of Jordan that are relevant to this declaration. In particular, I was a member of the committee that drafted the Banking Law of 2000 and its Amending Law No. 7 of 2019 in addition to the Deposit Insurance Corporation Law of 2000.

6. I was an alternate judge for the Arab Investment Court, which is a part of the Arab League in Cairo. I am an overseas associate at 4 New Square Chambers in London, and a member of the Panels of Arbitrators of the World Bank (International Center for Settlement of Investment Disputes-ICISD).

7. I have previously been a member of various committees concerned with judicial reforms in Jordan.

8. The opinions expressed herein are based on my extensive legal experience and practice, including in particular my firsthand knowledge of matters pertaining to bank secrecy in Jordan.

9. A copy of my resume is attached hereto as Exhibit A.

## SCOPE OF OPINIONS

10. I understand that Arab Bank, a Jordanian public shareholding company, is currently a defendant in the above-captioned civil lawsuit, which was brought by multiple United States citizens ("Plaintiffs") against the Bank in the United States District Court for the Eastern District of New York (the "Court"). I further understand that the litigation relates to injuries allegedly suffered by the Plaintiffs as a result of attacks allegedly committed by Hamas and other organizations which occurred in the State of Israel between September 2000 and December 2004, during the period known as the Intifada Al Quds.

11. It is my understanding that the Plaintiffs have requested the production by the Bank of certain documents or categories of documents relating to certain customers of the Bank and that certain of the documents are located in Jordan. Arab Bank has further informed me that the court will be considering whether to order such disclosure.

12. Accordingly, I have been asked by Arab Bank's counsel to offer my opinion with regard to Jordan's banking laws and practices, and particularly Jordanian bank secrecy law—Jordanian Banking Law, Articles 72-75 or other laws that are applicable in Jordan. I also have been asked to opine on Jordanian law and the Jordanian legal system more broadly in order to provide context for the Bank's inability to comply with Plaintiffs' requests for the production of documents located in Jordan.

13. I am presenting this declaration to assist the Court in connection with the discovery proceedings. I would be pleased to provide any further advice or explanation the Court might wish or to answer any questions the Court might have regarding Jordanian law or the reasons why the privacy rights described herein are so essential to the effective functioning of Jordan's banking system.

# **BACKGROUND**

14. Jordan regulates financial institutions through a comprehensive legal framework, including anti-money laundering and counter-terrorist financing measures. Penal Code No. 16 of 1960, which replaced the 'Provisional' Penal Code No. 85 of 1951, as amended by Provisional Law No. 54 of 2001 which was replaced by the Amending Law No. 16 of 2007, arts. 147-149 and as further amended by the Amending Law No. 27 of 2017, arts. 147 & 148; Anti-Terrorism Law No. 55 of 2006 as amended by the Amending Law No. 18 of 2014; Anti-Money Laundering Law No. 46 of 2007, as amended by (i) Provisional Law No. 8 of 2010 which inserted several amendments including, *inter alia*, amending its title to become "Anti-Money Laundering and Counter-Terrorist Financing Law" ("AMLCTFL") and was replaced by the Amending Law no. 31 of 2015, and by (ii) Provisional Law no. 31 of 2010 which was repealed on 16 June 2015; the AMLCTFL was replaced by Anti-Money Laundering and Counter-Terrorist Financing Law No. 20 of 2021; see also Central Bank of Jordan's Instructions for Anti-Money Laundering and Terrorism Financing No. 14 of 2018 which replaced each of the Central Bank of Jordan's Circular no. 10/2/4/8874 dated 3 July 2016 and Instructions No. 51 of 2010, which in turn replaced Instructions No. 48 of 2010, which in turn replaced Instructions No. 48 of 2008, which in turn replaced Instructions No. 29 of 2006, which in turn replaced Instructions No. 10 of 2001.

15. Jordan is also a party to the International Convention for the Suppression of the Financing of Terrorism, Dec. 9, 1999, 2178 U.N.T.S. 229 (the "Convention") and incorporated the Convention's provisions into its Law No. 83 of 2003. Obligations under the Convention include the sharing of information in connection with criminal investigations or proceedings by government parties in which circumstances, it provides that a signatory "*may not refuse a request for mutual legal assistance on the ground of bank secrecy.*"

16. The concept of bank secrecy within Jordanian society, and in general in many other countries in the Middle East is an extension of the idea that one's bank account and financial information is an essential part of the privacy rights of every citizen. Many of these laws which were formally enacted decades ago (in the case of Jordan starting from 1951) were not meant to shield information which could endanger the safety of other citizens but rather to enhance trust and confidence in the banking system for a population which customarily dealt in cash transactions. Indeed, there are certain very limited circumstances under which such information may be disclosed, such as

4

government -to- government cooperation in criminal investigations or proceedings addressed in the Convention.

17. The United States has recognized that *"The United States has no closer ally than Jordan in the war on terror and Jordan will find no better friend than the United States in this difficult hour."*[1] The United States also has stated to courts in the past that the Bank serves as *"a constructive partner with the United States in working to prevent terrorist financing."*[2]

18. Jordan routinely complies with state-to-state requests in criminal matters as they are tempered by cooperation between government officials who are aware of their sensitivities. However, discovery requests in connection with litigation of civil claims brought by private litigants seeking monetary damages, such as the claims against Arab Bank, do not fall within the categories within the exceptions to the law as more fully described below.

---

[1] Remarks by Secretary of State Rice on the Terrorist Bombings in Jordan, Nov. 9, 2005. See U.S. Department of State website at https://www.state.gov.
[2] See U.S. amicus curiae brief filed with the U.S. Supreme Court in *Arab Bank, plc v. Courtney Linde, et al.* [No. 12- 1485]

5

# **JORDANIAN BANK SECRECY LAW**

19. The privacy of Jordanian citizens has long been a settled principle of Jordanian culture. In this regard, Article 355(3) of the Jordanian Penal Code for the year 1960 states that a person who reveals confidential information without a justified reason of which he became aware of through his/ her profession, is subject to imprisonment for a period of up to three years. The issue of privacy becomes even more sensitive when it is related to an individual's financial transactions.

20. Banks operating in Jordan have historically maintained as confidential the account records of their customers and any banking information, and have had to comply with a number of laws touching on the issue of bank secrecy -- such as the prohibition against disclosure of bank account information ***even to Jordanian tax authorities***. Article 22(a) of the Income Tax Law No. 57 for the year 1985 entitles the Director General of the Income Tax Department to obtain any information relating to any taxpayer from any person whether in the private or public sector ***with the exception of information relating to banking transactions***. In order to obtain information relating to banking transactions, a decision has to be taken for this purpose from a competent judicial authority.4

21. Furthermore, Article 45(b)4 of the Central Bank of Jordan Law for the year 1971 states that all information submitted to the Central Bank of Jordan will be considered confidential. In addition, Article 23(b) of the said Law obliges all employees of the Central Bank of Jordan to take an oath to preserve the secrecy of all decisions, actions and transactions resulting from the activities of the Central Bank of Jordan.

22. In 2000, the Government of Jordan determined that there should be a comprehensive banking statute, setting forth criminal penalties for any breach of confidentiality of the records of bank clients. Further, this legislation addressed ambiguities with respect to a bank's obligations, for example where a court would issue an ex parte order to disclose bank records to a third-party seeking information on assets of another in anticipation of litigation (this practice was prohibited by the new law). A comprehensive law, with criminal penalties, was also important to show the international community that Jordan honors the privacy of bank customers. Finally, the law codifies the long-standing interest in the Jordanian culture of preserving individual privacy.

---

3 A decision from a "competent judicial authority" means an order either from a court or a prosecutor in case of criminal matters.

4 This was paragraph (c) of Article (45) of the Central Bank of Jordan Law of 1971 which was first inserted into the Central Bank Law through the Amending Temporary Law No. 19 of 1979 that was later replaced by the Amending Law No. 16 of 1992. Thereafter, the Amending Law No. 24 of 2016 changed the numbering of this paragraph from (c) to (b).

23. Articles 72 through 75 of the new Banking Law No. 28 of 2000 (the "Banking Law") set forth the governing bank confidentiality rules applicable in Jordan.

24. Article 72 states: "*A bank shall observe full confidentiality regarding all accounts, deposits, trusts, and safe-deposit boxes of its customers. It shall be prohibited from providing directly or indirectly any information thereon except upon a written consent of the owner of such account, deposit, trust or the safe-deposit box, or an heir of his, or upon a decision issued by a competent judicial authority in an existing litigation, or due to one of the permissible situations pursuant to the provisions of this law. This prohibition shall remain in effect even if the relationship between the bank and the client has terminated for any reason whatsoever.*"

25. Article 73 states: "*All present and former administrators of the bank shall be prohibited from providing any information or data on the clients or their accounts, deposits, trusts, safe-deposit boxes, or any of their transactions, or disclosing or enabling others to have access to such information and data in situations other than those permitted under this law. Such prohibition shall apply to anyone who by virtue of his profession, position or work, directly or indirectly, may have access to such information and data, including employees of the Central Bank and auditors.*"

26. Article 74 sets forth certain limited exceptions to application of the bank secrecy provisions: *"The provisions of Articles 72 and 73 of this law shall not apply to the following:*

    a) *The duties provided in law to be performed by the auditors appointed by the general assembly of a bank or by the Central Bank pursuant to the provisions of this law.*

    b) *The acts and measures undertaken by the Central Bank pursuant to this law or the Central Bank Law.*

    c) *The issuance of a certificate or statement on the reasons for the refusal to cash any check upon request of an entitled person.*

    d) *The exchange of information pertaining to clients on their debit balances in order to provide necessary data to ensure safety of credit granting, checks retained unpaid or any other act deemed necessary by the Central Bank due to its relevance to the safety of banking. It is provided that the exchange of information is between banks, the Central Bank or any other companies or entities approved by the Central Bank for the purpose of facilitating the exchange of such information.*

    e) *Disclosure by a bank in full or in part, of statements on transactions of a client necessary to substantiate a claim of the bank in a judicial dispute between the bank and the client in respect of such transactions.*"

7

27. Article 75 sets forth the criminal penalties for violation of the bank secrecy provisions: "*A person who has violated the provisions of Article 72 or Article 73 of this law shall be punished with imprisonment for a period not less than six months, or a fine not less than ten thousand Dinars and not more than fifty thousand Dinars, or with both penalties.*"

28. In addition to Articles 72 through 75 of the Banking Law, Article 88 of that statute provides for additional sanctions to be imposed on any bank or any of its employees that violates the Law, including the bank secrecy provisions:

    **Article 88 states:**

    a. *The Central Bank may take any measure or impose any penalty of those provided for in paragraph (b) of this Article in the cases where it is realized that a bank or any of its administrators has committed any of the following violations:*

    > i. *Contravention of the provisions of this law or any regulations, instructions, or orders issued pursuant thereto.*
    >
    > ii. *Conducting by the bank or one of its subsidiaries unsound and unsafe operations against the interest of shareholders, creditors or depositors thereof.*

    b. *Subject to the provisions of paragraph (d) of this Article, if any of the violations provided for in paragraph (a) of this Article is committed, the Governor may take one or more of the measure or impose one or more of the penalties provided below:*
    > i. *Addressing a written warning.*
    >
    > ii. *Instructing the bank to submit a satisfactory program of measures to be taken thereby to eliminate the violations and rectify the situation.*
    >
    > iii. *Instructing the bank to cease certain activities, or forbidding the bank from distributing dividends.*
    >
    > iv. *Imposing a fine on the bank not exceeding five hundred thousand Jordanian Dinars[5].*
    >
    > v. *Instructing the bank to temporarily suspend from service any administrator, other than a member of its board of directors, or to dismiss such administrator, depending on the gravity of the violation.*
    >
    > vi. *Requesting the bank to pursue any of its administrators in accordance with due process of law.*
    >
    > vii. *Removing the chairman or any member of the board of directors of the bank.*

---

[5] Such amount, for each breach, is equivalent to approximately $700,000.

      *viii. Dissolving the board of directors of the bank and placing the bank under the management of the Central Bank for a period not to exceed twenty-four months. The Governor may extend the said period as necessary.*

      *ix. Revoking the license of the bank.*

29. The bank secrecy provisions of the Banking Law govern the disclosure of any bank information, statements, or documents regarding its customers' accounts, deposits, trusts, or safe-deposit boxes. Additionally, any request for Arab Bank to authenticate bank client records produced by a party other than the accountholder would be deemed to be a disclosure of confidential records by the Bank and would subject Arab Bank and its employees to criminal liability if such disclosure was made in violation of the Banking Law.

30. The bank secrecy provisions apply to banks, all present and former employees of banks, including all lower level employees up to and including the general manager, and all members of the boards of directors of banks. Additionally, this rule applies to anyone who, by virtue of his profession, position or work, may directly or indirectly access bank customer information, such as the employees of the Central Bank of Jordan and auditors of banks.

31. The bank secrecy provisions also remain in force even after the customer relationship has ended, in accordance with the express terms of Article 72.

## **EXPLANATION OF EXCEPTIONS TO BANK SECRECY**

32. The only exceptions to the banking secrecy provisions are found in Article 74 of the Banking Law, as noted above. None of the statutory exceptions stated in Article 74 apply to permit Arab Bank to disclose confidential bank information on the basis of a United States District Court discovery order.

33. Article 72 sets out two instances in which the application of the banking confidentiality rules may be excluded, namely, (i) upon the written consent of the customer involved or one of his heirs or (ii) "*upon a decision issued by a competent judicial authority in a current litigation.*" The latter exclusion usually applies when either the customer or the bank is not a party to the litigation—that is, when one party is not suing the other party. If both the bank and its customer are parties to the litigation, then the bank may rely on the exception included in paragraph (e) of Article 74.

9

34. The requirements for the judicial decision exclusion of Article 72 to apply are as follows:

    i. That court proceedings be pending before the courts [6]; and

    ii. That a decision for the lifting of the confidentiality obligation be issued by a competent judicial authority.[7]

35. The decision ordering the disclosure can be an interim or provisional ruling issued upon the request of one of the parties of a lawsuit, to enable it to collect evidence for the purpose of the lawsuit or for the purpose of attaching the assets of the other party. Needless to say, the judicial authority referred to above, has full discretion to decide whether it is necessary to issue the disclosure order. The judicial authority should be convinced that the information and documents sought are relevant and necessary for the purpose of the lawsuit. If it is the customer who is not a party to the lawsuit, the court usually requires more convincing arguments of the relevance of the customer information and documents to the subject matter of the lawsuit.

36. A bank client's right to privacy may be relinquished by consent of the client. In this case, the bank is required to strictly comply with the terms of the consent given by its client. Since such waiver is an exception per se, it should be express and clear and should be interpreted narrowly under the general principles of interpretation under Jordanian law. It follows that if the waiver is given in relation to a specific document to be disclosed to a specific party, this means that the bank is prohibited from future disclosures of such document to other parties and also from disclosure of other documents to that party.

---

[6] For the avoidance of doubt, references to "the courts" mean the "Jordanian" courts.
[7] For the avoidance of doubt, references to a decision of a "competent judicial authority" means either an order from a court or an order from a prosecutor in case of criminal matters.

# PENALTIES FOR VIOLATING BANK SECRECY

37. The penalties for the violation of the banking secrecy provisions of the Banking Law are criminal in nature. A violator of the banking confidentiality rules may be imprisoned for a period of not less than six months or be subject to a fine of not less than ten thousand Dinars but not more than fifty thousand Dinars, or be subject to both the imprisonment and the fine. The imprisonment period for such a crime may be up to three years under the general principles of the Jordanian Penal Code of 1960.

38. Additionally, under the general principles of the Jordanian Civil Code of 1976, the customer, i.e., the injured party, may sue the bank and the violator(s), for compensation as a result of the violation of the banking confidentiality rules. This civil claim may be filed as an ancillary to the criminal proceedings, or through a separate civil lawsuit before the Jordanian courts.

39. Due to the strict penalties imposed on banks and their employees with regard to any breach of confidentiality of the records of the banks' clients, such banks and employees are very cautious as to their compliance to such confidentiality rules.

# JORDANIAN LAW AND PROCEDURE REGARDING PRODUCTION OF DOCUMENTS

40. To the best of my knowledge, there is no judicial treaty between Jordan and the United States of America for the purpose of the enforcement of the judgments and orders issued in civil cases by U.S. courts inside Jordan or vice versa. Therefore, a U.S. judgment or order cannot be enforced in Jordan unless it has become enforceable pursuant to the applicable laws of Jordan.

41. The only applicable law in this respect is the Foreign Judgments Enforcement Law of 1952. According to this law, a judgment issued by a foreign court in civil proceedings and ordering the payment of an amount of money or concerning a moveable asset may be enforced in Jordan by filing a motion for this purpose upon the request of the judgment creditor before the competent Jordanian court against the judgment debtor. Interim or provisional rulings issued by foreign courts during the trial and before the issuance of a judgment on the merits, are not enforceable under the Foreign Judgments Enforcement Law of 1952 since they are not judgments on the merits for the payment of an amount of money or concerning a moveable asset.

## APPLICATION OF JORDANIAN LAW
## TO THE DOCUMENTS SOUGHT IN THIS CASE

42. In my opinion, a U.S. court discovery order compelling disclosure of bank documents in Jordan cannot be enforced per se as it will be in violation of the laws of Jordan and the Public Order. The applicable laws of Jordan for enforcing foreign judgments do not allow enforcement of an order or an interim judgment issued by a U.S. court for the disclosure of confidential bank customer information.

43. Accordingly, Arab Bank cannot rely on such an order to disclose customers' confidential information and documents relating to its banking operations in Jordan. If Arab Bank did so, then the bank, and the employees involved, would be subject to the criminal penalties referred to in Article 75 of the Banking Law and, additionally, may be sued for compensation by the injured customer pursuant to the general principles of the Jordanian Civil Code of 1976.

Executed on: March 3, 2022

Aiman Y. Odeh

**AIMAN ODEH**
4 New Square
Lincoln's Inn
London WC2A 3RJ
Tel: +44 (0) 20 7822 2000
Mobile +962 79 5542632
UK Mobile +44 (0) 75826 49596
Email: a.odeh@4newsquare.com

An overseas associate at 4 New Square Chambers, Aiman Odeh has been practising law in the Middle East region since 1985. He currently practises in Jordan. Aiman is well-versed in all forms of dispute resolution, especially in the fields of investment, concession agreements, banking, construction, agency and licensing agreements, securities, and regulatory matters. He also has extensive experience in investment disputes and ICSID and OIC arbitration, in addition to ICC and ad hoc arbitration. He is a current member of the Panels of Arbitrators of the World Bank (International Center for Settlement of Investment Disputes ICISD).

Aiman held cabinet positions in the Jordanian Government between 2007 and 2012 and served as the Minister of Justice and Minister for Prime Ministry Affairs & Legislation. He also served as Senator. He is a current member of the Board of Directors of the Central Bank of Jordan. Accordingly, he has significant experience in constitutional matters and judicial reforms and has given advice on these matters to other Arab countries.

Aiman is recognised by the leading independent legal directories for his skills and expertise. The Legal 500 lists him as one of only five Band 1 Leading Individuals for Jordan – Dispute Resolution, and he is ranked Band 1 in the same category in Chambers Global. Chambers says that he "*is commended equally for his Jordanian and international experience*", and that "*in finance disputes he is described as "expert on all banking knowledge" and "probably the best litigator in town.*"". The Legal 500 describes him as an "*eminent figure in the market*".

Aiman is well-acquainted with the Foreign Sovereign Immunities Act (FSIA) and its exceptions, in addition to the anti-terrorism acts.

He is also knowledgeable about the rules of Islamic Doctrine, upon which the civil laws applicable in many Middle East jurisdictions were founded.

Aiman is fluent in Arabic and English.

1

**PROFESSIONAL RECORD**

| | |
|---|---|
| March 2019 – present | Overseas associate at 4 New Square Chambers, London |
| Mid-2012 – present | Senior partner at Bakr & Odeh Law Firm, Amman, Jordan |
| 2011 – Mid-2012 | Minister for Cabinet Affairs and Legislation, Jordan |
| 2007 – 2010 | Minister of Justice, Jordan |
| 1990 – 2007 | Attorney at Law practising before the Jordanian courts and national and international arbitral tribunals |
| 1989 – 1990 | Legal Consultant in Kuwait |
| 1984 – 1988 | In-house Counsel at the Arab Bank, Head Office, Amman, Jordan |

**PRIVATE PRACTICE EXPERIENCE**

- **Arbitration & Mediation Experience**
  Represented governments, public institutions, public shareholding corporations and investors in mediation and arbitration cases before the International Centre for Settlement of Investment Disputes (ICSID) at Washington D.C., International Chamber of Commerce (ICC) at Paris, Permanent Court of Arbitration (PCA) at The Hague, and OIC (Organisation of Islamic Cooperation) at Jeddah, Saudi Arabia.

  **Pending International Arbitration Matters:**

  - *The National Electric Power Company* (Jordan) vs. *Attarat Power Company* (Jordan); ICC Case No. 25917/AYZ; the place of arbitration is London.
    Acting as counsel for the National Electric Power Company.

  - *The Government of the Hashemite Kingdom of Jordan* vs. *Attarat Power Company* (Jordan); ICC Case No. 25916/AYZ; the place of arbitration is London.
    Acting as counsel for the Government of the Hashemite Kingdom of Jordan.

  - *Omar Bin Sulaiman Abdul Aziz Al Rajhi vs. The Sultanate of Oman in the matter of arbitration under the Agreement on Promotion, Protection and Guarantee of Investments among the Member States of the Organisation of the Islamic Conference and under the UNCITRAL Arbitration Rules 2010*; PCA Case No. 2017-32; the place of proceeding is London.

> Acting as counsel for Omar Bin Sulaiman Abdul Aziz Al Rajhi.

- *TRASTA Energy Limited v. The State of Libya in the matter of arbitration under the Agreement on Promotion, Protection and Guarantee of Investments among the Member States of the Organisation of the Islamic Conference;* PCA Case No. 2020-09; the place of proceeding is Paris.
  Acting as counsel for TRASTA Energy Limited.

- *Libyan Emirates Oil Refinery Company* (United Arab Emirates) vs. *National Oil Corporation* (State of Libya); ICC Case No. 24408/AYZ; the place of proceeding is Paris.
  Acting as counsel for Libyan Emirates Oil Refinery Company

- *TRASTA Energy Limited* (United Arab Emirates) vs. *National Oil Corporation* (State of Libya); ICC Case No. 24722/AYZ; the place of proceeding is Paris.
  Acting as counsel for TRASTA Energy Limited.

**Concluded International Arbitration Matters:**

- *Fouad Alghanim & Sons Co. for General Trading & Contracting, w.l.l. and Mr. Fouad Alghanim vs. the Government of the Hashemite Kingdom of Jordan before the International Centre for Settlement of Investment Disputes*; ICSID Arbitration Case no. ARB/13/38 and subsequent annulment proceedings; the place of proceeding ws London.
  Acted as counsel for the Government of the Hashemite Kingdom of Jordan.

- *Central Electricity Generating Company vs. National Electric Power Company*, an arbitration case under the UNCITRAL rules; the place of arbitration was Geneva.
  Acted as a party-appointed arbitrator.

- *Italstrade S.p.A. & Salini Costruttori S.p.A. (Italian) vs. the Government of the Hashemite Kingdom of Jordan before the International Centre for Settlement of Investment Disputes*; ICSID Arbitration Case no. ARB/02/13; the place of proceeding was Paris.
  Acted as counsel for the Government of the Hashemite Kingdom of Jordan.

3

- **Litigation Experience:**
  Has represented a large number of foreign and local companies and banking institutions in a wide range of major cases (e.g., in relation to agency contracts, construction and supply contracts, banking transactions, insurance, administration disputes and general contracting).

**LEGISLATION EXPERIENCE**

Banking Law, Deposit Insurance Corporation Law, Islamic Sukuk Law, Income Tax Law, Sales Tax Law, Development and Free Zones Law, Aqaba Special Economic Zone Law, Social Security Law, Anti-Money Laundering Law, Economic Crimes Law, Penal Code, various Judicial Reform Laws & Regulations, and Constitutional Court Law.

**JUDICIAL REFORMS**

During Aiman's tenure at the Ministry of Justice in Jordan, the Ministry implemented many judicial reforms, especially during 2008 and 2009, in addition to other reforms and projects that were reflected in the Judicial Development Strategy of 2010-2012. This strategy included many plans and projects relating to the restructure of the judiciary system and the administration of the justice process in the country, in addition to the revision of the rules and procedures of civil and criminal trials.

In 2016, Aiman was a member of the Royal Committee for Judicial Reforms. The recommendations of this Committee were adopted and, as a result, 11 amending laws and four regulations relating to the Judiciary and court procedures were issued.

**APPOINTMENTS AND COMMITTEE WORK**

| | |
|---|---|
| 2014 – 2018: | Member of the Board of Trustees of the National Centre for Human Rights, Amman, Jordan |
| 2016 & 2017: | Member of the Royal Committee for Judicial Reforms, Amman, Jordan |
| 2014 –2017: | Member of the Board of Trustees of Mu'tah University |
| 2010 & 2011: | Senator and member of the Senate's Legal Affairs Committee |
| 2006: | Member, Economic Reform Committee, All-Jordan Forum, Jordan |
| 2005: | Member, Committee for Legislative and Judicial Reform, National Agenda, Jordan |
| 2004 – 2006: | Judge, Arab Investment Court, Arab League, Cairo, Egypt |
| 2003: | Member, Anti-Corruption Committee, Amman, Jordan |
| 2000: | Member, Committee for Civil Procedure Reform, Amman, Jordan |

4

## **EDUCATION**

1984   **University of Miami, Miami, Florida, USA.**
Masters of Law.

1982   **University of Jordan, Amman, Jordan.**
Bachelor of Laws.

## **LANGUAGES**

Arabic and English.