# Exhibit 2



CORTBAOUI & KANAAN
LAW FIRM

## DECLARATION OF LEBANESE BANK SECRECY EXPERT

I, Chakib Cortbaoui, hereby declare under penalties of perjury:

1- My name is Chakib Cortbaoui. I am a lawyer practicing in Beirut, Lebanon and a member of the Beirut Bar Association since 1967, registration No. 2099. Currently, I am a senior partner at Cortbaoui & Kanaan law firm. I was elected president of the Beirut Bar Association for a two-year term in 1995, and I served as Minister of Justice of Lebanon from June 2011 to February 2014.

2- Since 1979 I have been acting as legal advisor to one of the largest financial institutions in Lebanon and have represented that bank in all legal matters in which it is involved. I also have represented other Lebanese banks in connection with various banking matters. In addition to advising individual banks on legal matters, I acted as legal counsel for the Association of Banks in Lebanon in 2020 and 2021. As a result, I have dealt on many occasions with issues arising out of the application of bank secrecy laws that are applicable in Lebanon. I have not acted as counsel for Arab Bank at any time.

3- I have been asked by counsel for Arab Bank, plc to provide an opinion concerning Lebanese bank secrecy laws in support of Arab Bank's motion for protective order as a result of the Bank's inability to breach the banking laws of Lebanon to comply with the plaintiffs' request in litigation against Arab Bank in the federal court in Brooklyn, New York. I make this Declaration, and offer the opinions contained herein, based on my personal knowledge of the laws of Lebanon and my professional experience.

4- For the reasons set forth below, it is my opinion that Lebanese bank secrecy laws prohibit Arab Bank from disclosing to third parties any confidential information in its possession in Lebanon relating to its customers, including their names, assets and/or any facts regarding their account transactions, without their consent. As the disclosure is requested in connection with a civil lawsuit against Arab Bank brought by plaintiffs unrelated to the accountholders, none of the exceptions to Lebanon's bank secrecy laws apply; and, unless the Bank obtains waivers from the customers whose confidential information is sought, or the SIC (as defined in paragraph 18 below) agrees to lift bank secrecy laws protecting such confidential information, the Bank may not lawfully disclose such information.

A. **Lebanese Bank Secrecy Laws**

5- Until the recent collapse of the economy in Lebanon, Beirut was one of the main centers of international trade and business and the country was known internationally for its sophisticated banking sector.

6- Lebanon has had laws governing bank secrecy since September 3, 1956 (the **Law**). Article 2 of the Law prohibits directors and employees of banks in Lebanon, as well as any person who might have access to registers, operations or correspondence of banks, to disclose to third parties the names of bank customers, their assets and facts of their account transactions. Such disclosure is prohibited to any person or authority, including to an administrative, military or judicial authority. Specifically, Article 2 of the Law states the following:

> *"Managers and employees of the banking establishments referred to in article 1 as well as all persons who, through their position or function, by*

> *one means or another, have knowledge of the bank's books, operations and correspondence, are bound to **absolute secrecy** in favor of the bank's clients and may not disclose to anyone whatsoever, whether a private individual or an administrative, military or judicial authority, the names of clients, their assets and facts of which they are aware, except with the written authorization of the client or his heirs or legatees, or in case he is declared bankrupt, or in the event of a dispute between the client and the bank resulting from banking relations."*

7- It should be noted that the obligation of bank secrecy covers the accounts of bank customers and all matters that relate to such customers (New Company for Bank of Lebanon and Syria vs. the Lebanese State, State Council, March 24, 1971, Al Adl Law Review, 1971, Volume 3, Page 378).

8- In addition, Article 2 of the Law imposes on banks and their employees, whatever their position, absolute confidentiality in the treatment of the relationship between the bank and its clients and in all banking transactions. Furthermore, Article 2 covers all the customers of the bank whether they are regular clients or one time clients (Lebanese State vs. Bank of Industry and Labor, State Council, April 7, 1986, Administrative Law Review, 1987/1988, Volume 3, Page 100; Lebanese State vs. Trad-Credit Lyonnais Bank, State Council, April 8, 1987, Administrative Law Review, 1989, Volume 4, Page 115).

9- The obligations under Lebanese bank secrecy laws that all banks operating in Lebanon and their employees are required to abide by is also referred to in the Lebanese Code of Money and Credit (article 139) enacted on August 1, 1963.

3

10- Bank secrecy obligations under the Law survive the closure of a bank account, and such obligations cannot be "waived" in any way by the bank, as the right to secrecy benefits is held by the bank's customer.

B. **Importance and relevance of Bank secrecy in Lebanon**

11- The Law, which imposes strict obligations of bank secrecy, has been rigorously observed by the banking industry, and provides to bank customers the assurance of privacy in their financial affairs. These principles are recognized by Lebanon's constitution referring to the adherence by Lebanon to the Universal Declaration of Human Rights which adopt the right to privacy and are embedded in Lebanon's culture and heritage, which places significant value on, and respect of, personal privacy.

12- The origin of bank secrecy emerged from the concern of individuals living in small communities that disclosure of their wealth or business activities would make them vulnerable to others in the community. The concept of bank secrecy was based on protecting privacy rights and was not based on assisting customers hide illicit activities.

C. **Penalties for Violation of Bank Secrecy**

13- The importance of bank secrecy in Lebanon is further reflected in the penalties that may be imposed for any violation of the Law. Article 8 of the Law provides that any person that breaches the Law's secrecy obligations shall be guilty of an offense for which that person may be imprisoned for a period between three months and one year. Article 8 further provides that an attempted transgression of the Law is subject to the same sanctions.

14- Banks and their employees that breach their bank secrecy obligations may also be held liable for damages towards the customers whose confidential information was disclosed in breach of the law by the application of tort liability as set out in the Code of Obligations and Contracts.

15- In addition, persons that are convicted of the breach of the bank secrecy obligations set out in the Law will be prohibited from incorporating, managing and being employed by a bank, in accordance with the provisions of Article 127 of the Code of Money and Credit.

D. **Exceptions to bank secrecy obligations set out in the Law**

16- The Law does provide for limited exceptions to bank secrecy, namely in the following instances:

   a. if a demand for information is issued by a Lebanese judicial authority in an action for illicit enrichment brought pursuant to law No. 189 dated October 16, 2020;

   b. if a request for information concerning debtor accounts is made by another bank bound by the same bank secrecy obligations, in order to protect the requesting bank's investments in cases such as the verifications of background check of a given common customer. This exchange among banks must be dealt under the seal of secrecy;

   c. if the bank customer (or his/her heirs or legatees) expressly consents in writing to disclosure;

   d. if the bank customer is declared bankrupt; and

   e. if there is a legal dispute before courts between a bank and its customer in connection with their banking relationship.

- - 5

### E. Exceptions to bank secrecy provided in the AML/CFT Law

17- Recognizing the potential for bank secrecy to conceal illicit funds derived from illegal acts such as money laundering, terrorist acts and the financing of such acts or terrorist organizations, Law No. 44 dated November 24, 2015 on Fighting Money Laundering and Terrorism Financing (amending Law No. 318 dated April 20, 2001 on Fighting Money Laundering) (**Law No. 44**) provides for the possible lifting of bank secrecy when accounts are suspected of being used for money laundering or the financing of terrorism.

18- Pursuant to Article 6 of Law No. 44, an independent authority with judiciary powers, the "Special Investigation Commission" (**SIC**), was created on April 20, 2001 with the authority to investigate alleged money laundering or terrorist financing operations and authorize the disclosure of bank account information which is otherwise confidential. The lifting of bank secrecy may be made in favor of the competent Lebanese judicial authorities and the Higher Banking Commission on accounts or transactions suspected to be related to money laundering or terrorist financing.

19- If the SIC decides to lift bank secrecy in respect of bank accounts, it shall send a certified true copy of its decision to the Public Prosecutor at the Court of Cassation, to the Higher Banking Commission, to the party whose account in being investigated, and to the local or foreign bodies concerned with the Commission's decision.

20- In the present case, on September 28, 2020, Arab Bank addressed a letter to the SIC informing it of a pending lawsuit brought by Aharon Miller, et al. against Arab Bank in the United States District Court for the Eastern District of New

York (the **New York Court**) and requested the SIC to inform it whether the bank was authorized to disclose the account information ordered to be disclosed by the Hon. Judge Peggy Kuo of the New York Court.

21- On November 5, 2020, the President of the SIC and Governor of the Central Bank of Lebanon replied to the abovementioned letter by stating that the request of Arab Bank is covered by bank secrecy provisions of the Law and as such, the bank may only disclose the requested documents and information to the New York Court in accordance with applicable Lebanese laws.

22- Based on our analysis of the applicable Lebanese laws described above, the decision of the SIC is, in our opinion, consistent with the requirements of the applicable laws on bank secrecy. Accordingly, disclosure of such documents without the consent of the accountholder must rely on one of the following exceptions.

F. **Exceptions to bank secrecy provided in the Law governing the Exchange of Information for Tax Purposes**

23- Law No. 55 dated October 27, 2016 on the Exchange of Information for Tax Purposes (**Law No. 55**) aims at applying and enforcing the provisions of the agreements related to the exchange of information for tax purposes to which Lebanon is a party (the **Agreements**) and compelling the disclosure of such information in application of the aforementioned Agreements. In this context, it should be noted that Lebanon is party to several double taxation treaties as well

as the Multilateral Convention on Mutual Administrative Assistance in Tax Matters and the Multilateral Competent Authority Agreement.

24- Law No. 55 repealed a previous law No. 43 issued on November 24, 2015 on the exchange of tax information (**Law No. 43**). It is worth noting that in application of Law No. 43, the Central Bank of Lebanon issued basic circular No. 138 (Basic Decision No. 12309) on August 5, 2016 on the Exchange of Tax Information covered by Bank secrecy pursuant to which, it required banks and financial institutions to implement the appropriate administrative and technical measures required to provide the SIC with the information that the concerned foreign authorities request from the Lebanese Ministry of Finance regarding the accounts of residents in the requesting countries.

G. **Exceptions to bank secrecy provided in the United Nations Convention against Corruption**

25- By virtue of Law No. 33 dated October 16, 2008, parliament authorized the government of Lebanon to enter into the United Nations Convention against Corruption adopted by the UN General Assembly resolution 58/4 of 31 October 2003 (the **Convention**).

26- According to article 40 of the Convention, each state party shall ensure that, in the case of domestic criminal investigations of offences established in accordance with the Convention, there are appropriate mechanisms available

within its domestic legal system to overcome obstacles that may arise out of the application of bank secrecy laws.

27- Further, pursuant to article 31 of the Convention relating to freezing, seizure and confiscation of proceeds of crime derived from offences established in accordance with the Convention or property used in such offences, each state party shall empower its courts or other competent authorities to order that bank, financial or commercial records be made available or seized and such state party shall not decline to act under the aforementioned provisions on the ground of bank secrecy. It should also be noted that the foregoing principle also applies in the context of article 55 of the Convention relating to international cooperation for purposes of confiscation.

28- Finally, according to article 46 of the Convention relating to mutual legal assistance which shall be afforded by state parties in investigations, prosecutions and judicial proceedings in relation to the offences covered by the Convention, states parties shall not decline to render mutual legal assistance pursuant to this article on the ground of bank secrecy.

H. **Principles of International Judicial Cooperation and Bank Secrecy**

29- Except for some specific international conventions signed by the Lebanese state, such as with France, Lebanese law does not contain any provision regulating the activities of judicial cooperation between the Lebanese authorities and foreign authorities. There is no international convention between Lebanon and the United States regulating the requests for judicial cooperation. In the absence of any international convention entered into with the requesting foreign state, the general principles in the international judicial cooperation field are applied.

However, such requests by the foreign state involve an investigation or prosecution of criminal activity by a foreign sovereign and do not involve civil actions brought by private litigants seeking monetary damages.

30- Based on all the above, Arab Bank cannot comply with the US court order to disclose customer's information except in circumstances as described above.

I certify that my professional legal opinions in this matter are true and correct to the best of my knowledge.

Beirut, 14 February 2022

Chakib Cortbaoui, Esq.

*[signature]*