# Exhibit 8

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF NEW YORK
 2

 3   ----------------------------------X
                                       :
 4   AHARON MILLER, et al.             :
                                       :   18-CV-02192 (PK)
 5                   Plaintiffs,       :
                                       :
 6              v.                     :   225 Cadman Plaza East
                                       :   Brooklyn, New York
 7   ARAB BANK, PLC,                   :
                                       :   September 24, 2019
 8                   Defendant.        :
     ----------------------------------X
 9   PAM, et al.                       :
                                       :
10                   Plaintiffs,       :
                                       :
11              v.                     :   18-CV-04670 (PK)
                                       :
12   ARAB BANK, PLC,                   :
                                       :
13                   Defendants.       :
     ----------------------------------X
14

15       TRANSCRIPT OF CIVIL CAUSE FOR PRE-MOTION CONFERENCE
                   BEFORE THE HONORABLE PEGGY KUO
16                 UNITED STATES MAGISTRATE JUDGE

17
     APPEARANCES:
18
     For the Plaintiffs:        GARY OSEN, ESQ.
19                              AARON SCHLANGER, ESQ.
                                ARI UNGAR, ESQ.
20                              Osen, LLC
                                2 University Plaza
21                              Suite  201
                                Hackensack, New Jersey 07601
22
                                PATRICK L. ROCCO, ESQ.
23                              Fleischman Bonner & Rocco, LLP
                                565 Fifth Avenue, Seventh Floor
24                              New York, New York 10017

25
```

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1          And the defendants?

2          MR. SIEGFRIED:  Good morning, Your Honor.  Jonathan

3  Siegfried for the defendant Arab Bank.

4          MR. PECK:  Andrew Peck, DLA Piper, for Arab Bank.

5          MR. INGERMAN:  Good morning, Your Honor.  Brett

6  Ingerman for Arab Bank.

7          THE COURT:  And I had a couple of other names,

8  Jessica Masella and Lane McKee.

9          MS. MASELLA:  Good morning, Your Honor.  Jessica

10  Masella for Arab Bank.

11          THE COURT:  Why are you not at counsel table?

12          MR. MCKEE:  Good morning, Your Honor.  Lane McKee

13  for Arab Bank.

14          THE COURT:  Okay.  Are you representing the

15  defendants?  There is no reason for counsel not to be at

16  counsel table, right?  What's the reason for that?  Come join

17  the table.

18          All right.  So I have scheduled this at the request

19  of the parties.  There was a document filed by the defendants

20  at document 53 with a response at 54.  I'll just note at the

21  outset that there's some issue here as to whether there was

22  sufficient consultation between the parties before filing

23  this.  I don't want to get into that, but I do want to remind

24  the parties that you should confer and be clear what you're

25  planning to request of the court before you file the papers.

1  If you're having trouble reaching each other, you should keep

2  trying until you do because it helps me if I know that the

3  parties have already ironed out their differences before they

4  come to me for any remaining differences.

5         All right.  So is it -- Mr. Siegfried, I guess since

6  it's your motion, tell me what's going on here.  I -- it's not

7  entirely clear to me, so you're going to have to explain what

8  exactly you're seeking.

9         MR. SIEGFRIED:  So, Your Honor, the -- as we

10  explained in our letter, the document requests were served on

11  the defendant bank.  The bank within the time frame of those

12  called for in the request did two things.  It reduced all of

13  the documents that it had in its possession, most of which

14  were introduced in <u>Linde</u>.  Certainly all of those relating to

15  the bank secrecy issue.  And we produced those responsibly by

16  category and by actually the Bates numbers so there was no

17  confusion as to which documents responded to which requests.

18         We noted in our response that because of bank

19  secrecy issues and because this is not something that we get

20  to waive, obviously we need either consents of customers or we

21  need consents of foreign authorities that there were a number

22  of requests to seem to us to be both over broad and also not

23  descriptive enough to allow us to intelligently go and seek

24  these consents.  We had a meet-and-confer with the plaintiffs

25  and asked them if they could either narrow their requests or

1   explain to us the basis of certain other requests so that we

2   could intelligently proceed and we were referred to the

3   responses -- the written response that all of the names that

4   were identified in the document request were Hamas leaders,

5   operatives or institutions.

6          Let me make clear that if we did not have to seek

7   foreign waivers or, in fact, seeking them, as far as the bank

8   is concerned, we would be happy to pursue literally

9   everything.  We don't think those bank records are going to

10  show or advance their case at all, so this is -- we're

11  actually on the same side of the table in respect of wanting

12  to produce whatever it is that we can produce.  But that's not

13  within our purview, so we need to be able to explain to a

14  foreign court, for example, why is it that we need something.

15         And it -- we were unable to move forward with the

16  plaintiffs on that front and we thought about this because

17  we're also very mindful not only of what happened to the bank

18  in the Linde case, but we're very mindful of the conversation

19  that we had with Your Honor the last time we were here.  We

20  have no desire either to go through unnecessary motion

21  practice, delay anything for even a minute or frankly to be

22  sanctioned or to be accused of dilatory tactics.

23         So we actually went back into the record to take a

24  deeper -- dive back into the history of 2005 and '06.  And one

25  of the things that we saw was that Magistrate Pohorelsky had

1    people who -- for whom there are no Bates numbers attached, so

2    that would be the remaining 25 people, it seems to me, are

3    they all referenced in the Linde trial record?

4         MR. OSEN:  I believe they are, but I can certainly

5    represent that they were all identified as being related to

6    the attacks in the Linde trial.  So --

7         THE COURT:  Identified in what -- I'm trying to

8    provide someplace for defendant to look --

9         MR. OSEN:  Sure.

10        THE COURT:  -- so that they can get the information

11   as to who these people are.

12        MR. OSEN:  I was going to come to that in a moment,

13   Your Honor.  To be clear, again, because none of this takes

14   place in a vacuum, in preparation for the Linde trial there

15   was the submission of an expert report and ultimately trial

16   testimony by Arieh, A-R-I-E-H, Spitzen, S-P-I-T-Z-E-N.  And,

17   Your Honor, if I may, because it will also I think assist

18   here, I'd like to just present a copy of the expert report and

19   I'll give a copy --

20        THE COURT:  Again, I don't need to see it.  I just

21   need to make sure the defendants know where to look.

22        MR. OSEN:  I understand, Your Honor, but it would

23   actually be helpful without going through them line by line

24   just to demonstrate what are talking about because

25   Mr. Siegfried referred to the need to Google individuals.  And

1    I think the context here is important.  There is nothing here

2    that is a surprise or --

3            THE COURT:  All right.  And that's why I'm trying to

4    go through the 677 names.  I don't need to go through them

5    individually.  I just need for you to identify where the

6    defense team can look to get the answers that they're seeking.

7            MR. OSEN:  Certainly, Your Honor.  Amongst the

8    sources, although there are literally hundreds of them from

9    the trial record --

10           THE COURT:  And that's part of the challenge is that

11   if you can be specific as to where to look, then defendant can

12   look and then we don't need to have this discussion on the

13   record.

14           MR. OSEN:  Understood, Your Honor.  There are a

15   number of appendices to the Spitzen report.  They start with

16   Appendix 4 and they itemize contrary to Mr. Siegfried's

17   statement.  You'll see that in requests going forward they're

18   not identified simply as martyrs or simply identified as Saudi

19   Committee beneficiaries.  They've been specifically identified

20   because they were, for example, in request number 6, Hamas

21   suicide bombers.

22           THE COURT:  So you're now looking at request number

23   6 in your first document demand?

24           MR. OSEN:  Correct.

25           THE COURT:  Okay.  And actually, for request number

1   6 it looks like you have Bates numbers for all of those

2   people.

3           MR. OSEN:  Correct.

4           THE COURT:  All right.

5           MR. OSEN:  And again, we're not picking names out of

6   a hat or listing the Palestinian phone book.  This is a very

7   detailed and identified subsection.  In fact, the irony of

8   this entire discussion is that we drastically narrowed the

9   production order that was approved in the Linde case in order

10  to make more specific and narrower than the requests that were

11  ultimately the subject of the production order there.

12          So we're, in effect, being penalized for being far

13  more granular and specific.

14          THE COURT:  You're not being penalized.  Nobody has

15  told you to do anything yet.

16          MR. OSEN:  Not by the Court, Your Honor.  Just by

17  counsel in their responses.

18          THE COURT:  All right.  So I'm just looking now

19  through all your requests and I see that there are Bates

20  numbers for a very large number of the requested -- the

21  individuals identified other than in request number 3 for

22  which there are -- it looks like 23 people who don't have

23  Bates number and you're saying that those people were

24  referenced in the expert report, Appendix 4, is that right?

25          MR. OSEN:  And all of the appendices --

1          MR. SIEGFRIED:  That's -- that was my point about

2    martyrs.

3          THE COURT:  Okay.  That's fine.  So let me find out

4    from the plaintiffs.  The defendant is complaining that that's

5    sufficient information for that.

6          MR. OSEN:  So, Your Honor, the same -- although the

7    trial focused on Hamas, Appendices 4 through 7 cover not only

8    Hamas, but Islamic Jihad, al-Aqsa Martyrs' Brigade and the

9    popular front for the liberation -- oh, I'm sorry, Your Honor.

10   My colleagues has corrected me; 4 through 7 is just Hamas-

11   related.  The subsequent appendices cover the additional

12   terrorist organizations.

13         THE COURT:  Okay.

14         MR. OSEN:  And again, Your Honor, it's not simply

15   that they list out the individuals.  They provide narratives

16   in terms of source material, what terrorist attacks they were

17   involved in, et cetera, so it's quite detailed.

18         THE COURT:  So the -- what I heard from

19   Mr. Siegfried is that he's concerned that if these requests

20   were sent to the foreign governments, the foreign governments

21   might say we're not inclined to waive the bank secrecy as to

22   people who are just getting humanitarian aid because their

23   baby died in a bomb attack.  So what can you say to that?

24         MR. OSEN:  Yes.  There are no individuals on any of

25   these requests who fall into anything remotely like this

1  category.  We are talking about senior leaders and operatives

2  of the terrorist organizations.

3          THE COURT:  How do you know that?  Maybe that's the

4  basis.

5          MR. OSEN:  Your Honor, again if I may ask if I can

6  show you the appendix we have a copy for counsel.

7          THE COURT:  All right.  So I'm looking at a document

8  that is just identified by a title that says Appendix 4 and

9  then it's several pages long and it ends at Appendix 24.  And

10  it looks like it's, as you mentioned before, expert report of

11  an expert Spitzen in <u>Linde</u>.

12          So are these the names -- when you have name of

13  operatives are these the names of the individuals that you're

14  seeking records for?

15          MR. OSEN:  Yes.  For the most part where we can

16  identify the operative we do so.  Obviously because in the

17  case of deceased terrorists who received payments, martyr

18  payments or otherwise, the payments themselves are sometimes

19  to the family member.  So I won't say it's universally true.

20  So, for example, in request number 4 for Islamic Jihad,

21  suicide bombers number 2, the name of family of Mustafa,

22  Faisal Mustafa, Abu Saria [ph.] is there instead of the actual

23  perpetrator.  And I can spell that for the Court if that's --

24          THE COURT:  That's fine.  You're making reference to

25  the second request.

1          MR. OSEN:  Correct.  It's the -- sorry.  It's the

2   fourth request but the number 2 under 4 as in --

3          THE COURT:  I'm sorry.  You gave me two documents.

4          MR. OSEN:  Oh, yes.

5          THE COURT:  One references plaintiff's first

6   request.

7          MR. OSEN:  Yes.  This is the plaintiff's second

8   request.

9          THE COURT:  Okay.

10          MR. OSEN:  Which is dealing with the non-Hamas --

11          THE COURT:  Yes.  And then it says request number 4

12   under that.

13          MR. OSEN:  Right.  And under number 4 if you get to

14   the second name and the fourth name, the refer to --

15          THE COURT:  Family of.

16          MR. OSEN:  -- family of --

17          THE COURT:  Yeah.

18          MR. OSEN:  -- because it's not the actual

19   perpetrator identified.

20          THE COURT:  Right.  But if -- it's family of and

21   then the name that is -- that follows that --

22          MR. OSEN:  Is the perpetrator.

23          THE COURT:  -- is the person who would then be

24   identified on these appendices under a column that says "Name

25   of Operatives."

1  four or five-year period --

2          THE COURT:  But they're --

3          MR. SIEGFRIED:  -- who were arrested.

4          THE COURT:  But they're -- records aren't being

5  asked for those people.  So we're just focusing on the ones

6  here.  Give me an example of a description that you think is

7  going to be inadequate for the bank secrecy request.

8                  [Pause in the proceedings.]

9          MR. SIEGFRIED:  Give me a moment, Your Honor, while

10 I go through some of these.

11         MR. OSEN:  Your Honor, while Mr. Siegfried is

12 looking at this, can I just note one additional point from a

13 practical procedural standpoint --

14         MR. SIEGFRIED:  I can --

15         MR. OSEN:  Oh, if you're ready, I'll stop.  We

16 informed Mr. Siegfried and his colleagues that we did consider

17 the question of what the scope of the production order is to

18 be different from what you might term prior -- prioritization

19 of letters of requests or letters of rogatory.

20         In other words, assuming the Court were to issue a

21 production order for every name we requested, we wouldn't

22 expect them and we would work with them to prioritize, let's

23 say, a top ten or a top five or a top twenty list of names

24 that are most important to us in each grouping so that they

25 would not have to prepare 600 requests off the bat.  I'll stop

1  there.  Mr. Siegfried wants to --

2      MR. SIEGFRIED:  If I can respond to that, Your

3  Honor, that's the first we're hearing some limitation.

4  Obviously there are sort of two aspects of this.  I'm just an

5  old Civil Procedures guy and proportionality is certainly part

6  of the December 2015 rules amendment; 677, regardless of

7  whether we know who they are or not, and we don't, is

8  disproportionate to their needs.  If they are willing, as I

9  think I just heard Mr. Osen say, to cut that back in terms of

10 the letters of request we'd be happy to work with him on that.

11     The other factor that goes into that is -- you know,

12 in -- under Judge Pohorelsky's order we went to Lebanon.  I

13 believe it was for one account and we got it.  When you start

14 going for 677 accounts or whatever the lesser number is, it is

15 much harder politically for the bank regulators and the

16 foreign courts to approve that.  So all we're trying to do is

17 cut the requests down.  We're not saying, you know, never ever

18 again.  If there's some particular reason, this is the first I

19 heard from Mr. Osen that they would be willing to cut that

20 down.

21     But, I mean, our approach to this is we are willing

22 as soon as the scope is determined, either by party agreement

23 or Your Honor, hopefully not 677.  Whether it's the 122

24 mentioned in the complaint or however it's sliced and diced,

25 we are willing at this point without requiring Your Honor to

1   rule on bank secrecy to go and try to get this information and
2   do it faster than if there were the extensive motion practice
3   that might have originally been anticipated.  You know, we're
4   not asking to be ordered.  You know, we may need the order
5   because of the letters rogatory, but we're willing to start
6   right away in dealing with that.  And that's our theme, so to
7   speak, for today.
8          THE COURT:  Okay.  So my thing is that the parties
9   should be talking to each other a little bit better because
10  had the defendants offered, hey, 677 is an awful lot, can we
11  cut it down, maybe the plaintiffs would have said, "Sure,
12  let's try to work on that."  In fact, I heard even better from
13  Mr. Osen a moment ago, which is a top ten.  Right.  And I'm
14  not saying that you're committed to ten, but by cutting it
15  down quite drastically --
16         MR. OSEN:  Well, Your Honor, I think we're
17  conflating two separate issues.
18         THE COURT:  Okay.
19         MR. OSEN:  One is the proper scope of discovery
20  under Rule 26 and the other is how the defendant deals with
21  foreign bank secrecy objections under restatement 442 and Rule
22  37 if it comes to that.  They're two separate things.
23         So one is a question of what you present to a
24  foreign regulator and the other is what's the proper scope of
25  discovery under Rule 26 in this case.  We would submit, Your

Honor, that every single request is completely and entirely
appropriate as in the appropriate scope under Rule 26 and
should be so ordered.  Once that is done, the question of
whether or what the prioritization of requests is, is
something that we said in our meet-and-confer explicitly.  We
would be prepared to work with them on to prioritize so that,
for example --

THE COURT:  So just it's a timing prioritization?

MR. OSEN:  Yes, because if, for example, they do
five or ten and they are futile, then there's no point then in
doing the other 640 or whatever it might be.  There's a
threshold question.

What they're trying to do, as I see it, is to
conflate something, which is not a Rule 26 issue, but to
basically put the burden on us for the fact that they'll be
non-compliant with the production order.  And therefore, the
production order should be narrower because they plan to be
non-compliant.

And so following again there are many things I could
say about the past record.  Your Honor, for example, they cite
to Lebanon as a sample of success.  That was actually part of
the basis for the sanction in that case because the records
that they sought to produce through the letter of request had
already been produced without informing the court to the U.S.
regulators.

1    So I don't want to go and rehash everything that has
2  occurred in this prior case to date.  But suffice to say,
3  when, for example, Judge Pohorelsky issued his production
4  order it was not curbed by virtue of making it easier to file
5  letters of request.  That's a separate question as to how to
6  do that in a more orderly fashion, whether it should be
7  staged, whether you need to do them all at one time to
8  demonstrate a good-faith effort or can do a few of them and
9  test the waters.

10    They can come back on the remedy phase if they are
11  unsuccessful in producing and say, well, we tried ten or we
12  tried twenty and it wasn't reasonable to make us do 600 and I
13  think they'd have a good argument there.  But that's not the
14  question of what should be in the production order, what's
15  appropriate in the scope of production.  Every request here is
16  narrowly tailored.

17    And if I may, just one other point because it goes
18  to the central problem of this kind of litigation, one of the
19  things we have to prove is that the defendant was generally
20  aware of its role in facilitating substantial assistance to
21  Hamas or other terrorist groups.  And part of that -- and
22  important, maybe the most critical part of that is volume.
23  You know, once is an accident; twice is an oversight.  Five
24  hundred times is intent.

25    And so the idea that three Hamas leaders or two or

1    five suicide bombers, not ten is immaterial it's critical to

2    our case because the more they did it for the more operative,

3    the more suicide bombers, the more leaders, the easier it will

4    be for us to prove to a jury satisfaction that they knowingly

5    engaged in this conduct systematically.

6         THE COURT:  Okay.  So thank you for that

7    clarification.  So I take the point that we're -- the

8    complaint here has been about bank secrecy and the issue is

9    really -- I don't think there's a request at the moment to

10   narrow the production because what I've heard you said

11   earlier -- say earlier, Mr. Siegfried, is if it was up to the

12   bank you'd be fine producing it.  Okay.  So it's not about

13   curbing or curtailing the scope of the production.  It's just

14   that the bank has a limitation because of bank secrecy.  And

15   so we're trying to figure out the best way to actually figure

16   out if the individual company -- individual countries are

17   going to be compliant or whether they're going to assert bank

18   secrecy.

19        So for that exercise it might make sense to send out

20   a few requests and see what the bank -- what the governments

21   say and if the governments say, great, okay, no problem, then

22   you might be in a better position to send out more requests to

23   those governments.

24        If the governments come back immediately and say no,

25   then maybe it's not worth trying.  If the governments come

1  back and say -- and I don't know if they do; maybe they just

2  say no -- if they say, we don't have enough then we'll know

3  what to send forward.

4      So for that exercise it might make sense for the

5  parties to sit down and figure out the top ten or however many

6  you need to get answers to how the government put the -- will

7  react to the requests.

8      Does that make sense, Mr. Osen?  Is that what you're

9  proposing?

10     MR. OSEN:  We have no objection to that, Your Honor.

11     THE COURT:  All right.  So why don't you do that

12 because then we'll have a better idea as to what the

13 governments need so that the parties can exchange information

14 to clarify that.  So number one, please do that.

15     Number two, ask to the requests, Mr. Siegfried, that

16 you've been -- that you brought up at the beginning, which is,

17 to paraphrase, we have no idea what you're talking about, it

18 seems that there is information, and it may not be perfect

19 information, but if you put together the combination of the

20 expert report appendices, the complaint which you've already

21 referenced, the Bates numbers that have been referenced that

22 you would get a pretty good picture of what you need.  And to

23 the extent that there are things where you have no information

24 or you need more information then for that limit set of

25 circumstances you can go back to the plaintiff and say, hey,

1   can you give us more information on that; or if you've looked
2   at the Bates pages that have been referenced and say that
3   really doesn't give us enough, do you have more, then that
4   would be a good limited conversation that you can have.  And I
5   think it's in plaintiffs' best interests to give us as much
6   information as you have and if you don't have it, then that's
7   all you got, right.  So then if you're going to use that
8   information to go to the governments for bank secrecy purposes
9   then you're taking your chances as far as whether that
10  government is going to say not enough, too bad, or fine.
11  Right?

12          So I just think you need to talk more about what
13  you've got and what you're missing but certainly have all this
14  information is a pretty good start and there's no need to to
15  go Google.  I mean, right?  I mean, I know that you've used
16  that as an example, but it seem that documents that have
17  already been produced, as well as a conversation with
18  plaintiff's counsel will get you much farther.

19          MR. SIEGFRIED:  Yeah, Your Honor, just to be clear,
20  again, we did because that's one of the reasons I was able to
21  tell you how many of those names were in the Spitzen report
22  that that is the dia -- I'm very happy with this process.
23  This is the dialogue that we're going to have in our meet-and-
24  confer.  I'm not going to go back over that history, but we
25  know that there were 120 names from Spitzen.  Many of them

1  match up with the allegations of the complaint.

2  　　　　But the process to us that you just suggested I

3  think makes a great deal of sense because what we want to do,

4  as I said from the start, is we do want to go out there.  We

5  do want to go out there with hopefully requests that will be

6  successful or reasonable and just won't be simply brushed off

7  by authorities.  And I think in that regard we would certainly

8  welcome the opportunity to sit with plaintiffs and identify

9  those.

10  　　　　We would welcome the opportunity as well perhaps

11  at -- I'm saying this off the top of my head, so please

12  understand that -- I think we'd welcome probably the

13  opportunity to perhaps even phrase the letters rogatory a bit

14  more creatively than you normally do so that -- so that a

15  foreign authority when they get the document particularly in

16  that region understands what it's dealing with because I --

17  　　　　THE COURT:  Well, and I --

18  　　　　MR. SIEGFRIED:  -- don't think we necessarily get

19  the chance to stand up in a courtroom and --

20  　　　　THE COURT:  Yes, but --

21  　　　　MR. SIEGFRIED:  -- have that dialogue.

22  　　　　THE COURT:  So I'm going to assume that you have

23  resources that will give you some information as to what is

24  likely to be a successful letter rogatory and you can ask

25  those people who have done this before what should go into it

1   and what is likely to make it successful.

2           They and therefore you will know more than me, so I

3   think that you should engage in that process and go ahead and

4   do that and have a discussion.  I'm always a little bit

5   puzzled as to why people can't work these things out

6   themselves and you need the person who knows the list in the

7   room to sit here and talk to you but if --

8           MR. SIEGFRIED:  That --

9           THE COURT:  -- that's what you need, that's what I'm

10  getting paid for.  So I'm happy to do it, but it just seems

11  like you should -- you should talk to each other and these

12  things could probably be worked out without me getting

13  involved.  But be it as it may, please do go forward.  Figure

14  out -- I think everybody wants to have the most successful

15  letter -- letter rogatory as possible because everybody wants

16  to get the information.  And if there's a problem because it's

17  not enough for the foreign government, then we can come back.

18  You can figure out first what you think can be done.  And if

19  the Court needs to get involved, then I'll get involved.  And

20  if there's -- if that's the end of it, then I think people

21  need to figure out what the next step is.  But getting to and

22  then past the foreign governments is the first step and so

23  just do the best you can.

24          MR. SIEGFRIED:  Your Honor, just so you know, we

25  have begun that process.

1          THE COURT:  Okay.

2          MR. SIEGFRIED:  I was simply trying to -- since

3    there are some judges who say, what are these, I haven't seen

4    anything that looked like these before, and that's all that I

5    was trying to say, that they may not be just the traditional,

6    we need these documents, here's the attachment.  That's all I

7    was trying to --

8          THE COURT:  I've never seen --

9          MR. SIEGFRIED:  -- say.

10          THE COURT:  -- one. It's all going to be new to me.

11    All right.  So be as creative as necessary.  But it's not

12    about creativity; it's effectiveness.  So just be as effective

13    as you can with the best knowledge that you can and if you

14    don't know talk -- if you've never done it before, talk to

15    somebody who's done it.  It seems very basic.  So just do

16    that.

17          Yes, Mr. Osen.

18          MR. OSEN:  Yes, Your Honor.  At least in the four or

19    five instances where I've been involved in bank secrecy-

20    related activities of this kind, they are -- the letters

21    rogatory have been preceded by a production order by the Court

22    because that's the predicate.  Otherwise, we just go back to

23    fighting over which of our requests were appropriate for the

24    letter.

25          THE COURT:  Okay.  So is there -- so -- and that is

1     I certify that the foregoing is a court transcript

2 from an electronic sound recording of the proceedings in the

3 above-entitled matter.

4

5

6     _____

7     Ruth Ann Hager, C.E.T.**D-641

8 Dated:  September 27, 2019

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25