# Exhibit 17

## Agreement on the Gaza Strip and the Jericho Area

### Cairo, May 4, 1994

**Preamble**

Within the framework of the Middle East peace process initiated at Madrid in October 1991;

Reaffirming their determination to live in peaceful coexistence, mutual dignity and security, while recognizing their mutual legitimate and political rights;

Reaffirming their desire to achieve a just, lasting and comprehensive peace settlement through the agreed political process;

Reaffirming their adherence to the mutual recognition and commitments expressed in the letters dated September 9, 1993 , signed by and exchanged between the Prime Minister of Israel and the Chairman of the PLO;

Reaffirming their understanding that the interim self-government arrangements, including the arrangements to apply in the Gaza Strip and the Jericho Area contained in this Agreement, are an integral part of the whole peace process and that the negotiations on the permanent status will lead to the implementation of Security Council Resolutions 242 and 338;

Desirous of putting into effect the Declaration of Principles on Interim Self-Government Arrangements signed at Washington, D.C. on September 13, 1993, and the Agreed Minutes thereto (hereinafter "the Declaration of Principles"), and in particular the Protocol on withdrawal of Israeli forces from the Gaza Strip and the Jericho Area;

Hereby agree to the following arrangements regarding the Gaza Strip and the Jericho Area:

**Article I**
**Definitions**

For the purpose of this Agreement:

  a.  the Gaza Strip and the Jericho Area are delineated on map No. 1 and map No. 2 attached to this Agreement;
  b.  "the Settlements" means the Gush Katif and Erez settlement areas, as well as the other settlements in the Gaza Strip, as shown on attached map No. 1;
  c.  "the Military Installation Area" means the Israeli military installation area along the Egyptian border in the Gaza Strip, as shown on map No. 1; and

    d.   the term "Israelis" shall also include Israeli statutory agencies and corporations registered in Israel.

## Article II
## Scheduled Withdrawal of Israeli Military Forces

1. Israel shall implement an accelerated and scheduled withdrawal of Israeli military forces from the Gaza Strip and from the Jericho Area to begin immediately with the signing of this Agreement. Israel shall complete such withdrawal within three weeks from this date.
2. Subject to the arrangements included in the Protocol Concerning Withdrawal of Israeli Military Forces and Security Arrangements attached as Annex I , the Israeli withdrawal shall include evacuating all military bases and other fixed installations to be handed over to the Palestinian Police, to be established pursuant to Article IX below (hereinafter "the Palestinian Police").
3. In order to carry out Israel's responsibility for external security and for internal security and public order of Settlements and Israelis, Israel shall, concurrently with the withdrawal, redeploy its remaining military forces to the Settlements and the Military Installation Area, in accordance with the provisions of this Agreement. Subject to the provisions of this Agreement, this redeployment shall constitute full implementation of Article XIII of the Declaration of Principles with regard to the Gaza Strip and the Jericho Area only.
4. For the purposes of this Agreement, "Israeli military forces" may include Israel police and other Israeli security forces.
5. Israelis, including Israeli military forces, may continue to use roads freely within the Gaza Strip and the Jericho Area. Palestinians may use public roads crossing the Settlements freely, as provided for in Annex I.
6. The Palestinian Police shall be deployed and shall assume responsibility for public order and internal security of Palestinians in accordance with this Agreement and Annex I.

## Article III
## Transfer of Authority

1. Israel shall transfer authority as specified in this Agreement from the Israeli military government and its Civil Administration to the Palestinian Authority, hereby established, in accordance with Article V of this Agreement, except for the authority that Israel shall continue to exercise as specified in this Agreement.
2. As regards the transfer and assumption of authority in civil spheres, powers and responsibilities shall be transferred and assumed as set out in the Protocol Concerning Civil Affairs attached as Annex II .
3. Arrangements for a smooth and peaceful transfer of the agreed powers and responsibilities are set out in Annex II.

4. Upon the completion of the Israeli withdrawal and the transfer of powers and responsibilities as detailed in paragraphs 1 and 2 above and in Annex II, the Civil Administration in the Gaza Strip and the Jericho Area will be dissolved and the Israeli military government will be withdrawn. The withdrawal of the military government shall not prevent it from continuing to exercise the powers and responsibilities specified in this Agreement.

5. A Joint Civil Affairs Coordination and Cooperation Committee (hereinafter "the CAC") and two Joint Regional Civil Affairs Subcommittees for the Gaza Strip and the Jericho Area respectively shall be established in order to provide for coordination and cooperation in civil affairs between the Palestinian Authority and Israel, as detailed in Annex II.

6. The offices of the Palestinian Authority shall be located in the Gaza Strip and the Jericho Area pending the inauguration of the Council to be elected pursuant to the Declaration of Principles.

**Article IV**
**Structure and Composition of the Palestinian Authority**

1. The Palestinian Authority will consist of one body of 24 members which shall carry out and be responsible for all the legislative and executive powers and responsibilities transferred to it under this Agreement, in accordance with this Article, and shall be responsible for the exercise of judicial functions in accordance with Article VI, subparagraph 1.b. of this Agreement.

2. The Palestinian Authority shall administer the departments transferred to it and may establish, within its jurisdiction, other departments and subordinate administrative units as necessary for the fulfillment of its responsibilities. It shall determine its own internal procedures.

3. The PLO shall inform the Government of Israel of the names of the members of the Palestinian Authority and any change of members. Changes in the membership of the Palestinian Authority will take effect upon an exchange of letters between the PLO and the Government of Israel.

4. Each member of the Palestinian Authority shall enter into office upon undertaking to act in accordance with this Agreement.

**Article V**
**Jurisdiction**

1. The authority of the Palestinian Authority encompasses all matters that fall within its territorial, functional and personal jurisdiction, as follows:
   a. The territorial jurisdiction covers the Gaza Strip and the Jericho Area territory, as defined in Article I, except for Settlements and the Military Installation Area. Territorial jurisdiction shall include land, subsoil and territorial waters, in accordance with the provisions of this Agreement.

    b. The functional jurisdiction encompasses all powers and responsibilities as specified in this Agreement. This jurisdiction does not include foreign relations, internal security and public order of Settlements and the Military Installation Area and Israelis, and external security.

    c. The personal jurisdiction extends to all persons within the territorial jurisdiction referred to above, except for Israelis, unless otherwise provided in this Agreement.

2. The Palestinian Authority has, within its authority, legislative, executive and judicial powers and responsibilities, as provided for in this Agreement.

3.

    a. Israel has authority over the Settlements, the Military Installation Area, Israelis, external security, internal security and public order of Settlements, the Military Installation Area and Israelis, and those agreed powers and responsibilities specified in this Agreement.

    b. Israel shall exercise its authority through its military government, which, for that end, shall continue to have the necessary legislative, judicial and executive powers and responsibilities, in accordance with international law. This provision shall not derogate from Israel's applicable legislation over Israelis in personam.

4. The exercise of authority with regard to the electromagnetic sphere and airspace shall be in accordance with the provisions of this Agreement.

5. The provisions of this Article are subject to the specific legal arrangements detailed in the Protocol Concerning Legal Matters attached as Annex III . Israel and the Palestinian Authority may negotiate further legal arrangements.

6. Israel and the Palestinian Authority shall cooperate on matters of legal assistance in criminal and civil matters through the legal subcommittee of the CAC.


**Article VI**
**Powers and Responsibilities of the Palestinian Authority**

1. Subject to the provisions of this Agreement, the Palestinian Authority, within its jurisdiction:

    a. has legislative powers as set out in Article VII of this Agreement, as well as executive powers;

    b. will administer justice through an independent judiciary;

    c. will have, inter alia, power to formulate policies, supervise their implementation, employ staff, establish departments, authorities and institutions, sue and be sued and conclude contracts; and

    d. will have, inter alia, the power to keep and administer registers and records of the population, and issue certificates, licenses and documents.

2.

a.  In accordance with the Declaration of Principles, the Palestinian Authority will not have powers and responsibilities in the sphere of foreign relations, which sphere includes the establishment abroad of embassies, consulates or other types of foreign missions and posts or permitting their establishment in the Gaza Strip or the Jericho Area, the appointment of or admission of diplomatic and consular staff, and the exercise of diplomatic functions.

b.  Notwithstanding the provisions of this paragraph, the PLO may conduct negotiations and sign agreements with states or international organizations for the benefit of the Palestinian Authority in the following cases only:

1.  economic agreements, as specifically provided in Annex IV of this Agreement;

2.  agreements with donor countries for the purpose of implementing arrangements for the provision of assistance to the Palestinian Authority;

3.  agreements for the purpose of implementing the regional development plans detailed in Annex IV of the Declaration of Principles or in agreements entered into in the framework of the multilateral negotiations; and

4.  cultural, scientific and educational agreements.

c.  Dealings between the Palestinian Authority and representatives of foreign states and international organizations, as well as the establishment in the Gaza Strip and the Jericho Area of representative offices other than those described in subparagraph 2.a. above, for the purpose of implementing the agreements referred to in subparagraph 2.b. above, shall not be considered foreign relations.

**Article VII**
**Legislative Powers of the Palestinian Authority**

1.  The Palestinian Authority will have the power, within its jurisdiction, to promulgate legislation, including basic laws, laws, regulations and other legislative acts.

2.  Legislation promulgated by the Palestinian Authority shall be consistent with the provisions of this Agreement.

3.  Legislation promulgated by the Palestinian Authority shall be communicated to a legislation subcommittee to be established by the CAC (hereinafter "the Legislation Subcommittee"). During a period of 30 days from the communication of the legislation, Israel may request that the Legislation Subcommittee decide whether such legislation exceeds the jurisdiction of the Palestinian Authority or is otherwise inconsistent with the provisions of this Agreement.

4. Upon receipt of the Israeli request, the Legislation Subcommittee shall decide, as an initial matter, on the entry into force of the legislation pending its decision on the merits of the matter.

5. If the Legislation Subcommittee is unable to reach a decision with regard to the entry into force of the legislation within 15 days, this issue will be referred to a board of review. This board of review shall be comprised of two judges, retired judges or senior jurists (hereinafter "Judges"), one from each side, to be appointed from a compiled list of three Judges proposed by each.

6. In order to expedite the proceedings before this board of review, the two most senior Judges, one from each side, shall develop written informal rules of procedure.

7. Legislation referred to the board of review shall enter into force only if the board of review decides that it does not deal with a security issue which falls under Israel's responsibility, that it does not seriously threaten other significant Israeli interests protected by this Agreement and that the entry into force of the legislation could not cause irreparable damage or harm.

8. The Legislation Subcommittee shall attempt to reach a decision on the merits of the matter within 30 days from the date of the Israeli request. If this Subcommittee is unable to reach such a decision within this period of 30 days, the matter shall be referred to the Joint Israeli-Palestinian Liaison Committee referred to in Article XV below (hereinafter "the Liaison Committee"). This Liaison Committee will deal with the matter immediately and will attempt to settle it within 30 days.

9. Where the legislation has not entered into force pursuant to paragraphs 5 or 7 above, this situation shall be maintained pending the decision of the Liaison Committee on the merits of the matter, unless it has decided otherwise.

10. Laws and military orders in effect in the Gaza Strip or the Jericho Area prior to the signing of this Agreement shall remain in force, unless amended or abrogated in accordance with this Agreement.

## Article VIII
## Arrangements for Security and Public Order

1. In order to guarantee public order and internal security for the Palestinians of the Gaza Strip and the Jericho Area, the Palestinian Authority shall establish a strong police force, as set out in Article IX below. Israel shall continue to carry the responsibility for defense against external threats, including the responsibility for protecting the Egyptian border and the Jordanian line, and for defense against external threats from the sea and from the air, as well as the responsibility for overall security of Israelis and Settlements, for the purpose of safeguarding their internal security and public order, and will have all the powers to take the steps necessary to meet this responsibility.

2. Agreed security arrangements and coordination mechanisms are specified in Annex I.

3. A joint Coordination and Cooperation Committee for mutual security purposes (hereinafter "the JSC"), as well as three joint District Coordination and Cooperation Offices for the Gaza district, the Khan Yunis district and the Jericho district respectively (hereinafter "the DCOs") are hereby established as provided for in Annex I.

4. The security arrangements provided for in this Agreement and in Annex I may be reviewed at the request of either Party and may be amended by mutual agreement of the Parties. Specific review arrangements are included in Annex I.

**Article IX**
**The Palestinian Directorate of Police Force**

1. The Palestinian Authority shall establish a strong police force, the Palestinian Directorate of Police Force (hereinafter "the Palestinian Police"). The duties, functions, structure, deployment and composition of the Palestinian Police, together with provisions regarding its equipment and operation, are set out in Annex I, Article III. Rules of conduct governing the activities of the Palestinian Police are set out in Annex I, Article VIII.

2. Except for the Palestinian Police referred to in this Article and the Israeli military forces, no other armed forces shall be established or operate in the Gaza Strip or the Jericho Area.

3. Except for the arms, ammunition and equipment of the Palestinian Police described in Annex I, Article III, and those of the Israeli military forces, no organization or individual in the Gaza Strip and the Jericho Area shall manufacture, sell, acquire, possess, import or otherwise introduce into the Gaza Strip or the Jericho Area any firearms, ammunition, weapons, explosives, gunpowder or any related equipment, unless otherwise provided for in Annex I.

**Article X**
**Passages**

Arrangements for coordination between Israel and the Palestinian Authority regarding the Gaza-Egypt and Jericho-Jordan passages, as well as any other agreed international crossings, are set out in Annex I, Article X.

**Article XI**
**Safe Passage Between the Gaza Strip and the Jericho Area**

Arrangements for safe passage of persons and transportation between the Gaza Strip and the Jericho Area are set out in Annex I, Article IX.

**Article XII**
**Relations Between Israel and the Palestinian Authority**

1. Israel and the Palestinian Authority shall seek to foster mutual understanding and tolerance and shall accordingly abstain from incitement, including hostile propaganda, against each other and, without derogating from the principle of freedom of expression, shall take legal measures to prevent such incitement by any organizations, groups or individuals within their jurisdiction.
2. Without derogating from the other provisions of this Agreement, Israel and the Palestinian Authority shall cooperate in combatting criminal activity which may affect both sides, including offenses related to trafficking in illegal drugs and psychotropic substances, smuggling, and offenses against property, including offenses related to vehicles.

**Article XIII**
**Economic Relations**

The economic relations between the two sides are set out in the Protocol on Economic Relations signed in Paris on April 29, 1994 and the Appendices thereto, certified copies of which are attached as Annex IV, and will be governed by the relevant provisions of this Agreement and its Annexes.

**Article XIV**
**Human Rights and the Rule of Law**

Israel and the Palestinian Authority shall exercise their powers and responsibilities pursuant to this Agreement with due regard to internationally-accepted norms and principles of human rights and the rule of law.

**Article XV**
**The Joint Israeli-Palestinian Liaison Committee**

1. The Liaison Committee established pursuant to Article X of the Declaration of Principles shall ensure the smooth implementation of this Agreement. It shall deal with issues requiring coordination, other issues of common interest and disputes.
2. The Liaison Committee shall be composed of an equal number of members from each Party. It may add other technicians and experts as necessary.
3. The Liaison Committee shall adopt its rules of procedure, including the frequency and place or places of its meetings.
4. The Liaison Committee shall reach its decisions by Agreement.

**Article XVI**
**Liaison and Cooperation with Jordan and Egypt**

1. Pursuant to Article XII of the Declaration of Principles, the two Parties shall invite the Governments of Jordan and Egypt to participate in establishing further liaison and cooperation arrangements between the Government of Israel and the Palestinian representatives on the one hand, and the Governments of Jordan and Egypt on the other hand, to promote cooperation between them. These arrangements shall include the constitution of a Continuing Committee.
2. The Continuing Committee shall decide by agreement on the modalities of admission of persons displaced from the West Bank and the Gaza Strip in 1967, together with necessary measures to prevent disruption and disorder.
3. The Continuing Committee shall deal with other matters of common concern.

**Article XVII**
**Settlement of Differences and Disputes**

Any difference relating to the application of this Agreement shall be referred to the appropriate coordination and cooperation mechanism established under this Agreement. The provisions of Article XV of the Declaration of Principles shall apply to any such difference which is not settled through the appropriate coordination and cooperation mechanism, namely:

1. Disputes arising out of the application or interpretation of this Agreement or any subsequent agreements pertaining to the interim period shall be settled by negotiations through the Liaison Committee.
2. Disputes which cannot be settled by negotiations may be settled by a mechanism of conciliation to be agreed between the Parties.
3. The Parties may agree to submit to arbitration disputes relating to the interim period, which cannot be settled through conciliation. To this end, upon the agreement of both Parties, the Parties will establish an Arbitration Committee.

**Article XVIII**
**Prevention of Hostile Acts**

Both sides shall take all measures necessary in order to prevent acts of terrorism, crime and hostilities directed against each other, against individuals falling under the other's authority and against their property, and shall take legal measures against offenders. In addition, the Palestinian side shall take all measures necessary to prevent such hostile acts directed against the Settlements, the infrastructure serving them and the Military Installation Area, and the Israeli side shall take all measures necessary to prevent such hostile acts emanating from the Settlements and directed against Palestinians.

**Article XIX**
**Missing Persons**

The Palestinian Authority shall cooperate with Israel by providing all necessary assistance in the conduct of searches by Israel within the Gaza Strip and the Jericho Area for missing Israelis, as well as by providing information about missing Israelis. Israel shall cooperate with the Palestinian Authority in searching for, and providing necessary information about, missing Palestinians.

**Article XX**
**Confidence Building Measures**

With a view to creating a positive and supportive public atmosphere to accompany the implementation of this Agreement, and to establish a solid basis of mutual trust and good faith, both Parties agree to carry out confidence building measures as detailed herewith:

1. Upon the signing of this Agreement, Israel will release, or turn over, to the Palestinian Authority within a period of 5 weeks, about 5,000 Palestinian detainees and prisoners, residents of the West Bank and the Gaza Strip. Those released will be free to return to their homes anywhere in the West Bank or the Gaza Strip. Prisoners turned over to the Palestinian Authority shall be obliged to remain in the Gaza Strip or the Jericho Area for the remainder of their sentence.
2. After the signing of this Agreement, the two Parties shall continue to negotiate the release of additional Palestinian prisoners and detainees, building on agreed principles.
3. The implementation of the above measures will be subject to the fulfillment of the procedures determined by Israeli law for the release and transfer of detainees and prisoners.
4. With the assumption of Palestinian authority, the Palestinian side commits itself to solving the problem of those Palestinians who were in contact with the Israeli authorities. Until an agreed solution is found, the Palestinian side undertakes not to prosecute these Palestinians or to harm them in any way.
5. Palestinians from abroad whose entry into the Gaza Strip and the Jericho Area is approved pursuant to this Agreement, and to whom the provisions of this Article are applicable, will not be prosecuted for offenses committed prior to September 13, 1993.

**Article XXI**
**Temporary International Presence**

1. The Parties agree to a temporary international or foreign presence in the Gaza Strip and the Jericho Area (hereinafter "the TIP"), in accordance with the provisions of this Article.

2. The TIP shall consist of 400 qualified personnel, including observers, instructors and other experts, from 5 or 6 of the donor countries.
3. The two Parties shall request the donor countries to establish a special fund to provide finance for the TIP.
4. The TIP will function for a period of 6 months. The TIP may extend this period, or change the scope of its operation, with the agreement of the two Parties.
5. The TIP shall be stationed and operate within the following cities and villages: Gaza, Khan Yunis, Rafah, Deir El Ballah, Jabaliya, Absan, Beit Hanun and Jericho.
6. Israel and the Palestinian Authority shall agree on a special Protocol to implement this Article, with the goal of concluding negotiations with the donor countries contributing personnel within two months.

**Article XXII**
**Rights, Liabilities and Obligations**

1.
   a. The transfer of all powers and responsibilities to the Palestinian Authority, as detailed in Annex II, includes all related rights, liabilities and obligations arising with regard to acts or omissions which occurred prior to the transfer. Israel will cease to bear any financial responsibility regarding such acts or omissions and the Palestinian Authority will bear all financial responsibility for these and for its own functioning.
   b. Any financial claim made in this regard against Israel will be referred to the Palestinian Authority.
   c. Israel shall provide the Palestinian Authority with the information it has regarding pending and anticipated claims brought before any court or tribunal against Israel in this regard.
   d. Where legal proceedings are brought in respect of such a claim, Israel will notify the Palestinian Authority and enable it to participate in defending the claim and raise any arguments on its behalf.
   e. In the event that an award is made against Israel by any court or tribunal in respect of such a claim, the Palestinian Authority shall reimburse Israel the full amount of the award.
   f. Without prejudice to the above, where a court or tribunal hearing such a claim finds that liability rests solely with an employee or agent who acted beyond the scope of the powers assigned to him or her, unlawfully or with willful malfeasance, the Palestinian Authority shall not bear financial responsibility.
2. The transfer of authority in itself shall not affect rights, liabilities and obligations of any person or legal entity, in existence at the date of signing of this Agreement.

**Article XXIII**
**Final Clauses**

1. This Agreement shall enter into force on the date of its signing.
2. The arrangements established by this Agreement shall remain in force until and to the extent superseded by the Interim Agreement referred to in the Declaration of Principles or any other agreement between the Parties.
3. The five-year interim period referred to in the Declaration of Principles commences on the date of the signing of this Agreement.
4. The Parties agree that, as long as this Agreement is in force, the security fence erected by Israel around the Gaza Strip shall remain in place and that the line demarcated by the fence, as shown on attached map No. 1, shall be authoritative only for the purpose of this Agreement.
5. Nothing in this Agreement shall prejudice or preempt the outcome of the negotiations on the interim agreement or on the permanent status to be conducted pursuant to the Declaration of Principles. Neither Party shall be deemed, by virtue of having entered into this Agreement, to have renounced or waived any of its existing rights, claims or positions.
6. The two Parties view the West Bank and the Gaza Strip as a single territorial unit, the integrity of which will be preserved during the interim period.
7. The Gaza Strip and the Jericho Area shall continue to be an integral part of the West Bank and the Gaza Strip, and their status shall not be changed for the period of this Agreement. Nothing in this Agreement shall be considered to change this status.
8. The Preamble to this Agreement, and all Annexes, Appendices and maps attached hereto, shall constitute an integral part hereof.

Done in Cairo this fourth day of May, 1994.

**For the Government of the State of Israel:**
**For the PLO:**

Witnessed By:

The United States of America
The Russian Federation
The Arab Republic of Egypt

Source: http://www.knesset.gov.il/process/docs/cairo_agreement_eng.htm