UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| AHARON MILLER, et al. | : | |
| Plaintiffs, | : | Case No. 18-cv-2192 (RPK)(PK) |
| -against- | : | |
| ARAB BANK, PLC, | : | |
| Defendant. | : | |
| NATHAN PAM, et al. | : | |
| Plaintiffs, | : | Case No. 18-cv-4670 (RPK)(PK) |
| -against- | : | |
| ARAB BANK, PLC, | : | |
| Defendant. | : | |

**DECLARATION OF AARON SCHLANGER**

Aaron Schlanger declares as follows:

1. I am a member of the Bar of this Court and am counsel at Osen LLC, counsel for the *Miller* Plaintiffs. I submit this declaration and exhibits attached hereto on behalf of all Plaintiffs in support of Plaintiffs' Opposition to Defendant Arab Bank, PLC's Motion for a Protective Order Pursuant to Federal Rule 26(c) and Plaintiffs' Cross-Motion to Compel Production of Documents.

2. These actions were filed following the resolution of a number of related actions that other victims of terrorism pursued against Defendant Arab Bank. Those actions began in 2004 with the filing of the complaint in *Linde v. Arab Bank, PLC*, Case No. 04-cv-2799 (E.D.N.Y.).

3. Attached hereto as **Exhibit 1** is a true and correct copy of the February 24, 2005, Consent Order issued by the Office of the Comptroller of the Currency in "In the Matter of the Federal Branch of Arab Bank Plc, New York, New York."

4. Attached hereto as **Exhibit 2** is a true and correct copy of the August 17, 2005, Assessment of Civil Money Penalty issued by the U.S. Department of the Treasury's Financial Crimes Enforcement Network in "In the Matter of: The Federal Branch of Arab Bank Plc New York, New York."

5. Attached hereto as **Exhibit 3** is a true and correct copy of the Responses and Objections of Defendant Arab Bank Plc to Plaintiffs' Joint Modified Phase I Request for the Production of Documents to Defendant Arab Bank Plc in *Linde v. Arab Bank, Plc*, No. 04-cv-2799 (BMC)(VVP). On page 5 of its response to the *Linde* plaintiffs' request for the account records of Hamas leader and Specially Designated Global Terrorist, Osama Hamdan ("Hamdan Account"), the Bank objected, *inter alia*, because the "request asks for information concerning an account that is not alleged to be related to a specific incident in which any of the more than 2000 plaintiffs claim to have been injured."

6. Attached hereto as **Exhibit 4** are pages excerpted from a true and correct copy of the October 11, 2005, Transcript of Civil Cause for Conference Before the Honorable Viktor V. Pohorelsky, United States Magistrate Judge in *Linde v. Arab Bank, Plc*, No. 04-cv-2799 (BMC)(VVP). At the hearing, Arab Bank's counsel requested that it be permitted to make a "formal application to the Lebanese courts" in order to produce the Hamdan Account records and "be acting with the blessing of the local regulators rather than being put to the hard choice otherwise." Tr. 78:2-10.

7. Attached hereto as **Exhibit 5** is a true and correct copy of the November 8, 2005, Stipulated Production Order signed by the plaintiffs and Arab Bank in *Linde v. Arab Bank, Plc*, No. 04-cv-2799 (BMC)(VVP), and So Ordered by Magistrate Judge Pohorelsky for the purpose of obtaining Lebanese government permission for Arab Bank to produce the Hamdan Account records.

8. Attached hereto as **Exhibit 6** is a true and correct copy of the Declaration of Shukry Bishara in Support of Defendant's Motion to Dismiss in *Linde v. Arab Bank, Plc*, No. 04-cv-2799 (BMC)(VVP). Paragraphs 41 and 42 of the declaration states that:

> The Amended Complaint falsely claims: "Arab Bank knowingly provides banking services to HAMAS directly through its Al-Mazra Branch Account # 3-810-622473-0330 in Beirut." Am. Compl. Para. 345. This is not true. It is inconceivable that we would open an account for HAMAS whether in Beirut or in any of our branches.
>
> The Amended Complaint refers to account number 3-810-622473-0330 in Arab Bank El-Mazra branch, Lebanon as a main account to fund terrorism. We have investigated this account and our findings were that this account, which had a balance of US$ 8000, had been opened by an individual and has been dormant for the past three years.

The "individual" who opened the account was later disclosed to be Osama Hamdan, Hamas's spokesman in Lebanon and a Specially Designated Global Terrorist. The account received, and Arab Bank processed, multiple funds transfers to that account for the benefit of "Hamas."

9. Attached hereto as **Exhibit 7** are true and correct copies of Trial PowerPoint slides presented to the jury by the *Linde* plaintiffs' expert witness Arieh D. Spitzen in *Linde v. Arab Bank, Plc*, No. 04-cv-2799 (BMC)(VVP). They contain copies of ABPLC188949, ABPLC188953 and ABPLC188919, wire transfers for the benefit of "Hamas" that were processed by Arab Bank and credited to the account of Hamas leader and Specially Designated Global Terrorist, Osama Hamdan.

10. Attached hereto as **Exhibit 8** is a true and correct copy of Arab Bank's January 4, 2006, letter that declines to produce documents it had provided to the OCC and FinCEN, stating that "the Bank does not know what documents were reviewed by the OCC and was not in the practice of 'cataloging' the records reviewed by the OCC."

11. Attached hereto as **Exhibit 9** is a true and correct copy of the December 13, 2006, Order by the Honorable Judge Nina Gershon overruling the magistrate judge's denial of the plaintiffs' request for discovery of transactional documents reviewed by the Office of the Comptroller of the Currency in *Linde v. Arab Bank, Plc*, No. 04-cv-2799 (BMC)(VVP). The Order states that Arab Bank "obfuscates its obligation to produce evidence of funds transfers that went through New York," failed "to produce promptly the transactional documents at issue," and that "the defendant's papers are replete with suggestions that, in fact, the Bank has not fully recognized its obligation to use all of its resources in responding to discovery requests."

12. Attached hereto as **Exhibit 10** is a true and correct copy of the May 9, 2008, document production letter from Ronald W. Zdrojeski to plaintiffs' counsel in *Linde v. Arab Bank, Plc*, 04-cv-2799 (BMC)(VVP), enclosing the production of documents sought by the *Linde* plaintiffs from the Bank's former New York branch.

13. Attached hereto as **Exhibit 11** is a true and correct copy of ABPLC211999, a wire transfer processed by Arab Bank's New York branch for the benefit of Hamas co-founder and spiritual leader, Sheikh Ahmad Yassin. This document was first produced in May 2008.

14. Attached hereto as **Exhibit 12** are true and correct copies of ABPLC212108 and ABPLC212083, wire transfers processed by Arab Bank's New York branch for the benefit of Hamas co-founder Salah Shehadeh. These documents were first produced in May 2008.

4

15. Attached hereto as **Exhibit 13** are true and correct copies of ABPLC212138, ABPLC212113, and ABPLC212084, wire transfers processed by Arab Bank's New York branch for the benefit of Hamas co-founder Ismael Abu Shanab. These documents were first produced in May 2008.

16. Attached hereto as **Exhibit 14** is a true and correct copy of the April 10, 2006, letter from Arab Bank's counsel to plaintiffs' counsel in *Linde v. Arab Bank, Plc*, No. 04-cv-2799 (BMC)(VVP), notifying them of the Saudi Committee in Support of the Intifada Al Quds's ("Saudi Committee") purported consent to disclose certain records.

17. Attached hereto as **Exhibit 15** is a true and correct copy of the *Linde* plaintiffs' Trial Exhibit Number 4761, a summary of financial transactions for Saudi Committee in Support of the Intifada Al Quds – Payments to Individuals by Payment Amount. The exhibit was presented to the jury by plaintiffs' forensic accountant in *Linde v. Arab Bank, Plc*, 04-cv-2799 (BMC)(VVP). It indicates that Saudi Committee payments to the families of martyrs ($5,302.56 – $5,3333.33), prisoners ($2,655.78) and the injured ($1,325.64) totaled 15,545 separate payments and that $32,840,331 were made as cash payments.

18. Attached hereto as **Exhibit 16** is a true and correct copy of the August 7, 2007, U.S. Department of the Treasury Press Release announcing the designation of the Al-Salah Society as a Specially Designated Global Terrorist ("SDGT"), identifying it as "one of the largest and best-funded Hamas charitable organizations in the Palestinian territories" and stating that "an official of the Al-Salah Society in Gaza was the principal leader of a Hamas military wing structure in the Al-Maghazi refugee camp in Gaza."

19. Attached hereto as **Exhibit 17** are true and correct copies of ABPLC190726 with a certified English translation and ABPLC190308 with a certified English translation.

5

ABPLC190726 is a letter from Hamas's Al-Salah Society to Arab Bank requesting the Bank withhold the transfers from the Saudi Committee to three individuals. ABPLC190308 is a letter from Hamas's Al-Salah Society to Muhammad al-Tahan, a manager of Arab Bank in Ramallah, requesting the Bank stop the transfers from the Saudi Committee in Support of the Al Quds Intifada to 13 individuals.

20. Attached hereto as **Exhibit 18** are true and correct copies of *Linde* Trial PowerPoint slides illustrating the connection between the Saudi Committee and Hamas's Al-Salah Society. These slides were presented to the jury by the plaintiffs' expert witness Arieh D. Spitzen in *Linde v. Arab Bank, Plc*, No. 04-cv-2799 (BMC)(VVP).

21. Attached hereto as **Exhibit 19** is a true and correct copy of Defendant Arab Bank Plc's Memorandum in Support of Objections to Magistrate Judge Pohorelsky's Report and Recommendation on Sanctions dated July 16, 2009, in *Linde v. Arab Bank, Plc*, No. 04-cv-2799 (BMC)(VVP). On pages 11-12 of its brief, the Bank states:

> The only records even tangentially related to the Saudi Committee which the Saudi Committee's consent could not cover, and which therefore could not be produced without violation of governing laws, were the account records and other transaction records of the *recipients* of the money from the Saudi Committee. Yet there is no basis to infer that these records would establish an alternative picture of the Saudi Committee, let alone a finding as originally sought by plaintiffs, that the Bank knew the Saudi Committee was a sponsor of terrorism.

22. Attached hereto as **Exhibit 20** are true and correct copies of slides from the Trial PowerPoint slide presentation of the plaintiffs' expert witness Arieh D. Spitzen in *Linde v. Arab Bank, Plc*, No. 04-cv-2799 (BMC)(VVP). It summarizes Arab Bank funds transfers to Sheikh Yassin, Hamas's iconic founder and spiritual leader; Salah Shehadah, then head of Hamas's terror apparatus; Ismail Haniyeh, Yassin's then-chief of staff and later Hamas's "prime minister" (now its supreme leader); and a check to Osama Hamdan, a Hamas senior leader and media spokesman in Lebanon and an SDGT.

6

23. Attached hereto as **Exhibit 21** is a true and correct copy of the *Linde* plaintiffs' Trial Exhibit Number 4764, Arab Bank – New York Branch Transactions, Summary of Transactions for Identified Individual - Yousef Al-Hayek. The exhibit was presented to the jury by the plaintiffs' forensic accountant in *Linde v. Arab Bank, Plc*, 04-cv-2799 (BMC)(VVP).

24. Attached hereto as **Exhibit 22** is a true and correct copy of plaintiffs' Trial Exhibit Number 12 in *Linde v. Arab Bank, Plc*, No. 04-cv-2799 (BMC)(VVP): Arab Bank's answer to an interrogatory asking defendant to "[s]tate the total dollar amount" of all such funds transfers. The Bank answered that "Arab Bank processed $2,563,275 in funds transfers in which parties identified on Exhibit A were either the originator or the beneficiary from the date of designation of those individuals or entities by the United States Government through December 31, 2007."

25. Attached hereto as **Exhibit 23** is a true and correct copy of plaintiffs' Trial Exhibit Number 4752, Summary of Financial Transactions for Twelve (12) Selected Entities / Organizations as Beneficiary (1999 to 2004), in *Linde v. Arab Bank, Plc*, 04-cv-2799 (BMC)(VVP). The exhibit was presented to the jury to establish that the Bank maintained accounts in the Palestinian Territories for 11 Hamas-controlled "charities" that received more than $32 million in transfers.

26. Attached hereto as **Exhibit 24** is a true and correct copy of ABPLC189078-92 with a certified English translation. The document constitutes a Saudi Committee payment list provided to Arab Bank that specifies the purported causes of death of the "martyrs" that qualify recipients to receive payments. For example, page 29, line 610 specifies "French Hill operation," a deadly machine gun attack on a bus in the French Hill section of Jerusalem that killed two and wounded 45.

27. Attached hereto as **Exhibit 25** are true and correct copies of *Linde* Trial PowerPoint slides summarizing Arab Bank transfers on behalf of the Saudi Committee to the families of at least 24 Hamas suicide bombers, including five terrorists who killed and injured *Linde* plaintiffs; and Hamas operatives who participated in at least 12 of the 24 attacks that injured *Linde* plaintiffs. These slides were presented to the jury by the plaintiffs' expert witness Arieh D. Spitzen in *Linde v. Arab Bank, Plc*, 04-cv-2799 (BMC)(VVP).

28. Attached hereto as **Exhibit 26** are true and correct copies of slides from the Trial PowerPoint slide presentation of the plaintiffs' expert witness Arieh D. Spitzen in *Linde v. Arab Bank, Plc*, 04-cv-2799 (BMC)(VVP). These slides demonstrate the process by which names that appeared on Saudi Committee lists were cross referenced to identify family members of suicide bombers and other terrorists.

29. Attached hereto as **Exhibit 27** is a collection of electronic correspondence between counsel for Arab Bank and Plaintiffs' counsel from October 2019 through January 2020 exchanging lists and charts concerning the identities of persons or entities listed in Plaintiffs' document requests.

30. Attached hereto as **Exhibit 28** is a true and correct copy of a U.S. Department of State memorandum produced to plaintiffs' counsel under the Freedom of Information Act. The memorandum states that: "In 2003, the United States provided evidence to Saudi authorities that the Saudi al Quds Intifadah Committee ('Committee') founded in October 2000, was forwarding millions of dollars in funds to families of Palestinians engaged in terrorist activities, including those of suicide bombers."

31. Attached hereto as **Exhibit 29** is a true and correct copy of plaintiffs' Trial Exhibit Number 766 with a certified translation in *Linde v. Arab Bank, Plc*, No. 04-cv-2799 (BMC)(VVP). It reflects the contents of the al-Ansar Society website during the relevant period.

32. Attached hereto as **Exhibit 30** is a true and correct copy of the May 4, 2005, Statement of Chairwoman Sue W. Kelly during a hearing of the Subcommittee on Oversight and Investigations, entitled "Starving Terrorists of Money: The Role of Middle Eastern Financial Institutions." In her statement, Ms. Kelly referred to "the Treasury Department … response to inadequate money-laundering controls at Arab Bank's branch in New York City" and stated that the "Oversight & Investigations Subcommittee is committed to learning more about these deeply troubling circumstances."

33. Attached hereto as **Exhibit 31** are true and correct copies of *Linde* Trial PowerPoint slides concerning various transfers made by Arab Bank to Hamas operatives involved in committing terror attacks as well as slides relating to one Saudi Committee payment made to the family of a suicide bomber and the bomber's connections both to Hamas and other Hamas operatives who received payments from the Bank. These slides were presented to the jury by the plaintiffs' expert witness Arieh D. Spitzen in *Linde v. Arab Bank, Plc*, No. 04-cv-2799 (BMC)(VVP).

34. Attached hereto as **Exhibit 32** is a true and correct copy of the April 3, 2006, letter, submitted by Dr. George T. Abed, Governor and Chairman of the Board of the Palestinian Monetary Authority, to the court in *Linde v. Arab Bank, Plc*, No. 04-cv-2799 (BMC)(VVP), setting forth its legal position on the scope of Palestinian law.

35. Attached hereto as **Exhibit 33** is a true and correct copy of the March 29, 2006, Declaration of Maher Masri, Chairman of the Board of Directors of the Capital Market Authority

within the Palestinian National Authority and Chairman of the Board of Directors of the Palestine Banking Corporation, submitted in *Linde v. Arab Bank, Plc*, No. 04-cv-2799 (BMC)(VVP), setting forth his legal position on the scope of Palestinian law.

36. Attached hereto as **Exhibit 34** is a true and correct copy of the August 25, 2010, letter from Dr. Jihad Al Wazir, Governor of the Palestinian Monetary Authority, to Judge Nina Gershon in *Linde v. Arab Bank, Plc*, No. 04-cv-2799 (BMC)(VVP), setting forth the PMA's legal position on the scope of Palestinian law.

37. Attached hereto as **Exhibit 35** is a true and correct copy of a Trial PowerPoint slide for funds transfers through Arab Bank's New York branch to senior Hamas leader Ismail Haniyeh presented to the jury by the plaintiffs' expert witness Arieh D. Spitzen in *Linde v. Arab Bank, Plc*, 04-cv-2799 (BMC)(VVP).

38. Attached hereto as **Exhibit 36** are true and correct copies of two Trial PowerPoint slides presented to the jury by the plaintiffs' expert witness Arieh D. Spitzen in *Linde v. Arab Bank, Plc*, 04-cv-2799 (BMC)(VVP). The first slide sets forth the Gross National Income ("GNI") per capita in the Palestinian Territories in 1999, the last year before the outbreak of the Second Intifada. The second slide compares Palestinian GNI per capita in the years 1999 and 2003 to three types of payments made by the Saudi Committee.

39. Attached hereto as **Exhibit 37** is a true and correct copy of a Trial PowerPoint slide for funds transfers through Arab Bank's New York branch to the wife of Hamas's spiritual leader, Sheikh Ahmed Yassin, presented to the jury by the plaintiffs' expert witness Arieh D. Spitzen in *Linde v. Arab Bank, Plc*, No. 04-cv-2799 (BMC)(VVP).

40. Attached hereto as **Exhibit 38** is a true and correct copy of the May 25, 2005, letter sent by Eytan Epstein, Arab Bank's local counsel in Israel, to the Intelligence and Terrorism

Information Center in Israel urging it to "act responsibly and completely avoid publishing all the material regarding the Arab Bank, directly or indirectly, which could serve as evidence as part of the legal proceedings …."

41. Attached hereto as **Exhibit 39** is a true and correct copy of a June 20, 2005, letter from Arab Bank's counsel to Magistrate Judge Pohorelsky in *Linde v. Arab Bank, Plc*, No. 04-cv-2799 (BMC)(VVP). The letter states:

> Plaintiffs contend that because they have characterized the charitable activities of the Saudi Committee as a "death and dismemberment scheme . . . for all actual and potential Palestinian terrorists," they are entitled to discovery of more than 200,000 transactions directed by the Saudi Committee. Such an argument is meritless.
>
> Plaintiffs' requests are overbroad because they are not confined to payments to those individuals or entities that are alleged to have harmed them. Such alleged harm delimits the universe of what is relevant to plaintiffs, and the production of documents concerning payments made at the instruction of the Saudi Committee should thus be confined to documents evidencing transactions which are alleged to have resulted in the injuries at issue in these proceedings.

42. Attached hereto as **Exhibit 40** is a true and correct copy of Arab Bank's Reply Brief for Petitioner in the United States Supreme Court in case number 12-1485. On pages 1-2, the brief states that "the Bank disclosed to plaintiffs records previously provided to U.S. officials with permission and under mutual aid treaties (Jordan Br. 12-13), for it did so with the consent of its regulators (as plaintiffs well know)."

43. Attached hereto as **Exhibit 41** is a true and correct copy of the <u>uncontested</u> June 7, 2006, Order regarding Foreign Bank Secrecy signed by Magistrate Judge Pohorelsky in *Linde v. Arab Bank, Plc*, No. 04-cv-2799 (BMC)(VVP), wherein "the Court makes the presumptive factual finding, pursuant to Fed. R Evid. 104, that Defendant has previously produced documents relevant to this case in the United States without obtaining the prior formal consent of the applicable governmental authorities in Jordan, Lebanon or the Palestinian Authority providing Defendant

with immunity from criminal prosecution for violations of any applicable banking secrecy laws prior to Defendant's production of these documents in the United States."

44. Attached hereto as **Exhibit 42** is a true and correct copy of the Memorandum of Law of Defendant Arab Bank, Plc in Opposition to Plaintiffs' Motion for an Order Overruling Objections, Deeming Facts as Admitted and Compelling Further Responses to Plaintiffs' First Set of Requests for Admissions and Related Interrogatories dated April 3, 2006, in *Linde v. Arab Bank, Plc*, No. 04-cv-2799 (BMC)(VVP). On page 8 of its brief, the Bank states:

> In compliance with that November 8, 2005 Stipulated Production Order, and pursuant to Lebanese Law No. 318 of April 20, 2001, Arab Bank promptly applied to the Lebanese Special Investigation Commission for permission to disclose information relating to account number 3-810-622473-0330 at Arab Bank's Al-Mazra branch. On January 25, 2006, the Special Investigation Commission granted Arab Bank's application.

45. Attached here to as **Exhibit 43** is a true and correct copy of a discovery order issued by Magistrate Judge Pohorelsky in *Linde v. Arab Bank, Plc*, No. 04-cv-2799 (BMC)(VVP). Magistrate Judge Pohorelsky originally issued the order on May 7, 2007, and provided a copy of the order to counsel via facsimile. The order was later re-signed by Judge Pohorelsky on June 27, 2007, and docketed as ECF No. 402 in *Linde v. Arab Bank, Plc*, No. 04-cv-2799 (BMC)(VVP).

I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 4, 2022
Hackensack, New Jersey

*/s/ Aaron Schlanger*
Aaron Schlanger