# Exhibit 2

UNITED STATES OF AMERICA
DEPARTMENT OF THE TREASURY
FINANCIAL CRIMES ENFORCEMENT NETWORK

IN THE MATTER OF:            )
                             )
                             )
                             )   Number 2005-2
                             )
THE FEDERAL BRANCH OF        )
ARAB BANK PLC                )
NEW YORK, NEW YORK           )

## ASSESSMENT OF CIVIL MONEY PENALTY

I.   INTRODUCTION

The Secretary of the United States Department of the Treasury has delegated to the Director of the Financial Crimes Enforcement Network the authority to determine whether a financial institution has violated the Bank Secrecy Act and the regulations issued pursuant to that Act,[1] and what, if any, sanction is appropriate.

In order to resolve this matter, and only for that purpose, the Federal Branch of Arab Bank plc, New York, New York ("Arab Bank – New York") has entered into a CONSENT TO THE ASSESSMENT OF CIVIL MONEY PENALTY ("CONSENT") dated August 17, 2005, without admitting or denying the determinations by the Financial Crimes Enforcement Network, as described in Sections III and IV below, except as to jurisdiction in Section II below, which is admitted.

The CONSENT is incorporated into this ASSESSMENT OF CIVIL MONEY PENALTY ("ASSESSMENT") by this reference.

II.  JURISDICTION

Arab Bank is a public shareholding company and banking institution, with headquarters in Amman, the capital city of the Hashemite Kingdom of Jordan. Arab Bank has approximately 400 branches, offices, and subsidiaries – members of the Arab Bank Group – in thirty countries. The Arab Bank Group employs approximately 7,500 people and provides retail, private, corporate, correspondent, and other banking services to numerous businesses, organizations, institutions, and individuals in the Middle East and throughout the world. As of December 31, 2004, the Arab Bank Group had consolidated total assets of $27 billion. For the year ending December 31, 2004, the Arab Bank Group had consolidated net income of $319 million. The Arab Bank Group is a leading provider of financial services in the Middle East and North Africa.

---

[1] 31 U.S.C. §§ 5311 et seq. and 31 C.F.R. Part 103.

Arab Bank – New York is a branch of Arab Bank in the United States, and a member of the Arab Bank Group. Arab Bank – New York received a license from the Office of the Comptroller of the Currency in 1983. The Office of the Comptroller of the Currency examines Arab Bank – New York for compliance with the Bank Secrecy Act and its implementing regulations, and for compliance with similar rules under Title 12 of the United States Code.

At all relevant times, Arab Bank – New York was a "financial institution" and a "bank" within the meaning of the Bank Secrecy Act and the regulations issued pursuant to that Act.[2]

III. DETERMINATIONS

　　A.　Summary

Arab Bank – New York is a member of the Arab Bank Group located in the United States.[3] Arab Bank – New York served as a clearing institution for funds transfers in United States dollars. The funds transfers occurred on a global basis.

Arab Bank – New York served as an intermediary institution. Arab Bank – New York performed the clearing function for members of the Arab Bank Group in foreign jurisdictions and domestic and foreign correspondent institutions independent of the Arab Bank Group. In addition, as a member of the Clearing House Interbank Payments System (CHIPS) and other settlement systems in the United States, Arab Bank – New York cleared funds transfers involving major commercial banks in the United States. None of the originators and beneficiaries in funds transfers that Arab Bank – New York cleared as an intermediary institution held accounts at Arab Bank – New York.

Arab Bank – New York cleared funds transfers from originators with accounts at members of the Arab Bank Group in foreign jurisdictions, to beneficiaries with accounts at the same or other members of the Arab Bank Group in foreign jurisdictions. Similarly, Arab Bank – New York cleared funds transfers for originators and beneficiaries with accounts at correspondent institutions.

Arab Bank – New York cleared funds transfers from originators with accounts at members of settlement systems in the United States, to beneficiaries with accounts at correspondent institutions or members of the Arab Bank Group in foreign jurisdictions. Arab Bank – New York also cleared funds transfers that flowed in the opposite direction – from originators with accounts at correspondent institutions or members of the Arab Bank Group in

---

[2] 31 U.S.C. § 5312(a)(2) and 31 C.F.R. § 103.11.

[3] Branches and subsidiaries of Arab Bank in foreign jurisdictions held correspondent accounts at Arab Bank – New York. For purposes of the Bank Secrecy Act, a "correspondent account" includes "a formal banking or business relationship … established to make payments or other disbursements on behalf of a foreign bank, or to handle other financial transactions related to the foreign bank." 31 C.F.R. § 103.175(d). Branches and subsidiaries of Arab Bank in foreign jurisdictions are "foreign banks" for purposes of the Bank Secrecy Act. See 31 C.F.R. § 103.11(o).

foreign jurisdictions, to beneficiaries with accounts at members of settlement systems in the United States.

On average, Arab Bank – New York processed 500,000 funds transfers per year.[4] The customer base and geographic locations of the Arab Bank Group and correspondent institutions, and the volume of funds transfers that Arab Bank – New York cleared, posed heightened risks of money laundering and terrorist financing. An investigation by the Financial Crimes Enforcement Network revealed that Arab Bank – New York failed to apply an adequate system of internal controls to the clearing of funds transfers.[5] The investigation also revealed that Arab Bank – New York failed to conduct adequate independent testing to allow for the timely identification and correction of Bank Secrecy Act compliance failures. These failures in internal controls and independent testing led, in turn, to a failure on the part of Arab Bank – New York to identify and report suspicious transactions in a timely manner. The failures of Arab Bank – New York to comply with the Bank Secrecy Act and the regulations issued pursuant to that Act were significant.

On February 8, 2005, the Office of the Comptroller of the Currency and Arab Bank – New York entered into a Consent Order. On February 24, 2005, the Office of the Comptroller of the Currency and Arab Bank – New York amended the Consent Order. The Office of the Comptroller of the Currency determined that Arab Bank - New York violated 12 C.F.R. §§ 21.11 and 21.21. Arab Bank – New York entered into the original and amended Consent Order without admitting or denying the determinations by the Office of the Comptroller of the Currency. The original and amended Consent Order imposed restrictions on the processing of funds transfers, and the amended Consent Order required the development and implementation of a plan for conversion from a federal branch to a federal agency.[6]

B.   Violations of the Requirement to Implement an Anti-Money Laundering Program

The Financial Crimes Enforcement Network has determined that Arab Bank – New York violated the anti-money laundering program requirements of the Bank Secrecy Act and the regulations issued pursuant to that Act.[7] A federal branch of a foreign bank must implement an anti-money laundering program that conforms with rules of the Office of the Comptroller of the Currency. Since 1987, the Office of the Comptroller of the Currency has required a program "reasonably designed to assure and monitor compliance" with reporting and record keeping requirements under the Bank Secrecy Act.[8] Reporting requirements under the Bank Secrecy Act

---

[4] Arab Bank – New York did process funds transfers for originators or beneficiaries with accounts at Arab Bank – New York. Arab Bank – New York served as the originating or beneficiary institution – and not the clearing institution and an intermediary institution – in these funds transfers.

[5] The Financial Crimes Enforcement Network based the investigation, in part, on a separate investigation by the Office of the Comptroller of the Currency.

[6] The Consent and this Assessment remain binding on Arab Bank – New York upon its conversion to a federal agency, and all references to Arab Bank – New York encompass that entity in its subsequent capacity as a federal agency.

[7] 31 U.S.C. § 5318(h)(1) and 31 C.F.R. § 103.120. These requirements became effective on April 24, 2002.

include the requirement to report suspicious transactions. An anti-money laundering program must contain the following elements: (1) a system of internal controls; (2) independent testing for compliance; (3) the designation of an individual, or individuals, to coordinate and monitor day-to-day compliance; and (4) training of appropriate personnel.[9]

1. Internal Controls

Arab Bank – New York failed to implement an adequate system of internal controls to comply with the Bank Secrecy Act and manage the risks of money laundering and terrorist financing involving funds transfers for originators and beneficiaries without accounts at Arab Bank – New York. Arab Bank – New York served as a clearing institution for a substantial volume of funds transfers in United States dollars. The Arab Bank Group and a number of correspondent institutions operated in jurisdictions that posed heightened risks of money laundering and terrorist financing.

Nevertheless, Arab Bank – New York established inappropriate limitations on the scope of systems and controls to comply with the Bank Secrecy Act and manage the risks of money laundering and terrorist financing. Arab Bank – New York focused on direct customers of Arab Bank – New York, as opposed to originators and beneficiaries without accounts at Arab Bank – New York. Arab Bank – New York extended transaction monitoring and review to only those individuals and entities that Arab Bank – New York viewed as direct customers of Arab Bank – New York. The Bank Secrecy Act requires a program reasonably designed to ensure compliance with, among other things, the requirement to report suspicious transactions. The requirement to report suspicious transactions applies to transactions "conducted or attempted by, at, or through" Arab Bank – New York, regardless of whether the transactions involve direct customers of Arab Bank – New York.

These limitations resulted in certain failures of internal controls at Arab Bank – New York. First, Arab Bank – New York failed to monitor, for potentially suspicious activity by originators and beneficiaries without accounts at Arab Bank – New York, funds transfers that Arab Bank – New York cleared as an intermediary institution. In fact, records of Arab Bank – New York indicate that no monitoring of these funds transfers occurred before June 2002. Afterwards, Arab Bank – New York conducted manual reviews of spreadsheets containing information on these funds transfers. However, given the volume of activity, manual review did not – and could not – adequately detect suspicious transactions.

Effective monitoring of these funds transfers required automation. In 2000, Arab Bank – New York decided to develop an automated monitoring system. To use the system effectively, Arab Bank – New York needed to implement procedures enabling the system to capture funds transfers that displayed indicia of suspicious activity by originators and beneficiaries in funds transfers Arab Bank – New York cleared, including procedures for incorporating – to the extent appropriate and practical – existing identifying and other information on the originators and beneficiaries. Arab Bank – New York failed to implement these procedures. The automated

---

[8] 12 C.F.R. § 21.21(b).

[9] 12 C.F.R. § 21.21(c).

monitoring system proved inadequate, in light of the heightened risks associated with funds transfers flowing through Arab Bank – New York.

In addition, Arab Bank – New York failed to implement procedures for obtaining relevant information, from fellow members of the Arab Bank Group or correspondent institutions, on the potentially suspicious nature of funds transfers cleared by Arab Bank – New York. Law enforcement or regulatory authorities had frozen or monitored accounts at members of the Arab Bank Group. An adequate system of internal controls should have included procedures for obtaining this information on a regular and timely basis, to the extent Arab Bank-New York cleared funds transfers involving these accounts, and to the extent obtaining the information proved appropriate and practical.

For example, during the period from 2000 through 2004, management of an Arab Bank affiliate in the Palestinian Territories received, from regulatory authorities in the Palestinian Territories, orders that focused explicitly on funds transfers to a number of beneficiaries with accounts at members of the Arab Bank Group in the Palestinian Territories. In addition, regulatory authorities in the Palestinian Territories issued circulars containing the names of suspected criminals and ordered institutions holding accounts of the suspected criminals to either freeze the accounts or place the accounts on a watch list. Despite the heightened risk of illicit activity, Arab Bank – New York failed to implement procedures for obtaining this type of information from other members of the Arab Bank Group, to mitigate the risk and ensure compliance with the Bank Secrecy Act.

Moreover, Arab Bank – New York failed to implement procedures, commensurate with the risks posed by its U.S. dollar clearing activities, for obtaining and utilizing publicly available information, to monitor and identify funds transfers that warranted further investigation, or to conduct follow-up investigations if Arab Bank – New York had identified anomalies or potentially suspicious funds transfers. Names similar to those of originators and beneficiaries in funds transfers cleared by Arab Bank – New York appeared in credible sources of publicly available information. The sources included Congressional testimony, indictments in the United States, and well-publicized research and media reports. Due to the heightened risks of money laundering and terrorist financing, Arab Bank – New York should have developed procedures for utilizing – to the extent appropriate and practical – publicly available information concerning beneficiaries and originators, on a risk-assessed basis.

Finally, in a few instances, manual review of records did lead to the detection of anomalies. On those occasions where Arab Bank – New York requested information from other members of the Arab Bank Group, Arab Bank – New York often accepted generic replies, indicating merely that the members knew their customers – replies that did not provide an adequate basis for determining whether the funds transfers had a business or lawful purpose.[10]

---

[10] *See* 31 U.S.C. §5318(g) and 31 C.F.R. §103.18(a)(2)(iii). Under these sections of law and regulation, once Arab Bank – New York determines that a funds transfer "has no business or apparent lawful purpose or is not the sort in which the particular customer would normally be expected to engage," the funds transfer would qualify as "suspicious" if Arab Bank – New York knows of no reasonable explanation for the funds transfer after examining the available facts, including background and possible purpose of the funds transfer.

2.  Independent Testing

Arab Bank – New York failed to implement adequate procedures for independent testing. The internal audit function at Arab Bank – New York failed to conduct testing sufficient to assess the adequacy of the anti-money laundering program at Arab Bank – New York. Internal audit failed to follow-up on, or convey in a timely manner, conclusions concerning the adequacy of Bank Secrecy Act compliance at Arab Bank – New York. In fact, audit reports contained inaccurate assessments of the extent to which Arab Bank – New York was implementing an automated monitoring system for funds transfers that Arab Bank – New York cleared as an intermediary institution.

C.  Violations of the Requirement to Report Suspicious Transactions

The Financial Crimes Enforcement Network has determined that Arab Bank – New York violated the suspicious transaction reporting requirements of the Bank Secrecy Act and regulations issued pursuant to that Act.[11] These reporting requirements impose an obligation on financial institutions to report transactions that the institution "knows, suspects, or has reason to suspect" are suspicious. The financial institution must report the transactions if the transactions involve or aggregate to at least $5,000, and the transactions are "conducted or attempted by, at, or through" the financial institution. A transaction is "suspicious" if the transaction: (1) involves funds derived from illegal activities, or is conducted to disguise funds derived from illegal activities; (2) is designed to evade the reporting or record keeping requirements of the Bank Secrecy Act or regulations under the Bank Secrecy Act; or (3) has no business or apparent lawful purpose or is not the sort in which the customer would normally be expected to engage, and the financial institution knows of no reasonable explanation for the transaction after examining the available facts, including background and possible purpose of the transaction.[12]

Financial institutions must report suspicious transactions by filing suspicious activity reports.[13] In general, financial institutions must file a suspicious activity report no later than thirty (30) calendar days after detecting facts that may constitute a basis for filing a suspicious activity report. If no suspect was identified on the date of detection, a financial institution may delay the filing for an additional thirty (30) calendar days, to identify a suspect. However, in no event may the financial institution file a suspicious activity report more than sixty (60) calendar days after the date of detection.[14]

Arab Bank – New York failed to file a number of suspicious activity reports in a timely manner. As stated, Arab Bank – New York served as a clearing institution for a substantial volume of funds transfers in United States dollars. Arab Bank – New York cleared funds transfers for originators or beneficiaries with accounts in jurisdictions that posed heightened risks

---

[11] 31 U.S.C. § 5318(g) and 31 C.F.R. § 103.18.

[12] 31 C.F.R. § 103.18(a)(2)(i) through (iii).

[13] 31 C.F.R. § 103.18(b)(2).

[14] 31 C.F.R. § 103.18(b)(3).

of money laundering and terrorist financing. All of these funds transfers represented transactions "conducted or attempted by, at, or through" Arab Bank – New York.

Arab Bank – New York failed to identify a number of potentially suspicious funds transfers. Had Arab Bank – New York implemented an adequate, risk-commensurate anti-money laundering program, identified certain funds transfers for further investigation, and performed an appropriate investigation, Arab Bank – New York would have found that names similar to those of originators and beneficiaries in funds transfers cleared by Arab Bank – New York appeared in credible and publicly available sources of information, including Congressional testimony, indictments in the United States, and well-publicized research and media reports, linking the originators and beneficiaries to illicit activity. Some originators or beneficiaries appeared in subpoenas or other legal process that Arab Bank – New York received from law enforcement in the United States.[15] Systems and controls for ensuring compliance with the requirement to report suspicious transactions should have included procedures for obtaining this information, to the extent appropriate and practical.

For example, during the period from 2001 through 2004, Arab Bank – New York cleared funds transfers for originators or beneficiaries that the Office of Foreign Assets Control or the Department of State later designated as "specially designated terrorists," "specially designated global terrorists," or "foreign terrorist organizations." At the time of the funds transfers, neither the Office of Foreign Assets Control nor the Department of State had designated the originators or beneficiaries. Arab Bank – New York largely complied with the requirement to cease clearing funds transfers once the Office of Foreign Assets Control designated an entity as a "specially designated terrorist," "specially designated global terrorist," or "foreign terrorist organization."

However, designations of individuals and entities as terrorists by the United States Government provide critical information for financial institutions to use in assessing terrorist financing risk. Once a designation occurred, Arab Bank – New York failed to review recent activity, occurring prior to the designation and associated with the designated entities, to identify potentially suspicious activity. Had such a review been conducted, it would have uncovered originators and beneficiaries – with possible ties to the designated entities – that had recently engaged in potentially suspicious activity. Arab Bank – New York failed to review information in its possession that would have shown it was clearing funds transfers for individuals and entities dealing with subsequently designated terrorists and terrorist organizations, failed to analyze this information, and failed to file suspicious activity reports.

Arab Bank – New York did not file the majority of its suspicious activity reports referencing terrorist financing until after the Office of Comptroller of the Currency commenced a review of its funds transfer activity in July 2004. An adequate anti-money laundering program would have allowed Arab Bank – New York to file suspicious activity reports in a timely manner.

---

[15] While a subpoena from law enforcement does not represent, in and of itself, cause for filing a suspicious activity report, the subpoena is an important piece of information that places a financial institution on notice of the need to conduct a further review of accounts or activity involving the subject of the subpoena to identify potentially suspicious activity. Arab Bank – New York failed to conduct such reviews.

IV.   CIVIL MONEY PENALTY

Under the authority of the Bank Secrecy Act and the regulations issued pursuant to that Act,[16] the Financial Crimes Enforcement Network has determined that a civil money penalty is due for the violations of the Bank Secrecy Act and the regulations issued pursuant to that Act described in this Assessment.

Based on the seriousness of the violations at issue in this matter, and the financial resources available to Arab Bank – New York, the Financial Crimes Enforcement Network has determined that the appropriate penalty in this matter is $24,000,000.00.

V.   CONSENT TO ASSESSMENT

To resolve this matter, and only for that purpose, Arab Bank – New York, without admitting or denying either the facts or determinations described in Sections III and IV above, except as to jurisdiction in Section II, which is admitted, consents to the assessment of a civil money penalty against it in the sum of $24,000,000.00. The assessment shall be concurrent with the assessment of a civil money penalty, in the amount of $24,000,000.00, by the Office of the Comptroller of the Currency, and shall be satisfied by one payment of $24,000,000.00 to the Department of the Treasury.

Arab Bank – New York agrees to pay the amount of $24,000,000.00 within five (5) business days of this ASSESSMENT. Such payment shall be:

a.   Made by certified check, bank cashier's check, bank money order, or wire;

b.   Made payable to the United States Department of the Treasury;

c.   Hand-delivered or sent by overnight mail to the Financial Crimes Enforcement Network, Attention: Associate Director, Administration & Communications Division, 2070 Chain Bridge Road, Suite 200, Vienna, Virginia 22182; and

d.   Submitted under a cover letter, which references the caption and file number in this matter.

Arab Bank – New York recognizes and states that it enters into the CONSENT freely and voluntarily and that no offers, promises, or inducements of any nature whatsoever have been made by the Financial Crimes Enforcement Network or any employee, agent, or representative of the Financial Crimes Enforcement Network to induce Arab Bank – New York to enter into the CONSENT, except for those specified in the CONSENT.

Arab Bank – New York understands and agrees that the CONSENT embodies the entire agreement between Arab Bank – New York and the Financial Crimes Enforcement Network relating to this enforcement matter only, as described in Section III above. Arab Bank – New York further understands and agrees that there are no express or implied promises,

---

[16] 31 U.S.C. § 5321 and 31 C.F.R. § 103.57.

representations, or agreements between Arab Bank – New York and the Financial Crimes Enforcement Network other than those expressly set forth or referred to in the CONSENT and that nothing in the CONSENT or in this ASSESSMENT is binding on any other agency of government, whether federal, state, or local.

VI.   RELEASE

Arab Bank – New York understands that execution of the CONSENT, and compliance with the terms of this ASSESSMENT and the CONSENT, constitute a complete settlement of civil liability for the violations of the Bank Secrecy Act and regulations issued pursuant to that Act described in the CONSENT and this ASSESSMENT.

By: _____
William J. Fox, Director
Financial Crimes Enforcement Network
United States Department of the Treasury

Date: __17-AUG-2005__