# Exhibit 19

**FILED UNDER SEAL**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| COURTNEY LINDE, *et al.*, | : | |
| Plaintiffs, | : | Case No. CV 04 2799(NG)(VVP) |
| -against- | : | |
| ARAB BANK, PLC, | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| PHILIP LITLE, *et al.*, | : | |
| Plaintiffs, | : | Case No. CV 04 5449(NG)(VVP) |
| -against- | : | |
| ARAB BANK, PLC, | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| ORAN ALMOG, *et al.*, | : | |
| Plaintiffs, | : | |
| -against- | : | Case No. CV 04 5564(NG)(VVP) |
| ARAB BANK, PLC, | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| ROBERT L. COULTER, SR., | : | |
| FOR THE ESTATE OF JANIS RUTH COULTER, *et al.*, | : | |
| Plaintiffs, | : | Case No. CV 05 365(NG)(VVP) |
| -against- | : | |
| ARAB BANK, PLC, | : | |
| Defendant. | : | |

**JA3674**

GILA AFRIAT-KURTZER, *et al.*,

                    Plaintiffs,

      -against-

ARAB BANK, PLC,

                  Defendant.

Case No. CV 05 388(NG)(VVP)

---

MICHAEL BENNETT, *et al.*,

                    Plaintiffs,

      -against-

ARAB BANK, PLC,

                  Defendant.

Case No. CV 05 3183(NG)(VVP)

---

ARNOLD ROTH, *et al.*,

                    Plaintiffs,

      -against-

ARAB BANK, PLC,

                  Defendant.

Case No. CV 05 3738(NG)(VVP)

---

STEWART WEISS AND SUSAN WEISS, *et al.*,

                    Plaintiffs,

      -against-

ARAB BANK, PLC,

                  Defendant.

Case No. CV 06 1623(NG)(VVP)

---

**JA3675**

—————————————————————

JOSEPH JESNER, *et al.*,

                       Plaintiffs,          Case No. CV 06 3869(NG)(VVP)

    -against-

ARAB BANK, PLC,

                       Defendant.

—————————————————————

YAFFA LEV, *et al.*,

                       Plaintiffs,          Case No. CV 08 03251(NG)(VVP)

    -against-

ARAB BANK, PLC,

                       Defendant.

—————————————————————

### DEFENDANT ARAB BANK PLC's MEMORANDUM IN SUPPORT OF OBJECTIONS TO MAGISTRATE JUDGE POHORELSKY'S REPORT AND RECOMMENDATION ON SANCTIONS

**JA3676**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 2

RECORD OF ARAB BANK'S DISCOVERY EFFORTS AND PRODUCTION ........................... 6

    A.  Arab Bank's Record Of Production ..................................................................................... 6

           1.    Production of Saudi Committee Records and Related Testimony .................................. 8

           2.    Production of Account and Transaction Records and Related Testimony ..................... 12

           3.    Arab Bank New York ................................................................................................. 14

    B.  Administrative Applications .............................................................................................. 15

JUDGE POHORELSKY'S REPORT AND RECOMMENDATION ........................................... 18

    A.  Absence Of Bad Faith ...................................................................................................... 18

    B.  No Evidence Of Knowledge Or Intent .............................................................................. 19

    C.  Recommended Sanctions .................................................................................................. 21

ARGUMENT .............................................................................................................................. 23

I.    ONLY SANCTIONS NECESSARY TO RESTORE AN EVIDENTIARY BALANCE ARE
      WARRANTED. ..................................................................................................................... 23

II.   THE FIRST TWO SANCTIONS RECOMMENDED BY MAGISTRATE JUDGE
      POHORELSKY ARE UNNECESSARY AND UNWARRANTED. ........................................ 25

    A.  Arab Bank's Production With Respect To The Saudi Committee Has Achieved An
        Evidentiary Balance Without The Need For Recommended Sanction Number 1. .............. 25

    B.  Recommended Sanction Number 2 Regarding Alleged Arab Bank Customers Is Over-
        Inclusive. ........................................................................................................................ 27

CONCLUSION ........................................................................................................................... 30

**JA3677**

## TABLE OF AUTHORITIES

**CASES**

*In re Westinghouse Elec. Corp. Uranium Contracts Litig*, 563 F.2d 992 (10th Cir. 1977) ............ 23, 24

*Kronisch v. United States*, 150 F.3d 112 (2d Cir. 1998) ........................................................ 20

*Linde v. Arab Bank, Plc*, 2007 WL 4373252 (E.D.N.Y. Dec. 10, 2007) .................................... 2

*Linde v. Arab Bank, Plc*, 2007 WL 812918 (E.D.N.Y. March 14, 2007) .................................. 3

*Linde v. Arab Bank, Plc*, 463 F. Supp. 2d 310 (E.D.N.Y. 2006) ............................................. 3

*Minpeco v. Conticommodity Services, Inc.*, 116 F.R.D. 517 (S.D.N.Y. 1987) ...................... 24

*Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99 (2d Cir. 2002) ...................... 20

*Shcherbakovsky v. DaCapo Al Fine, Ltd.*, 490 F.3d 130 (2d Cir. 2007) .................................. 23

*Société Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197 (1958) ...................................................................................................... 23

*Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68 (S.D.N.Y. 1991) ............................... 4, 23

**OTHER AUTHORITIES**

Israeli Protection of Privacy Law 5741-1981 ....................................................................... 2

Jordanian Banking Law No. 28 of 2000 ........................................................................... 2, 15

Lebanese bank secrecy law of September 3, 1956 ................................................................ 2

Palestinian Monetary Authority (PMA) Banking Law No. 2 of 2002 ............................... 2, 16

**STATUTES**

Anti-Terrorism Act, 18 U.S.C. § 2333 ................................................................................ 2

**RULES**

Fed. R. Civ. P. 30(b)(6) ................................................................................................ 7, 9, 13

Fed. R. Civ. P. 37(b)(2)(A) ........................................................................................... passim

Fed. R. Civ. P. 72(b) ....................................................................................................... 1

**TREATISES**

Restatement (Third) of Foreign Relations Law § 442 (1987) ............................................. 24

JA3678

Defendant Arab Bank Plc ("Arab Bank" or the "Bank") respectfully submits its limited Objections, pursuant to Fed. R. Civ. P. 72(b), to the June 1, 2009 Report and Recommendation issued by Magistrate Judge Pohorelsky (*Linde* Doc. No. 560) ("June 1 Report"), as modified by his June 18, 2009 Order Modifying Report and Recommendation (*Linde* Doc. No. 567) (2009 WL 1743988 (E.D.N.Y. June 18, 2009)) ("June 18 Modification") (collectively referred to as "Report and Recommendation"). While Magistrate Judge Pohorelsky fashioned his ruling as a Report and Recommendation subject to *de novo* review – in connection with which the parties have filed for the Court's consideration their entire submission below as a Joint Appendix ("JA") – his findings and proposal are an appropriate benchmark for addressing the relief sought by plaintiffs.

Magistrate Judge Pohorelsky's Report and Recommendation was issued in response to a motion by plaintiffs in the above-captioned cases, pursuant to Fed. R. Civ. P. 37(b)(2)(A), seeking sanctions against Arab Bank on account of the Bank's inability to comply fully with certain discovery orders due to limitations imposed by bank secrecy statutes carrying criminal penalties in several of the sovereignties in which Arab Bank operates. Notwithstanding the fact that the Bank had managed to produce lawfully hundreds of thousands of records and to make available witnesses for weeks of deposition testimony relating to each of plaintiffs' core claims, plaintiffs sought severe sanctions against the Bank. Indeed, plaintiffs ignored and misrepresented Arab Bank's record of extensive production, which confounded plaintiffs' strategy *ab initio* of leveraging the bank secrecy restrictions applicable to Arab Bank into a *prima facie* case against the Bank. Plaintiffs further ignored and misrepresented the content of that production, which consistently reflect the Bank's lawful and proper practices. Plaintiffs ultimately sought adverse findings against Arab Bank to establish what the records and testimony produced by the Bank do not, namely knowing support of terrorism by the Bank. Magistrate Judge Pohorelsky properly rejected the adverse findings proposed by plaintiffs. He did

1

**JA3679**

recommend, however, certain adverse inferences to which Arab Bank now objects as unwarranted and unnecessary when considered in light of the complete discovery record in this litigation.

## PRELIMINARY STATEMENT

From the outset of discovery proceedings, Magistrate Judge Pohorelsky recognized that foreign bank secrecy laws presented a substantial impediment to disclosure of account records and information by Arab Bank. *See, e.g., Linde v. Arab Bank, Plc,* 2007 WL 4373252, at *1, (E.D.N.Y. Dec. 10, 2007) (describing as "anticipated" the "litigation concerning applicability of, and the effect to be given to, any such bank secrecy laws during the discovery process.") The consolidated actions that comprise this litigation involve more than 4,000 foreign citizens, as well as several hundred non-U.S. residents,[1] all of whom seek money damages against an international bank headquartered in Jordan, for the provision of financial services predominantly in the Middle East. It was thus inevitable that plaintiffs' discovery requests would give rise to conflicts with the criminal bank secrecy laws of numerous foreign jurisdictions. These laws include, in particular, Jordanian Banking Law No. 28 of 2000, Palestinian Monetary Authority (PMA) Banking Law No. 2 of 2002 and Lebanese bank secrecy law of September 3, 1956, as well as the laws of several other jurisdictions in which Arab Bank operates. Indeed, even the bank secrecy law of Israel, Protection of Privacy 5741-1981, bears on this litigation. That law has been invoked successfully by Israeli banks – Bank Hapoalim and Israel Discount Bank Ltd. – as a basis for refusing compliance with subpoenas issued by Arab Bank seeking those banks' records of financial transactions processed for the benefit of some of the very same

---

[1] Of all the U.S. citizens who have invoked the jurisdiction of this Court pursuant to the Anti-Terrorism Act, 18 U.S.C. § 2333, fewer than 40 plaintiffs in these actions actually reside in the United States. The primary residence of most plaintiffs, including those with dual U.S. and Israeli citizenship, is Israel.

2

JA3680

charities alleged to be terrorist front organizations that form the basis of plaintiffs' claims against Arab Bank.[2]

The Report and Recommendation by Magistrate Judge Pohorelsky is, thus, the culmination of a process that was carefully designed to maximize the Bank's production of truly relevant records and information to plaintiffs while minimizing the adverse impact on either party from very real and acknowledged limitations on complete production.  Magistrate Judge Pohorelsky's June 1 Report was issued after extensive briefing and oral argument on the issue of sanctions, as well as extensive briefing on the underlying issue of foreign bank secrecy.  (This Court upheld the Magistrate's Order of November 25, 2006 conditionally overruling Arab Bank's bank secrecy objections.)  (*See Linde v. Arab Bank, Plc*, 463 F. Supp. 2d 310 (E.D.N.Y. 2006), *aff'd*, 2007 WL 812918 (E.D.N.Y. March 14, 2007.)  Magistrate Judge Pohorelsky also accepted Arab Bank's motion for reconsideration of his June 1 Report, and heard two hours of additional oral argument on that motion.  (*Linde* Doc. No. 566, June 16, 2009 Transcript of Status Conference before Magistrate Judge Pohorelsky.)  Acknowledging that he had under-appreciated the substantive content of the extensive records and information produced by Arab Bank to plaintiffs, and over-valued the significance of documents withheld by the Bank on grounds of bank secrecy, he granted the motion for

---

[2]  Arab Bank has sought discovery from Bank Hapoalim and Israeli Discount Bank as non-parties now that the Court has granted motions to dismiss Arab Bank's third-party claims against them.  (*Litle* Doc. No. 531, April 3, 2009 Decision and Order.)  From Arab Bank's own records, produced to plaintiffs, there is indisputable evidence that Israeli banks participated with Arab Bank in the processing of money transfers to and from some of the same charities alleged by plaintiffs to be terrorist fronts.  (*See* Ex. A to the Declaration of Alan B. Howard in Support of Arab Bank's Objections to Magistrate Judge Pohorelsky's Report and Recommendation on Sanctions ("Howard Obj. Decl."), submitted herewith, consisting of records of transfers of funds between customers of the Israeli Discount Bank and the Nablus Zakat Committee, ABPLC008941, ABPLC008976, ABPLC009036, ABPLC009043, ABPLC009048.)  Arab Bank has sought additional evidence of such transactions from the Israeli banks themselves, not as evidence that the Israeli banks have knowingly supported terrorism, but as proof that the processing of financial transactions for these organizations was lawful and legitimate rather than evidence of an intention to destroy the State of Israel.  Since no one – and certainly not plaintiffs – would accuse Israeli financial institutions of supporting terrorism against Israelis, the fact that they provided services for some of the same entities as did Arab Bank is highly probative of Arab Bank's legitimate purpose in processing these financial transactions.  Magistrate Judge Pohorelsky, however, has upheld the bank secrecy objection asserted by the Israeli banks.  (*Linde* Doc. No. 559, May 22, 2009 Order granting in part and denying in part Arab Bank's Motion to Compel Production of Documents by Nonparty Israeli Banks.)

JA3681

reconsideration, and issued a 4-page opinion modifying his original 23-page June 1 Report. (*See* June 18 Modification at 3: "the court overlooked factual information and arguments submitted by the defendant in their opposition to the plaintiffs' sanctions motion which demonstrate that the documents produced by the bank did in fact provide a good deal of information . . . ")

In his Report and Recommendation, Magistrate Judge Pohorelsky correctly rejected plaintiffs' invitation to use the Bank's compliance with foreign bank secrecy laws as a means to punish the Bank, and he similarly rejected plaintiffs' attempt to establish liability against Arab Bank not by the proffer of evidence (which does not exist), but rather through adverse findings that the Bank knowingly processed financial transactions in support of terrorism. Indeed, in his June 1 Report, Magistrate Judge Pohorelsky appropriately found that there has been no bad faith by Arab Bank in its conduct with respect to discovery. (June 1 Report at 9: "the court cannot find that [the Bank] is acting in bad faith.") Magistrate Judge Pohorelsky also concluded, with ample support, that there was no basis to find – or even infer – from the discovery record in this litigation any knowledge or intent by Arab Bank to finance terrorism, or to provide financial services for the benefit of terrorists. (June 1 Report at 15-19.) In reaching these conclusions, Magistrate Judge Pohorelsky properly recognized that the purpose of evidentiary sanctions is to restore "evidentiary balance" by placing the parties in the same position in which they would have been had Arab Bank been able to produce the records covered by foreign bank secrecy laws. (June 1 Report at 2-3, citing *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 75 (S.D.N.Y. 1991).)

Arab Bank nonetheless objects to two of the sanctions recommended by Magistrate Judge Pohorelsky, to the extent they propose inferences against the Bank that are either excessive or unnecessary to achieve the proper evidentiary balance, or permit inferences of facts that would never have been established by full production of account records had such production been authorized by

4

**JA3682**

the foreign authorities that the Bank repeatedly petitioned.   Specifically, Arab Bank objects to
recommended sanction no. 1, relating to financial transactions originated by the Saudi Committee in
Support of the Intifada al Quds ("Saudi Committee").[3]  Even as modified, after reconsideration, from
an adverse finding to a rebuttable adverse inference, the proposed sanction is wholly inconsistent with
records produced by the Bank.  Any prejudice to plaintiffs that has resulted from their failure to obtain
the individual customer records of each beneficiary of the Saudi Committee is, moreover, adequately
addressed by recommended sanction no. 4,[4] to which the Bank does not object.  The Bank also objects
to recommended sanction no. 2, which proposes an adverse inference concerning account-holdings and
financial transactions on behalf of other entities and individuals,[5] especially in light of the fact that
Magistrate Judge Pohorelsky's recommendation is uninformed by more particularized findings.  The
record simply does not support a universally applied inference of financial services provided by the
Bank to all entities and individuals that plaintiffs speculate were customers of the Bank.  Finally, Arab
Bank does not object to recommended sanction no. 3.[6]

---

[3]   As modified, recommended sanction no. 1 reads as follows:  "Because the defendant has not produced relevant
documents in its possession the jury may, but are not required, to infer that the withheld records would prove that between
2000 and 2004 the defendant processed and distributed payments on behalf of the Saudi Committee in Support of the
Intifada Al Quds to terrorists, or to the relatives or representatives of terrorists, including terrorists affiliated with HAMAS,
the Palestinian Islamic Jihad, the Popular Front for the Liberation of Palestine or the Al Aqsa Martyrs Brigade, as well as
terrorists or the relatives or representatives of terrorists not affiliated with any terrorist organizations."  (June 18
Modification at 4.)

[4]   Recommended sanction no. 4 reads as follows:  "A direction that the defendant is precluded from offering in evidence at
any trial any documents or other information withheld from discovery on bank secrecy law grounds."  (June 1 Report at
22.)

[5]   Recommended sanction no. 2 reads as follows:  "An instruction to be given to every jury that addresses the issue of
liability advising that because the defendant has refused to produce relevant documents in its possession the jury may, but
are not required, to infer that the records would prove that during the period from 1994 to 2004 the defendant provided
financial services, either directly or indirectly, to foreign terrorist organizations – including HAMAS, the Palestinian
Islamic Jihad, the Popular Front for the Liberation of Palestine, and the Al Aqsa Martyrs Brigade – and to individuals
affiliated with foreign terrorist organizations."  (June 1 Report at 22.)

[6]   Recommended sanction no. 3 reads as follows:  "A direction that all requests for admissions in the plaintiffs' First Set of
Requests for Admissions which the defendant has declined to answer on foreign bank secrecy law grounds are deemed
admitted, and that any documents referred to in those requests as to which the plaintiffs sought confirmation of their
authenticity as business records of the defendant are admissible at trial as such."  (June 1 Report at 22.)

**JA3683**

## RECORD OF ARAB BANK'S DISCOVERY EFFORTS AND PRODUCTION

In compliance with carefully structured orders of the Court, and as a result of its own voluntary initiatives, Arab Bank made extensive productions to plaintiffs, in certain cases after seeking and obtaining the waiver of foreign bank secrecy laws.  Details concerning the chronology of the Court's discovery orders are set forth at pp. 8-14 of Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for an Order Pursuant to Federal Rule of Civil Procedure 37(b)(2)(A), which is annexed at Tab II to the parties' Joint Appendix to their respective Objections to the Report and Recommendation, and which Arab Bank incorporates by reference.  The record of Arab Bank's compliance with those discovery orders, and details concerning the complete picture of discovery, bears repeating here.  Notably, the Bank made a full production of records and deposition testimony on matters not covered by foreign bank secrecy, as well as a production of extensive additional records and testimony after obtaining governmental authorization or private party consent, or based on other exceptions to bank secrecy.  The Bank also pursued foreign judicial remedies and official requests for further governmental authorizations, and these efforts must be considered for the complete context of Arab Bank's conduct in discovery.  Indeed, this entire record should be considered by this Court in its evaluation of the Report and Recommendation and the question of sanctions.

A.      **Arab Bank's Record Of Production**

To evaluate properly Magistrate Judge Pohorelsky's Report and Recommendation, and to assess fairly the propriety of any sanctions against Arab Bank, the Bank respectfully submits that it is necessary for the Court to understand and appreciate the volume and substance of documents the Bank has provided to plaintiffs, as well as the content of lengthy testimony that plaintiffs have taken of Bank witnesses.  Indeed, Magistrate Judge Pohorelsky himself acknowledged, in granting the Bank's motion or reconsideration, that his initial June 1 Report reflects a "failure to appreciate the nature and extent of the information provided by the defendant" which failure "led the court to overestimate the

6

**JA3684**

importance of the evidence that has been withheld and the extent of the consequent prejudice to the plaintiffs." (June 18 Modification at 3.) Arab Bank sets forth herein, and in the Joint Appendix submitted herewith, a comprehensive account of its discovery record to facilitate the Court's evaluation of that record from the outset.

The Bank voluntarily undertook substantial efforts that resulted in the production of records and the presentation of witnesses relating to each of plaintiffs' core factual contentions in this case, even in advance of Magistrate Judge Pohorelsky's initial ruling on bank secrecy in November 2006, when Arab Bank's foreign bank secrecy objections were conditionally overruled. First and foremost, Arab Bank sought and obtained the consent of the Saudi Committee, which plaintiffs have alleged to be the sponsor of a "comprehensive terrorist insurance scheme" to pay families of so-called "martyrs", to produce records of the Bank's processing of financial transactions at the instruction of the Saudi Committee's bank. (*Linde* Doc. No. 4, August 10, 2004 First Amended Complaint, at ¶ 310.) With such consent in hand, Arab Bank produced all payment instructions originated by the Saudi Committee and ultimately processed by Arab Bank, as well as all correspondence between Arab Bank and the Saudi Committee's bank, Arab National Bank, relating to the Saudi Committee. Arab Bank also produced for deposition a Fed. R. Civ. P. 30(b)(6) witness who provided three days of testimony as to Arab Bank's role in those transactions and communications.

Documents and testimony concerning the Saudi Committee were not, however, the only records produced in this action. In connection with plaintiffs' allegations that Arab Bank knowingly provided banking and financial services directly for terrorist organizations and for entities (e.g., charitable organizations) alleged to be "fronts" for terrorist organizations: Arab Bank has produced all account records relating to the one account that plaintiffs falsely allege was maintained directly for the benefit of the terrorist organization Hamas. Arab Bank also made available a Fed. R. Civ. P. 30(b)(6)

7

**JA3685**

witness to testify for two days about all aspects of this account.  In addition, the Bank produced account opening records and thousands of transactional records of money transfers processed through Arab Bank by and to numerous charities alleged by plaintiffs to be terrorist "fronts".

The nature and scope of Arab Bank's production is described below and in a Chart annexed as Ex. A to the Declaration of Alan B. Howard ("Howard Decl.") previously submitted to Magistrate Judge Pohorelsky.  (J.A. Tab II, Howard Decl., Ex. A.)

### 1.    **Production of Saudi Committee Records and Related Testimony**

Arab Bank produced more than 180,000 records relating to the payments it processed, upon instructions issued by Arab National Bank, on behalf of that bank's customer, the Saudi Committee.  This production contained detailed transaction records of each of more than 175,000 Saudi Committee payments.  Each transaction record contains *the name of every individual or entity that received money from the Saudi Committee through Arab Bank, and the amount of money received by such recipient.*  (*See, e.g.,* J.A. Tab II, Howard Decl., Ex. A, Tabs 1 and 2 to Chart.)  These transaction records also provide plaintiffs with additional identifying information concerning the Saudi Committee beneficiaries, including addresses, phone numbers and, on some occasions, even identification numbers. (*See* J.A. Tab II, Howard Decl., Ex. A, Tab 1 to Chart.) (*See also* J.A. Tab V, Ex. A to Arab Bank's June 2, 2009 Motion for Reconsideration of the June 1 Report.)  The records produced by the Bank also indicate whether the payment was made to an Arab Bank account-holder, in which case the branch and account number are also stated, (*id.*), or whether the account was paid in cash, in which case the remitting Arab Bank branch is identified (J.A. Tab II, Howard Decl., Ex. A, Tab 1 to Chart).

In addition to the individual transaction records for each and every Saudi Committee payment, Arab Bank produced all correspondence between Arab Bank and Arab National Bank relating to the Saudi Committee payments.  This correspondence, which exceeds 5,000 pages,

8

**JA3686**

describes, among other things, the administrative procedures followed by the Bank in processing payment instructions originated by the Saudi Committee.[7] (*See, e.g.*, J.A. Tab II, Howard Decl., Ex. A, Tab 3 to Chart.) Arab Bank also produced 73 transaction records reflecting Saudi Committee payments cleared through its New York branch, Arab Bank New York ("ABNY"), and ultimately paid to account holders at banks in the Middle East other than Arab Bank, in accordance with routine international banking procedures. (*See* J.A. Tab II, Howard Decl., Ex. A, Tab 4 to Chart.) Finally, Arab Bank produced records from ABNY reflecting bank-to-bank transactions, initiated by Arab National Bank, to transfer money between dollar accounts maintained at ABNY by Arab National Bank and Arab Bank Ramallah respectively. (*See* J.A. Tab II, Howard Decl., Ex. A, Tab 5 to Chart.)[8]

Arab Bank also produced a Fed. R. Civ. P. 30(b)(6) witness, Fawzan Shukri, then head of global operations for the Bank, who testified for three days about the Bank's processing of transactions originated by the Saudi Committee. Mr. Shukri was questioned at length about the proper interpretation of the transaction records produced to plaintiffs. (*See* J.A. Tab II, Howard Decl., Ex. B, Excerpts from Shukri Tr.) A significant portion of the deposition examination of two other Arab Bank managers, Tayseer Sadeq and Mohammed al-Tahan, was also devoted to the subject of the Saudi Committee, and to correspondence with Arab Bank's correspondent bank in Saudi Arabia, Arab National Bank. Mr. Sadeq, the Bank's financial manager in the Palestinian Territories, and Mr. Tahan, the Bank's head of operations and the person responsible for client accounts in the Palestinian Territories, were deposed by plaintiffs for three full days and parts of four days, respectively. (*See* J.A.

---

[7] There was no correspondence directly between Arab Bank and the Saudi Committee, and the testimonial record established that the only direct communication between the Bank and the Saudi Committee was a single phone call, also attended by a representative of Arab National Bank, to discuss the logistics and timing of processing $132 monthly payments by the Saudi Committee to Palestinian families in need of financial support. (J.A. Tab II, Howard Decl., Ex. B, Excerpts from Transcript of April 30 – May 2 Deposition of Fawzan Shukri ("Shukri Tr.") at 458:7-459:24.)

[8] These records of 26 "cover" transactions initiated by Arab National Bank actually provide no information concerning the underlying Saudi Committee payments: those payment details are separately reflected in the individual instructions which the Bank produced, in their entirety, to plaintiffs. Indeed, these 26 records do not even mention the Saudi Committee. (*See* J.A. Tab II, Howard Decl., Ex. A, Tab 5 to Chart.) However, they were produced in response to plaintiffs' repeated and false assertion to this Court that the cover transaction records had been withheld deliberately by Arab Bank.

9

**JA3687**

Tab H, Excerpts from Transcript of May 3-5, 2007 Deposition of Tayseer Sadeq ("Sadeq Tr.") and

Excerpts from Transcript of May 6-9, 2007 Deposition of Mohammed al-Tahan ("Al-Tahan Tr."),

Howard Decl., Ex. Q and R, respectively.)  In total, 66 documents relating to the Saudi Committee and

produced by Arab Bank were used as exhibits at these three depositions.

       Significantly, this entire production was made possible by the Bank's voluntary efforts

to solicit and obtain the consent of the Saudi Committee to disclose records and information relating to

its payments processed by Arab Bank.  Had the Bank truly been intent on defying the orders of the

Court, and withholding evidence in discovery, the Bank never would have approached Arab National

Bank and the Saudi Committee for their consent.  Absent that consent, bank secrecy laws would have

prevented disclosure of all of the records and information relating to the Saudi Committee that has

been provided to plaintiffs.  The Bank's efforts instead reflect its intent to be as forthcoming in

discovery as possible, not only to be compliant with the Court's orders, but also to serve the Bank's

own interest in disclosing its records – records which refute Plaintiffs' allegations of any knowing

support of terrorism.

       Indeed, none of the many thousands of records relating to the Saudi Committee reflects

any understanding, let alone intent, by Arab Bank to support terrorism.  Notably, not one of the records

identifies any Saudi Committee beneficiary as a terrorist.  Nor do any of these records state any intent

by the Saudi Committee to support terrorism.  To the contrary, these records demonstrate that the

Saudi Committee – an entity organized and operated by the Saudi Arabian Government – conformed

precisely to the description and purpose offered by the Saudis to the U.S. Government and to the world

at large:  a humanitarian organization devoted to assisting Palestinian families in need.  (*See* J.A.

Tab H, Howard Decl., Ex. V-Z.)  Arab Bank also formed such an understanding, as is reflected in the

unequivocal testimony of the Arab Bank representatives who have been deposed by plaintiffs. (*See*,

**JA3688**

*e.g.*, J.A. Tab II, Howard Decl., Ex. B, Shukri Tr. at 193:19-22: "Sir, from the nature of these transfers, the beneficiaries, Arab Bank always looked upon and perceived the Saudi Committee for the Support of the Intifada Al Quds as for humanitarian reasons;" J.A. Tab II, Howard Decl., Ex. R, Al-Tahan Tr. at 66:16-22: "The beneficiaries are not the beneficiaries from the Intifada. The beneficiaries are poor people, and hence, my understanding is that when the bank paid the transfers, it paid according to sound policies and procedures;" J.A. Tab II, Howard Decl., Ex. Q, Sadeq Tr. at 118:22-24: "I came to know of the existence of the Saudi Committee, which provide[s] aid and assistance to all peoples of the world.")

Among the Saudi Committee records produced by Arab Bank were a handful of lists of Saudi Committee beneficiaries, reflecting the inclusion, among the thousands of recipients of Saudi Committee funds, of a very small number of *family members* of suicide bombers. (*See, e.g.*, J.A. Tab II, Howard Decl., Ex. A, Tab 3 to Chart.) These lists were *prepared by the Saudi Committee*, just as the beneficiaries themselves were selected by the Saudi Committee, based on criteria devised by the Saudi Committee, with absolutely no input by Arab Bank. (J.A. Tab II, Howard Decl., Ex. B, Shukri Tr. 268:5-269:19, 290:10-21.) The inclusion of these family members among the beneficiaries of the Saudi Committee, however, did not indicate to Arab Bank that the Saudi Committee was a sponsor of terrorism any more than it did to the U.S. Government, which, presumably after its review of no less information than had been available to the Bank, concluded the Saudi Committee was a legitimate humanitarian effort. (*See* J.A. Tab II, Arab Bank Mem. of Law in Opposition to plaintiffs' sanctions motion, at 39-41) (*see also Lev* Doc. No. 9, Memorandum of Law of Defendant Arab Bank PLC in Support of Its Motion to Dismiss the Complaint, at 9-14, and Ex. 10-13 thereto.)

The only records even tangentially related to the Saudi Committee which the Saudi Committee's consent could not cover, and which therefore could not be produced without violation of

11

**JA3689**

governing laws, were the account records and other transaction records of the *recipients* of the money from the Saudi Committee.[9] Yet there is no basis to infer that these records would establish an alternative picture of the Saudi Committee, let alone a finding as originally sought by plaintiffs, that the Bank knew the Saudi Committee was a sponsor of terrorism. As Magistrate Judge Pohorelsky concluded, "whether [these] withheld documents would actually disclose any relevant information, and how much information they would disclose, is necessarily a subject of speculation." (June 18 Modification at 4.)

### 2. Production of Account and Transaction Records and Related Testimony

As a second theory of liability, plaintiffs have alleged that the Bank provided assistance to terrorist organizations and alleged terrorist front organizations. Arab Bank produced a large volume of documents, falling into two distinct categories, that relate to this theory. These documents uniformly disprove, rather than substantiate, plaintiffs' allegations. Plaintiffs are therefore seeking to establish by sanction what they know they cannot establish with evidence.

First, Arab Bank produced all account records and transactional documents relating to an account formerly maintained at Arab Bank's Al-Mazra branch in Beirut, Lebanon (the "Beirut

---

[9] As an additional component of Arab Bank's production relating to the Saudi Committee, Arab Bank also made a supplemental production that addressed allegations by plaintiffs concerning certain procedures purportedly followed by the Bank in processing payments to beneficiaries identified by the Saudi Committee. A complete description of this supplemental production is found at pp. 18-21 of the Bank's Memorandum in Opposition to plaintiffs' sanctions motion (J.A. Tab II). In short, Arab Bank produced, in redacted form, all of the identifying documentation provided by the beneficiaries relating to 122 Saudi Committee funds transfers for which the beneficiaries were designated by the Saudi Committee not by name, but by family relationship (*e.g.*, "mother of x"). As Fawzan Shukri explained at his deposition, most beneficiaries of the Saudi Committee – all of whom were chosen by the Saudi Committee based on criteria selected by the Saudi Committee – were identified by name, and Arab Bank simply processed Arab National Bank's instructions and deposited funds into the named individuals' accounts, or, for individuals who were not account-holders, made the payments over the counter upon presentation of satisfactory identification matching the names on the instructions. (J.A. Tab II, Howard Decl., Ex. B, Shukri Tr. 91:13-93:12, 105:10-106:25, 462:8-463:7.) In 122 instances, the Saudi Committee did not identify a specific individual as beneficiary, but instead designated the beneficiary solely by specification of his or her relationship to another individual. (*See id.*, Shukri Tr. 87:2-6, 88:14-89:22.) To address plaintiffs' allegations that in such cases the Bank required Saudi Committee beneficiaries to present "martyr certificates," stating a cause of death (for the supposed purpose of assuring that the "martyr" had been a terrorist) (*see, e.g., Linde* Doc. No. 4, Aug. 10, 2004 First Amended Complaint, at ¶¶ 312-315), Arab Bank produced the identification records provided by these 122 beneficiaries. Not one included a "martyr certificate." (*See* J.A. Tab II, Howard Decl., Ex. B, Shukri Tr. 105:5-9, 313:1-314:14; and Ex. R, Tahan Tr. 193:4-7 (denying that the Bank received from Saudi Committee beneficiaries "martyr certificates," describing the cause of death of their relatives, as alleged by plaintiffs).

JA3690

account") that plaintiffs have alleged was opened and maintained directly for the benefit of the terrorist organization Hamas. (*See, e.g., Linde* Docket No. 4, Aug. 10, 2004 Complaint, at ¶¶ 345-347.) Arab Bank's production included requests and forms completed in connection with the opening of this account; copies of the individual account-holder's passport; the authorized signatory cards; account statements and credit advice forms from 1998 until the closing of the account in 2004; transaction records relating to the transfer of funds into or out of the account during the same period; account closing documents; and correspondence relating to the account between the Bank and Lebanese authorities. (*See, e.g.,* J.A. Tab II, Howard Decl., Ex. A, Tab 7 to Chart.) In addition, the Bank produced for deposition a Fed. R. Civ. P. 30(b)(6) witness from Arab Bank Lebanon to testify exclusively about the Beirut account. Significantly, the production of all of these records, as well as the deposition testimony, was made possible by Arab Bank's successful application to the Lebanese government's Special Investigation Commission to lift bank secrecy restrictions with respect to the Beirut account. (*See* J.A. Tab II, Howard Decl., Ex. H.)

Second, Arab Bank also produced account opening records, background information that had been gathered by the Bank to comply with its "Know Your Customer" procedures, and over 2,000 transaction records, for the following charitable organizations alleged by plaintiffs to be terrorist front organizations:

> Dar El Salam Hospital
> Islamic Charitable Society
> Jenin Zakat Committee
> Nablus Zakat Committee
> Qaliqilyah Zakat Committee
> Ramallah Zakat Committee
> Tulkaram Zakat Committee

(*See* J.A. Tab II, Howard Decl., Ex. A, Tabs 9-11 to Chart.) These documents were available for production to plaintiffs, notwithstanding the fact that they had originally been subject to foreign bank secrecy laws, because Arab Bank New York ("ABNY") obtained and produced these documents to the

**JA3691**

U.S. government. Arab Bank made such production pursuant to the order of the U.S. District Court for the Northern District of Texas, arising out of a DOJ subpoena and a Mutual Legal Assistance Treaty request to the United Kingdom, both in connection with the Department of Justice prosecution of the Holy Land Foundation. Thus, plaintiffs received in discovery those account and transaction records that the U.S. government perceived as relevant to its prosecution of the Holy Land Foundation. To put it another way, it was the Department of Justice, and not the Bank, that identified the documents concerning the entities of interest to it, which ultimately were provided to plaintiffs. If the Department of Justice had deemed relevant to its prosecution records for any of the other entities or individuals that plaintiffs have alleged were Bank customers and which have given rise to Magistrate Judge Pohorelsky's recommended sanction number 2, then those documents – to the extent they exist – would have been available for production to plaintiffs as well.

As with the Saudi Committee records, these account and transaction records produced by Arab Bank refute plaintiffs' allegations of knowing support for terrorism. Rather, they reflect routine and proper banking practices, including strict adherence to "Know Your Customer" account opening practices, and processing of routine international wire transfers together with dozens of other international financial institutions and under the regulatory control of a multitude of international banking authorities. It is for this reason that plaintiffs urged Magistrate Judge Pohorelsky, and now presumably will urge this Court, to disregard the evidentiary record and instead permit them to establish necessary elements of their cause of action against Arab Bank by Court-imposed findings of fact.

### 3.    Arab Bank New York

To acquire a complete picture of Arab Bank's discovery record, this Court must also consider the voluminous production to plaintiffs of documents that were not subject to foreign bank secrecy laws, as well as testimony of Bank witnesses about such records. At the outset of the

**JA3692**

litigation, the Bank produced from ABNY over 600 transaction records, including wire transfers involving several of the entities and individuals that plaintiffs allege to be involved with terrorism. As previously referenced, the Bank also produced from ABNY 73 records reflecting transactions as originally instructed by the Saudi Committee that had been processed through ABNY. The Bank disputes plaintiffs' characterization of these records as somehow demonstrating support for terrorism – indeed the parties to all of these transactions (including the Saudi Committee) were not on the U.S. Government list of suspected terrorists, used to screen all transfers at ABNY, at the time of the transfers. For instant purposes, however, the salient point is that all of these records were produced. In addition, the Bank produced for deposition five current and former employees of ABNY concerning the detailed operations of ABNY.

**B.      Administrative Applications**

In addition to making the disclosures discussed above, in most cases before Magistrate Judge Pohorelsky issued his November 25, 2006 Order conditionally overruling the Bank's foreign bank secrecy objection, Arab Bank also engaged in extensive efforts to obtain permission from foreign authorities to make additional disclosures.

In 2005, pursuant to Article 72 of the Jordanian Banking Law No. 28 of 2000, Arab Bank made an application to the Jordanian court of original jurisdiction for permission to disclose records relating to account no. 600/21697-6, a specific account identified by plaintiffs and referenced in a July 27, 2005 discovery order of Magistrate Judge Pohorelsky. (*Linde* Doc. No. 81, July 27, 2005 Decision and Order.) Arab Bank's application to the Jordanian court of original jurisdiction was granted on September 27, 2005. A prompt appeal of that decision, however, was brought *ex parte* by the account holder, and, on October 9, 2005, the Jordanian Appeals Court in Amman issued a ruling reversing the lower court and rejecting the request for permission to disclose. (*See* J.A. Tab II, Howard Decl., Ex. C.)

15

**JA3693**

Also pursuant to the July 27, 2005 discovery order, and in accordance with the
Palestinian Monetary Authority's ("PMA") Banking Law No. 2 of 2002, Arab Bank applied to the
Supreme Judicial Council, Ramallah First Instance Court, for permission to disclose the account
records and information relating to eight specified accounts in the Palestinian territories. Permission
was denied by the First Instance Court (*see* J.A. Tab II, Howard Decl., Ex. D), and that denial was
upheld on appeals by the Bank by the intermediate appellate court and the Ramallah Civil Court of
Cassation (effectively the Palestinian Supreme Court) (*see* J.A. Tab II, Howard Decl., Ex. E). So as to
exhaust all possible avenues for the lifting of bank secrecy, Arab Bank sought permission directly from
the PMA to authorize disclosure of the records for the accounts identified in the July 27, 2005 order.
The PMA denied that request on the basis that it did not have the power under Banking Law No. 2 to
authorize disclosure. (J.A. Tab II, Howard Decl., Ex. F, Arab Bank's request to the PMA and its
denial.)

Following Magistrate Judge Pohorelsky's November 25, 2006 Order on bank secrecy,
Arab Bank's efforts to obtain requisite authorization for lawful disclosure of records covered by
foreign bank secrecy laws continued in the precise manner directed by the Court. In compliance with
the November 25, 2006 Order, as well as a subsequent May 7, 2007 Document Production Order, Arab
Bank prepared Letters of Request for the Court to issue to the appropriate authorities in Jordan and the
Palestinian Authority seeking assistance in ordering the lawful disclosure of records and information
responsive to the May 7 Order (the May 7 Order was reissued on June 26, 2007 for purposes of
appending to the Letters of Request). (*See* J.A. Tab II, Howard Decl., Ex. K.) These Letters of

16

**JA3694**

Request were served on the Central Bank and Ministry of Justice in Jordan, and the Palestinian Authority and Palestinian Ministry of Justice. (J.A. Tab II, Howard Decl., Ex. K.)[10]

In September 2007, Arab Bank received responses to their Letters of Request, in each case denying permission to disclose the records or information described in the May 7, 2007 Document Production Order. (J.A. Tab II, Howard Decl., Ex. L - O.) The responding authorities unequivocally stated that any production by Arab Bank of records or information protected by the bank secrecy laws of Jordan and the PMA respectively would expose the Bank and its employees to criminal penalties. (*See, e.g.*, J.A. Tab II, Sept. 9, 2007, Howard Decl., Ex. L, letter from Omayya Toukan, Governor of the Central Bank of Jordan ("Moreover, your waiving banking secrecy as reflected in the request would expose your bank to the imposition of a sanction or action or broader sanctions or actions provided for in Article 88 of the Banking Law"); and J.A. Tab II, Howard Decl., Ex. M, Sept. 29, 2007 letter from Palestinian Minister of Justice, Dr. Ali Khashan, ("production of these documents would constitute a clear violation of the banking laws of Palestine").)

Following additional proceedings before Magistrate Judge Pohorelsky, specifically to clarify the geographic scope of the May 7, 2007 Document Production Order (see *Linde v. Arab Bank*, 2007 WL 4373252), and again in accordance with directions provided by the Court, Arab Bank made formal requests for authorization to disclose account and/or transaction records responsive to the May 7 Order to the following sovereignties: Egypt, France, Germany, Morocco, Qatar, United Kingdom, United Arab Emirates, and Yemen. Authorities in Germany, Morocco, Qatar and the United Kingdom denied Arab Bank's requests. (*See* Howard Obj. Decl., Ex. B-E.) The French authorities requested additional information, which was provided, but have not issued any authorization to disclose

---

[10] No Letter of Request was issued to the government of Lebanon because, even before the Court issued its November 25, 2006 Decision and Order, Arab Bank had submitted applications to the Lebanese SIC for authorization to disclose records of accounts called for by the then-controlling March 3, 2006 Document Production Order. Those applications were denied.

**JA3695**

protected information.  Authorities from the remaining sovereignties have not responded to Arab
Bank's requests.

By any measure, the Bank's production has been substantial.  It is an inescapable fact,
however, that certain jurisdictions have denied their authorization to disclose any further documents or
information, and Arab Bank has thus been compelled to stand on its existing record of production.

## JUDGE POHORELSKY'S REPORT AND RECOMMENDATION

Notwithstanding Arab Bank's discovery record, plaintiffs brought their Fed. R. Civ. P.
37(b)(2)(A) motion seeking severe sanctions against the Bank as if foreign bank secrecy laws did not
exist and Arab Bank had made no meaningful production of documents and testimony at all.  Indeed,
plaintiffs belittled and even misrepresented Arab Bank's substantial record of compliance,
characterizing the Bank's production as having consisted solely of "some Saudi Committee related
documents" and "a small subset of wire transfers from its former New York branch."  (J.A. Tab I, Pl.
Mem. of Law at 7.)  Plaintiffs similarly exaggerated or invented the nature and evidentiary value of the
records withheld by the Bank, an exercise which Magistrate Judge Pohorelsky ultimately recognized to
be of little, if any, value as "a subject of speculation."  (June 18 Modification at 4.)  Indeed, plaintiffs
even claimed, absurdly, that the Bank's motivation for withholding protected bank records was
"willful", "calculated" and "in accordance with its own self-interest," at the same time as they persisted
in their refusal to recognize the significance and impact of foreign bank secrecy laws.  (J.A. Tab III, Pl.
Reply Mem. at 4-5.)  Magistrate Judge Pohorelsky's Report and Recommendation reflects his refusal
to embrace plaintiffs' distorted view.

**A.**    **Absence Of Bad Faith**

As previously noted, from the outset of discovery in this litigation, Magistrate Judge
Pohorelsky recognized the applicability of foreign bank secrecy laws to documents and information

**JA3696**

sought by plaintiffs, as well the risks, including criminal penalties, posed by unauthorized disclosure by the Bank. He reiterated these risks as part of his Report and Recommendation:

> compliance with the disclosures ordered by the court would expose large volumes of protected information relating to the defendant's accountholders in derogation of specific warnings already given to the defendant by foreign authorities in response to the Bank's requests for authorization to make the disclosures ordered by this court. Clearly compliance with the court's order carries some risk for the defendant.

(June 1 Report at 5.) Magistrate Judge Pohorelsky went on to acknowledge that Arab Bank "has undertaken a number of steps contemplated to permit disclosure of documents prohibited by foreign bank secrecy laws, and by virtue of those steps has been able to produce a substantial quantity of documents sought by the plaintiffs." (June 1 Report at 10.) On the strength of these undeniable facts, Magistrate Judge Pohorelsky appropriately declined to find that Arab Bank, by withholding protected evidence, was acting in bad faith. (June 1 Report at 9.)

**B.      No Evidence Of Knowledge Or Intent**

Beyond rejecting plaintiffs' contentions that the Bank had acted in bad faith, Magistrate Judge Pohorelsky also rejected any and all of plaintiffs proposed sanctions that found or permitted the inference that the Bank either knew that its financial services were supportive of terrorism or intended to support terrorism. With respect to the Saudi Committee, in consideration of the fact that 180,000 records produced by the Bank reflected no more than that it had served as a correspondent for Arab National Bank and in that capacity processed routine money transfer instructions, Magistrate Judge Pohorelsky concluded:

> There has been no showing that the withheld evidence would be likely to provide direct evidence of the knowledge and intent of the Bank in providing the financial services at the heart of this case or in entering an agreement, if any, with the Saudi Committee.

19

**JA3697**

(June 1 Report at 15.) In fact, as the Court realized on the motion for reconsideration, whether the Saudi Committee beneficiary account records "would actually disclose any relevant information . . . is necessarily a subject of speculation." (June 18 Modification at 4.)

Similarly, the thousands of account and transaction records produced by Arab Bank relating to charities alleged by plaintiffs to be terrorist front organizations reflect nothing other than routine banking activities and reveal no connection between the Bank's customers and any terrorist organization. Absent a showing that the withheld documents – either account records of individuals who received monies from the Saudi Committee, or account records for other Arab Bank account-holders or parties to wire transfers – would *substantiate* plaintiffs' allegations that the Bank acted willfully or with knowledge, even an inference, let alone a finding, of knowledge is wholly unwarranted. *See Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir. 1998) ("the prejudiced party may be permitted an inference in his favor so long as he has produced some evidence suggesting that a document or documents relevant to *substantiating* his claim would have been included among the destroyed [withheld] files.") (emphasis added); *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 108-109 (2d Cir. 2002) ("'relevant' in this context means something more than sufficiently probative to satisfying Rule 401 of the Federal Rules of Evidence"), both cases cited in the June 1 Report at 15. Thus, Magistrate Judge Pohorelsky appropriately concluded that:

> the factual findings proposed by the plaintiffs concerning the defendant's knowledge with respect to the financial services that the defendant provided, or may have provided, to charitable organizations and individuals are not adequately supported by the records developed thus far. Neither the proposed factual findings nor an adverse inference instruction are warranted with respect to the defendant's knowledge or state of mind.

(June 1 Report at 19-20.)

20

**JA3698**

### C.    **Recommended Sanctions**

While finding no bad faith and no basis to infer actionable knowledge or intent on the part of Arab Bank, Magistrate Judge Pohorelsky nonetheless found that the records withheld would be relevant to plaintiffs' claims, and that therefore certain sanctions against the Bank are warranted. The first two sanctions recommended by him relate to plaintiffs' two core contentions: that Saudi Committee payments processed by Arab Bank were paid to terrorists or families of terrorists; and that Arab Bank provided financial services, directly or indirectly (via front organizations), to terrorist organizations and individuals associated with terrorist organizations.

With respect to the Saudi Committee, Magistrate Judge Pohorelsky initially recommended a finding of fact that Arab Bank had processed payments on behalf of the Saudi Committee to terrorists or the families of terrorists. (June 1 Report at 22.) This recommendation was the subject of Arab Bank's motion for reconsideration, which was granted by Magistrate Judge Pohorelsky upon recognition that:

> the documents produced by the bank did in fact provide a good deal of information about the identity of each recipient of such a payment, the amount and timing of each payment, and other information concerning each payment transaction . . . .
>
> The failure to appreciate the nature and extent of the information provided by the defendant led the court to overestimate the importance of the evidence that has been withheld and the extent of the consequent prejudice to the plaintiffs. This in turn resulted in an overstatement of the remedy necessary to restore the evidentiary balance that is a central object of any sanction.

(June 18 Modification at 3.) Magistrate Judge Pohorelsky accordingly modified his recommended sanction from an adverse finding to a non-mandatory adverse inference that the Saudi Committee beneficiary account records withheld by Arab Bank would show that some of the Saudi Committee beneficiaries were terrorists or relatives of terrorists. (June 18 Modification at 4.) The Bank

**JA3699**

respectfully submits that even this recommended adverse inference is not "the remedy necessary to restore the evidentiary balance."

Arab Bank did not seek reconsideration of Magistrate Judge Pohorelsky's recommendation with respect to plaintiffs' second theory of liability, namely an adverse, non-mandatory inference that Arab Bank provided financial services "either directly or indirectly" to terrorist organizations, but the Bank does object to the "directly" language in this proposed sanction. Arab Bank does not disagree that an inference is warranted that the Bank provided financial services to certain charities in addition to the 8 charities for which the Bank produced account and transaction records. The Bank does, however, object to extending the inference to terrorist organizations themselves – *i.e.*, that the jury may infer that it provided financial services "directly to terrorist organizations.". Not only is the record devoid of any suggestion of such direct financial services, but Arab Bank witnesses consistently have testified that the Bank's practices and procedures prohibit the opening of an account for an unauthorized entity like Hamas or any other terrorist organization (J.A. Tab II, Howard Decl., Ex. B, Shukri Tr. 224:6-13, 243:18-244:8, 318:15-12), nor would the Bank's employees do so as a matter of professional and personal policy (J.A. Tab II, Howard Decl., Ex. R, Al-Tahan Tr. 163:1-11).

In addition to the two recommended sanctions that are the subject of the Bank's objections, Magistrate Judge Pohorelsky also recommended admission of authenticity of records obtained by plaintiffs from other sources as Arab Bank records, and a prohibition against the Bank offering in evidence at trial documents withheld on bank secrecy grounds. Arab Bank does not object to those two recommended sanctions.

**JA3700**

## ARGUMENT

**I. ONLY SANCTIONS NECESSARY TO RESTORE AN EVIDENTIARY BALANCE ARE WARRANTED.**

In *Société Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 211 (1958), a case addressing a conflict between a discovery order in U.S. civil litigation and a foreign Swiss criminal statute which prevented a party from producing requested documents, the Supreme Court recognized that there are circumstances when non-compliance with discovery orders may well be justified and should not necessarily give rise to sanctions. Reversing the lower court's dismissal of the non-producing plaintiff's complaint, the Supreme Court stated:

> [P]etitioner's failure to satisfy fully the requirements of this production order was due to inability fostered neither by its own conduct nor by circumstances within its control. It is hardly debatable that fear of criminal prosecution constitutes a weighty excuse for nonproduction, and this excuse is not weakened because the laws preventing compliance are those of a foreign sovereign.

*See also In re Westinghouse Elec. Corp. Uranium Contracts Litig*, 563 F.2d 992, 997 (10th Cir. 1977) ("the fact of foreign illegality may prevent the imposition of sanctions for subsequent disobedience to the discovery order.")

Like the non-producing party in *Rogers*, Arab Bank, too, made substantial efforts to comply with the Court's discovery orders, and its inability to comply completely was solely the "weighty excuse" of criminal exposure in foreign sovereignties. The role of sanctions in cases such as this is not to punish the non-producing party, or to deter future non-compliance which is entirely beyond a party's control, but rather "to restore the 'evidentiary balance' that has been disturbed by the non-production of important evidence." (June 1 Report, at 2, quoting *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. at 75.) Any sanction must be "just" and its severity must be "commensurate with the non-compliance". (June 1 Report, at 3, quoting respectively Fed. R. Civ. P. 37(b)(2)(A) and *Shcherbakovsky v. DaCapo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007).)

23

**JA3701**

In addition to these guiding principles, the Court may consider a variety of factors in deciding an appropriate sanction. Since the Supreme Court's decision in *Rogers*, there have been numerous occasions on which courts have had to address conflicts between discovery proceedings in U.S. litigation and foreign statutes that prevented such discovery. Courts have had to address, in the first instance (as this Court already has), whether even to order disclosure. *See, e.g., Minpeco v. Conticommodity Services, Inc.*, 116 F.R.D. 517 (S.D.N.Y. 1987). Even when an order of disclosure may be appropriate under particular circumstances, sanctions for failure to comply with that order do not necessarily follow. *Westinghouse*, 563 F.2d 992; *see also* Restatement (Third) of Foreign Relations Law § 442 (1987) (the determination as to whether such sanctions are appropriate itself warrants its own comity analysis). The most relevant factors to this analysis, and the ultimate decision as to whether and what sanctions against Arab Bank are appropriate, are (a) Arab Bank's record of good faith in discovery, which has been substantial; (b) the hardship of full compliance on Arab Bank, which would have been substantial; (c) the importance of the foreign bank secrecy laws, which the affected sovereignties have directly informed the Court is substantial; and (d) the importance to plaintiffs of the non-produced information and documents, which, given the nature and extent of the information and documents already produced by the Bank, is limited. *Rogers*, 357 U.S. 197; Restatement (Third) of Foreign Relations Law § 442 and comments thereto. Detailed discussion of each of these factors, as applicable to Arab Bank's discovery record in this litigation, appears at pp. 28-43 of the Bank's Memorandum in Opposition to Plaintiffs' Motion for an Order Pursuant to Fed. R. Civ. P. 37(b)(2)(A), which the Bank submits herewith at J.A. Tab II and incorporates by reference. On this record, sanctions less severe than those recommended by Magistrate Judge Pohorelsky, if any at all, are warranted.

24

**JA3702**

II.  **THE FIRST TWO SANCTIONS RECOMMENDED BY MAGISTRATE JUDGE POHORELSKY ARE UNNECESSARY AND UNWARRANTED.**

A.  **Arab Bank's Production With Respect To The Saudi Committee Has Achieved An Evidentiary Balance Without The Need For Recommended Sanction Number 1.**

As modified, Magistrate Judge Pohorelsky's recommended sanction relating to the Saudi Committee would permit a jury to infer that Arab Bank "processed and distributed payments on behalf of the Saudi Committee . . . to terrorists, or to the relatives or representatives of terrorists, including terrorists affiliated with Hamas" or other named terrorist organizations. (June 18 Modification at 4.) There is no question that Arab Bank processed and distributed payments that were originated by the Saudi Committee – although the language of the proposed inference omits the intervening presence of Arab National Bank, of which the Saudi Committee was a customer and which had a correspondent banking relationship with Arab Bank. The more than 175,000 Saudi Committee payment instructions produced by Arab Bank already establish this fact. The issue then is whether an "evidentiary balance" mandates the second part of the inference, namely that the withheld beneficiary account records would demonstrate that some of the beneficiaries of Saudi Committee payments processed by Arab Bank were terrorists or relatives of terrorists. The Bank respectfully submits it does not.

The account records of the individual Saudi Committee beneficiaries, which have been withheld on bank secrecy grounds, would not, of course, expressly identify any beneficiary as a terrorist or relative of a terrorist. Magistrate Judge Pohorelsky himself acknowledged that the content of the withheld account records is "necessarily a subject of speculation." (June 18 Modification at 4.) It is not just speculative, but illogical to conclude that any recipient of a Saudi Committee payment processed by Arab Bank would declare himself or herself to the Bank to be a terrorist or family member of a terrorist. Indeed, the many thousands of Saudi Committee beneficiaries who did not maintain accounts at Arab Bank, were required to verify their identity only by presentation of official

JA3703

identification cards matching the name on the transfer instruction to receive payment. (J.A. Tab II, Howard Decl., Ex. B, Shukri Tr. at 91:1-93:12, 105:10-19.) Plainly, official identification cards do not specify "terrorist" or "relative of terrorist" – and in the absence of such a designation, it is self-evident that the Bank had no such information. Similarly, for the Arab Bank account-holders who received Saudi Committee payments, there was no line item in the account opening records or other "Know Your Customer" information (e.g., birth certificates, passports, identification cards) to designate any beneficiary as a terrorist or relative of a terrorist.[11]

In actuality, any evidence that any Saudi Committee beneficiary was either a terrorist or related to a terrorist exists, if at all, in public records outside the Bank, and plaintiffs already have the advantage of being able to proffer any such evidence without concern of rebuttal by Arab Bank using withheld account records. In other words, from the more than 175,000 Saudi Committee payment instructions Arab Bank produced, plaintiffs have the full names (and other identifying information) of every person who received Saudi Committee money through Arab Bank. If plaintiffs can establish, with admissible evidence, that any one of those people was a terrorist or relative of a terrorist, Arab Bank is not going to be able to use non-produced Bank records to refute that showing. That is the effect of Magistrate Judge Pohorelsky's recommended sanction no. 4, to which Arab Bank does not object and which makes the recommended adverse inference superfluous.

An example from plaintiffs' own papers is instructive: Arab Bank produced to plaintiffs the payment instruction reflecting a transfer from the Saudi Committee of $2,655.78 on

---

[11] Plaintiffs have also claimed to be prejudiced by not having been provided with account transaction records for Saudi Committee beneficiaries. In essence, plaintiffs have suggested that a forensic examination of the account activities of Saudi Committee beneficiaries, including other sources of deposits and the uses made of the Saudi Committee funds, would somehow support their allegation that some of these beneficiaries were terrorists or related to terrorists. (See, e.g., J.A. Tab I, Pl. Mem. at 28: "Other transfers into the same account in some cases could reveal similar instances of other payments from other sources on behalf of the same martyr, further confirming his or her identity.") Beyond the purely speculative nature of this suggestion, it is also inherently inconsistent with plaintiffs' core contention that the Saudi Committee payments were themselves, on their face, support for terrorism. Now that the complete production of every single Saudi Committee payment has been made, and the true humanitarian nature of those payments is clear, plaintiffs have had to invent new – and inconsistent – theories.

26

May 23, 2001 to Ibrahim Ahmad Khaled al-Muqadama.  (Howard Obj. Decl., Ex. F, ABPLC019283.)

Plaintiffs contend that Ibrahim Ahmad Khaled al-Muqadama was "one of the founders of Hamas."  (JA Tab I, Pl. Mem. of Law at 26.)  Their contention that he was a founder of Hamas presumably is informed by sources other than the records produced by the Bank, since nowhere is that information suggested by the Saudi Committee transfer instruction.  Even more importantly, there is absolutely no reason to believe that the withheld Bank records – in the case of Ibrahim Ahmad Khaled al-Muqadama, a mere identification card since he was not an account holder and received his Saudi Committee payment over the counter in cash (Howard Obj. Decl., Ex. F) – would be probative at all of that beneficiary's supposed link to Hamas.  Finally, and perhaps most importantly, if plaintiffs do have admissible evidence that Ibrahim Ahmad Khaled al-Muqadama was a founding member of Hamas, Arab Bank would not be able to use the withheld identification card, or any other withheld documents, to establish that the Saudi Committee beneficiary that the Bank paid was a different Ibrahim Ahmad Khaled al-Muqadama.  That prohibition, encompassed by recommended sanction no. 4, establishes a proper and sufficient "evidentiary balance."

**B.    Recommended Sanction Number 2 Regarding Alleged Arab Bank Customers Is Over-Inclusive.**

Proper consideration of Magistrate Judge Pohorelsky's second recommended adverse inference, and Arab Bank's objection thereto, requires this Court's familiarity with some background to the operative discovery order that gave rise to plaintiffs' motion for sanctions.  The May 7, 2007 Document Production Order, issued after Arab Bank's bank secrecy objection was conditionally overruled, directed the Bank to produce, *inter alia*, account opening and transaction records for specified entities and individuals.  Those entities and individuals were identified in two separate appendices, Appendix A and Appendix B (*See* J.A. Tab I, Ungar Decl., Ex. 7 at Appendices A and B.)

**JA3705**

The Appendices A and B to the May 7, 2007 Document Production Order, as prepared by plaintiffs, appeared to distinguish between charitable organizations in the Palestinian Territories alleged by plaintiffs to be terrorist front organizations, and terrorist organizations themselves as well as individuals alleged to be directly involved with terrorist organizations. Thus, Appendix A contained the names of 36 charities, while Appendix B contained the names of 8 alleged terrorist organizations, including Hamas, Palestinian Islamic Jihad and Al Aqsa Martyrs' Brigade, as well as the names of 56 individuals who allegedly were agents of those organizations.

Arab Bank took no issue with Appendix A. Plaintiffs' preparation of a comprehensive list of charities as potential Arab Bank customers from which discovery was sought appeared relevant to their claims. Indeed, Arab Bank had already produced its account records for 8 of the charities identified in Appendix A. As explained in the Statement of Facts, Section A.2. *supra,* this production was comprised of account and transaction records demanded by the U.S. government in connection with the prosecution of the Holy Land Foundation. Moreover, as Arab Bank's witnesses have testified at deposition, the Bank as a matter of routine policy and practice opened accounts for properly licensed organizations, which all of those charities were (indeed, many were licensed by the Israeli government). (*See* J.A. Tab H, Howard Decl., Ex. B, Shukri Tr. 243:18-244:8.) Therefore, it was not unreasonable for plaintiffs, in framing discovery demands, to inquire as to whether Arab Bank held accounts and/or processed transactions for more than the 8 charities for which Arab Bank had already produced its records (those effectively selected for production by U.S. prosecutors). Correlatively, with the production of records of additional charities foreclosed by foreign bank secrecy laws, it would not be unreasonable for a jury to infer that the Bank performed financial services for additional charities.

**JA3706**

Any similar inference with respect to financial services *directly* for terrorist organizations or known terrorists, however, is entirely unwarranted. There was no production by Arab Bank of any such direct accounts or transactions. Moreover, the unequivocal testimony was that Bank policies and practices precluded Arab Bank from maintaining accounts or performing financial services for Hamas or other illegal terrorist organizations:

> Q. BY MR. WERBNER: Was Arab Bank permitted to knowingly transfer funds on behalf of Hamas or an entity that was controlled by Hamas?
>
> (Objection omitted)
>
> A. THE WITNESS: Sir, you mentioned something very important here, that Hamas is an illegal entity, and I automatically measure that term illegal with our policies and procedures. Such an entity would not have a license and therefore cannot be established as a bank customer.

(J.A. Tab II, Howard Decl., Ex. B, Shukri Tr. 318:15-23; *see also id.*, Shukri Tr. 224:6-13, 243:18-244:8: "Our KYC demands that a license is presented, a sponsor of that entity is presented, but simply to open an account for an entity that does not have a license by a competent authority that not declare its articles of association and purposes, we cannot do that.") In fact, Arab Bank witnesses consistently testified that, as a matter of principle, the people of the Bank would not do business with "criminals" like Hamas. Such was the testimony of Arab Bank's Director of Operations in the Palestinian Territories since 2000. (J.A. Tab II, Howard Decl., Ex. R., Al-Tahan Tr. 163:6-11: "We have no dealings whatsoever with these criminals . . . We in the Arab Bank in Palestine don't deal with them at all.")

The list compiled by plaintiffs and incorporated in Appendix B to the May 7, 2007 Document Production Order, thus is no more than a list of known and alleged terrorist organizations and individual agents of terrorist organizations. Plaintiffs could just as easily have added to their list the names of other terrorist organizations or terrorists (*e.g.*, Al Qaeda and Osama bin Laden) or for that

29

matter entirely benign names (*e.g.*, New York Giants or Eli Manning) with no more evidentiary support than exists for those entities and individuals actually included in Appendix B. The fact that foreign bank secrecy laws would prevent Arab Bank from providing any records or information about any specific account held (or not held) for particular entities or individuals would no more warrant an inference that such accounts existed than for the other entities and individuals included in Appendix B.

Accordingly, Arab Bank objects to sanction number 2 recommended by Magistrate Judge Pohorelsky to the extent it would permit a jury to infer that Arab Bank provided financial services "*directly*" to foreign terrorist organizations. Such an inference is not supported by the evidentiary record and would effectively place plaintiffs in a better position than if Arab Bank had been free to make a complete production of its foreign customer records.

## CONCLUSION

For the above reasons, Arab Bank respectfully objects to two sanctions against the Bank recommended by Magistrate Judge Pohorelsky in his Report and Recommendation, specifically sanction no. 1, as modified (June 18 Modification at 4) in its entirety, and sanction no. 2 (June 1 Report at 22) to the extent it proposes an inference of financial services by the Bank "directly" on behalf of terrorist organizations and individuals associated with terrorist organizations.

Dated: New York, New York
       July 16, 2009

Respectfully submitted,

Kevin Walsh
Alan B. Howard
DEWEY & LeBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019
(212) 259-8000

30

**JA3708**