# Exhibit 33

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| COURTNEY LINDE, et al. | : | Case No. CV 04 2799(NG)(VVP) |
| Plaintiffs, | : | |
| -against- | : | |
| ARAB BANK, PLC, | : | |
| Defendant. | : | |
| ORAN ALMOG, et al. | : | |
| Plaintiffs, | : | Case No. CV 04 5564(NG)(VVP) |
| -against- | : | |
| ARAB BANK, PLC, | : | |
| Defendant. | : | |
| COULTER, et al. | : | |
| Plaintiffs, | | Case No. CV 05 365(NG)(VVP) |
| -against- | : | |
| ARAB BANK, PLC, | : | |
| Defendant. | : | |
| GILA AFRIAT-KURTZER, et al. | : | |
| Plaintiffs, | : | Case No. CV 05 388(NG)(VVP) |
| -against- | : | |
| ARAB BANK, PLC, | : | |
| Defendant. | : | |

### DECLARATION OF MAHER MASRI

**JA3044**

### DECLARATION OF MAHER MASRI

I, Maher Masri, declare under penalty of perjury under the laws of the United States of America that the following is true and correct.

1.  I currently serve as the Chairman of the Board of Directors of the Capital Market Authority within the Palestinian National Authority ("PA"), as well as Chairman of the Board of Directors of the Palestine Banking Corporation. From 1996 – 2005, I served as Minister of National Economy in the PA, and in that capacity I was, *ex officio*, Chairman of the Investment Promotion Agency, Chairman of the Industrial Zones Authority, and Chairman of the Standards and Measurements Institute. I am an economist by training having earned an MSc in Economics in 1973 from the American University in Beirut, Lebanon. Prior to serving as the Minister of National Economy, I was a businessman. A CV is attached for more detail.

2.  For nine months in 2004-2005, I also served on the Board of the Palestinian Monetary Authority, a separate government agency responsible for, among other things, oversight of the banking industry in the Palestinian territories. Prior to that, and for a period of one year and a half (2002-2004), I served as an advisor to the President of the PA on issues concerning the Palestinian Monetary Authority. I am therefore fully familiar with Palestinian bank secrecy laws.

3.  I submit this Declaration in connection with Arab Bank's opposition to plaintiffs' motion to compel discovery from Arab Bank, including documents and information protected from disclosure under Palestinian law. In particular, I have been asked to describe Palestinian law as it applies to Arab Bank with respect to the confidentiality of the Bank's customers' information.

1

## The Bank's Confidentiality Obligations Under Palestinian Law

4.      In general, Arab Bank's branches in the Palestinian territories, like all other banks located there, are subject to the regulatory authority of the Palestinian Monetary Authority. Plaintiffs have argued that the Arab Bank branches in the Palestinian territories are also subject to Israeli military authority.  I find this assertion by Plaintiffs erroneous.  Since the establishment of the Palestinian Authority, licensing of banks has been granted by the PA's Ministry of Finance and later by the PMA.  No Israeli institution or authority performs any function with respect to licensing or authorizing the operations of any bank in the Palestinian territories including the Israel Central Bank or any military authority.  Additionally, military rules/orders do not apply in the Palestinian territories.  In fact, prior to the advent of the PA, Israel closed all banks operating in the Palestinian territories and authorized branches of Israeli banks to operate, all which are now closed.

5.      Palestinian law includes a statute that directly imposes on all banks an obligation to maintain the confidentiality of their customers' account and transactional information.  Banking Law No. 2 of 2002, at Article 26, provides that

> All present and former directors and employees of the banks shall keep confidential all information, and documents regarding their customers.  The directors and employees of the banks are prohibited from informing third parties of any information or permitting those third parties to have access to it unless:  (A) The customer waives the bank secrecy in writing, or (B) a judicial decision has been rendered.  Any person who violates the provisions of this article will be punished pursuant to the sections mentioned in this law.

This provision covers "all information and documents" and thereby affords to bank customers broad protection from disclosure of their private affairs.  The provision also applies to former bank customers because confidentiality is understood to survive even the termination of the bank-customer relationship.

2

JA3046

6.    The penalty for a violation of the confidentiality obligation of Article 26 of the Banking Law No. 2 is found in Article 52 of that law. Under that provision, one who violates the confidentiality obligation will be subject to a fine of between 5,000 and 100,000 Jordanian Dinars, or up to one year in prison, or a combination of both penalties. Other penalties include the cancellation of the authorization to operate the bank or have the bank stricken from the PMA's records if the bank repeats violations of the provisions of the Banking Law (Article 56 (9) of the Banking Law No. 2. Repeat violations of the provisions of the Banking Law (Article 58 (1)(e) provides grounds for the cancellation of the bank's license. I understand these repeat offenses to include breach of the secrecy provisions.

7.    Preserving the secrecy of confidential bank information in fact predated this 2002 Law. In 1998, the PMA issued Circular No. 27(a)/1998, which prohibited banks and all bank staff from divulging secret information. The Circular set forth penalties for violations of bank secrecy, applying Article (355) of the Criminal Code of 1960, which states that

> A punishment of no more than three years in jail shall be imposed for any the following: (1) if a person obtains secret information by virtue of its employment or official position and divulged this secret information to he who has no right to have access thereto or the nature of his job does not require it.

8.    By codifying bank secrecy principles into the Banking Law No. 2, the PMA wanted to give a definitive statement of the importance of bank secrecy and give assurance to customers of Palestinian banks that their right to privacy in their financial transactions would be honored. Without that assurance, potential customers of Palestinian banks might well choose to conduct their banking business in nations that provide for bank secrecy.

9.    Moreover, the concept of bank customer confidentiality, and generally the right to privacy, has been rooted in Palestinian culture for decades. There is a strong sense of privacy in

3

JA3047

the Palestinian culture and that is reflected in a number of laws. Access to records, for example, must always be by the concerned person or his/her authorized representative. Another example is that access to records of a company's register whose information is not in the public domain is limited to parties related to that company and is otherwise denied to the public.

10. Indeed, as a former elected member of the Palestinian Legislative Council (Palestinian Parliament, hereinafter, "PLC"), I participated in the deliberations and committee hearings on both the Palestinian Monetary Authority Law and later the Banking Law. I recall that the secrecy provisions, especially of the Banking Law, were strongly emphasized by the committee members and the PLC at large.

11. The strength of the secrecy provisions and their stature within the banking community is evident considering the absence of any precedent in the PA of imposition of criminal penalties or fines under Banking Law No.2.

**The Bank's Confidentiality Obligations Apply to the Documents and Information Sought by Plaintiffs**

12. In their Motion, plaintiffs argue that the Bank's confidentiality obligations do not apply to documents which have otherwise been made available to the public, including by means of a website called www.intelligence.org.il. Under Palestinian law, however, Arab Bank's obligation to maintain the confidentiality of its customers' information is not lifted by the public dissemination of these documents by a third party. First of all, such disclosure is not specified as an exception to a bank's obligations under Article 26 of the Banking Law No. 2. Additionally, information available publicly, believed to be sourced from a given bank, cannot be confirmed or authenticated by the bank because the confirmation itself would be tantamount to a breach of the secrecy provisions of the Banking Law.

4

JA3048

13.   Palestinian court hearing any claim against Arab Bank for violation of Article 26 would also take into account the manner in which the documents were made public. I understand that plaintiffs have not disclosed the source of these materials. It appears from the intelligence.org.il website, however, that these documents were confiscated by Israeli military authorities in raids in the Palestinian territories of organizations other than Arab Bank. The Palestinian court would view such confiscation as illegal, and the public disclosure of documents through such illegal means would not accomplish any waiver of confidentiality. Arab Bank would thus continue to have its obligation not to disclose.

14.   Plaintiffs also argue in their motion that the documents are not subject to the Palestinian confidentiality restrictions because many appear to show transactions that were processed outside of the Palestinian territories. This argument is not consistent with Palestinian law. Most of the documents referenced in plaintiffs' Requests for Admissions appear to be transaction records of a type that would have been created by Arab Bank in the Palestinian territories. As an expert, I can attest that such materials are subject to the restrictions of Article 26 of the Banking Law No. 2 because they reference customer name, account number, transactions and amounts.

### Arab Bank Has Taken the Appropriate Steps Permitted by Palestinian Law and Procedure to Seek Permission to Disclose Customers' Confidential Information

15.   I understand that Arab Bank has sought a ruling from the Palestinian courts permitting it to disclose certain customer information pursuant to a production order from the court in New York issued in August 2005. Arab Bank provided the New York court order to the court in the Palestinian territories as the basis for its request for permission to disclose.

16.   The process that Arab Bank initiated was the appropriate process for it to follow under Palestinian law. Arab Bank applied to the Palestinian First Instance Court on an expedited

5

JA3049

basis, and sought permission for Arab Bank to produce documents specified in the New York Court's production order.

17.   The Palestinian First Instance Court denied the Bank's application on the bases that (1) the matter was not an emergent matter and should not have been made as an expedited application, and (2) the production order of the New York Court was not a final judgment from a court which enforces the judgments of Palestinian courts, which are prerequisites to that enforcement in Palestinian courts pursuant to the Law on Enforcement of Foreign Judgments. Arab Bank has appealed that order to the Court of Appeals in Ramallah.  At the present time, no decision has issued from that Court.  As it now stands, any disclosure by Arab Bank of confidential customer records or information would be a violation of the Banking Law No. 2, exposing Arab Bank, its directors and employees, to criminal prosecution.

Executed this ___ day of March, 2006

                                            Maher Masri

6

JA3050

# Maher Masri

| | |
|---|---|
| **Date of Birth** | December 25th, 1946 |
| **Place of Birth** | Nablus |
| **Address** | Ramallah – Palestine |
| | Tel:      +970 2 2969800 |
| | Mobile:  +970 599 373 705 |

| | |
|---|---|
| **Academic Qualifications** | • 1969 – B.A Economics – American University of Beirut (Lebanon) |
| | • 1973 – M.A Economics – American University of Beirut (Lebanon) |

| | |
|---|---|
| **Professional Career** | **2006-** |
| | • Chairman of the Board of Palestine Capital Market Authority |
| | **1996 -2006** |
| | • Member of the Palestinian Legislative Council |
| | • Chairman of the Board of the Palestinian Banking Corporation |
| | • Chairman of the Board of the Palestinian Development Fund |
| | **1996 - 2005** |
| | • Minister: |
| | Minister of Economy & Trade  (1996 – 2002) |
| | Minister of Economy, Industry & Trade  (2002 – 2003) |
| | Minister of National Economy  (Economy, Industry, Trade & Supply)  (2003 – 2005) |
| | • Chairman of the Board of the Palestinian Investment & Promotion Agency |

**JA3051**

- Chairman of the Board of the Palestinian Standards Institute

- Chairman of the Board of the Palestinian Industrial & Free Zones Areas

- Member of the Board of the Palestinian Investment Fund

**2001-**
- Member of the Board of Trustees of the Palestine Economic Policy Research Institute

**1987 - 1996**
- Private sector involvement in the Palestinian Territories

- General Manager of the Vegetable Oil Co. in Nablus

- Board member of several private sector companies

- Chairman of the Board of the Palestinian Development Fund

**1975 – 1987**
- Private sector involvement in Jordan & Saudi Arabia

**1973 – 1975**
- Economist, Dar Al Handasah Co. (Sha'ir and Partners) Beirut, London

**JA3052**