UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____
                                        :
AHARON MILLER, et al.                   :
                                        :
                    Plaintiffs,         :     Case No. 18-cv-2192 (RPK)(PK)
                                        :
        -against-                       :
                                        :
ARAB BANK, PLC,                         :
                                        :
                    Defendant.          :
_____:
                                        :
NATHAN PAM, et al.                      :
                                        :
                    Plaintiffs,         :     Case No. 18-cv-4670 (RPK)(PK)
                                        :
        -against-                       :
                                        :
ARAB BANK, PLC,                         :
                                        :
                    Defendant.          :
_____:


**PLAINTIFFS' SUR-REPLY MEMORANDUM OF LAW IN
OPPOSITION TO ARAB BANK, PLC'S MOTION FOR A PROTECTIVE
ORDER AND IN SUPPORT OF THEIR CROSS-MOTION FOR AN ORDER
<u>COMPELLING DEFENDANT TO PRODUCE DOCUMENTS</u>**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 3

I.   THE BANK'S RELEVANCE OBJECTIONS CANNOT JUSTIFY WITHOLDING
     RECORDS CONCERNING ITS SUPPORT FOR TERRORISTS .............................. 3

     A.   The Bank's Objections to the Document Requests Ignore the Permissive Standards
          Governing Relevance at the Discovery Stage .................................................... 3

     B.   The Document Requests Concerning Saudi Committee Materials Easily Satisfy
          Rule 26(b)(1)'s Permissive Relevance Standard ............................................... 4

     C.   The Records Concerning Purported Charities that Held Accounts at the Bank
          Easily Satisfy Rule 26(b)(1)'s Permissive Relevance Standard ............................ 7

     D.   Plaintiffs Need Not Identify Public Sources Connecting the Bank's Clients to
          Terrorism to Obtain Discovery Regarding Those Individuals ................................ 10

     E.   The Bank Cannot Withhold Transactional Records Linked to an FTO by Arguing
          That They Evidence "Routine Banking Services" .............................................. 12

     F.   The Requested Documents Concerning AAMB, the PA and the PLO Satisfy Rule
          26(b)(1)'s Relevance Standard ...................................................................... 13

     G.   The Bank Has Not Articulated Any Specific Burden or Lack of Proportionality
          That Should Foreclose or Curtail the Discovery of the Relevant Evidence Plaintiffs
          Have Requested .......................................................................................... 14

II.  PRECEDENT MAKES CLEAR THAT FOREIGN BANK SECRECY LAWS DO
     NOT EXCUSE ARAB BANK'S REFUSAL TO PRODUCE RELEVANT
     RECORDS ................................................................................................... 14

CONCLUSION .................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bartlett v. Société Générale De Banque Au Liban Sal*,
No. 19-cv-7 (CBA)(TAM), 2020 WL 7089448 (E.D.N.Y. Nov. 25, 2020).............................. 9

*Edwards v. Nassau Cnty. Corr. Ctr.*,
No. 13-cv-4345 (JS)(JMW), 2022 WL 22736 (E.D.N.Y. Jan. 3, 2022).................... 3, 9, 11, 14

*Favors v. Cuomo*,
No. 11-cv-5632 (DLI)(RR)(GEL), 2013 WL 12358269 (E.D.N.Y. Aug. 27, 2013)................ 10

*Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*,
873 F.3d 85 (2d Cir. 2017) ....................................................................................................... 3

*Halberstam v. Welch*,
705 F.2d 472 (D.C. Cir. 1983) ............................................................................................ 5, 12

*Hallmark Licensing LLC v. Dickens Inc.*,
No. 17-cv-2149 (SJF)(AYS), 2018 WL 6573435 (E.D.N.Y. Dec. 13, 2018) ..................... 4, 14

*Holder v. Humanitarian Law Project*,
561 U.S. 1 (2010).................................................................................................................... 8

*Kaplan v. Lebanese Canadian Bank, SAL*,
999 F.3d 842 (2d Cir. 2021) ............................................................................... 7, 9, 11, 12

*Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*,
880 F.3d 620 (2d Cir. 2018) ................................................................................................... 3

*Linde v. Arab Bank, PLC*,
882 F.3d 314 (2d Cir. 2018) .......................................................................................... 4, 9, 12

*Linde v. Arab Bank, PLC*,
97 F. Supp. 3d 287 (E.D.N.Y. 2015) ............................................................................ 4, 5, 6, 15

*Miller v. Arab Bank, PLC*,
372 F. Supp. 3d 33 (E.D.N.Y. 2019) ................................................................................... 4, 6

*N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*,
325 F.R.D. 36 (E.D.N.Y. 2018) ........................................................................................ 4, 14

*Sartorius Stedim N. Am. v. Integra Bioprocessing, Inc.*,
No. 19-cv-651 (LDH)(VMS), 2020 WL 8261566 (E.D.N.Y. Sept. 17, 2020)........... 3, 7, 10, 13

*Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*,
  482 U.S. 522 (1987).................................................................................................. 15

*Sokolow v. Palestine Liberation Org.*,
  No. 04-cv-397 (GBD), 2015 WL 13675738 (S.D.N.Y. Aug. 24, 2015) ................................ 13

*Sokolow v. Palestine Liberation Organization*,
  No. 04-cv-397 (GBD), 2022 WL 719261 (S.D.N.Y. March 10, 2022)................................... 14

*St. Vidas Inc. v. U.S. Liab. Ins. Co.*,
  No. 20-cv-3465 (KAM)(MMH), 2021 WL 4340950 (E.D.N.Y. Sept. 23, 2021) ..................... 3

*Strauss v. Crédit Lyonnais, S.A.*,
  842 F. App'x 701 (2d Cir. 2021) ........................................................................... 7, 8

*United States v. El-Mezain*,
  664 F.3d 467 (5th Cir. 2011) ........................................................................................ 9

*United States v. UBS Sec. LLC*,
  No. 18-cv-6369 (RPK)(PK), 2020 WL 7062789 (E.D.N.Y. Nov. 30, 2020) ........................... 3

*Vaigasi v. Solow Mgmt. Corp.*,
  No. 11-cv-5088 (RMB)(HBP), 2016 WL 616386 (S.D.N.Y. Feb. 16, 2016) ........................... 3

*Weiss v. Nat'l Westminster Bank PLC*,
  993 F.3d 144 (2d Cir. 2021) .............................................................................. 7, 8

**Rules**

Fed. R. Civ. P. 26(b)(1)............................................................................... 1, 6, 11, 14

Fed. R. Evid. 401 ......................................................................................................... 6

## PRELIMINARY STATEMENT

Nothing better frames the present dispute than the Bank's characterization of its role in knowingly providing funds to mass murderers and their families as "controversial," Arab Bank Reply Brief ("Reply Br.") at 6, n.4, and its "strongly held view" that such payments do not incentivize acts of violence, Arab Bank's Brief in Support of its Motion for Protective Order ("MPO") at 13. The consistent and unambiguously articulated view of Congress, the Executive Branch, this Circuit, and anyone with a discernible moral compass is the direct opposite.[1]

It is in this broader context that the Bank strains to limit or avoid Plaintiffs' document requests (the "Document Requests") based on three untenable assertions: (1) that this Court should deem the Bank's long history of discovery misconduct in *Linde* irrelevant, but nevertheless give the Bank *credit* for producing here the same subset of *Linde* records it grudgingly produced in that case (as if it had a choice to withhold records already in Plaintiffs' possession), (2) that discovery should be limited to documents that will directly reveal a fact the Second Circuit has cited as sufficient, *standing alone*, to sustain an Anti-Terrorism Act ("ATA") claim; and (3) that Plaintiffs must prove that contemporaneous publicly available information shows that the targets of the Document Requests participated in terrorist conduct *before* obtaining documents concerning those people and entities. None of these assertions finds any support in the case law or Rule 26(b)(1)'s capacious relevance standard. They are simply the latest sally in a two-decades long campaign to withhold evidence and pervert justice.

To begin with, the Bank cannot simultaneously proclaim its good faith by asserting that in *Linde*, it "promptly produced all responsive foreign bank transfer records of the Saudi Committee

---

[1] The Bank has even suggested that *declining* to process payments to the families of terrorists—payments condemned by all three branches of our government—"arguably constitute[s] a breach of the Geneva Convention." MPO at 20 n.19.

pursuant to that Committee's waiver of bank secrecy," "produced all foreign account records for Osama Hamdan" and "obtained the consent of Lebanese Government Authorities," MPO at 34, and simultaneously complain that Plaintiffs are "rearguing the history of discovery in *Linde,*" Reply Br. at 1.[2] Either it gets no credit for re-producing the same records pried from it in *Linde*, or it must take the court-assigned blame for the decade of discovery abuses that grudgingly yielded those records.

Second, although the Second Circuit's recent ATA jurisprudence has clarified that providing material support to terrorist organizations—whether directly or through purported "charitable" front groups—does not, as a matter of law, *alone* satisfy the statutory elements required for civil liability, it is indisputable that proximate cause and "substantial assistance" to terrorists remain *statutorily mandated elements* for primary and secondary liability, respectively – elements that the Bank's briefs ignore. Indeed, the distinct element of "substantial assistance" draws not even a mention in either Bank brief.

Put another way, establishing that a defendant knowingly provided material support or knowingly provided substantial assistance to a terrorist organization—whether through its leaders or operatives or through "charitable" front groups—is a fundamental element of liability distinct from the elements of apparent terrorist intent or general awareness. To be discoverable, evidence need merely be relevant to proof of any element, not to *all* the elements of liability. Moreover, courts have long recognized that "[a]ctual knowledge may be proven or disproven by direct evidence, circumstantial evidence, or a combination of the two." *Fed. Hous. Fin. Agency for Fed.*

---

[2]      As noted in Plaintiffs' opposition brief, the Bank strenuously *opposed producing* the Saudi Committee transactional documents and described plaintiffs' request for them as "meritless" because they were "not confined to payments to individuals or entities that are alleged to have harmed them," and the court found the Bank had "obfuscated its obligation to produce evidence of funds transfers that went through New York involving the Saudi Committee." As for the Hamdan account records, the Bank initially *refused* to produce them on the grounds that they were not connected to plaintiffs' injuries—despite having *already disclosed* those records to the U.S. government without seeking permission from the Lebanese government or informing plaintiffs or the court.

*Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85, 122 (2d Cir. 2017) (citation omitted). Thus, the Bank's efforts to cabin discovery to documents that might prove direct evidence of only one element of Plaintiffs' cause of action should be rejected.

## ARGUMENT

## I.    THE BANK'S RELEVANCE OBJECTIONS CANNOT JUSTIFY WITHOLDING RECORDS CONCERNING ITS SUPPORT FOR TERRORISTS

### A.    The Bank's Objections to the Document Requests Ignore the Permissive Standards Governing Relevance at the Discovery Stage

Given the Bank's constricted view of the discovery process, it bears emphasis that courts in this Circuit have repeatedly highlighted "[t]he extremely broad discovery permitted by the Federal Rules." *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 631 (2d Cir. 2018); *accord, e.g., United States v. UBS Sec. LLC*, No. 18-cv-6369 (RPK)(PK), 2020 WL 7062789, at *3 (E.D.N.Y. Nov. 30, 2020) (relevance for purposes of Rule 26(b) "'is liberally construed and is necessarily broad in scope'") (citation omitted). Under that standard, information qualifies as "'relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."'" *Edwards v. Nassau Cnty. Corr. Ctr.*, No. 13-cv-4345 (JS)(JMW), 2022 WL 22736, at *3 (E.D.N.Y. Jan. 3, 2022) (quoting *Vaigasi v. Solow Mgmt. Corp.*, No. 11-cv-5088 (RMB)(HBP), 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (quoting in turn Fed. R. Evid. 401)).

Moreover, the broad relevance "standard is applied more liberally during discovery than at trial." *Id.* at *3. "Thus, the Rule 26(b)(1) standard presents a '"relatively low threshold" for a party to show that the material sought is relevant to any claim or defense in the litigation.'" *St. Vidas Inc. v. U.S. Liab. Ins. Co.*, No. 20-cv-3465 (KAM)(MMH), 2021 WL 4340950, at *4 (E.D.N.Y. Sept. 23, 2021) (citation omitted); *Sartorius Stedim N. Am. v. Integra Bioprocessing, Inc.*, No. 19-cv-651 (LDH)(VMS), 2020 WL 8261566, at *3 (E.D.N.Y. Sept. 17, 2020) (highlighting the "low

bar of 'relevance'" for discovery purposes).

Where, as here, the requesting party satisfies that minimal burden, the party resisting discovery must "'justify curtailing discovery.'" *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 48 (E.D.N.Y. 2018) (citation omitted). The resisting party can only meet that burden by "showing specifically how, despite the broad and liberal construction afforded the federal discovery rules, [the requested discovery] is not relevant or how [it] is overly broad, burdensome or oppressive." *Id.* (internal quotations and citation omitted); *accord, e.g., Hallmark Licensing LLC v. Dickens Inc.*, No. 17-cv-2149 (SJF)(AYS), 2018 WL 6573435, at *6 (E.D.N.Y. Dec. 13, 2018) (a party requesting the entry of a protective order "must establish 'particular and specific facts' rather than 'conclusory assertions,' that justify" preventing the requested discovery).

### B. The Document Requests Concerning Saudi Committee Materials Easily Satisfy Rule 26(b)(1)'s Permissive Relevance Standard

Even the incomplete evidence produced by the Bank related to the services it provided to the Saudi Committee proved important to the *Linde* plaintiffs' ability to establish at trial that the Bank provided material support to Hamas.[3] Moreover, in *Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33 (E.D.N.Y. 2019)—which is the law of this case—this Court emphasized that the "Insurance Scheme" that Arab Bank implemented for the Saudi Committee demonstrated the Bank knowingly provided material support to Hamas terrorism and that the Bank's conduct constituted a proximate cause of Plaintiffs' injuries.[4]

---

[3]     *See, e.g., Linde v. Arab Bank, PLC*, 882 F.3d 314, 330 (2d Cir. 2018) (referencing the Saudi Committee evidence as a factor that would support a jury finding of liability on remand); *Linde v. Arab Bank, PLC*, 97 F. Supp. 3d 287, 299 (E.D.N.Y. 2015) (emphasizing that the jury verdict depended, in part, upon evidence that the Bank "knowingly provided financial services to Hamas by providing financial services to … [the Saudi Committee], an entity connected to the Saudi Arabian government that made payments to beneficiaries identified by Hamas-controlled organizations, including the families of Hamas suicide bombers and prisoners"), *vacated on other grounds*, 882 F.3d 314; *see also* Plaintiffs' Brief ("Pl. Br.") at 8, 28.

[4]     *See, e.g., Miller*, 372 F. Supp. at 46 (allegations that "the payments that Arab Bank administered through the Insurance Scheme incentivized terrorists to commit acts of violence and also enhanced Hamas's reputation among potential recruits" sufficed to establish proximate cause); *id.* at 48 ("The allegation that Arab Bank provided banking

Rather than dispute the clear relevance of the Saudi Committee materials, the Bank repeats yet again its tired, misleading contention that it has produced all relevant documents because the records it produced disclosed the *identity* of Saudi Committee recipients. Reply Br. at 7. In fact, the Bank has withheld nearly *everything* related to one side of the Saudi Committee transactions— including documents relating to the Saudi Committee beneficiaries' collection of payments at the Bank. *See, e.g.*, *Linde*, 97 F. Supp. 3d at 313 ("[T]here were significant shortcomings in defendant's production of records related to Saudi Committee payments.").

As the *Linde* court recognized, the "documents that defendant withheld as the 'private account information' of Saudi Committee beneficiaries may have included photo identification of individuals who plaintiffs contend were terrorists." *Id.* Moreover, the withheld documents include the proof that the beneficiaries provided to the Bank regarding their status—or their family members' roles—as "martyrs," including suicide bombers, as well as any internal Bank communications about the beneficiaries. *See* Pl. Br. at 6, 8. Moreover, many if not most of the Saudi Committee recipients received payments from multiple sources (*e.g.*, the family of Nabil Halabiya received payments from both the Saudi Committee and Hezbollah's Shahid Foundation, Amended Complaint ("AC") ¶14), information that is highly probative of both the level of assistance provided and the Bank's awareness of its role in the scheme.[5]

As *Linde* recognized, "[n]othing could be more probative [than these withheld documents] as to the presence, or absence, of defendant's knowledge as to with whom it was dealing." *Id.* at 313. Take for example, Ibrahim Ahmad Khaled al-Muqadama (listed in Plaintiffs' First Request

---

services 'in an unusual way under unusual circumstances,' *Halberstam* [*v. Welch*], 705 F.2d [472,] 487 [(D.C. Cir. 1983)] – including by administering the Insurance Scheme for individuals whose cause of death included 'Martyr Operation' – strongly suggests that Arab Bank was generally aware of the nature of the conduct it was supporting.").

[5]      *See also,* AC ¶¶230, 359, 579-93. The Bank largely ignores its withholding of all records relating to the parallel payment scheme funded by Hezbollah through the Al Ansar Society.

for the Production of Documents as Request No. 9(7))—one of Hamas's most prominent and senior terrorist commanders, who directly received a Saudi Committee prisoner payment (in cash) through Arab Bank. Obviously, any additional records the Bank possesses concerning its dealings with Muqadama, including communications about him or memoranda or reports concerning the compliance risks he posed, would be highly relevant to *all* elements of Plaintiffs' claims. Or consider, for example, the distinct likelihood that the Bank's records reflect that Saudi Committee beneficiaries appeared at Arab Bank branches with proof that they were the parents of suicide bombers and, as a result, were entitled to payment of the highest level of Saudi Committee compensation. Or that the Bank's records reflect that it required Saudi Committee beneficiaries to acknowledge that they were the individuals identified in Saudi Committee lists and, therefore, qualified for payments. Those documents are undeniably relevant to the defense the Bank spent much of the *Linde* trial advancing, *i.e.,* that "the Saudi Committee was purely a humanitarian effort to aid needy Palestinians." *See id.* at 316. Given that "[i]n 2003, the United States provided evidence to Saudi authorities that the [Saudi Committee] … was forwarding millions of dollars in funds to families of Palestinians engaged in terrorist activities, including those of suicide bombers," Ex. A to Schlanger Decl. at 2, the Document Requests related to the Saudi Committee beneficiaries easily satisfy the "low bar of 'relevance'" under Fed. R. Civ. P. 26(b)(1) and Fed. R. Evid. 401. *See Sartorius*, 2020 WL 8261566, at *3.

Moreover, to the extent the Bank chose not to verify the identities and the reasons for the eligibility of the Saudi Committee beneficiaries it paid, the absence of such records would also be probative. *See, e.g., Miller*, 372 F. Supp. 3d at 45 ("Even if Arab Bank did not know the nature of its customers, its ignorance would be the result of deliberate indifference; in that case, Arab Bank cannot ignore blatant red flags and then use its deficient compliance program as a shield against

liability."). Again, therefore, the account holder and cash beneficiary records withheld easily clear the "low bar" governing what evidence qualifies as relevant for discovery purposes. *See Sartorius*, 2020 WL 8261566, at *3.

### C.   The Records Concerning Purported Charities that Held Accounts at the Bank Easily Satisfy Rule 26(b)(1)'s Permissive Relevance Standard

The Bank's records concerning the terrorist-affiliated "charities" about which Plaintiffs have requested documents also fall squarely within the realm of discoverable evidence. Defendants mischaracterize the point of the arguments they quote from the Supreme Court briefs filed by other victims of terrorism that Plaintiffs' counsel represent. In *Weiss v. National Westminster Bank* and *Strauss v. Crédit Lyonnais*, the Second Circuit reviewed the *evidence produced* in discovery in those cases and ruled that the plaintiffs had failed to adduce sufficient proof that the European bank defendants were "generally aware" of their respective roles in illegal activities from which terrorist attacks were a reasonably foreseeable risk. *See Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 861 (2d Cir. 2021) ("The district court had concluded, based on the undisputed factual record as to the state of the defendant bank's knowledge—developed during some 10 years of pretrial discovery—that plaintiffs' proposed amendment would be futile."). In both cases the Court found there was evidence that the European banks knew that their customers were transferring funds to Hamas-controlled entities but insufficient evidence that they knew anything specific about the terrorism-related activities of the Hamas organizations themselves, which were in the Palestinian Territories and were not customers of the banks – *unlike the charities in this case*. *See Weiss v. Nat'l Westminster Bank PLC*, 993 F.3d 144, 166-67 (2d Cir. 2021); *Strauss v. Crédit Lyonnais, S.A.*, 842 F. App'x 701, 704 (2d Cir. 2021) (affirming on the basis of *Weiss*). This alone distinguishes those cases from the circumstances here, where the Plaintiffs are seeking records of Arab Bank *customers* in a region where the Bank not only operated

a network of branches but was also the single largest financial institution.

In *Weiss* and *Strauss*, the Circuit held that, absent other indicia of defendants' awareness that they were assisting entities closely intertwined with the FTO's violent terrorist activities, when assistance to an FTO comes in the form of ostensibly charitable support, plaintiffs must prove defendants' "general awareness" by showing that the funds or services were earmarked in some way or used for a "terroristic purpose." *See* Reply Br. at 10-11; *see also Weiss*, 993 F.3d at 166; *Strauss*, 842 F. App'x at 704.[6] In the *Weiss* and *Strauss* plaintiffs' view, the Circuit erred because they contend that a defendant's knowledge that it is providing substantial assistance to an FTO creates a triable issue as to whether a defendant is generally aware of its role in illegal activities from which terrorist attacks were a reasonably foreseeable risk. *See* passages quoted in Reply Br. at 10-11; Ingerman Decl., Ex. 2 at 2; *id.*, Ex. 3 at 7-8, 10. Of course, Plaintiffs' Document Requests seek specific evidence of the Bank's knowledge of indicia of "terroristic purposes" as well, but each requested document does not alone have to establish every element of the claim for relief.

Accordingly, no contradiction exists between the arguments Plaintiffs advance here and the views that the *Weiss* and *Strauss* plaintiffs expressed in the Supreme Court. Material support or other assistance provided to organizations (including charities) controlled by terrorist organizations *can* support both primary and aiding-and-abetting liability under the ATA. *See* Pl. Br. at 13-18. The fact that the Second Circuit has held that such support *alone* does not suffice to establish "general awareness" for a Justice Against Sponsors of Terrorism Act ("JASTA") claim (as the plaintiffs in *Weiss* and *Strauss* argued it should) does not render evidence of knowing material support or substantial assistance irrelevant at trial, much less at the discovery stage where

---

[6]     The plaintiffs in *Weiss* and *Strauss* have argued to the Supreme Court that the Second Circuit's conclusion is irreconcilable with cases like *Holder v. Humanitarian Law Project*, 561 U.S. 1, 31 (2010), that recognize that providing material support to any part of a terrorist organization—even its supposedly charitable arm—necessarily advances the organization's illicit objectives.

8

courts adopt an especially broad view of relevance. *See, e.g.*, *Edwards*, 2022 WL 22736, at *3 (the broad relevance "standard is applied more liberally during discovery than at trial"). On the contrary, it speaks to the need for the broadest possible discovery to allow the parties to argue the competing inferences that can be drawn from the *totality* of the record.

The Second Circuit's decision in *Linde* underscores the Bank's error. In *Linde*, the court held that evidence regarding the payments reflected in the financial records of the Saudi Committee—a purported charity—*could* establish the Bank's "general awareness" that it was playing a role in Hamas terrorism. *Linde*, 882 F.3d at 330. The court reached that conclusion even though the Bank claimed—as it argues with respect to the many other terrorist front "charities" on its customer roster—that it believed the Saudi Committee engaged solely in philanthropic and humanitarian work.[7]  Given that precedent, the evidence Plaintiffs have requested on the Bank's extensive roster of terrorist-affiliated "charities" easily satisfies the permissive relevance standard.

Moreover, the financial records and internal Bank communications Plaintiffs request are relevant to other elements of their claims, including proof of the apparent intent or general awareness necessary to establish those causes of action. Suppose, for example, that the Bank's records show—as they undoubtedly do—that many of the Bank's "charity" customers made repeated payments to close relatives of "martyrs" and "prisoners." Other records likely show payments made to known terrorists, as well as the Bank's knowledge that prominent terrorists

---

[7]     *Linde*, 97 F. Supp. 3d at 316; *see also, e.g., Bartlett v. Société Générale De Banque Au Liban Sal*, No. 19-cv-7 (CBA)(TAM), 2020 WL 7089448, at *9 n.7 (E.D.N.Y. Nov. 25, 2020) ("But courts have recognized that FTOs can operate through affiliates and front groups, and that to aid such front groups is to aid the FTO.") (citing *United States v. El-Mezain*, 664 F.3d 467, 489 (5th Cir. 2011) (affirming ATA conviction for donating to non-FTO entities under Hamas's control)). These decisions render irrelevant the Bank's oft-repeated refrain (explicitly rejected by the Second Circuit in *Kaplan*) that certain customers were not "designated" as terrorist groups by the U.S. government while the Bank was providing services to them. *Kaplan*, 999 F.3d at 864 (rejecting district court's finding regarding inadequacy of scienter allegations because the bank's customers were not designated by the United States: "The court cited no authority for such a prerequisite for knowledge, and we know of none; and it would defy common sense to hold that such knowledge could be gained in no other way").

served as officers or directors of the "charities," and countless other facts that a jury could find relevant to the Bank's general awareness of its role. Again, these types of documents easily clear the "low bar" of relevance that justifies their production. *Sartorius*, 2020 WL 8261566, at *3.

The time period the Bank proposes for its production also ignores that the documents that pre- and post-date the Second Intifada, which lasted from approximately 2000 through 2004, are relevant to issues the Bank contests. For example, the Bank has previously admitted that it processed millions of dollars in payments for designated terrorist organizations *after* the U.S. designated its customers and counterparties but refused to provide the names of the designated parties, dates of transactions or other particulars of those transactions, which, irrespective of their dates, negate the Bank's assertions that it would "never" provide support to designated terrorists. *See* Pl. Br. at 7-8. Moreover, Plaintiffs will argue that large payments the Bank processed immediately before the Second Intifada heightened the terrorist organizations' ability to finance their violence during the Second Intifada and that the continuation of payments to terrorists after 2004 (like the Saudi Committee payments) provides further circumstantial evidence of the Bank's willingness to support terrorism. *See Favors v. Cuomo*, No. 11-cv-5632 (DLI)(RR)(GEL), 2013 WL 12358269, at *4 (E.D.N.Y. Aug. 27, 2013) (collecting cases) ("By its plain language, Rule 26 imposes no temporal limitation on discovery…. Accordingly, courts routinely hold that it is the relevance of the information contained in the requested documents -- not the timing of events in relation to their creation -- that determines discoverability.").

For those reasons, the time period of Plaintiffs' requests (1998-2004) is entirely reasonable, particularly given that the Bank has no intention of complying with those requests anyway.

**D. Plaintiffs Need Not Identify Public Sources Connecting the Bank's Clients to Terrorism to Obtain Discovery Regarding Those Individuals**

To further justify withholding critical and highly relevant documents, the Bank has

invented a "rule" that Plaintiffs are only entitled to discovery of individuals or entities that contemporaneous public source materials show are both linked to a terrorist organization and closely intertwined with its terrorist activities during the relevant time period. Reply Br. at 12. Although the Bank cites the Second Circuit's decisions in *Kaplan* and *Honickman* for this requirement, neither decision says anything approximating the Bank's assertion.

At the pleading stage, plaintiffs are required to include allegations of the facts or events they claim give rise to an inference of knowledge. But as the Second Circuit observed in *Kaplan*, ["a] complaint is allowed to contain general allegations as to a defendant's knowledge … because 'a plaintiff realistically cannot be expected to plead a defendant's actual state of mind.'" 999 F.3d at 864 (citations omitted). Of course, publicly available information may be relevant to establishing the Bank's knowledge of, or reckless disregard for, its customers' ties to terrorism.[8] But public source materials are just *one way* by which a plaintiff can support an inference of knowledge and, as *Kaplan* itself noted, the sufficiency of public source materials and other circumstantial evidence to support that inference "is a matter more appropriate for discovery." *Id.* at 865. Discovery is the mechanism parties employ to obtain evidence relevant to their claims, not a remedy they receive only after making an evidentiary showing.

The Bank does not contest that Plaintiffs have provided the Bank with information linking every target of a Document Request to terrorism. Plaintiffs have thus fulfilled their minimal obligation under Rule 26(b)(1) of "'mak[ing] a *prima facie* showing that the discovery sought is more than merely a fishing expedition.'" *Edwards*, 2022 WL 22736, at *3 (citation omitted). What

---

[8]     The Bank's footnote 10 disingenuously claims that Plaintiffs misidentified Sheikh Ahmed Yassin as a person about whom the Bank claimed no public indications of terrorism links existed. Reply Br. at 12 n.10. In fact, Plaintiffs criticized the Bank's characterization of Yassin as among the "Individuals and Entities *Allegedly Linked to an FTO* During the Relevant Time Period." Pl. Br. at 43 (emphasis added). Claiming that Hamas's founder is only "*Allegedly Linked to an FTO*" is hardly the height of candor.

11

the Bank knew about those individuals' links to the FTOs, and when the Bank ascertained that information, is a matter for Plaintiffs to prove at trial *after* they obtain the Bank's records.

### E.    The Bank Cannot Withhold Transactional Records Linked to an FTO by Arguing That They Evidence "Routine Banking Services"

For the reasons Plaintiffs address above, the Bank also cannot withhold documents concerning customers that even the Bank admits were linked to FTOs by public sources during the 2000-2004 time period. As it has done throughout this litigation, the Bank seeks to dismiss the services it provided to those individuals and entities as "the provision of routine banking services." Reply Br. at 15 (citing *Linde*, 882 F.3d at 326-30). But the Second Circuit has emphasized that "acts that are 'neutral standing alone … must be evaluated in the context of the enterprise they aided.'" *Kaplan*, 999 F.3d at 865 (quoting *Halberstam*, 705 F.2d at 488). Thus, what might constitute a "routine banking service" in another context amounts to substantial assistance where those services are provided amidst a decades-long "campaign of terrorist attacks against civilians." *Id.*[9] Similarly, services that the Bank provided to the FTOs "indirectly through an intermediary" may be "sufficient to permit the inference that" the Bank "was at least generally aware that through its money-laundering banking services to the Customers," it was playing a role in the terrorist organizations' violent terrorist activities. *Id.* at 864-65. Furthermore, without disclosing whether, for example, it has applied any due diligence standards in processing thousands of martyrs' payments in cash for non-customers, the Bank can hardly block discovery by again uttering the "routine banking" mantra. It should be required to first produce its records concerning these services and its internal communications about them.

---

[9]      Whether "Arab Bank's financial services to Hamas should not be viewed as routine…. raises questions of fact for a jury to decide." *Linde*, 882 F.3d at 327.

## F.       The Requested Documents Concerning AAMB, the PA and the PLO Satisfy Rule 26(b)(1)'s Relevance Standard

The Bank has also failed to rebut Plaintiffs' showing that they are entitled to the production of documents concerning its accounts for the Palestinian Authority ("PA"), Palestine Liberation Organization ("PLO") and the Al-Aqsa Martyrs Brigade ("AAMB"), which is the terrorist arm of the PA's political faction, Fatah. *See* Pl. Br. at 3, 20. Those documents are relevant because, much like the Saudi Committee, the PLO and the PA transferred payments through their Arab Bank accounts to AAMB leaders and operatives, and rewarded the family members of thousands of terrorists, including suicide bombers and convicted mass murderers. Indeed, based upon essentially the same allegations Plaintiffs make here, a jury concluded in *Sokolow v. Palestine Liberation Org.* that the PA and PLO "provided material support and resources to the terrorists and terror groups" in connection with multiple terrorist attacks, No. 04-cv-397 (GBD), 2015 WL 13675738, at *1 (S.D.N.Y. Aug. 24, 2015), including two directly implicated in this case.

For the same reasons discussed above, the Bank cannot shield these documents based upon its contentions regarding purported changes in Second Circuit ATA case law since the discovery rulings in *Linde.* As the *Sokolow* jury verdict demonstrates, the documents Plaintiffs seek bear on both the material support/substantial assistance elements of Plaintiffs' claims *and* the Bank's state of mind in providing that assistance. As a result, those documents easily satisfy the "low bar" of relevance required to compel their production. *See Sartorius*, 2020 WL 8261566, at *3.

The fact that Congress enacted statutes in 2018 and 2019 to deter the PA's "martyr" and prisoner payments reinforces the relevance of the requested documents by demonstrating the veracity of Plaintiffs' allegations regarding this program. While, as the Bank observes, those congressional statutes post-date the attacks that injured Plaintiffs, the PA "has administered monthly payments to the families of individuals who died while committing acts of terrorism since

13

at least 1994." *Sokolow v. Palestine Liberation Organization*, No. 04-cv-397 (GBD), 2022 WL 719261, at *3 (S.D.N.Y. March 10, 2022) (citations omitted). The Bank therefore cannot sustain its burden of demonstrating that the Document Requests constitute nothing more than an impermissible "fishing expedition." *Edwards*, 2022 WL 22736, at *3.

### G. The Bank Has Not Articulated Any Specific Burden or Lack of Proportionality That Should Foreclose or Curtail the Discovery of the Relevant Evidence Plaintiffs Have Requested

Because Plaintiffs have shown the relevance of all of the categories of documents their motion addresses, the Bank must sustain the substantial burden of demonstrating with specific evidence that the Court should nevertheless bar Plaintiffs from obtaining that evidence of their claims. *See, e.g.*, *N. Shore-Long Island Jewish Health Sys.*, 325 F.R.D. at 48. But the Bank never even attempts to make that showing. For instance, it offers no declaration or other support from a Bank official that it would experience any difficulty gathering and producing the requested records. Instead, it drops a footnote about the 2015 amendments made to Rule 26, but never seriously tries to argue that Plaintiffs' requests are not proportional under Fed. R. Civ. P. 26(b). As the Advisory Committee cautioned, the amendment was not "intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. Moreover, the Bank has known about its duty to preserve these records since at least 2004 and has had *18 years* to gather them. Given the absence of the required "particular and specific" showing of undue burden or other reason to deny Plaintiffs relevant discovery, *Hallmark*, 2018 WL 6573435, at *6, the Court should reaffirm *Linde*'s ruling that the Bank must produce the requested records.

## II. PRECEDENT MAKES CLEAR THAT FOREIGN BANK SECRECY LAWS DO NOT EXCUSE ARAB BANK'S REFUSAL TO PRODUCE RELEVANT RECORDS

As Plaintiffs demonstrated in their moving brief, numerous *Linde* decisions in the District

Court and the Second Circuit have squarely rejected the Bank's contention that foreign bank secrecy statutes can bar the production of the documents relevant to Plaintiffs' claims. *See* Pl. Br. at 32-35. Those decisions are reinforced by the ***uniform*** decisions from this Circuit and others that have flatly rejected banks' efforts to invoke foreign bank secrecy statutes to bar discovery in ATA cases, where the interests of the United States and victims of terrorism far outweigh the individual privacy interests of foreign bank customers. *Id*.

Faced with that insurmountable precedent, the Bank falls back on language in the Solicitor General's Supreme Court brief in *Linde.* But the Solicitor General did not challenge the scope of the document production order in that case; nor did it criticize the Second Circuit's application of *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522 (1987). Rather, it quibbled with the district court's analysis in imposing Rule 37 sanctions, but it concluded that the "interlocutory posture of the case also renders the effect of the sanctions difficult to assess" and therefore found the "court was within its discretion to decline to grant the extraordinary remedy of mandamus in the circumstances of this case." Exhibit 23 to the Declaration of Courtney G. Saleski, ECF No. 84-25.

In any event, the Solicitor General's brief provides no basis for abandoning *stare decisis* or rejecting the reasoning of the many courts that have considered, and rejected, arguments indistinguishable from those the Bank again advances here. The Bank's exclusive reliance upon the Solicitor General's views is particularly unconvincing given that Judge Cogan considered and rejected those arguments in detail, noting the erroneous factual assumptions on which they rested, following the remand of the *Linde* action. *See Linde*, 97 F. Supp. 3d at 319-22 (also noting that the United States had chosen not to file a Statement of Interest against plaintiffs, as was its right).

## CONCLUSION

For all of the reasons set forth above, the Court should deny the Bank's motion, grant

Plaintiffs' cross-motion, and enter the production order Plaintiffs seek.

Dated: May 9, 2022

Respectfully submitted,

/s/ Gary M. Osen
**OSEN LLC**
Peter Raven-Hansen
Gary M. Osen
Ari Ungar
Aaron Schlanger
Michael Radine
190 Moore Street, Suite 272
Hackensack, New Jersey 07601
(201) 265-6400

**ZUCKERMAN SPAEDER LLP**
Shawn P. Naunton
485 Madison Avenue, 10th Floor
New York, NY 10022
(646) 746-8655

**TURNER & ASSOCIATES, P.A.**
C. Tab Turner
4705 Somers Avenue, Suite 100
North Little Rock, AR 72116
(501) 791-2277

**KOHN, SWIFT & GRAF, P.C.**
Steven M. Steingard
Stephen H. Schwartz
Neil L. Glazer
1600 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 238-1700

*Attorneys for Miller Plaintiffs*

16

/s/ James P. Bonner
**FLEISCHMAN BONNER & ROCCO LLP**
James P. Bonner
Patrick L. Rocco
Susan M. Davies
81 Main Street, Suite 515
White Plains, New York 10601
(646) 415-1399

**HEIDEMAN NUDELMAN & KALIK, PC**
Richard D. Heideman (*admitted pro hac vice*)
Noel J. Nudelman
Tracy Reichman Kalik (*admitted pro hac vice*)
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015
(202) 463-1818

**PERLES LAW FIRM, P.C.**
Steven R. Perles (*not admitted in E.D.N.Y.*)
Ed Macallister (*admitted pro hac vice*)
816 Connecticut Avenue, NW, 12th Floor
Washington DC 20006
(202) 955-3806

***Attorneys for Pam Plaintiffs***