**FLEISCHMAN BONNER & ROCCO LLP**
ATTORNEYS AT LAW

81 Main Street • Suite 515 • White Plains • New York • 10601
Tel: 646-415-1399 • Fax: 908-516-2049 • Web: www.fbrllp.com

Email: JBonner@fbrllp.com

June 20, 2022

**Via ECF**

The Honorable Peggy Kuo
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

Re:   *Miller, et al. v. Arab Bank, PLC*, No. 18-cv-2192 (RPK)(PK)
       *Pam, et al. v. Arab Bank, PLC*, No. 18-cv-4670 (RPK)(PK)
       Status of Plaintiffs' Document Productions

Dear Judge Kuo:

I write on behalf of *Pam* and *Miller* Plaintiffs in accordance with the Court's April 19, 2022 order directing Plaintiffs to file a status report today regarding their document productions.

**Production of Mental Health/Medical Treatment Records**

*Pam* Plaintiffs.  The production of mental-health counseling and medical records has been completed for 11 of the 16 *Pam* Plaintiffs who either sought some form of mental-health counseling within the time period covered by Arab Bank's document request (which extends from five years prior to the terror attack that injured or killed their family member to the present); or, within that time period, consulted with at least one medical provider concerning a mental health issue.  *Pam* counsel have requested records from a total of 31 providers of mental health counseling and medical treatment, 24 of whom are located in Israel (as well as one in Australia).  To date, 12 of those providers have indicated that they no longer have records of their treatment of Plaintiffs, which in some instances occurred more than twenty years ago.  The records of 9 providers have been produced to Arab Bank, and those of one additional provider will be produced this week.  Despite diligent efforts (which are ongoing), counsel have yet to receive responses from the other 9 providers.

*Miller* Plaintiffs.  From the outset, the *Miller* Plaintiffs have attempted to provide medical records from any healthcare providers identified by Plaintiffs in their interrogatory responses.  At this point, 126 providers have produced those records, or indicated no responsive records exist.  One provider has indicated that records will be forthcoming and *Miller* counsel are still awaiting responses from 41 additional providers.  If the providers are limited only to those that provided mental health treatment as the Court recently ruled with respect to *Pam*, the *Miller* Plaintiffs would be awaiting records from only 5 providers.  Further, the *Miller* Plaintiffs are still awaiting records from third parties regarding the representative of two Estate Plaintiffs and one guardianship.

**FLEISCHMAN BONNER & ROCCO LLP**
ATTORNEYS AT LAW

The Honorable Peggy Kuo
June 20, 2022
Page 2

As Counsel for *Pam* and *Miller* Plaintiffs and Arab Bank have agreed, Plaintiffs' counsel is seeking records from additional mental-health/medical providers who have been identified through review of Plaintiffs' ESI.

**Production of Personal ESI for *Pam* and *Miller* Plaintiffs**

Plaintiffs began their rolling productions of ESI on May 20, 2022. To date, all English-language ESI has been produced for 12 of 35 *Pam* Plaintiffs and 10 of 27 *Miller* Plaintiffs.[1] To accomplish this, Plaintiffs' counsel have expended significant resources to comply with Arab Bank's intrusive discovery demands, including collecting ESI from over 300 personal electronic devices and on-line accounts; applying as many as 33 separate, individually customized Boolean searches to the collected ESI of each Plaintiff; and reviewing the search results for responsiveness to Arab Bank's requests and to identify privileged communications. These efforts have thus far resulted in the production of only 1,628 pages of responsive documents from a total of 22 Plaintiffs, for an average of a little over 70 pages each. Plaintiffs' counsel believe that the relative paucity of responsive documents is primarily attributable to the fact that many of Arab Bank's document requests relate to time periods (in some instances up to five years before the terror attacks at issue) during which Plaintiffs lacked access to or did not commonly use electronic means of communication or social media.

Plaintiffs will strive to complete their productions of English-language ESI for the remaining 23 *Pam* Plaintiffs and 17 *Miller* Plaintiffs within the next 90 days. Upon completion of the production of Plaintiffs' English language ESI, Plaintiffs' counsel will seek to meet and confer with Arab Bank's counsel to assess whether the benefit Arab Bank has obtained from the English-language ESI that has been produced is commensurate with the burden and expense Plaintiffs have incurred, and whether it may be reasonable to narrow the scope of the Boolean searches to be applied to Plaintiffs' Hebrew language ESI.

As we have previously advised the Court, virtually all of the Plaintiffs use both English and Hebrew in their electronic communications and on social media. For various reasons, applying Boolean searches to identify potentially responsive Hebrew-language ESI (which is the methodology agreed upon by counsel) presents particular difficulties. Because Hebrew is written without vowels, in some instances the identical printed symbols represent different words, which results in Boolean searches producing unmanageable numbers of "false positive" hits. For example, the Hebrew word for "grief" (which is included in the agreed-upon searches for many of the Plaintiffs) is written in the same way as the conjunction "but." While Plaintiffs' counsel have completed the literal translations of the hundreds of individual English-language Boolean searches into Hebrew, Plaintiffs' ESI consultants—two different companies, one in the U.S. and one in Israel, operating with significantly different technological capabilities—still need to expend considerable time testing and modifying those searches to adjust for linguistic and cultural differences. For example, Israelis frequently use the Hebrew words for "brother" and "sister" to

---

[1] ESI could not be located or is not accessible for the following Estate Plaintiffs: the Estates of Shoshana Bluth and Shoshana Spitz in the *Pam* case, and the Estates of Ella Bauer, Aaron Haar, Sylvia Haar, and Al Sokolow in the *Miller* case.

**FLEISCHMAN BONNER & ROCCO LLP**
ATTORNEYS AT LAW

The Honorable Peggy Kuo
June 20, 2022
Page 3

refer to people other than their siblings. Many of the English-language Boolean searches for Plaintiffs whose siblings were direct victims of the terror attacks at issue include the terms "brother" or "sister."

While the iterative process of testing and modifying searches is relatively efficient for ESI located in the U.S., this process has proven more difficult and time consuming for the Israeli Plaintiffs' data. This is because Plaintiffs' Israel-based ESI consultants, due to licensing restrictions, do not have access to the advanced discovery software available in the United States. Two thirds of the Plaintiffs reside in Israel, which has imposed a significant delay in Plaintiffs' ability to produce even the English-language ESI data.

For these reasons, Plaintiffs' counsel anticipate that the Boolean searches of Hebrew-language based ESI will likely produce a large amount of irrelevant data that Hebrew-speaking counsel will have to be hired to sort through for responsiveness and privilege. Hence, Plaintiffs' counsel propose that Arab Bank's counsel should evaluate the usefulness of the English-language ESI discovery before requiring Plaintiffs to expend further resources.

Plaintiffs respectfully request the opportunity to provide a further discovery status report to the Court in 90 days.

Respectfully submitted,

*/s/ James P. Bonner*

James P. Bonner

CC:   All counsel of record (via ECF)