

190 Moore Street, Suite 272, Hackensack, New Jersey 07601
T: 201 265 6400 F: 201 265 0303

1441 Broadway, New York, New York 10018
T: 212 354 0111
www.osenlaw.com

August 29, 2022

**VIA ECF**

Hon. Hector Gonzalez
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *Miller, et al. v. Arab Bank, PLC*, No. 18-cv-2192 (HG)(PK)
            *Pam, et al. v. Arab Bank, PLC*, No. 18-cv-4670 (HG)(PK)

Dear Judge Gonzalez:

We write on Plaintiffs' behalf pursuant to Your Honor's Individual Practices IV.A2, to respectfully request a pre-motion conference in advance of Plaintiffs' proposed motion to bifurcate the liability and damages phases of the above-referenced consolidated cases both for discovery and trial, for the reasons outlined below.

### *Linde v. Arab Bank, PLC*

The *Miller* and *Pam* cases were filed primarily by family members of plaintiffs whose claims were resolved by the settlement of *Linde v. Arab Bank, PLC*. As a result, *Miller* and *Pam* involve much of the conduct at issue in *Linde*. In *Linde*, over 500 plaintiffs injured in terrorist attacks committed by various Palestinian terrorist organizations brought claims principally in 2004 and 2005. On July 22, 2010, the district court adopted the *Linde* plaintiffs' trial management proposal, ECF No. 644, which prioritized adjudication of the claims of the 297 plaintiffs who alleged they were injured by the Foreign Terrorist Organization known as Hamas. The court had previously agreed to bifurcate liability and damages, ECF No. 562, and discovery thereafter focused almost exclusively on liability-related fact and expert discovery. This culminated in a six-week trial that resulted in a liability verdict against Arab Bank for the 24 attacks attributed to Hamas. At trial, Arab Bank did not present its own expert or fact witnesses concerning Hamas's responsibility for the attacks; the sole evidence presented to the jury on attribution of the attacks came from three fact witnesses and two experts plaintiffs presented over the course of six days.

Following trial, the district court substantially denied Arab Bank's motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50 (affirming liability except as to two of the 24 attacks), denied Arab Bank's motion for a new trial pursuant to Fed. R. Civ. P. 59, and denied Arab Bank's motion for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). *See Linde v. Arab Bank, PLC*, 97 F. Supp. 3d 287 (E.D.N.Y. 2015). On the eve of the ensuing bellwether damages trial, the parties stipulated to the entry of a total damages award of $100,000,000, for those 16 bellwether plaintiffs whose judgments the district court certified as final pursuant to Fed.

R. Civ. P. 54(b). At the same time, the parties entered into a confidential settlement agreement providing for all plaintiffs (both the 297 plaintiffs included in the Hamas-only liability verdict and all other plaintiffs whose claims were based on attacks committed by other terrorist groups) to be paid various total monetary amounts depending on whether the certified judgment was affirmed, reversed, or vacated on direct appeal. The Second Circuit ultimately vacated and remanded on a jury instruction issue, and the case resolved according to the settlement terms. *See Linde v. Arab Bank, PLC*, 882 F.3d 314 (2d Cir. 2018).

## Background on These Consolidated Cases

Unlike the *Linde* trial which focused on 24 attacks solely attributed to Hamas, the 14 attacks at issue in the *Miller* and *Pam* cases involve seven Hamas attacks, and seven attacks attributed to three other terrorist organizations (PIJ, PLO/PFLP and AAMB).

These cases were assigned for all non-dispositive pretrial proceedings to Magistrate Judge Kuo on March 13, 2019. On July 22, 2019, the parties served their initial document requests. As in *Linde*, Arab Bank agreed to produce responsive records in its custody in the United States (most previously produced in *Linde*) but asked the Court to permit it to serve Letters Rogatory to governmental authorities in Jordan, the Palestinian Territories, and Lebanon for a subset of 15 individuals and entities to ascertain whether those authorities might grant the Bank permission to disclose customer records. The request to serve Letters Rogatory was granted, and they were issued in March 2020 and subsequently denied by the three governmental authorities in December 2020 (Lebanon), and October 2021 (Kingdom of Jordan, and the Palestinian National Authority). Thereafter, Arab Bank filed a Motion for a Protective Order pursuant to Fed. R. Civ. P. 26(c) to excuse it from producing records in purported violation of foreign bank secrecy laws. *Linde* rejected the arguments Arab Bank has renewed in these cases. That motion is fully briefed and sub judice before Magistrate Judge Kuo.

During this same period, Plaintiffs have produced extensive documents in response to Arab Bank's document requests, including liability documents, Plaintiff medical records, and social media and text messages that have been forensically retrieved from various electronic devices. The production of medical records and other paper records is substantially completed, but certain technical issues have slowed the data recovery of both English and Hebrew language ESI. Plaintiffs anticipate completing production of the English ESI by the end of September, and anticipate meeting and conferring further with the Bank regarding issues related to the Hebrew ESI.

No depositions have yet taken place in these cases, but on July 11, 2022, Arab Bank's counsel wrote to inquire about the initial availability of several Plaintiffs they believed resided in the New York area. The request prompted Plaintiffs' counsel to consider the fact that the cases have no case management plan in place (due to the unusual procedural implications of the parties' bank secrecy dispute, which has effectively frozen any Plaintiff-directed discovery of Arab Bank). The parties then met and conferred on several occasions and exchanged their views on (1) proceeding with the requested Plaintiff depositions, (2) proceeding with depositions of Bank employees, and (3) bifurcating liability and damages in these cases.

Plaintiffs agreed to produce six New York area-based Plaintiffs for deposition based on Arab Bank's agreement not to seek to re-depose them on the basis that their document productions are incomplete as to any as-yet-unproduced Hebrew-language ESI. With respect to depositions of Arab Bank employees, on August 3, 2022, the Bank's counsel advised Plaintiffs' counsel that "if Plaintiffs intend to take the depositions of any Arab Bank witnesses before Judge Kuo decides Arab Bank's motion for protective order, the Bank will instruct its witnesses to comply with all laws, including any foreign bank secrecy laws."[1] On the issue of bifurcation, Defendant stated that "only 68 plaintiffs remain in this case, further suggesting that bifurcation and multiple trials would not be warranted, necessary or an efficient use of judicial resources." It added that "any such discussion is premature at this time."[2]

For the reasons set forth below and given the practical experience of the parties in *Linde*, we believe that a determination on trial bifurcation at this juncture is both necessary and efficient.

**Plaintiffs' Proposed Motion**

Plaintiffs believe that absent bifurcation of liability and damages, these cases would result in a longer trial than the six-week liability-only trial in *Linde*. The attribution portion of the *Linde* trial, which involved 24 attacks solely attributed to Hamas, took up only a relatively small portion of the trial. The main focus in these cases involves establishing that the Bank (1) provided substantial assistance to various individuals and entities that are or were alter-egos, agents, or operatives of the relevant terror organizations and (2) was generally aware of its role in an illegal or tortious enterprise from which terrorist attacks were a foreseeable risk.[3]

In Plaintiffs' view, a liability trial (or the liability phase of a unitary liability/damages trial) in the *Miller* and *Pam* cases will take longer than the six-week liability trial in *Linde* because it would require presentation of evidence concerning (1) the attribution of those attacks, (2) the workings and infrastructure of the *multiple* terrorist groups responsible for them, and (3) any evidence of the Bank's knowing and substantial support to those terrorist groups.

A single trial encompassing all liability and damages claims for 68 Plaintiffs would unnecessarily monopolize significant additional judicial resources. In contrast, *Linde* and other

---

[1] In *Linde*, the district court sanctioned the Bank because "Plaintiffs spent 'massive' amounts of time and large sums of money flying to Jordan, to depose witnesses who, as defendant admits, did not answer plaintiffs' questions on the grounds of foreign bank secrecy—an excuse this court has already rejected. Defendant's refusal to produce has caused plaintiffs 'extensive delays and waste of resources,' … for which plaintiffs should not have to bear the costs." *Linde v. Arab Bank, PLC*, 269 F.R.D. 186, 205 (E.D.N.Y. 2010) (citation omitted).

[2] Arab Bank also asserts that Magistrate Judge Kuo rejected bifurcation of liability and damages at the June 18, 2019, status conference, but the Court simply declined to adopt Plaintiffs' proposal that *liability discovery* could be bifurcated between the Bank's liability for Hamas attacks (on which the *Linde* record was quite fulsome) and the seven other attacks for which far less discovery in *Linde* had occurred. June 18, 2019, Tr. 18:11-19:7. Bifurcation of liability and damages at trial was raised only in connection with describing the process in *Linde*, but Magistrate Judge Kuo reserved judgment on damages discovery, stating: "I don't know how *Linde* dealt with the damages issue in discovery. Certainly, that's something if you wanted to come to an agreement as to how to do that, that's fine too." *Id.* at 26:13-16.

[3] The legal standard for primary liability is more complex and can be addressed in Plaintiffs' proposed motion.

complex multi-plaintiff actions show that liability-only trials or bellwether trials involving small groups of plaintiffs can promote efficiency by allowing parties to re-assess their views regarding the likely outcome of litigation. More narrowly focused trials can therefore conserve judicial resources, expedite the resolution of litigation, and minimize the parties' litigation expenditures. Although Plaintiffs see a defense verdict regarding liability as an *extremely* remote possibility, any such verdict would obviously both conserve judicial resources and eliminate the need for costly, time-consuming fact and expert discovery concerning the damages of 68 Plaintiffs injured in 14 attacks.

Because of the unusual bank secrecy issues these cases implicate and the fact that the Court inherited this matter, Your Honor has not yet adopted any schedule for trial or presumably considered the possible structure of those proceedings. Guidance from the Court at this juncture would benefit all parties by allowing them to prioritize their discovery efforts and prepare for the trial the Court envisions.

Plaintiffs look forward to setting forth their views regarding their proposed motion to bifurcate the liability and damages phases more fully at the premotion conference.

Respectfully submitted,

/s/ Gary M. Osen

cc: Hon. Peggy Kuo, United States Magistrate Judge

All Counsel