

DLA Piper LLP (US)
650 S Exeter Street
Suite 1100
Baltimore, Maryland 21202-4576
www.dlapiper.com

Brett Ingerman
brett.ingerman@us.dlapiper.com
T  410.580.4177
F  410.580.3177

December 8, 2023

**VIA ECF**

Hon. Peggy Kuo
United States Magistrate Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *Miller, et al. v. Arab Bank, PLC*, No. 18-cv-2192 (HG) (PK)
        *Pam, et al. v. Arab Bank, PLC*, No. 18-cv-4670 (HG) (PK)

Dear Magistrate Judge Kuo:

  We submit this letter on behalf of Plaintiffs and Defendant in the above-referenced actions in response to the Court's October 2, 2023 Minute Order directing the parties to "file a joint status report detailing their progress with discovery and proposing a schedule for the completion of discovery."  The parties respectively offer the following updates.

**A.**  **Proposed Schedule for Completion of Discovery**

**Arab Bank's Position**

  Pursuant to the Court's October 2, 2023 Minute Order, the Bank proposed a schedule to Plaintiffs on November 6, 2023.  The Bank followed up with Plaintiffs via email on November 14, 2023 and during the November 27, 2023 meet and confer.  Plaintiffs responded to the Bank's proposed schedule only yesterday, December 7, 2023.  The Bank is reviewing the Plaintiffs' proposed schedule and will meet and confer with Plaintiffs in an effort to reach an agreement before the December 19, 2023 status conference as to differences in the proposed schedules.

  With respect to the scheduling, we make two preliminary points.  First, the Bank has undertaken significant efforts to comply with the Court's April 14, 2023 Production Order and continues to progress discovery in this matter.  The Bank recognizes the devastating effect of the sanction imposed in *Linde et al. v. Arab Bank, plc*, 1:04-cv-02799 (E.D.N.Y.).  In order to avoid such a sanction in this case, the Bank is undertaking an extensive process to obtain waivers from its customers so that it can comply both with the Court's Production Order and its obligations under foreign bank secrecy laws.

The Bank has continued its efforts to obtain waivers. The Bank has spent over 12,000 hours in its efforts to obtain waivers. To date, this has resulted in approximately 180 waivers. As a result of these efforts, since the Court's April 14, 2023 Production Order, the Bank has produced 311 documents and 6,062 pages of bank customer records from foreign jurisdictions (including a production of 1,090 pages on December 8, 2023).

Second, with regard to electronic discovery the Bank provided a 19-page response to Plaintiffs' 75 ESI questions in their October 28 letter, as ordered by the Court, on December 1, 2023 (a copy of that response is attached as Exhibit 1). The letter responds to questions on nine topics dealing with the Bank's electronic information from over twenty years ago. These topics include: the CORE banking system, SWIFT transactions, check processing, credit and debit transactions, and other topics.

Accordingly, in accordance with the Court's Order, the Bank proposes the following schedule:

- Substantial Completion of Document Production: March 29, 2024
- Parties' Motions for Sanctions, If Any: 60 days after Substantial Completion of Document Production
- Oppositions to Motions for Sanctions: 60 days after Motions for Sanctions
- Replies in Support of Motions for Sanctions: 30 days after Oppositions
- Close of Fact Discovery: 6 months after final decision on any Motion for Sanctions (this would include resolution of any exceptions)
- Case-in-Chief Expert Reports: 90 days after the Close of Fact Discovery
- Rebuttal Expert Reports: 60 days after Case-in-Chief Expert Reports
- Close of Expert Discovery: 60 days after Rebuttal Reports
- Dispositive Motion Deadline: 60 days after close of Expert Discovery
- Opposition to Dispositive Motion: 60 days after dispositive motion filed
- Reply: 30 days after opposition to dispositive motion filed

**Plaintiffs' Position**

Plaintiffs attach their proposed schedule for the completion of discovery as Exhibit 2 hereto. Plaintiffs' schedule attempts to factor in two significant uncertainties:

(1) **Bank Secrecy**. On October 16, 2023, Arab Bank's counsel informed Plaintiffs that Arab Bank will not comply with the Court's order overruling its bank secrecy objections, and will not produce documents for account holders listed in the April 14, 2023 Production Order absent obtaining waivers from them. See Defendant's Oct. 16 Ltr. attached as Exhibit 3 at 1. Arab Bank has not informed Plaintiffs of the purported legal basis for the waiver process the Bank has undertaken, how this process was conducted (which is relevant to assessing the scope of Rule 37 sanctions), or the scope of what records the Bank will withhold.

(2) **Electronic Discovery**. On December 1, 2023, Arab Bank's counsel informed Plaintiffs that, regarding ESI and the Bank's physical records (paper-based and microfilm/microfiche), some transaction records were damaged in a 2005 flood and others were destroyed in October 2023 by Israeli military air strikes and bombings. See Defendant's Dec. 1 Ltr. (Exhibit 1) at 2-3. Moreover, at the *branch level*, some of the Bank's ESI retention policies appear to have called

2

for ESI preservation for periods ranging only from one day to three months. *Id.* at 7, 10. However, the Bank's core banking and financial messaging architecture appears to have been quite sophisticated (*e.g.*, using IBM's banking industry standard AS/400 and zseries servers) and it would be reasonable to expect considerable ESI data to be preserved from those systems, especially given that most banks worldwide, including in the Palestinian Territories, maintain document retention policies of seven years or more. Moreover, Plaintiffs still do not know:

a) Whether the core banking and SWIFT financial messaging servers Arab Bank used during the relevant period to perform its various banking functions still exist.

b) Whether the data and documents generated and stored on the servers Arab Bank used during the relevant period to perform its core banking and financial messaging functions still exist, and if so, in what form. For example, what is the status of Arab Bank's backups of data and documents stored on its servers during the relevant period?

c) Whether Arab Bank's counsel have searched the data generated and stored on the servers the Bank used during the relevant period to perform its core banking functions (including data and documents subsequently stored on backups, archives, or other copies), and if so, what search queries were used.

In sum, although Plaintiffs have gained a slightly better sense of the electronic data systems Arab Bank employed during the relevant period, they still have very limited visibility to date on the steps Defendant has taken to preserve the data on those systems, the searches it has conducted of that data, and if any of the core systems or data have been destroyed since July 2004 when the original Arab Bank litigation commenced in the *Linde* case. Similarly, given the mystery concerning Defendant's waiver efforts, Plaintiffs do not yet know the scope of what documents and information the Bank will withhold in violation of the Court's order.

Accordingly, Plaintiffs' proposed schedule attempts to factor in these uncertainties while providing the Court with reasonable benchmarks for the completion of fact and expert discovery.

**B.     Status of Arab Bank's Discovery**

**Arab Bank's Position**

Since the September 29, 2023 Status Conference, on October 16, 2023 and October 19, 2023, the Bank has provided Plaintiffs with its position on producing documents for account holders who have not provided waivers and information about the electronic sources of communication (including financial transactions) which were later printed and preserved in the regular course of business in paper format. Since that time, the Bank is evaluating whether it can produce customer records with certain redactions in an effort to avoid violating bank secrecy but still be in compliance with the Court's Production Order. That research is ongoing and the Bank should be in a position to inform Plaintiffs and the Court on this matter no later than January 8, 2024.

Arab Bank has also responded to the following letters and discovery from Plaintiffs: (1) October 28, 2023 Letter from Plaintiffs which included 75 technical, detailed questions concerning

3

ESI to which the Bank sent a 19-page response answering every single question (see Exhibit 1); (2) Plaintiffs' Notice of 30(b)(6) Deposition concerning the Waiver Process; and (3) Plaintiffs' Third Set of Requests for Production of Documents.

Arab Bank has taken the depositions of 28 of the 63 Plaintiffs. Since the last conference, the Bank has taken four additional depositions and has scheduled another deposition for January 2024. This will conclude the depositions of the Plaintiffs located in the United States. The parties have agreed to monitor the Israel-Hamas conflict in order to determine when the parties will return to Israel to complete the remaining Plaintiff depositions.

**Plaintiffs' Position**

On November 3 and 9, 2023, Plaintiffs served, respectively, document requests and a Rule 30(b)(6) deposition notice to explore the legal basis, scope, and nature of the waivers Arab Bank has purported to obtain. On December 4, 2023, Arab Bank responded to the document request, *see* Exhibit 4, stating that it will produce at least some of the requested records "on a rolling basis." *Id.* at 3, 5. The Bank has not provided Plaintiffs with a time frame for commencing or completing its production.

C.   **Arab Bank's Proposed Motion for Protective Order**

**Arab Bank's Position**

The Plaintiffs served a 30(b)(6) notice concerning the Bank's waiver process on November 9, 2023, which includes both requests for production of documents and a request that the Bank produce a witness on December 14, 2023. As stated in the November 22, 2023 letter to the Court, the waiver process is ongoing and the request to depose a bank employee before the waiver process concludes is inefficient and will lead to incomplete and inaccurate information. Indeed, the 30(b)(6) notice has two document requests and two deposition topics that specifically seek documents and testimony concerning the number of waivers obtained and refused – a number that cannot be known until the waiver process is complete. *See* Topic Nos. 1 and 2, Request Nos. 2 and 3. *See* Arab Bank's Responses and Objections to Notice of 30(b)(6) Deposition, attached as Exhibit 5. Accordingly, the Bank has suggested that the deposition occur at or near the conclusion of the waiver process, which the Bank expects to be substantially complete by February 26, 2024.

In addition to the objectionable timing of the request, the 30(b)(6) notice topics and requests include, among other things: (1) production of documents and testimony concerning attorney-client privileged information (Topic Nos. 6 and 7 and Request No. 1); and (2) a request for documents that violate the bank secrecy laws of the applicable jurisdictions (Request No. 3). The privileged information sought includes copies of case law, treatises, and statutes related to the Bank's position that it cannot provide information concerning its customers absent a waiver. When these materials are provided by an attorney, they are protected by attorney-client privilege and are not discoverable. *See Anderson by Verdia D. v. Hoffa*, No. CIV.A. 86-6989, 1987 WL 27475, at *1 (E.D. Pa. Dec. 11, 1987) ("The defendant is not required to supply plaintiff with copies of "federal and state statutes, case law, and official opinions relied upon"). Request No. 3 seeks the names of any customer who have refused to provide a waiver. Of course, providing this

information subjects the Bank to criminal sanctions in foreign jurisdictions, and the Bank cannot provide this information.

The parties met and conferred on November 27, 2023. The Plaintiffs, while agreeing that the deposition did not need to go forward on December 14, 2023, refused to postpone the deposition until the waiver process was complete. The Court noted in its November 27, 2023 Minute Order that it would address these issues at the December 19, 2023 status conference.

Based on the November 22, 2023 letter and the impasse of the parties, as well as the importance of these issues, the Bank respectfully requests the following briefing schedule on its Motion for Protective Order as to the 30(b)(6) deposition:

- Bank's Motion for Protective Order: 30 days after the conference (January 19, 2023);
- Plaintiff's Opposition: 30 days after the Bank's Motion (February 13, 2023); and
- Bank's Reply: 14 days after the Opposition (February 27, 2023).

**Plaintiffs' Position**

The timing of the Rule 30(b)(6) deposition is not premature simply because certain data points—i.e., the number of waivers obtained and refused—may have to be updated when the waiver process is complete. The purpose of the deposition is to ascertain the nature and basis of the "waiver process" so the parties can proceed with briefing of Rule 37 sanctions. Plaintiffs believe their approach is consistent with the Court's guidance that "it is not my practice to build in any time at the end of discovery for disputes because I assume that the parties will be making those requests as we go forward with an eye on the -- toward the actual deadline." September 29, 2023 Transcript, 17:20-23.

Plaintiffs also do not believe formal briefing is necessary on this issue. The requested information is important because Defendant has made clear that it intends to argue that any Rule 37 sanctions imposed should be tempered by its "good faith" efforts to obtain waivers. Defendant claims that the request for proffers on foreign law improperly seek attorney work product and violate attorney-client privilege. But as this Court noted, Defendant must describe, *inter alia*, "the provisions of the foreign law, the basis for its relevance, and the application of the foreign law to the facts of the case." *Miller v. Arab Bank, PLC*, 2023 U.S. Dist. LEXIS 56810, *30-31 (E.D.N.Y. Mar. 31, 2023) (citing *Alfadda v. Fenn*, 149 F.R.D. 28, 34 (S.D.N.Y. 1993)). Plaintiffs are not seeking the Bank's communications with its lawyers or its counsel's internal work product. Rather, we have requested documents and testimony on what laws and/or judicial precedents the Bank has followed in undertaking its "waiver process," so Plaintiffs (and ultimately the Court) can better evaluate the basis (and good faith) of its efforts. In Plaintiffs' view, resolving this issue should not require more than an exchange of short letter briefs *at a maximum* and could be resolved during the upcoming status conference on December 19.

Lastly, Defendant's proposed extended briefing schedule would effectively result in the Rule 30(b)(6) deposition taking place at or after its preferred time and would significantly delay the commencement of briefing of the Rule 37 sanctions issue.

5

### D.     Status of Plaintiffs' Discovery

**Arab Bank's Position**

Arab Bank has identified several issues with Plaintiffs' production of documents including: (1) failure to provide text searchable image files for approximately 500 documents; and (2) failure to remedy deficient documents with Chinese character coding. The Bank wrote to Plaintiff concerning these issues on November 1, 2023. Plaintiffs responded on November 14, 2023. The Plaintiffs' response failed to remedy these issues.

First, with respect to the text searchable image files, the Plaintiffs contend that they do not have to provide text searchable image files for non-ESI. Plaintiffs' position, however, is directly contrary to the Court's ESI Order, which provides that, "The parties shall have the option to produce ***non-ESI*** either in hard copy or as text searchable image files." *See* ESI Order Section 1.c. (emphasis added). Plaintiffs produced these documents electronically and therefore are required to produce them in text searchable image files.

Second, the Bank identified certain documents where the *Pam* plaintiffs produced PDF or TIFF images rendered using what appears to be a Chinese character encoding set, while the native document appears to be in Hebrew and/or English. Thus, the Bank does not have a valid image of the document in its original form. The *Pam* Plaintiffs have acknowledged that this is an issue with their ESI production but will only remedy the issue for the documents that the Bank identifies because they claim it is unduly burdensome to determine if this defect occurred for other documents. It is not the Bank's burden, however, to identify the issues in Plaintiffs' production. Moreover, Plaintiffs can remedy this issue without conducting a manual review by running a search using Chinese characters to identify these documents and provide new images. Plaintiffs simply refuse to do so.

Finally, the *Pam* and *Miller* plaintiffs' document productions are still incomplete. There are four *Pam* plaintiffs who have either produced no medical records or doctor logs. Moreover, the *Miller* plaintiffs have also failed to produce medical records for three plaintiffs, who identified additional doctors in their depositions.

**Plaintiffs' Position**

In their November 14, 2023 response to the document production format issues raised in Arab Bank's November 1, 2023 letter, Plaintiffs undertook to supplement their productions with extracted text files that will make all of the scanned images in their ESI productions text searchable.

Arab Bank's November 1, 2023 letter identified a single non-ESI document produced by *Miller* Plaintiffs (SHANMILLER-160) as not being text searchable. Although Plaintiffs informed Arab Bank on November 14, 2023 that they did not interpret the ESI order as requiring them to produce extracted text files for non-ESI, Arab Bank did not express its contrary view until 1:34 p.m. today in its portion of this status report. Plaintiffs will seek a meet and confer with Arab Bank concerning this issue. As Plaintiffs have already advised Arab Bank, however, it may not

6

be possible to extract searchable text from documents like SHANMILLER-160—which is a scanned copy of a passport.

For a small number of Hebrew language documents in *Pam* Plaintiffs' production, the Bates stamped PDF or TIFF image of the document is illegible because Hebrew characters appear as Chinese characters. *Pam* Plaintiffs already replaced all of the defective images they were able to identify on July 21, 2023. *Pam* Plaintiffs have agreed to replace the two uncorrected images Arab Bank identified in its November 1 letter, and any other such images Arab Bank identifies. The defective images do not impair Arab Bank's ability to search and review these documents because Plaintiffs' production includes accurate extracted text files for these documents. Prior to this status report, Arab Bank never suggested that Plaintiffs could search for defective images using Chinese characters. *Pam* Plaintiffs will confer with their ESI vendor to see if this is a workable solution.

Plaintiffs' document productions have been substantially completed for some time, with the exception of medical records where Plaintiffs are dependent upon the cooperation of medical providers.

**E.    Status of Highly Confidential Watermark Issue**

**Arab Bank's Position**

Since the last status conference, the Bank has also worked diligently to resolve the Plaintiffs' complaint concerning the Plaintiffs' ability to OCR the Bank's production. Specifically, Plaintiffs complained that the "Highly Confidential" watermark across the Bank's Arabic-language customer records was somehow interfering with Plaintiffs' ability to OCR the documents. The Bank carefully reviewed the issue and concluded that the OCR technology is not advanced enough to decipher Arabic characters and create a searchable document, and therefore the "Highly Confidential" watermark cannot interfere with any OCR process. Plaintiffs suggested that they had OCR technology that could read the Arabic-language Bank records, and therefore the watermark was interfering with the OCR process. In an effort to resolve the dispute, the Bank requested that Plaintiffs provide the following using their technology: (1) the original scanned Arabic PDF (without any watermark); and (2) the successful OCR of that document, for our review. Plaintiffs failed to respond to this request, presumably because the Bank's technical experts were correct – OCR technology cannot read the Arabic-language documents, and therefore there is no issue with the watermark.

**Plaintiffs' Position**

Plaintiffs have had two technical issues with Arab Bank's productions since April 2023. The first is that we have been advised that the images produced of paper records have been scanned at a very low resolution. The second is that each image has been produced with a watermark across the page that often obscures the text in the image and makes it more difficult to use optical character recognition ("OCR") software to render the images searchable.

Plaintiffs' counsel have not yet pressed the issue of Defendant producing its paper records using low resolution scans nor have we pressed the issue of the obstructive watermarks because

7

we hope to ultimately obtain the Bank's financial records in their native electronic format – which would render these issues moot. (The status of that effort is outlined above.)

However, we have been advised that from a technological perspective, Defendant's claim that "OCR technology is not advanced enough to decipher Arabic characters and create a searchable document" is incorrect. For example, several OCR cloud services, including Microsoft Azure AI Vision, Google Cloud AI OCR, among others, are capable of, first, deciphering Arabic characters in "a scanned Arabic PDF" file; second, creating a "searchable document" in PDF file format; and third, machine translating the OCR'd Arabic text in the PDF file into searchable English text.

Should it ultimately be determined that Arab Bank's ESI has been destroyed and scans of limited paper records are all that remain producible, then Plaintiffs will revisit both the resolution of the scanned images and the watermark issues with defense counsel.

Sincerely,

*/s/ Brett Ingerman*

Brett Ingerman

cc: All Counsel