```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK



----------------------------X
AHARON MILLER, et al.,         :
            Plaintiff,    :    18-CV-2192 (HG)(PK)
        V.                     :
                               :
ARAB BANK, PLC,                :
            Defendant.    :
----------------------------X
NATHAN PAM, et al.,            :
            Plaintiff,    :    18-CV-4670 (HG)(PK)
        V.                     :    December 19, 2023
                               :    Brooklyn, New York
ARAB BANK, PLC,                :
            Defendant.    :
----------------------------X
        TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
             BEFORE THE HONORABLE PEGGY KUO
             UNITED STATES MAGISTRATE JUDGE


APPEARANCES:
For the Plaintiff:            GARY OSEN, ESQ.
                             Osen LLC
                             190 Moore Street, Suite 272
                             Hackensack, NJ 07601

                             SUSAN DAVIES, ESQ.
                             Fleischman Bonner & Rocco LLP
                             81 Main Street, Suite 515
                             White Plains, NY 10601

For the Defendant:           BRETT INGERMAN, ESQ.
                             DLA Piper US LLP
                             1251 Avenue Of The Americas
                             New York, NY 10020

Court Transcriber:           ARIA SERVICES, INC.
                             c/o Elizabeth Barron
                             274 Hovey Road
                             Milo, ME 04463
                             Aria@leinen.net
```

Proceedings recorded by electronic sound recording,
transcript produced by transcription service

```
 1              THE CLERK:  Civil cause for status
 2   conference, docket numbers 18-CV-2192 and 18-CV-4670,
 3   Aharon Miller, et al. v. Arab Bank Public Limited
 4   Company and Nathan Pam, et al. v.  Arab Bank Public
 5   Limited Company, Magistrate Judge Peggy Kuo presiding.
 6              Will the parties please -- excuse me.  Will
 7   the parties present as to the Miller case please state
 8   their appearances, beginning with the plaintiff.
 9              MR. OSEN:  Good morning, your Honor.  This
10   is Gary Osen from Osen LLC.  I'm joined this morning by
11   my colleagues, Ari Ungar, Michael Radine, Dina
12   Gielchinsky, and Aaron Schlanger for the plaintiffs.
13              MS. DEAN:  This is Zahra Dean from Kohn
14   Swift, also representing the Miller plaintiffs.
15              THE CLERK:  And for the defendants in the
16   Miller case?
17              MR. INGERMAN:  Brett Ingerman and Tony Coles
18   from DLA Piper for the defendant Arab Bank in both the
19   Miller and the Pam cases.
20              THE CLERK:  For the plaintiffs in the Pam
21   case?
22              MS. DAVIES:  Good morning, your Honor.  This
23   is Susan Davies and I'm joined by my colleagues, Joseph
24   Tipograph and Edward MacAllister, all of us
25   representing the Pam plaintiffs.
```

1              THE COURT:  And I heard Mr. Ingerman and Mr.

2    Coles also make the appearance on behalf of Arab Bank

3    in the Pam case.

4              MR. INGERMAN:  Yes, your Honor.

5              THE COURT:  Is there anyone else?

6              THE COURT:  All right, very good, everyone.

7    Thank you for gathering today.  We are here to discuss

8    some discovery issues that have arisen and that the

9    parties have outlined in -- the most recent letter was

10   dated December 8th, 2023.  Hopefully, by the end of

11   today's discussion, we will also have a schedule for

12   the completion of discovery.

13             I see that there are a couple of issues that

14   have been raised with relation to the requests on both

15   sides.  Why don't we start with the plaintiffs' issues

16   with the bank's production so far?  Again, I've seen

17   what was put forward in the letters or letter --

18   actually, it is letters because it's two cases, but

19   I'll hear from Mr. Osen first and then Ms. Davies, and

20   then I'll hear from Mr. Ingerman.

21             MR. OSEN:  Sure, thank you, your Honor.

22   This is Gary Osen again for the Miller plaintiffs, and

23   I think I'll be addressing this for both the Miller and

24   Pam plaintiffs, although Ms. Davies can of course feel

25   free to add anything that I overlook.

1          There are really from out standpoint I guess

2   two or two and a half issues, which I'll try to run

3   down very briefly.  The first is the issue of the so-

4   called waiver process that Arab Bank has undertaken.

5   What we want to know is what statutes or case law the

6   bank is relying upon for its claim that its waiver

7   process is being pursued under the strictures of

8   foreign law.  We've raised this issue particularly

9   concerning defendants' basis for seeking waivers for

10  customers who are dead or entities that are defunct,

11  and we've made clear that we're not seeking

12  attorney/client communications.

13         We're seeking the required proffer of

14  foreign law that the bank is required to make when

15  asserting that it's proceeding in compliance with or

16  adherence to foreign laws.  Defense counsel pointed us

17  to declarations they submitted by their experts in this

18  case but none of those declarations attach foreign law

19  in support of the bank's waiver process.  They just

20  contain generic -- generic references to waivers as an

21  exception to bank secrecy.

22         So just as a reminder, the issue previously

23  before the Court was only whether foreign secrecy laws

24  (ui) Jordan and Lebanon actually exist and apply to

25  records sought, which is a point we never disputed.

1   What we want here is transparency as to what the bank

2   has been doing and, importantly, the purported legal

3   basis for why it's been proceeding the way it has.  In

4   our view, without that information, the Court will lack

5   sufficient information to fully evaluate those efforts

6   in the context of the Rule 37 sanctions motion that we

7   intend to bring.

8          That's why we served document requests and

9   notice of the 30(b)(6) deposition, and we'd like to

10  ideally complete that document production or have the

11  defendant complete it and take the deposition in

12  January so that we have an understanding of this

13  process before the close of fact -- before the close of

14  the document production anticipated at the end of

15  March.  So let me stop there on that issue and either

16  -- if your Honor has any questions or wants me to

17  proceed to the other, I'll happily do so.

18          THE COURT:  All right, thank you.  So what I

19  hear you saying is that the bank is purportedly seeking

20  waivers from its customers, and you don't have an

21  understanding of the process, in particular with regard

22  to customers who are dead or entities who are defunct.

23  So even though you have a representation that

24  everything is being done as constrained by foreign law,

25  you don't know what that is, the foreign law.  Is

1    that --

2              MR. OSEN:  That's correct and just to --

3              THE COURT:  (Ui).

4              MR. OSEN:  That is correct, your Honor, and

5    to frame it a little bit more precisely in terms of why

6    this matters, the Court has already overruled the

7    defendant's bank secrecy objections.  In April of this

8    year, the defendant said that they were going to comply

9    with the Court's document production order in good

10   faith, and then they notified us in October that their

11   definition of good faith meant that they were going to

12   apply it as to only those customers or counter-parties

13   for whom they received waivers, which means that a

14   substantial but undefined universe of records will be

15   withheld notwithstanding the Court's order and

16   notwithstanding the law of the case on bank secrecy.

17             So inevitably, that leads to Rule 37 and

18   what remedies we have for the non-production of court-

19   ordered records.  And one -- by no means the most

20   significant but a factor a court considers in reviewing

21   a refusal to comply under the restatement is the

22   defendant's good-faith efforts.  So for the defendant,

23   the issue is yes, we're in violation of the Court

24   order, yes, bank secrecy objections have been

25   overruled, but we tried to produce where we can in good

1  faith.  Well, we're entitled to test the proposition of

2  what that good faith entailed, what the legal basis was

3  for it, what they've been doing, how they've been

4  proceeding, so that the Court can then evaluate that in

5  the course of the eventual Rule 37 sanctions (ui).

6          THE COURT:  Okay, thank you, Mr. Osen.  So

7  why don't we take the issues one by one because I think

8  that that is a little bit easier than going on to the

9  next issue.

10          Ms. Davies, did you want to add anything

11  before I turn to Mr. Ingerman and Mr. Cole?

12          MS. DAVIES:  No, no, thank you, your Honor.

13          THE COURT:  Okay.  So on behalf of the bank,

14  I don't know if Mr. Ingerman will take this issue?

15          MR. INGERMAN:  Yeah, it will be Brett

16  Ingerman.  Thank you, your Honor.

17          THE COURT:  Okay.

18          MR. INGERMAN:  Your Honor, with respect to

19  the legal basis, this has all been fully briefed and

20  frankly decided by your Honor.  In the context of the

21  motion for a protective order that the bank filed and

22  the motion to compel that the plaintiffs filed, we laid

23  out the legal basis for why bank secrecy laws applied

24  to the accounts of current, former, and deceased

25  account holders.  Those arguments were supported by

1   declarations from experts on Jordanian law, Lebanese

2   law, and Palestinian law.  And the defendants (sic)

3   didn't dispute any of that at the time, and as your

4   Honor noted in the opinion, you said "the defendant has

5   established and plaintiffs do not deny that the

6   discovery requested is prohibited by the bank secrecy

7   laws of Jordan, Lebanon, and the Palestinian

8   territories."

9           Then you went on to cite to the declarations

10  that we filed in support of our motion for a protective

11  order.  So you found that we met the Rule 44.1

12  requirement to set out the law supporting the bank's

13  claim that bank secrecy prevents the disclosure of

14  those records.  Now, you ultimately overturned -- I'm

15  sorry, overruled or denied that motion for a protective

16  order.  We understand that and we are -- you know, we

17  live with the results of that decision.

18          But with respect to the basis for the waiver

19  process -- and I'll just give you an example.  So in

20  the declaration that was filed and attached to our

21  motion for a protective order by Aiman, A-i-m-a-n,

22  Odeh, O-d-e-h, who is an expert in Jordanian banking

23  law, in that declaration, he said, citing to Article 2

24  -- I'm sorry, Article 72 of the Jordanian law, he said

25  it sets out -- Article 72 sets out two instances in

1  which the application of the banking confidentiality

2  rules may be excluded, namely one, upon the written

3  consent of the customer involved or one of his heirs.

4  Each of the declarations deals with the waiver and

5  exception process as to current, former, and deceased

6  account holders.

7         The time for the plaintiffs to challenge

8  that law was at the time of the motion for a protective

9  order.  They didn't do it.  They consented to it.  Your

10  Honor relied on that in your Honor's decision.  So re-

11  litigating that issue now doesn't seem to make any

12  sense, and we have provided the authority for the

13  waiver process.  It's in the declaration of the bank's

14  experts that were attached to its motion for a

15  protective order.

16         So the waiver process -- we don't have any

17  objection to the defendants -- I'm sorry, to the

18  plaintiffs getting reasonable discovery about the

19  waiver process.  We're happy to share the process that

20  we engaged in, we're happy to share copies of the

21  waivers, and we plan to produce copies of the waivers.

22  We've already produced thousands and thousands of pages

23  of documents from customers who have waived bank

24  secrecy.  So beyond that, there's really nothing else

25  to give to the plaintiffs with respect to the foreign

1    law.  It's already been provided, they didn't dispute

2    it, your Honor relied on it.  So we're happy to provide

3    discovery on the process but with respect to the legal

4    basis, we think it's already been dealt with.

5              THE COURT:  Okay.  Can I just pause there

6    and go back to Mr. Osen?  What is missing in terms of

7    the foreign law based on what Mr. Ingerman has now

8    stated?

9              MR. OSEN:  Sure.  Your Honor, two quick

10   points:  First of all, I think there's an important

11   distinction between the question of whether foreign law

12   applies, which was the question your Honor was being

13   asked to assess and which we did not in any way

14   dispute.  And then the there's the completely separate

15   question of what exceptions and how those exceptions

16   function under the domestic laws being cited.

17             So to take Mr. Ingerman's example, he has an

18   expert who proffered Article 72 of the Jordanian code.

19   They have a Palestinian expert that proffered paragraph

20   2, Article 32 of the Palestinian banking law of 2010.

21   Those statutory provisions, to our knowledge, have not

22   been provided to us or to the Court.  In addition,

23   because --

24             THE COURT:  Okay, let me just stop you

25   there, Mr. Osen.

1          MR. OSEN:  Sorry.

2          THE COURT:  So you mean just like

3  physically, that law, because West Law doesn't contain

4  it?  Is that what --

5          MR. OSEN:  Yeah.  I mean, it's not just --

6  it's not just the statutes themselves but presumably,

7  the kind of issues -- I mean, I don't speak, to put it

8  mildly, as an expert on this subject.  But presumably,

9  the question of how waivers work, when they're

10  appropriate, who can execute a waiver and so forth is

11  presumably also the subject of case law since the

12  circumstances are sort of not a one size fits all.

13          THE COURT:  Well --

14          MR. OSEN:  And -- sorry, go ahead.

15          THE COURT:  Sorry to interrupt.  I'm just

16  trying to have a conversation about what is -- what has

17  been produced and what you're still seeking.  So what I

18  hear you saying is, the experts have cited to

19  particular articles of Jordanian and Palestinian law.

20  But number one, I guess my first question is, is it

21  that you can't access it and therefore, you want a copy

22  of it?

23          MR. OSEN:  Number one, yes.  We don't have

24  -- in the previous iterations of this in Lindy (ph),

25  the defendants proffered the foreign law they were

```
1   relying on and translations of it to the Court.
2   Ultimately, this is an issue for the Court's evaluation
3   even more than it is for ours.  So rather than having
4   that first be presented either in the defendant's
5   briefing or in response to our complaint that it's not
6   there, this is something we view as sort of a threshold
7   matter.  In order to evaluate what they've done and how
8   they've proceeded, sort of the basic threshold question
9   is, okay, well, what law specifically, what provision
10  or what case law are they operating under that led them
11  to proceed in the manner they did?
12          THE COURT:  Okay, because that seems a lot
13  more than what it sounded like you were originally
14  asking for.  So number one, the citations to the
15  specific statute have already been put out there by the
16  experts.  So I can appreciate people maybe not having a
17  copy of the law or if there are different translations
18  of it, there might be some dispute.  So to the extent
19  the parties can come to some agreement as to that
20  specific provision so that people aren't using
21  different versions of it, that would be helpful.  The
22  parties should just confer because that's so basic,
23  right?
24          It has nothing to do with any attorney work
25  product or privilege.  It's simply, what law are you
```

1    talking about?  It's foreign law so there may -- I

2    don't know.  It would just be useful for everybody to

3    understand if they're on the same page or whether their

4    experts are going to have a dispute as to the starting

5    point, which is the statute that the bank is saying

6    they're relying on is this statute and this is the

7    translation that is being used, so that if there's any

8    dispute as to what a particular word might mean, that

9    is how they're going to be viewing things, and then

10   just start from there.

11            Now, the second point about case law does

12   get more complicated because, you know, even in

13   American law, different courts might end up relying on

14   different cases.  So I don't think it's necessarily the

15   right thing to be requesting that "case law" be

16   provided.  I think when the experts -- when we get to

17   the point where somebody is claiming to be relying on

18   some foreign law and there is an expert that is helping

19   the parties and the Court understand what the foreign

20   law is and how it's being relied on, at that point,

21   those kinds of things can be produced and offered up.

22            And I would assume that the other side to

23   that representation will have its own expert to say

24   this is in fact what the foreign law means and doesn't

25   mean.  So I don't think necessarily producing what --

1  it may be too soon to have that -- to require that

2  production.  But on the other hand, having discussions

3  about what you're talking about never hurts.

4              MR. INGERMAN:  Your Honor, this is -- sorry.

5              THE COURT:  I'm just trying to figure out --

6  eventually, yes, all of this is going to need to be

7  presented if the Court has to make a decision on who's

8  right and who's following the foreign law properly or

9  not.  But if we're not there yet, my questions is one

10  of timing.  How much needs to be produced at this point

11  versus waiting to the point when you're actually

12  briefing the issue to the Court?  Who was interrupting

13  just now?

14              MR. INGERMAN:  I'm sorry, your Honor, it's

15  Brett Ingerman.  I apologize for interrupting.

16              THE COURT:  Okay.

17              MR. INGERMAN:  I was just going to make two

18  quick points.  One is, if Mr. Osen -- if all he wanted

19  were the statutes that were cited by our experts in the

20  declarations, he could have asked us for that.  I was

21  able to Google it in about two seconds while we were on

22  this call and they come up in English.  One of them is

23  on the Central Bank of Jordan's website.  So that did

24  not be controversial and I did not understand that to

25  be his ask.  But if that's his ask, that's a no-

1    brainer.

2          With respect to the second part, that's our

3    legal advice to the client.  I mean, they have the

4    foreign law that's required under 44.1.  We've

5    identified the foreign law that we're relying on.  To

6    the extent that we're further advising the bank about

7    how to comply with that law, that's legal advice

8    protected by the attorney/client privilege and the work

9    product doctrine.

10          To the extent that there are legal arguments

11    that we make to the Court about why the waiver process

12    is appropriate or reasonable or legal, those are legal

13    arguments we'll make in a brief just like in any other

14    brief that gets filed with the Court.  So I don't see

15    -- Mr. Osen has certainly not cited any authority that

16    we have to share in advance the legal arguments that we

17    may or may not make to your Honor when it comes time to

18    defending against a Rule 37 motion.

19          THE COURT:  Okay, thank you.

20          Mr. Osen, can you speak to the timing issue

21    because that was one of my questions.

22          MR. OSEN:  Sure, your Honor.  To be clear,

23    we're not taking the position or even anticipate taking

24    the position that they -- that we dispute their legal

25    assessment or their proffer on the law.  What we're

trying to do is ascertain and have a framework for understanding how they proceeded with the waiver process, and maybe that was not informed by any legal considerations. Maybe it was just a practical approach to, who can we find that we think will sign a waiver? I have no way of knowing. I have absolutely no transparency into the process.

Obviously, the most important thing for us is to ascertain what they've actually been doing and how they've gone about it. But part of understanding why they've done it in a particular way and whether they've been proceeding in a way that they assessed to be necessary as a matter of law or one which they assessed to be one of convenience than for other reasons, that is whether they are guided by legal imperatives or practical ones is something we can't assess without knowing what guidelines they gave for going out and doing this waiver process.

THE COURT: Well, I appreciate what you're saying but you can determine whether the reason for a particular action is in one column, the legal basis, or the other column, which is a practical concern. That's fair. I think you can ask once -- so the first thing, as you stated, is to understand factually what the process is, and we'll get to that in a minute. So

1  understanding the process, if you wanted to then

2  ascertain why -- why did you do it this way rather than

3  that way, and the answer is because of a legal

4  constraint or because, you know, of practical concerns,

5  then that will give you guidance as to which one it is.

6          As to the legal constraint, if there was a

7  statute, you know, beyond -- or there was some specific

8  legal basis beyond these articles that have been made

9  reference to, perhaps you could find out more, like is

10  it bank secrecy is the issue or is it some other legal

11  basis?  But the analysis, I mean, I think the bank is

12  right.  The analysis, there, the lawyers' assessment of

13  whether this is the proper way to comply with the law

14  is a legal analysis.  It shouldn't matter to you and

15  you shouldn't really need to get that until the point

16  when they have to justify to the Court.  I would assume

17  that whatever they say, the plaintiffs are likely to

18  challenge anyway, and the way you would challenge it is

19  to get your own expert to -- or do your own legal

20  analysis and research and present that to the Court.

21          I think it's fair to ask, was it practical

22  or legal?  And then perhaps -- I don't know the details

23  of it.  Is it a bank secrecy problem or is it some

24  other law problem, criminal law problem or, you know,

25  whatever it is, and then that would be it.  The rest of

1   it, you're going to have to do your own -- the

2   plaintiffs are going to have to do their own analysis

3   as to what the problem was, all right?  But first, I

4   think everybody just has to know the factual process,

5   and then you can have some discussion about why certain

6   things happened.  So I don't think getting the legal

7   analysis and the case law and all that's been requested

8   is appropriate at this point.

9           MR. OSEN:  The way, your Honor -- this is

10  Gary Osen.  The way we'd like to proceed, subject of

11  course to the Court's approval, is we'd like to have a

12  firm date, number one, for the defendant's production

13  fo records relating to the waiver process.  Then, you

14  know, maybe three, four weeks later have a fixed date

15  for a 30(b)(6) deposition, at which we can ask a

16  corporate representative to walk us through those

17  records and their process.  And obviously, to the

18  extent that legal issues come up, they can obviously

19  assert attorney/client privilege to anything that

20  directly asks them about their legal advice.  But I

21  think that process would at least better tee up the

22  issues that may be presented or may not be presented as

23  to foreign law.

24          THE COURT:  Yes, I agree that the first step

25  is to understand the factual basis for what the waiver

1    process entails.  So let's turn to that because, Mr.

2    Osen, you started by saying with the waiver process,

3    you wanted to understand the statute.  So I'm going to

4    say as to that point, you already have the reference to

5    the statute.  And the legal basis beyond that, you're

6    entitled to know that there was a legal reason.  You're

7    not entitled to get the full analysis from the bank as

8    to how they arrived at the conclusion that there was a

9    legal reason for doing that, all right?  So that is the

10    first issue you put on the table, so I'm denying your

11    request -- plaintiff's request for the bank to give you

12    that information.  Let's move on to the next issue.

13              MR. OSEN:  Yes.  Before we do, your Honor,

14    can we just get a little bit of further clarity on the

15    sort of timing of that because --

16              THE COURT:  Why don't we deal with that at

17    the end?

18              MR. OSEN:  Okay.

19              THE COURT:  Because I just want to figure

20    out what needs to be produced and then we'll figure

21    out --

22              MR. OSEN:  Understood, okay.  The other --

23    there are one and a half issues that we have.  We don't

24    have a specific request from the Court for any kind of

25    intervention.  We'll just note that what we're dealing

1    with here is a mid-sized, global bank.  Our bank is not

2    J.P. Morgan Chase or HSBC but it's a fairly substantial

3    bank with global branches that even during the relevant

4    period up to 2004, ran its core system using IBM V

5    series and AS-400 servers that were pretty much

6    industry standard for even the biggest banks in the

7    world at the time.  And yet we're being told by the

8    defendant that it has no meaningful ESI, primarily only

9    paper records, despite a discovery hold since July of

10   2004.

11          We find this representation at best

12   surprising but at this point, we don't have enough

13   information yet to reach definitive conclusions on why

14   there's an almost a complete absence of ESI.  But

15   that's the subject of ongoing letter exchanges and

16   hopefully -- we've invited the defendant to have a

17   meeting of IT professionals so that the IT people can

18   talk directly and maybe more productively about some of

19   these technical issues.

20          THE COURT:  Okay.  Since you have raised it

21   without asking for the Court's intervention, I will

22   give Mr. Ingerman a chance to respond to it.

23          MR. OSEN:  Yeah.  Could we just add one --

24   just one more thing, your Honor.  The reason we raise

25   it here and in our letter is just because it may impact

1    the schedule down the road.

2              THE COURT:  Okay, thank you.

3              Mr. Ingerman?

4              MR. INGERMAN:  Yeah, thank you, this is

5    Brett Ingerman.  Your Honor, we attached to the joint

6    status report the bank's very detailed, 19-page

7    response to the plaintiff's 75 ESI questions.  That was

8    met with another letter from the plaintiffs Friday

9    night, with another long list of questions that we will

10   look at and respond to as appropriate.  That letter

11   from the plaintiffs also promised additional, more

12   detailed questions after Christmas.  So we are working

13   to meet and confer on these ESI issues.  The reality

14   is, there may not be searchable ESI.  There are backup

15   tapes, there are floppy disks, there is microfiche.

16             My understanding is that it is not

17   accessible, certainly not reasonably accessible under

18   Rule 26, but we are in the process of working through

19   those issues with the plaintiffs and at the appropriate

20   time, I do agree with Mr. Osen that it would make sense

21   to get the IT professionals on the phone with one

22   another to talk through it.  And then we can -- when

23   there's something for the Court to do, we can come back

24   to the Court with that issue.

25             THE COURT:  Okay.  So I think it does make

1    sense for everybody to get their arms around what

2    existed -- what was created at the time that these

3    transactions were occurring because the technology has

4    evolved over time.  So you talked about floppy disks

5    and microfiche.  Those are blasts from the past for

6    many of us but may have been used -- in use at the

7    time.  And if that's all there was, then that's all

8    there was.  That would be the first thing is to

9    understand what was happening at the point of the

10   transactions, at the time of the transactions.

11          The second part is to understand what was

12   preserved and is still available, and if there's a gap

13   and a difference, I think everybody needs to understand

14   what happened.  There was some reference to a flood.

15   Everybody is aware of what's happening currently as

16   well, unfortunately.  So if things are no longer -- no

17   longer exist, then that needs to be noted and

18   understood.

19          Then to the extent that there were servers

20   being used such that there are potentially multiple

21   copies of things -- in other words, if there's a

22   communication, sometimes there's a copy on one end and

23   then a copy on the other end.  The parties also need to

24   understand where various copies may exist such that if

25   one version or one copy is not available, it might be

1    duplicated by accessing a different copy.  These are

2    all things that are important to understand and rather

3    than being surprised or being doubtful, everybody

4    should just be clear and get as much knowledge as

5    possible exchanged and investigated so that you can

6    have a very clear idea of what's available at this

7    point, right?

8           And then the further question about

9    searchability, that was alluded to in the letter.  Do

10   the parties need the Court's intervention in terms of

11   the searchability and text and, you know, the

12   technological issues of the Hebrew characters or other

13   characters turning into Chinese characters, those kinds

14   of things?

15          MR. INGERMAN:  Yes, so --

16          THE COURT:  Is that something I need to

17   discuss?

18          MR. INGERMAN:  I'm sorry, this is Brett

19   Ingerman, your Honor.  We did have a meet and confer

20   with the plaintiffs yesterday.  And I think based on

21   the representations by Ms. Davies, because these are

22   issues principally for the Pam plaintiff document

23   production -- based on Ms. Davies' representations, I

24   think those issues hopefully will be resolved shortly.

25          THE COURT:  Okay, good, I'm glad to hear

1    that.  All right then, so that will be another timing

2    question.

3            Mr. Osen, is there any other issue that we

4    should be discussing?  And then we'll turn to the

5    specific timing of what's already been discussed.

6            MR. OSEN:  Yes, two things very briefly,

7    your Honor, just for belt-and-suspender purposes.  We

8    had not pressed the issue of the water mark or the

9    other production-related issues concerning what the

10   defendants have produced in response to waivers simply

11   because, to the extent that there is ultimately an ESI

12   version of any of these transactional or account

13   records, that would obviate the dispute.  So we've just

14   tabled it for now but we want to make clear we're still

15   having a technical problem and the issue exists, but

16   we're hoping that there's a technical solution for it

17   and ESI.  If not, then obviously, we'll revisit that

18   issue.

19           THE COURT:  Okay.

20           MR. OSEN:  The only other -- sorry, your

21   Honor.

22           THE COURT:  Okay.  Just my thoughts on that:

23   The whole point of production and discovery is that the

24   other side can get access to information, so the

25   parties should be working on what the best way is to

1  convey the relevant information.  So if there are

2  technical impediments to water mark or anything else,

3  the parties really need to work cooperatively to come

4  up with a solution.  That shouldn't -- it's a little

5  strange to me that that is creating so many issues, all

6  right?

7        So if it's not an impediment, then that's

8  fine and what's being produced is what there is.  But

9  if the addition of a water mark is impeding the ability

10  to read the content, then you need to work out a

11  solution so that the content can be conveyed.  That's

12  all I'll say.  The parties here are working on that

13  cooperatively but I think -- I just wanted to give you

14  an extra push of encouragement that the point of this

15  exercise is really to convey the contents, so please do

16  your best to do that.

17        All right, Mr. Osen, what else?

18        MR. OSEN:  Yes.  The last thing is that

19  based on what we've been hearing so far about ESI or

20  the absence of other records, so far, we've been

21  receiving -- there might be an exception here or there

22  that I'm not familiar with but overwhelmingly, the

23  paper and records that have been produced since April

24  are account statements, which means that most of the

25  most salient information, including most particularly

1  transactional wire transfers or checks, have not been

2  produced.

3          Plaintiffs have previously produced, and I

4  think completed but we can check on that, the

5  production of Arab Bank records that we have obtained

6  in the course of discovery over the last 20 years.  So

7  we would anticipate filing or serving a request for

8  admission as to whatever collected transactional

9  records we have, to the extent that the defendants will

10 not be producing them.  We can either do that now or we

11 can do that at the end, but I raise it now only because

12 in the past, the bank has refused to admit as to

13 records that were covered by bank secrecy.

14         So we had hoped that would not be an issue

15 here but it looks like we might be doing the bulk of

16 the substantive production of funds transfer records.

17 Again, it's more, you know, and FYI to the Court in

18 terms of the schedule, but we can either do that before

19 March, the end of March, or we can do it at some later

20 point once we know what the status of the ESI discovery

21 is.

22         THE COURT:  So are you saying that because

23 you're not getting a lot of responses to requests for

24 production in the form of transfer records, that you

25 think they don't exist or that the bank has them but is

1    not producing them?

2         MR. OSEN:  Well, I don't want to

3    characterize -- we don't know enough yet about their

4    ESI to know the full story, but what we do know is that

5    they produced almost exclusively account statements.

6    So, you know, like a regular bank statement, it would

7    sort of have a running count of credits and debits.

8    But it doesn't have for example detailed information

9    that says, this customer received $75,000 from this

10   counter-party through Swift, through New York, what

11   have you, on so and so date.  So those kinds of records

12   we haven't seen from the production since April.  And

13   according to where the defendants have -- at least

14   where things stand at the moment, they're suggesting

15   that they're unlikely to have those kinds of

16   transactional records in their ESI.

17        We don't know whether that's ultimately the

18   case or not but that's sort of where they've indicated

19   the state of play is.  If that turns out to be the case

20   for whatever reason, then the best evidence available

21   to us will be the transactional -- you know, the wire

22   transfer copies and records that we've been able to

23   obtain from third parties, and that would then be the

24   only evidence of those transactions available.  In the

25   past, we've done that by requests for admission.

1          THE COURT:  Okay.  As I had mentioned

2   earlier, it's important for the parties to get their

3   arms around what exists and what doesn't exist.  And

4   then if you need to clarify that certain documents --

5   class of documents that you think might exist have been

6   searched for, then you can certainly have those

7   conversations, whether it be in the form of a request

8   for admission or some other communication to say, we

9   want to confirm that you have completed the production

10  and it doesn't include these kinds of things.  That's

11  fine, just whatever means will clearly communicate

12  between the parties what exists, what doesn't exist,

13  what's been produced, what isn't being produced or

14  can't be produced, or what is being withheld, all those

15  things.  Clarity is the key.

16          MR. INGERMAN:  Your Honor, this is Brett

17  Ingerman.  This is the first I'm hearing about this

18  even though we've had three meet and confers since the

19  last status conference.  So if there are particular

20  documents that Mr. Osen thinks are missing, please send

21  us a letter on that and we'll look into it.  If we have

22  the documents and there's been a waiver, the bank will

23  produce them.  And with respect to the request for

24  admissions, we'll certainly take a look at whatever

25  they serve and respond appropriately.

```
 1              THE COURT:  Okay.  But I would also urge
 2    again that the parties communicate on an ongoing basis
 3    so that the process can move forward smoothly.  It
 4    doesn't sound like you're doing this, Mr. Osen, but I
 5    just want to say not wait until the end and then just
 6    say okay, since you didn't do this, that's an
 7    admission.  I think the parties should just be talking
 8    to each other constantly and saying things like, we got
 9    this but not that.  Is that deliberate, is it coming,
10    you know, is there a reason that's not here, did you
11    look, you know.  Those kinds of questions are fair in
12    the discovery process and I think are very useful.  So
13    I think you should continue to confer and bring up
14    these issues so they can be addressed efficiently,
15    okay?
16              MR. OSEN:  Of course, your Honor.  Perhaps I
17    wasn't clear about one point.  When I speak of requests
18    for admission, I don't mean --
19              Brett, I'm sorry, I'm sort of assuming
20    things about the prior Lindy case and the Court's
21    familiarity that, you know, really I should not have
22    done.
23              To be clear, when I meant requests for
24    admission, I mean a situation where we attach let's say
25    100 transactional records and ask the bank to agree
```

1    that they are -- to authenticate them as their

2    transactional records because they have not been

3    produced to us but we have copies of them rather than

4    as a request, you know, generally, do you admit that

5    you had an account for, or a verbal formulation if you

6    will.  These are specifically records, physical copies

7    of records that we have and have produced but which the

8    defendant has not produced to us.

9             THE COURT:  I am not familiar with the

10   details of what happened in the discovery in the

11   previous cases but obviously, you are.  So whatever is

12   efficient and whatever is going to move the case

13   forward and the litigation forward, you should please

14   just do that.  But, again, I'm just encouraging

15   constant communication, all right?

16             MR. OSEN:  Understood, your Honor, thank

17   you.

18             THE COURT:  All right.  Mr. Osen, I just

19   want to make sure that we've addressed everything that

20   you want to put on the table before I turn to the bank.

21             MR. OSEN:  That's it for us, your Honor,

22   thank you.

23             THE COURT:  All right, great.

24             So then I had understood, Mr. Ingerman, that

25   you had some concerns about the production that you're

1    getting or not getting from the plaintiffs.  Can you

2    address those concerns?

3                MR. INGERMAN:  Yeah, and I think I mentioned

4    earlier, your Honor, we had a meet and confer yesterday

5    where I think those issues -- the plaintiffs are going

6    to remediate those issues.  And assuming that that

7    happens, I think we should be in a good position with

8    respect to the plaintiffs' production.

9                THE COURT:  Okay, wonderful.  So then let's

10   figure out the timing.  The first thing is about the

11   waiver process.  I appreciate that this is an ongoing

12   process and it's difficult, but the waiver process is

13   happening.  Based on my ruling, the production is

14   supposed to happen and the waiver process is just

15   giving the bank some time to see what it can do first,

16   but it can't go on forever.

17               So I would like to find out, Mr. Ingerman,

18   what is your time frame for saying, this is as far as

19   we can go.

20               MR. INGERMAN:  Yeah, understood, and I

21   appreciate that, your Honor.  The process was actually

22   moving along pretty well right up until obviously

23   October 7th, and what's happened in the Palestinian

24   territories from that time forward has made it

25   incredibly difficult for the bank to secure waivers.

1    Having said that, it is still trying, and what I

2    proposed to the plaintiffs yesterday at our meet and

3    confer is that the waiver process be substantially

4    complete by February 23rd, which would basically give us

5    another I guess two months to get whatever additional

6    waivers we can get.  And then wherever we are, we are

7    at that point.

8           We would propose doing a report to both the

9    Court and the plaintiffs on the number of waivers that

10   we've gotten, and we would have produced hopefully all

11   of the documents for whom we've gotten waivers --

12   account holders for whom we've gotten waivers by that

13   time.  And then if the plaintiffs want to take their

14   30(b)(6) deposition sometime thereafter in March, we're

15   happy to put up a bank witness to describe the process,

16   as your Honor articulated earlier in today's status

17   conference.

18           THE COURT:  All right.  Mr. Osen, tell me

19   your thoughts on this proposed schedule.

20           MR. OSEN:  Well, that particular point I

21   don't think we have objection to, but with two caveats.

22   One is that we would want to have the production or the

23   substantial production of the waiver-related records

24   that are the subject of our document requests sooner

25   than that so that we have an opportunity to actually

1  read and evaluate them, presumably in Arabic, before

2  that February 23rd date.  So if we could get that

3  completion -- a commitment to produce at least what

4  they have as of January 31st, that will give us the

5  month of February to evaluate it, and then maybe we can

6  schedule a deposition for the first week in March.

7         THE COURT:  All right.  Has any production

8  been done on -- have you produced anything on the

9  waiver process, Mr. Ingerman, or anything on a rolling

10 basis, for example?

11        MR. INGERMAN:  Yeah.  So we produced I think

12 over 6,000 pages of customer records for account

13 holders for whom we've gotten waivers.  So by looking

14 at the names on the documents, they can -- the

15 plaintiffs can determine, you know, who the account

16 holder was who waived bank secrecy.  We have not yet

17 produced any of the actual waivers.  I'm actually in

18 the process of gathering those now and can be prepared

19 to produce those certainly by the end of January.  And

20 we don't have any objection to producing or

21 substantially completing the production of records from

22 account holders from whom we've received waivers by the

23 end of January, just recognizing that if we were to get

24 additional waivers in February, we would, you know, as

25 soon as possible thereafter produce those account

1  records as well.

2         So the hope would be that the production

3  would be substantially complete by the end of January

4  for all account holders for whom we have waivers in

5  hand by that date.  And then to the extent we get

6  additional waivers in February, we would produce those

7  documents and then have the deposition in March, as Mr.

8  Osen proposed.

9         THE COURT:  Okay.  Has there been

10  information produced on the waiver process because I

11  heard that that was still not completely clear to the

12  plaintiffs.

13         MR. INGERMAN:  Other than the account

14  records themselves and the actual waivers, I'm not sure

15  what other documents there are related to the waiver

16  process.  I mean, as your Honor may recall, the last

17  time we were together in September, I explained that

18  the bank's process is to physically visit the account

19  holder or the account holder's representative,

20  sometimes on multiple occasions, to try to convince

21  them to waive bank secrecy.  Then if there is a waiver,

22  it's signed by the account holder, and then there's a

23  copy of the account holder's identification.  So it's

24  essentially like a -- the waiver, as I understand it,

25  is a two-page document.  The first page is the waiver

1   signed by the bank and the account holder and the

2   second page is identification verification.  I'm not

3   sure there are other documents related to the process

4   other than that but we're certainly asking the bank

5   about that.

6          THE COURT:  Okay, because we had been

7   talking about the waiver process, so I wasn't sure if

8   the information with regard to the process, not just

9   the results, whether that was still something that

10  needed to be produced.

11         MR. INGERMAN:  I mean, the process --

12         THE COURT:  So --

13         MR. INGERMAN:  I'm sorry, your Honor, just

14  one more thing.

15         THE COURT:  Yeah, okay.

16         MR. INGERMAN:  The process, as you

17  recognized, has been guided closely by the lawyers to

18  make sure that the bank is following the law.  So the

19  extent there are -- there certainly would be

20  lawyer/bank communications that would be privileged

21  related to the process and we can put those on a

22  privilege log, but I'm not sure that there are any non-

23  privileged waiver process documents other than the

24  waivers themselves.

25         THE COURT:  All right.  Mr. Osen, just to be

1    clear, was the plaintiff seeking documents on the

2    waiver process?

3          MR. OSEN:  Yes, your Honor.  To be clear, as

4    far as I know, we haven't received any copies of any

5    waivers from any customers so far.

6          THE COURT:  Yes, that's been acknowledged.

7          MR. OSEN:  Right.  So that's what we're

8    looking for before the end of January.  And just on the

9    question of the communications, again, I don't think we

10   need to trouble Mr. Ingerman or his client with a

11   privilege log or their internal communications.  We're

12   not seeking their attorney/client communications.  But

13   to the extent that they've written to, texted, or

14   otherwise communicated in a written form with any of

15   the customers who provided waivers, we'd want that

16   information as well if it exists.

17         MR. INGERMAN:  I agree with that, your

18   Honor.  To the extent that that exists, we would

19   produce that.  But my understanding is that this was

20   all done in person.

21         THE COURT:  Okay.  So please just keep an

22   eye on any communications that are not privileged that

23   relate to the process.

24         MR. INGERMAN:  Yes.

25         THE COURT:  If they don't exist, obviously,

1  you can't produce what doesn't exist, but just be aware

2  that that is being sought so that if anything exists,

3  it is appropriately requested and produced.

4          MR. INGERMAN:  Understood.

5          THE COURT:  Okay.  So given that the parties

6  are in basic agreement on the timing of this

7  production, I will order that the bank produce the

8  documents that it has with regard to the waivers by

9  January 31st, 2024.  Then it will be supplemented by

10  February 23rd, 2024 with a final letter that talks about

11  its substantial completion with the number of waivers

12  obtained and other facts related to that process.  And

13  then the 30(b)(6) deposition or depositions by

14  plaintiffs will occur sometime in March, on a date that

15  the parties will agree on.  Okay.

16          So then let's turn to the ESI issue.  Mr.

17  Ingerman, since the request is for production by your

18  client, what is the time frame that you think is

19  appropriate?

20          MR. INGERMAN:  I still think that we can do

21  that by the current substantial completion of document

22  production of March 29th, 2024 that the Court set

23  previously.  So I think to the extent that there is

24  responsive ESI, we should be able to get it done by

25  then.

```
1            THE COURT:  Okay.  But in between, do we
2    need to set any deadlines for getting to the
3    substantial completion?
4            MR. INGERMAN:  I mean, I think under the --
5    this is Mr. Ingerman.  Under the bank schedule, we did
6    not have any interim dates.  I mean, the parties are
7    continuing to exchange letters and information, and my
8    suggestion would be that if we reach an impasse, your
9    Honor has certainly made herself available to resolve
10   these issues.  So I'm not aware of any interim dates
11   that are necessary.
12           THE COURT:  Okay.  Mr. Osen?
13           MR. OSEN:  The only thing I would say, your
14   Honor, is it would probably be helpful for us to have a
15   status conference like this one sometime in early or
16   mid-February.
17           THE COURT:  All right, that may be a good
18   idea.  Let me take a look at my calendar and see when
19   everyone is available.  So we're looking at the week of
20   February 12th and February 13th is available in the
21   morning or February 14th, 11:00 each day.
22           MR. INGERMAN:  Your Honor, this is Brett
23   Ingerman.
24           THE COURT:  Yes.
25           MR. INGERMAN:  I'm sorry, I have a doctor's
```

1   appointment on the 13th that I would have trouble

2   getting rescheduled but I am available on the 14th at

3   11:00 if that works for everybody else.

4          THE COURT:  All right, February 14th at

5   11:00?  Hearing no objection, I will schedule that.  It

6   will be by phone like today, 11:00 February 14th.  I

7   think in preparation for that, why don't the parties

8   file a joint status report by February 12th, and then

9   that will set an agenda for the conference on the 14th.

10  So if you have issues you want to raise, everybody can

11  weigh in on that, and I'll have a chance to look at it

12  and figure out the best way to conduct the conference.

13  All right, good.

14          Mr. Osen, is there anything else we need to

15  discuss?

16          MR. OSEN:  No.  I think, your Honor, based

17  on what has already been discussed, it probably doesn't

18  make sense to try to work on the further deadlines

19  beyond March 29th.  So unless your Honor wants to do so,

20  I think we're set with the dates already articulated.

21          THE COURT:  Okay, great.  We'll just take it

22  one step at a time.  So we'll just work with these

23  dates and then if there's -- it's necessary to put in

24  other dates, we can talk about that at the next

25  conference.

1              Ms. Davies, anything from you?

2              MS. DAVIES:  No, thank you, your Honor.

3              THE COURT:  All right.  Mr. Ingerman?

4              MR. INGERMAN:  Nothing more from the bank,

5     your Honor, thank you.

6              THE COURT:  All right, thank you, everybody.

7     Have a great holiday season and a good start to the New

8     Year.

9              MR. OSEN:  Thank you.

10             THE COURT:  If anything comes up between now

11    and the February conference, feel free to file a joint

12    letter and I will do my best to schedule something

13    quickly so that we can keep going without losing time.

14    Otherwise, I will hear everybody on the phone on

15    February 14th at 11:00.

16             MR. INGERMAN:  Thank you, your Honor.

17             MR. OSEN:  Thank you.

18                    * * * * * * *

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18         I certify that the foregoing is a correct

19    transcript from the electronic sound recording of the

20    proceedings in the above-entitled matter.

21

22

23

24

25    ELIZABETH BARRON                        December 26, 2023