

**DLA Piper LLP (US)**
650 S Exeter Street
Suite 1100
Baltimore, Maryland 21202-4576
www.dlapiper.com

Brett Ingerman
brett.ingerman@us.dlapiper.com
T  410.580.4177
F  410.580.3177

February 12, 2024

**VIA ECF**

Hon. Peggy Kuo
United States Magistrate Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re**:   *Miller, et al. v. Arab Bank, PLC*, No. 18-cv-2192 (HG) (PK)
          *Pam, et al. v. Arab Bank, PLC*, No. 18-cv-4670 (HG) (PK)

Dear Magistrate Judge Kuo:

We submit this letter on behalf of Plaintiffs and Defendant in the above-referenced actions in response to the Court's December 19, 2023 Minute Order directing the parties to file a "joint status report detailing their progress with discovery." The parties respectively offer the following updates.

The Bank notes that it provided a draft Joint Status Report to Plaintiffs at 9:10 am this morning (as requested by Plaintiffs) but did not receive Plaintiffs' inserts to this Joint Status Report until 5:30 pm this evening. While the Bank attempted to respond to some of the issues raised in Plaintiffs' last-minute submission below, the Bank reserves the right to respond further at the status conference on February 14.

    **A.  Status of Plaintiffs' Discovery**

**Arab Bank's Position**

The *Pam* and *Miller* plaintiffs' document productions to Arab Bank, plc Bank ("Arab Bank" or the "Bank") are still incomplete. There are four *Pam* plaintiffs who have either produced no medical records or doctor logs. Moreover, the *Miller* plaintiffs have also failed to produce medical records for three plaintiffs, who identified additional doctors in their depositions. The Bank is awaiting a response from Plaintiffs' counsel.

Arab Bank has taken the depositions of 31 of the 68 Plaintiffs. Since the last conference, the Bank has taken three additional depositions (the deposition of Philip Bauer in his personal capacity, and as the representative of the Estates of Ludwig and Ella Bauer). This concludes the depositions of the Plaintiffs located in the United States. The parties have agreed to monitor the

Israel-Hamas conflict in order to determine when the parties will return to Israel to complete the remaining Plaintiff depositions.

**Plaintiffs' Position**

**<u>Document Production</u>**

Plaintiffs have successfully addressed all of the complaints Arab Bank set forth in the parties' December 8, 2023, joint status report concerning the format in which some of Plaintiffs' documents were produced. *Pam* Plaintiffs expect to complete their rolling production of doctor logs—which identify all doctors and mental health providers consulted over the past 20 plus years—well in advance of the resumption of *Pam* Plaintiffs' depositions. The *Miller* Plaintiffs have produced medical records for their Plaintiffs. *Miller* Plaintiffs' counsel are following up with two Plaintiffs who are resident in Israel to determine if there are some, limited, remaining documents left to produce. The continuing aftermath of Hamas's October 7 terrorist attack has made further document recovery more difficult and protracted. A third Plaintiff has confirmed that he no longer recalls the name of the physician that he referenced during his deposition; therefore, counsel cannot obtain any additional records, if they exist.

**<u>Plaintiff Depositions</u>**

*Miller* Plaintiffs' counsel would like to complete the depositions of the nine Israel-resident Plaintiffs who have not yet been deposed. Defense counsel have indicated that they are not prepared to travel to Israel at the present time given the situation there and "do not agree to do the depositions by video." Insofar as all of these Plaintiffs themselves have indicated that they can make themselves available for deposition, Plaintiffs' counsel believe that in person depositions could be completed over the next 6-8 weeks. If defense counsel remain reluctant to travel to Israel, insofar as their firm maintains an office in Tel Aviv, Plaintiffs' counsel believe that conducting the depositions by video during that timeframe is a reasonable alternative under the circumstances.

**B. <u>Status of Arab Bank's Discovery</u>**

**Arab Bank's Position**

Pursuant to the Court's December 19, 2023 Minute Order, Arab Bank has produced waivers from account holders and other responsive documents related to waivers, which the Bank has obtained to date. For each of these account holders, Arab Bank has already produced account records, which include account opening records and account statements. Arab Bank has produced 6,310 pages concerning account records from foreign jurisdictions. Arab Bank also produced further responses from the Jordanian Minister of Justice, Palestinian Monetary Authority, and Palestinian Ministry of Justice in response to Plaintiffs' document requests.

As to ESI, the Bank has provided detailed information in response to numerous inquiries from Plaintiffs. The Bank most recently responded in detail to a letter from Plaintiffs dated December 15, 2023, which included an additional 17 questions concerning, among other things, the availability of SWIFT records, records from the Bank's CORE banking system, credit card

transactions, the processing of transfers from the Palestinian Monetary Authority, and the processes used by the Bank to identify potentially relevant documents.

Immediately following the Bank's responses, Plaintiffs sent an email on February 1, 2024, with six more questions seeking additional clarification. *See* Feb. 1, 2024 Email from A. Ungar, Exhibit 1. ***Notably, the questions identified in Exhibit 1 are largely the same points that Plaintiffs raise below***. While the Bank believes it has satisfied its Rule 26 obligations and that the Plaintiffs' repeated requests are unduly burdensome, the Bank is reviewing these questions and, without prejudice to its right to object to these continued inquiries, will respond as appropriate.

Per the Court's December 19 Minute Order, the Bank anticipates substantial completion of production of responsive ESI by March 29, 2024. Until then, most of the issues Plaintiffs raise are premature.

As to the meeting between IT professionals, the Bank believes that such a discussion would be most productive (if at all) once the Bank has completed its review and production of its ESI. Plaintiffs' February 1 email seems to agree: "Once we have received the additional information and clarifications, we can schedule a hopefully productive call between the IT professionals." *See* Ex. 1.

**Plaintiffs' Position**

Plaintiffs believe significant gaps remain in Defendant's production and ESI disclosure.

At the last status conference, on December 19, 2023, defense counsel stated that "we don't have any objection to producing or substantially completing the production of records from account holders from whom we've received waivers by the end of January…." 12-19-23 Tr. at 33:20-23. Because Defendant did not produce any additional records from account holders by the end of January or further clarify whether a future production will take place, it is unclear whether or when additional records may be produced for account holders from whom Defendant purports to have received waivers.

**Paper Records**

Defendant has stated that for each of its customers it has maintained printed copies of bank account statements, important e-mail messages, checks, SWIFT and Western Union payment orders, credit card statements, and Telex messages. However, because Defendant has not produced its search protocols for these items, Plaintiffs are unable to determine if Defendant's searches of its paper-based records in Gaza, the West Bank, Jordan, and Lebanon were reasonable.

Moreover, as far as Plaintiffs can determine, Defendant has not (yet) produced *any* e-mail messages, checks, SWIFT[1] or Western Union[2] payment orders pursuant to the Court's April 14, 2023, Order.

**Electronically Stored Information ("ESI")**

In multiple letters and meet-and-confers over the past several months, Plaintiffs have outlined relevant ESI sources Defendant maintained during the relevant period that should reasonably contain such transaction-level information showing specific account activity. At the last status conference, defense counsel stated that "[t]he reality is, there may not be searchable ESI. There are backup tapes, there are floppy disks, there is microfiche. My understanding is that it is not accessible, certainly not reasonably accessible under Rule 26, but we are in the process of working through those issues with the plaintiffs …" 12-19-23 Tr. at 21:13-19.

On January 29, 2024, Defendant identified the following sources of relevant ESI:

- Enterprise Content Management ("ECM") document management system (ESI dated between 1998 and 2004).
- Equation centralized online real-time environment ("CORE") banking system (ESI dated between 1998 and 2004).
- SWIFT Alliance Access financial messaging system (ESI dated between April 2004 and December 2004).

However, Defendant has not provided the search terms and structured query language ("SQL") code that it used to search the above systems, or, as far as Plaintiffs can discern, produced any records related to its searches.

4

*Archives and backups.* Plaintiffs have asked specific follow-up questions about the feasibility of retrieving backup tapes or extracts of transactional data from the archives of Defendant's CORE banking systems in Gaza, the West Bank, Jordan, and Lebanon that likely contained account statement information, funds transfer details, and other relevant activity during the years at issue.

In response, Defendant stated that it identified, restored, and searched "monthly backup cartridges" dated between 1998 and 2004. However, Defendant has not provided the search terms and SQL code that it used to search its archives and backups, or, as far as Plaintiffs can determine, **produced any records related to its searches**.

In summary, Plaintiffs believe significant clarification is still needed in the form of Defendant's search terms, SQL code, and methods Defendant used to search its relevant paper-based records and ESI. That is, clarification regarding the potentially relevant records currently stored in Defendant's banking and business filing systems, computer servers, and back-up tape cartridges at its various branches and data centers in Gaza, the West Bank, Jordan, and Lebanon.

### IT Professionals' Conference

Plaintiffs' counsel have attempted, since December 19, 2023, to schedule a call between the parties' IT professionals, including following up with defense counsel on December 29, January 5, January 8, and January 25 – to no avail. We continue to believe that a detailed call between the parties' IT professionals would help clarify the situation significantly.

### Rule 30(b)(6) Witness on Waiver Process

Plaintiffs would like to confirm that the parties will agree to schedule the contemplated Rule 30(b)(6) of Arab Bank's corporate designee on the "waiver process" either in person in New York or by videoconference on a mutually convenient date before the end of March.

Sincerely,

*/s/ Brett Ingerman*

cc: All Counsel

---

[1] Defendant has stated that it has identified SWIFT transactional data in paper-based format in the customers' daily jackets for the years 1998-2004, but only maintained SWIFT transactions in electronic form for the period April 2004-December 2004 because it maintained only a 90-day retention period for SWIFT-related ESI.

[2] Defendant has stated that it has located and searched paper-based records related to Western Union that were stored in separate boxes at the Ramallah branch.

5